**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| IN RE TEXTRON, INC. ERISA LITIGATION | Civil Action No. 09-383-ML (Consolidated Actions) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **REQUEST FOR ORAL ARGUMENT** |

**MOTION TO DISMISS
BY TEXTRON INC., TEXTRON INVESTMENT COMMITTEE,
TED R. FRENCH, RICHARD L. YATES, CATHY A. STREKER,
DEBORAH A. IMONDI, AND MARY F. LOVEJOY**

Defendants Textron Inc. ("Textron" or the "Company"), Textron Investment Committee, (the "Investment Committee"), along with Ted R. French, Richard L. Yates, Cathy A. Streker, Deborah A. Imondi, and Mary F. Lovejoy (the "Individual Defendants," collectively with Textron and the Investment Committee the "Defendants") move to dismiss plaintiffs' Complaint because plaintiffs have failed to allege facts sufficient to plausibly suggest that (1) it was imprudent to maintain the Textron Stock Fund as an investment option; (2) the Defendants breached their fiduciary duties thorough misrepresentation or omission; (3) Textron failed to properly monitor any fiduciary; and (4) any Defendant should be held liable as a co-fiduciary.  Defendants' grounds for their Motion to Dismiss are set forth in detail in their accompanying Memorandum of Law.

### Request for Oral Argument

Defendants request oral argument and estimate that one hour would be appropriate for all parties.

Dated: March 19, 2010

William J. Kilberg, P.C., *pro hac vice*
Paul Blankenstein, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

Mitchell A. Karlan, *pro hac vice*
Brian M. Lutz, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

JOHN A. TARANTINO (#2586)
jtarantino@apslaw.com
PATRICIA K. ROCHA (#2793)
procha@apslaw.com
NICOLE J. DULUDE (#7540)
ndulude@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
Telephone: (401) 274-7200
Facsimile: (401) 351-4607

*Attorneys for all Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE TEXTRON, INC. ERISA LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Civil Action No. 09-383-ML (Consolidated Actions) |

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO DISMISS BY TEXTRON INC., TEXTRON INVESTMENT
## COMMITTEE, TED R. FRENCH, RICHARD L. YATES, CATHY A. STREKER,
## DEBORAH A. IMONDI, AND MARY F. LOVEJOY

William J. Kilberg, P.C., *pro hac vice*
Paul Blankenstein, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

Mitchell A. Karlan, *pro hac vice*
Brian M. Lutz, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

JOHN A. TARANTINO (#2586)
jtarantino@apslaw.com
PATRICIA K. ROCHA (#2793)
procha@apslaw.com
NICOLE J. DULUDE (#7540)
ndulude@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
Telephone: (401) 274-7200
Facsimile: (401) 351-4607

*Attorneys for all Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................... 1

BACKGROUND .................................................................................. 3

    The Parties ..................................................................................... 3

    The Plan ......................................................................................... 4

    Plan Administration ....................................................................... 7

    Plaintiffs' Claims .......................................................................... 7

STANDARD OF REVIEW ................................................................. 9

ARGUMENT ..................................................................................... 10

I.      PLAINTIFFS' CLAIMS OF BREACH OF FIDUCIARY DUTY UNDER ERISA FAIL TO ALLEGE SPECIFIC FACTS THAT PLAUSIBLY SUGGEST A BREACH OF FIDUCIARY DUTY OCCURRED ........................ 10

    A.    The Complaint Fails To Allege Facts Sufficient To Plausibly Suggest That It Was Imprudent to Maintain The Textron Stock Fund As An Investment Option. ............................................................. 13

        1.    *A Presumption Of Prudence Attaches To Maintaining Company Stock As An Investment Option In 401(k) Plans In General And For ESOPs In Particular.* .................................... 13

        2.    *The Complaint Does Not Allege Facts That Plausibly Show That Maintaining The Textron Stock Fund Was Imprudent.* ......... 18

        3.    *Plaintiffs Have Not Plead Facts To Sustain A Claim That The Defendants Knew Or Should Have Known That Textron's Stock Was Trading At Inflated Prices Due To Undisclosed Material Adverse Information.* ................................. 25

    B.    The Complaint Fails to Allege Facts Sufficient To Plausibly Suggest That The Defendants Breached Their Fiduciary Duties Through Misrepresentation Or Omission. .................................................. 28

        1.    *The Allegedly False And Misleading Statements Were Not Made By Fiduciaries Acting In A Fiduciary Capacity.* ................. 28

i

2.      *ERISA Fiduciaries Do Not Have An Affirmative Duty To Disclose Information Regarding Their Company's Financial And Operational Status.* ................................................31

3.      *The Plaintiffs Have Not Plead Facts But Have Only Made Conclusory Assertions That Any Alleged Misstatements By Textron Were False Or Misleading.* ..............................................33

II.     PLAINTIFFS' FAILURE-TO-MONITOR CLAIMS MUST BE DISMISSED. ....................................................................................................39

III.    PLAINTIFFS' CO-FIDUCIARY ALLEGATIONS FAIL TO STATE A CLAIM..........................................................................................................40

CONCLUSION....................................................................................................................41

## TABLE OF AUTHORITIES

**Cases**

*Alvidres v. CountryWide Fin. Corp.*,
No. 07-05810, 2008 WL 819330 (C.D. Cal. Mar. 18, 2008)....................................................... 16

*Amalgamated Clothing & Textile Workers Union v. Murdock*,
861 F.2d 1406 (9th Cir. 1988) ........................................................................................... 25

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)........................................................................................................ 9

*Bagley v. KB Home*,
No. 07-1754 (C.D. Cal. May 5, 2008) ................................................................................. 25

*Baker v. Kingsley*,
387 F.3d 649 (7th Cir. 2004) ............................................................................................. 32

*Bast v. Prudential Ins. Co. of Am.*,
150 F.3d 1003 (9th Cir. 1998) ........................................................................................... 25

*Beddall v. State Street Bank & Trust Co.*,
137 F.3d 12 (1st Cir. 1998)............................................................................................. 5, 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................. 9, 25, 41

*Board of Trustees of CWA/ITU Negotiated Pension Plan v. Weinstein*,
107 F.3d 139 (2d Cir. 1997)............................................................................................... 32

*Bunch v. W.R. Grace Co.*,
555 F.3d 1, 6 (1st Cir. 2009)....................................................................................... *passim*

*Burstein v. Ret. Account Plan*,
334 F.3d 365 (3d Cir. 2003).............................................................................................. 39

*Bussian v. RJR Nabisco*,
223 F.3d 286 (5th Cir. 2000) ............................................................................................ 12

*Caputo v. Pfizer, Inc.*,
267 F.3d 181 (2d Cir. 2001).............................................................................................. 34

*Carney v. Cambridge Tech. Partners, Inc.*,
135 F. Supp. 2d 235 (D. Mass. 2001) ........................................................................... 35, 38

*Coyne & Delany Co. v. Selman*,
98 F.3d 1457 (4th Cir. 1996) ............................................................................................ 40

*DeBruyne v. Equitable Life Assurance Soc'y of the United States,*
   920 F.2d 457 (7th Cir. 1990) ............................................... 28

*DiFelice v. U.S. Airways, Inc.,*
   497 F.3d 410 (4th Cir. 2005) ...................................... *passim*

*Donovan v. Bierwirth,*
   680 F.2d 263 (2d Cir. 1982)................................. 12, 13, 14

*Edgar v. Avaya Inc.,*
   503 F.3d 340 (3d Cir. 2007)....................................... *passim*

*Gearren v. McGraw-Hill Cos., Inc.,*
   Nos. 08-7890, 09-5450, 2010 WL 532315 (S.D.N.Y. Feb. 10, 2010).............. *passim*

*Graden v. Conexant Sys., Inc.,*
   574 F. Supp. 2d 456 (D.N.J. 2008) ..................................... 16

*Greenstone v. Cambex Corp.,* 975 F.2d 22 (1st Cir.1992),
   *superseded by statute on other grounds,*
   Private Securities Litigation Reform Act of 1995, Pub.L. No. 104-67, 109 Stat. 737 ............ 10

*Halaris v. Viacom, Inc.,*
   No. 06-1646, 2008 WL 3855044 (N.D. Tex. Aug. 19, 2008).................................. 16

*Harris v. Amgen, Inc.,*
   No. 07-5442, 2010 WL 744123 (C.D. Cal. Mar. 2, 2010)....................................... 17

*Harzewski v. Guidant Corp.,*
   489 F.3d 799, 808 (7th Cir. 2007) ........................................... 26

*Hostar Marine Transp. Sys., Inc. v. United States,*
   592 F.3d 202 (1st Cir. 2010).................................................. 9

*Howell v. Motorola, Inc.,*
   337 F. Supp. 2d 1079 (N.D. Ill. 2004) .................................... 34

*Hughes Aircraft Co. v. Jacobson,*
   525 U.S. 432 (1999)........................................................ 13

*Hull v. Policy Mgmt. Sys. Corp.,*
   No. 00-778, 2001 WL 1836286 (D.S.C. Feb. 9, 2001)...................................... 30, 40

*Hunter v. Caliber Sys.,*
   220 F.3d 702 (6th Cir. 2000) ............................................... 11

*In re Avon Prods., Inc. Sec. Litig.,*
   No. 05-6803, 2009 WL 848083 (S.D.N.Y. Mar. 3 2009)................................. 16, 30

iv

*In re Bausch & Lomb Inc. ERISA Litig.*,
   No. 06-6297, 2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008)...........................................*passim*

*In re Citigroup ERISA Litig.*,
   No. 07-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009)............................................*passim*

*In re Computer Sciences Corp. ERISA Litig.*,
   635 F. Supp. 2d 1128 (C.D. Cal. 2009) ................................................................. 27

*In re Dell, Inc. ERISA Litig.*,
   563 F. Supp. 2d 681 (W.D. Tex. 2008)................................................................. 16

*In re Enron Corp. Secs., Derivative & ERISA Litig.*,
   284 F. Supp. 2d 511 (S.D. Tex. 2003) .................................................................. 26

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   86 F. Supp. 2d 481 (E.D. Pa. 2000) .................................................................... 16

*In re Merck & Co. Vytorin ERISA Litig.*,
   No. 08-1974, 2009 WL 2834792 (D.N.J. Sept. 1, 2009) ......................................... 16

*In re NationsMart Corp. Sec. Litig.*,
   130 F.3d  309 (8th Cir. 1997) ........................................................................... 38

*In re RadioShack Corp. ERISA Litig.*,
   547 F. Supp. 2d 606 (N.D. Tex. 2008) ................................................................. 16

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) .......................................................................... 17

*In re Williams Cos. ERISA Litig.*,
   271 F. Supp 2d. 1328 (N.D. Okla. 2003).............................................................. 40

*In re WorldCom Inc. ERISA Litig.*,
   263 F. Supp. 2d 745 (S.D.N.Y. 2003)............................................................ 12, 30

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
   Nos. 03-2218 & 03-2219, 2004 WL 758990 (D. Minn. Mar. 10, 2004) ................................ 16

*James v. Pirelli Armstrong Corp.*,
   305 F.3d 439 (6th Cir. 2002) ........................................................................... 39

*Johnson v. Radian Group, Inc.*,
   No. 08-2007, 2009 WL 2137241 (E.D. Pa. July 16, 2009) ................................. 34, 41

*Kirschbaum v. Reliant Energy, Inc.*,
   526 F.3d 243, 253 (5th Cir. 2008) ................................................................*passim*

*Kuper v. Iovenko*,
  66 F.3d 1447, 1458-59 (6th Cir. 1995) ..................................................... 15, 21, 24

*Langbecker v. Elec. Data Sys. Corp.*,
  476 F.3d 299 (5th Cir. 2007) ................................................................................ 18

*LaRue v. DeWolff, Boberg & Assocs. Inc.*,
  552 U.S. 248 (2008) ............................................................................................. 10

*Lehman Bros. Sec. & ERISA Litig.*,
  No. 09-5598, 2010 WL 354937 (S.D.N.Y. Feb. 2, 2010) ................................... 16, 19

*Lessler v. Little*,
  857 F.2d 866 (1st Cir. 1988) ................................................................................. 39

*Lingis v. Motorola, Inc.*,
  649 F. Supp. 2d 861 (N.D. Ill. 2009) ................................................................ 26, 32

*Livick v. Gillette Co.*,
  524 F.3d 24 (1st Cir. 2008) .................................................................................. 11

*Martin v. Feilen*,
  965 F.2d 660 (8th Cir. 1992) ................................................................................ 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................................. 36

*Moench v. Robertson*,
  62 F.3d 553, 568 (3d Cir. 1995) ..................................................................... *passim*

*Morrison v. MoneyGram Int'l, Inc.*,
  607 F. Supp. 2d 1033 (D. Minn. 2009) ................................................................. 16

*Parnes v. Gateway*,
  122 F.3d 539 (8th Cir. 1997) ................................................................................ 34

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) ....................................................................................... 11, 12

*Pugh v. Tribune Co.*,
  521 F.3d 686, 701 (7th Cir. 2008) .................................................... 15, 16, 17, 34

*Rodi v. S. New England School of Law*,
  389 F.3d 5 (1st Cir. 2004) .................................................................................... 34

*Roeder v. Alpha Indus., Inc.*,
  814 F.2d 22 (1st Cir. 1987) .................................................................................. 26

*Rogers v. Baxter Int'l, Inc.*,
　521 F.3d 702 (7th Cir. 2008) ............................................................ 11, 22

*Sears v. Likens*,
　912 F.2d 889 (7th Cir. 1990) ................................................................... 34

*Shaw v. Digital Equip. Corp.*,
　82 F.3d 1194 (1st Cir. 1996) ................................................................... 35

*Stein v. Smith*,
　270 F. Supp. 2d 157 (D. Mass. 2003) ....................................................... 31

*Stransky v. Cummins Engine Co., Inc.*,
　51 F.3d 1329 (7th Cir. 1995) ................................................................... 38

*Summers v. State Street Bank & Trust Co.*,
　453 F.3d 404 (7th Cir. 2006) ................................................................... 24

*Tatum v. R.J. Reynolds Tobacco Co.*,
　392 F.3d 636 (4th Cir. 2004) ................................................................... 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　551 U.S. 308 (2007) ............................................................................. 5, 10

*Trustees of the Graphic Comm. Int'l Union v. Bjorkedel*,
　516 F.3d 719 (8th Cir. 2008) ................................................................... 35

*United States v. Ortho Biotech Prods., L.P.*,
　579 F.3d 13 (1st Cir. 2009) ....................................................................... 9

*Urban v. Comcast Corp.*,
　No. 08-773, 2008 WL 4739519 (E.D. Pa. Oct. 28, 2008) ........................... 14

*Varity Corp. v. Howe*,
　516 U.S. 489 (1996) ....................................................................... *passim*

*Veranda Beach Club Ltd. Partnership v. W. Sur. Co.*,
　936 F.2d 1364 (1st Cir. 1991) ................................................................. 39

*Wright v. Or. Metallurgical Corp.*,
　360 F.3d 1090 (9th Cir. 2004) ......................................................... *passim*

## Statutes

26 U.S.C. § 402(e)(4) ............................................................................ 14

29 U.S.C. § 1002(34) .............................................................................. 4

29 U.S.C. § 1023(a) ............................................................................... 29

29 U.S.C. § 1023(b)(3) ................................................................................29

29 U.S.C. § 1024(b) ....................................................................................29

29 U.S.C. § 1104(a) .....................................................................................11

29 U.S.C. § 1104(a)(2) .................................................................................14

29 U.S.C. § 1105(a) ..............................................................................8, 40, 41

29 U.S.C. § 1107(d)(30(A)(ii) ......................................................................13

29 U.S.C. § 1108(c)(3) .................................................................................12

29 U.S.C. § 1108(e)(3)(A) ............................................................................14

29 U.S.C. § 1204(a) .....................................................................................29

29 U.S.C. §1104(a)(1)(D) .............................................................................11

29 U.S.C. §1109(a) ......................................................................................11

29 U.S.C.§ 1104(a) ......................................................................................12

29 U.S.C.§ 1144(d) ......................................................................................32

29 U.S.C.1106(b) .........................................................................................12

**Rules**

Fed. R. Civ. P. 12(f) ....................................................................................12

Fed. R. Civ. P. 9(b) .....................................................................................33

**Regulations**

17 C.F.R. § 230.175(a)................................................................................38

17 C.F.R. § 230.428(a)(1) ............................................................................30

17 C.F.R. § 230.428(b)(1) ............................................................................30

29 C.F.R. § 2560.503-1................................................................................29

**Other Authorities**

Restatement (Second) of Trusts § 227 ........................................................ 17

Restatement (Third) of Trusts § 228 ........................................................... 18

Susan J. Stabile, *Another Look at 401(k) Plan Investments in Employer Securities*,
  35 J. Marshall L. Rev. 539 (2002) .......................................................................... 22

Employee Benefit Plans, Exchange Act Release No. 33-6188,
  1980 WL 29482 (Feb. 1, 1980)............................................................................... 26

U.S. Dep't of Labor, Field Assistance Bulletin 2004-03, n.6 (Dec. 17, 2004)...................... 19, 22

Defendants submit this Memorandum of Law in support of their Motion to Dismiss the Complaint for failure to state a claim upon which relief may be granted.[1]

## INTRODUCTION

This is an action by nine current and former participants in Textron Inc.'s 401(k) Savings Plan ("Plan") against Textron and five of its current or former officers.[2]  Under the Plan, current employees who participate in the Plan may invest a portion of their salary in the various investment options, including the Textron Stock Fund.  As a benefit of participating in the Plan, Textron provides a matching contribution in Textron common stock.  Participants are then free, at any time, to move the Company's contributed stock to any of the Plan's other investment options.  If participants divest their Textron stock, they may reinvest the proceeds in a wide variety of mutual funds offered by the Plan.

The Plan itself is authorized and regulated by the federal law known as ERISA, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*.  That Act, among other things, reflects a clear Congressional intent to promote and encourage plans like Textron's.  Among the several types of common retirement plans are plans, like Textron's, whereby the employer gives the employees not just any retirement benefit but specifically gives them an equity participation in the employer.  Plans like these are called ESOP's, or Employee Stock Option Plans.  Unlike other retirement plans, ESOP's serve a dual goal—they are intended not

---

[1]    Defendants are Textron Inc., the Textron Investment Committee, Ted R. French, Richard L. Yates, Cathy A. Streker, Deborah A. Imondi, and Mary F. Lovejoy.

[2]    Any factual matters discussed in the Introduction that are not immediately supported by citations to the Complaint, the documents referenced in the Complaint, or by matters for which judicial notice is appropriate are supported in the body of this Memorandum.

merely to provide some opportunity for employees to accumulate a retirement nest egg, but also to give employees a tangible stake in the future well-being of their employer.

The plaintiffs here allege that, by contributing Company stock to their Plan accounts during recent months, the Defendants violated their duties under ERISA because, plaintiffs allege, the stock was so worthless that no prudent fiduciary would have permitted plan participants to invest in it (even though no participant was required, even for a day, to continue to hold the stock in his or her account). Instead, plaintiffs argue, Defendants should have radically altered the design and intent of the retirement plan by eliminating the ability of participants to receive or own Textron stock in the Plan. The result of such a decision, had Defendants made it, would have been the forcible selling, at one time, of the millions of shares of Textron stock held by Plan participants, leaving those participants with just the cash proceeds of stock dumped on the market at historically low prices. And participants would have been denied the ability to buy more shares at those low prices. Moreover, since the Plan documents require that Textron's contribution must be in the form of Textron stock, following the change for which plaintiffs clamor, the participants would not have been able to receive any contribution from the Company.

The Plan participants can be thankful that the Defendants did not follow that course of conduct because Textron stock has increased in value by over 600 percent since the share price hit its low point during the proposed class period.

In recent years, it has become commonplace, whenever company stock of a plan sponsor suffers a price decline, for some participant to sue, complaining about losses sustained by the plan participants who held company stock. More than 200 of these "stock drop" cases have been filed. While some of these complaints have survived motions to dismiss, none has ultimately resulted in a judgment for plaintiff. Recognizing that the price of stocks often fluctuate greatly,

no court—ever—has ultimately held that fiduciaries were required to divest company stock as an investment option in a 401(k) plan because of a decline in the price of the employer's stock, even a steep drop over a relatively short period. No court—ever—has ultimately held that the persons charged with administering an employee stock option plan were required by federal law to change it to a different type of plan, one where the Company's contribution is in cash.

The crux of plaintiffs' complaint is that, during the almost unprecedented financial debacle of recent years, the market price of Textron's stock (like the price of every other marketable security) dropped materially. Surely, say plaintiffs, Defendants must have foreseen all of those events. Needless to say, the complaint alleges no facts to make such an allegation remotely plausible. Nor do plaintiffs offer any plausible and relevant factual support for their assertion that the Defendants knew or should have known that Textron was on the "verge" of bankruptcy during the class period, and, even assuming that the Company's position was so dire, that divesting the Textron Stock Fund was the sole fiduciary response. The Defendants were not, and were not required to be, prescient about future market or economic events, particularly events like the tidal wave that swamped the world economy in 2008.

## BACKGROUND

**The Parties**

According to the Complaint, each of the nine plaintiffs was a participant in the Plan during the putative class period, and each plaintiff held Textron stock in their respective Plan account.

The Defendants are Textron, the Plan's Investment Committee, and its members during the class period. Founded in 1923, Textron is incorporated in Delaware and has its principle place of business in Providence, Rhode Island. Complaint ¶ 25. One of the world's premier multi-industry companies, Textron is comprised of five main business segments, three of which

are at issue here:  Cessna Aircraft Company, a manufacturer of general aviation aircraft; Bell Helicopter Textron Inc. ("Bell Helicopter"), a manufacturer of military and general use helicopters; and Textron Financial Corporation ("Textron Financial"), a diversified commercial finance company.  Complaint ¶¶ 65, 66, 69-85.  Textron sponsors the participant-directed 401(k) defined contribution plan at issue for eligible employees in all of its segments.  Textron also serves as the Plan Administrator.  Complaint ¶ 45.

The Investment Committee is comprised of various officers and employees of Textron, which, in its role as Plan Administrator, has delegated authority to the Committee to make investment decisions for the Plan.  Complaint ¶ 53.  The Individual Defendants are or were members of the Investment Committee:  Ted R. French, Chief Financial Officer for Textron until February 9, 2009, when he left the Company; Richard L. Yates, former interim Chief Financial Officer of Textron and current Senior Vice President and Corporate Controller; Cathy A. Streker, Vice President of Human Resources and Benefits of Textron; Deborah A. Imondi, Assistant Treasurer, Investment Management of Textron; and Mary F. Lovejoy, Vice President and Treasurer of Textron.  Complaint ¶ 27-32.

**The Plan**

The Plan is a participant-directed 401(k) defined contribution plan.  Complaint ¶ 33.  As such, the Plan provides retirement benefits "based solely upon the amount contributed to the participant's [individual] accounts, and any income, expenses, gains and losses . . ." sustained in the account.  29 U.S.C. § 1002(34); Complaint ¶ 34.  Eligible participants may invest a designated portion of their salary (up to a statutory maximum) in any of the various investment options offered by the Plan.  Complaint ¶ 35-36.  These options include equity mutual funds, bond

funds, a stable value fund, lifecycle funds, and the Textron Stock Fund.  Complaint ¶ 3; Textron Savings Plan Summary Plan Description (October 2004) ("SPD") at 16-22.[3]

The Textron Stock Fund was established as an ESOP, and was specifically "designed to invest primarily in Textron Common Stock."  2009 Plan § 1.02; *see also* § 8.02(a).  The other investment options form the profit sharing portion of the Plan pursuant to 401(k) of the Internal Revenue Code; however, the "ESOP portion of the Plan and the profit sharing portion constitute a single plan under Treas. Reg. § 1.414(1)-1(b)(1)."  2009 Plan § 1.02; *see also* Complaint ¶ 36. While Plan participants may designate that all or part of their contributions be invested in the Textron Stock Fund, the Company's matching contributions must be invested entirely in the Textron Stock Fund.[4]  2009 Plan § 8.02(b).  Participants are, however, free at any time, to move the Company's contributions (as well as their own contributions) to the Textron Stock Fund to any of the Plan's other investment options.  *See* 2009 Plan § 8.03(b); SPD at 11.

---

[3]   Because the Complaint expressly references the Textron Inc. Savings Plan, as Amended and Restated in 2009 ("2009 Plan"), the Textron Inc. Savings Plan, as Amended and Restated in 1999 ("1999 Plan"), as well as the SPD, *see*, *e.g.*, Complaint ¶¶ 45, 48, 50, 52, 70, those documents may be considered on a motion to dismiss without transforming the motion to dismiss into a motion for summary judgment.  *See Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).  As the Supreme Court explained in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), when ruling on a Rule 12(b)(6) motion, courts "must consider" not only the complaint, but also "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  The relevant provisions of the 2009 Plan, the SPD, and the 1999 Plan are attached to the Blankenstein Declaration as Exhibits C and D and E respectively.  The relevant provisions of the 2009 and 1999 Plan documents have no material variations.  For simplicity, the Defendants will cite to the 2009 Plan document in this Memorandum in Support of their Motion to Dismiss.

[4]   For each pay period, Textron's matching contribution is $.50 for every $1 of the eligible employee's regular contributions to the Plan, subject to a maximum matching contribution of five percent of the participant's eligible compensation for that period.  SPD, Supplement at 1.

Plan participants are expressly advised that they "are responsible for deciding how [their] account will be invested" and "for monitoring [their] investments." SPD at 16. In this regard, participants were told that it would be prudent for them to consult with a financial advisor to design an investment strategy to fit their respective needs and objectives. *Id.*

While Textron does not provide investment advice or recommendations as to how participants should invest or allocate the assets in their accounts, it does explain some of the fundamentals of investing retirement assets. For example, the SPD points out the benefits of diversification:

> By *diversifying* your account—choosing a mix of funds that combines safety (capital preservation), income, and growth potential, or choosing to allocate your account to a lifecycle option—you can take advantage of the benefits of different markets and reduce the risk associated with being overexposed to any one specific type of investment.

SPD at 16 (emphasis in original). Participants were also told that each investment option in the Plan "has a different degree of risk" and that, "[i]n general, assuming a higher level of risk increases your chance of greater investment returns, but also increases your chances of incurring greater losses. You should base your investment choices on the degree of risk that you are willing to accept and with which you are comfortable." *Id.*

With regard to the Textron Stock Fund, participants were informed that "[u]nlike a mutual fund, the Textron Stock Fund is designed to invest in a single stock,"—*i.e.*, Textron common stock—and that "the Textron Stock Fund is not a diversified investment." SPD at 17. The SPD cautioned that:

> As with any stock, the value of your investment may go up or down depending on how Textron's stock performs in the market. Investing in a non-diversified unmanaged single stock *inherently involves more investment risk* than investing in a diversified fund. Please understand that Textron cannot protect you against any decline in the value of the Textron Stock Fund.

*Id.* (emphasis added).

**Plan Administration**

Textron is the Plan Administrator, 2009 Plan § 17.01, charged with general responsibility for the operation and management of the Plan. *Id.* at § 17.02. As expressly permitted by § 405(a) of ERISA, 29 U.S.C. § 1105(a), Textron has delegated plenary authority to the Investment Committee to select, monitor, and replace, if appropriate, any investment options that it has selected. *Id.* at § 8.02(a); Complaint ¶ 26. Under the explicit terms of the Plan, the Investment Committee must, however, offer the Textron Stock Fund as an investment option, not only to receive the Company's matching contributions to the ESOP, 2009 Plan at § 8.02(a),(b), but also as an option available for participant contributions. *Id.* at § 6.06.

**Plaintiffs' Claims**

Plaintiffs have brought this suit under ERISA on their own behalf and on behalf of a putative class of all "participants in or beneficiaries of the Plan . . . whose accounts included investments in the Textron Stock Fund" at any time "between July 17, 2007 and the present . . . ." Complaint ¶ 8. The Complaint maintains that all of the Defendants breached their respective fiduciary duties of prudence and loyalty in various ways.

In Count I, which is asserted against all Defendants, the plaintiffs allege that, at some unidentified time during the putative class period, Textron stock became an imprudent investment for the Plan, both because the Company was allegedly on the "verge of bankruptcy," and because its stock price was inflated due to allegedly undisclosed and material problems besetting its Cessna, Bell Helicopter, and Textron Financial segments. Complaint ¶¶ 130-51. It was therefore a breach of fiduciary duty, the plaintiffs contend, for the Defendants to continue to offer the Textron Stock Fund as an investment option in the Plan. Plaintiffs also assert that the Defendants breached their fiduciary duties of loyalty and prudence by "failing to provide complete and accurate information regarding the Company's true financial condition and the Company's con-

cealment of the same and, generally, by conveying inaccurate information regarding the Company's future outlook." Complaint ¶ 149.

Count II, which is asserted only against Textron, maintains that the Company had the fiduciary responsibility to appoint, evaluate, and monitor the other fiduciaries, including the Investment Committee and its members, to whom it delegated some of its fiduciary responsibilities, and that Textron failed to appropriately discharge those duties.   Complaint ¶¶ 152-61. Specifically, plaintiffs assert that Textron failed to ensure that the other alleged fiduciaries knew about the Company's "business problems," and also failed to ensure that those fiduciaries "completely appreciated" the risks to participants in continuing to allow the Textron Stock Fund to remain as an investment option in the Plan.  Complaint ¶ 158.

Count III, which is asserted against all Defendants, is for co-fiduciary liability under ERISA § 405(a), 29 U.S.C. § 1105(a).  According to plaintiffs, each Defendant has co-fiduciary liability because he or she knew that each of the other Defendants breached their respective duties and failed to remedy those breaches, knowingly participated in those breaches, and enabled those breaches.  Complaint ¶ 162-67.  Plaintiffs offer no factual details as to each Defendant's purported awareness of the alleged breach of every other Defendant, or how that Defendant knowingly participated in those breaches, or enabled the claimed breaches.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that advances "labels and conclusions," or tenders "naked assertion[s]" devoid of "further factual enhancement" will not suffice.  *Twombly*, 550 U.S at 555, 557.  In other words, plaintiffs must do more than allege "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 129 S. Ct. 1949.  At the motion to dismiss stage, courts must accept the plaintiffs' well-pled factual allegations as true.  *Hostar Marine Transp. Sys., Inc. v. United States*, 592 F.3d 202, 207 (1st Cir. 2010).  Courts are, however, "under no obligation to credit [] conclusory allegations, which simply parrot the elements of the statute."  *United States v. Ortho Biotech Prods., L.P.*, 579 F.3d 13, 28 (1st Cir. 2009).  As the Supreme Court stated in *Iqbal*, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 129 S. Ct. at 1949.

To stay in court, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'"  *Id.*  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Id.* at 1950.  In determining whether the factual allegations cross the threshold from possible to plausible, the court should "draw on its judicial experience and common sense."  *Id.*

Moreover, "Rule 9(b) [of the Federal Rules of Civil Procedure] applies to 'all averments of fraud or mistake'; it requires that 'the circumstances constituting fraud . . . be stated with particularity.'"  *Tellabs*, 551 U.S. at 319 (quoting Fed. R. Civ. P. 9(b)).  "The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir.1992), *superseded by statute on other grounds*, Private Securities Litigation Reform Act of 1995, Pub.L. No. 104-67, 109 Stat. 737.

## ARGUMENT

To state a claim for breach of fiduciary duty under ERISA, a complaint must allege *facts,* which, if proven, plausibly show that the fiduciaries breached their duties of prudence and loyalty.  *See*, *e.g.*, *Bunch v. W.R. Grace Co.*, 555 F.3d 1, 6 (1st Cir. 2009).  Rather than alleging the facts and elements necessary to state such a claim, the Complaint here conjures up a scenario of alleged fiduciary imprudence and disloyalty built entirely with the benefit of hindsight, aided and abetted only by sheer unadorned speculation.

## I.   PLAINTIFFS' CLAIMS OF BREACH OF FIDUCIARY DUTY UNDER ERISA FAIL TO ALLEGE SPECIFIC FACTS THAT PLAUSIBLY SUGGEST A BREACH OF FIDUCIARY DUTY OCCURRED.

Plaintiffs' essential theory of the case is that, because the plaintiffs and the putative class they would represent lost money on their holdings in the Textron Stock Fund, the Defendants, as the alleged fiduciaries of the Plan, must necessarily have breached some duty of prudence or loyalty.  But, of course, it does not follow that investment loss equals a breach of fiduciary duty.  ERISA does not make fiduciaries the guarantors of the retirement benefits available to participants in defined contribution plans, where the investment risk is placed on the participants.  *LaRue v. DeWolff, Boberg & Assocs. Inc.*, 552 U.S. 248, 250 n.1, 255-56 (2008).  Contrary to

how the plaintiffs would have it, plan fiduciaries are not expected to correctly predict investment outcomes or to anticipate rapid changes in economic conditions that may cause a plan investment to go sour, *see Rogers v. Baxter Int'l, Inc.*, 521 F.3d 702, 704 (7th Cir. 2008), and they are not liable for investment losses unless some act or omission of the fiduciary within his or her realm of responsibility directly and proximately caused that loss.  *See* 29 U.S.C. § 1109(a) (fiduciary liable to make up for losses caused by the fiduciary's breach).

Business decisions, even those that may adversely affect the interest of plan participants, are not subject to ERISA.  *See Hunter v. Caliber Sys.*, 220 F.3d 702, 718-19 (6th Cir. 2000).  As the Supreme Court said in *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000), the question in every ERISA case charging a breach of fiduciary duty "is not whether the actions of some person" adversely affected the interest of participants, "but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint." *Accord Livick v. Gillette Co.*, 524 F.3d 24, 29 (1st Cir. 2008) (employing same standard).

The governing standards for fiduciary conduct are spelled out in § 404 of ERISA, 29 U.S.C. § 1104(a).  Plan fiduciaries are charged with acting in "accordance with the documents and instruments governing the Plan," unless it would violate ERISA to do so. 29 U.S.C. § 1104(a)(1)(D).  ERISA's prudence standard, in turn, obligates fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  ERISA § 404(a)(1)(B);  *see Beddall*, 137 F.3d at 18.  As the First Circuit has explained:

> [T]he test of prudence—the Prudent Man Rule—is one of *conduct*, and not a test of the result of performance of the investment.  [W]hether a fiduciary's actions are prudent cannot be measured in hindsight. . . .  The test [is] how the fiduciary acted viewed from the perspective of the time of the challenged decision rather

> than from the vantage point of hindsight.  Furthermore, prudence involves a bal-
> ancing of competing interests under conditions of uncertainty.

*Bunch*, 555 F.3d at 7 (internal citations omitted; alterations in original; emphasis added).  A

fiduciary offends his or her duty of loyalty by not acting in the exclusive interests of the plan's

participants and beneficiaries, 29 U.S.C.§ 1104(a), but to advance his own interests or those of a

third party.  29 U.S.C. § 1106(b).[5]  *See Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996).  The

---

[5]     The plaintiffs also maintain that the Defendants "fail[ed] to take such other steps to en-
sure that Participants' interests were loyally and prudently served" by "placing their own and the
Company's improper interest above the interest of the Participants with respect to the Plan's
investment in Company stock."  Complaint ¶ 146.  There is not a single factual allegation in the
Complaint that supports that meritless (and scandalous) charge.

        It is commonplace for a plan sponsor, such as Textron, to act as a plan administrator.  *See
Varity Corp.*, 516 U.S. at 498 ("Varity was *both* an employer and the benefit plan administrator,
as ERISA permits.") (emphasis in original).  Similarly, although the Individual Defendants also
served as officers of Textron and are compensated for that service, such dual service does not
create a conflict of interest.  Having both a fiduciary hat and a corporate hat is specifically per-
mitted by ERISA.  *See* 29 U.S.C. § 1108(c)(3).  Nor does the fact that some of the Individual
Defendants are alleged to own Textron stock outside the Plan, Complaint ¶¶27-28, state a claim
for an actual conflict of interest.  *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *26
(S.D.N.Y. Aug. 31, 2009).  Also, "under ERISA, . . . a fiduciary may have financial interests
adverse to beneficiaries."  *Pegram*, 530 U.S. at 225.

        Consequently, a plaintiff asserting a breach of the duty of loyalty under ERISA must al-
lege facts that, if proven, would demonstrate not merely that the fiduciary, acting as fiduciary,
reached the manifestly wrong decision (*i.e.*, one that no reasonable fiduciary would make), but
that the fiduciary's decision was motivated to advance his own interest at the expense of the
participants.  *See In re WorldCom Inc. ERISA Litig.*, 263 F. Supp. 2d at 768.  As plaintiffs have
tendered no facts that would plausibly—or even possibly—suggest that the Individual Defen-
dants were so motivated, those assertions should be struck from the Complaint.  Fed. R. Civ. P.
12(f) (a court may strike "scandalous matter" from a complaint).  And given the plaintiffs have
failed to allege facts supporting their conflicts charge, there is, accordingly, no basis for their
claim that the Defendants should have appointed an independent fiduciary to make decisions
regarding the Textron Stock Fund, as that is reserved for instances when an actual conflict may
affect the obligations of a fiduciary to act in the exclusive interest of the participants.  *See, e.g.*,
*Bussian v. RJR Nabisco*, 223 F.3d 286, 299-300 (5th Cir. 2000); *Donovan v. Bierwirth*, 680 F.2d
263, 271-72 (2d Cir. 1982).

fiduciary's conduct must thus be examined in the totality of the circumstances and not based upon any single factor. *Bunch*, 555 F.3d at 7.

Under these standards, plaintiffs have failed to allege facts that would plausibly—not just possibly—be consistent with a breach of the duty of prudence or loyalty by any Defendant.

### A.   The Complaint Fails To Allege Facts Sufficient To Plausibly Suggest That It Was Imprudent to Maintain The Textron Stock Fund As An Investment Option.

#### 1.   *A Presumption Of Prudence Attaches To Maintaining Company Stock As An Investment Option In 401(k) Plans In General And For ESOPs In Particular.*

The Plan as a whole is an Eligible Individual Account Plan ("EIAP") within the meaning of ERISA § 407(d)(3)(A), as is the Textron Stock Fund itself, which constitutes the ESOP portion of the Plan.   29 U.S.C. § 1107(d)(30)(A)(ii).   EIAPs in general and ESOPs in particular differ from traditional retirement plans in that they serve "to promote investment in employer securities."  *Edgar v. Avaya Inc.*, 503 F.3d 340, 347 (3d Cir. 2007); *see also Martin v. Feilen*, 965 F.2d 660, 664 (8th Cir. 1992) ("Congress expressly intended that the ESOP would . . . encourage employee ownership.").

The purpose behind ESOPs is to "expand[] the national capital base among employees." *Donovan*, 716 F.2d at 1458.  Unlike defined benefit plans, in which the plan sponsor is obligated to provide the promised benefit even if the plan's investment experience is poor, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-40 (1999), "ESOP's . . . are not intended to guarantee retirement benefits, and, indeed, by its very nature 'an ESOP places employee retirement assets at much greater risk than does the typical diversified ERISA plan.'"  *Moench v. Robertson*, 62 F.3d 553, 568 (3d Cir. 1995).  Nevertheless, Congress has expressed a strong preference that company stock be made available to participants in defined contribution plans, like the plan here.  *See*, *e.g.*, *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1096 n.3 (9th Cir. 2004); *Kirschbaum v.*

13

*Reliant Energy, Inc.*, 526 F.3d 243, 253 (5th Cir. 2008).  To that end, Congress "has enacted  a number of laws designed to encourage employers to set up [ESOP] plans."  *Donovan*, 716 F.3d at 1458.  In order to ensure that ESOPs are not "made unattainable by regulations and rulings which treat employee stock ownership plans as conventional retirement plans," *Moench*, 62 F.3d at 568-69, Congress exempted ESOP fiduciaries from the standard diversification requirement, prudence requirement (to the extent it requires diversification), and the provisions generally prohibiting transactions between plans and employers.  29 U.S.C. §§ 1104(a)(2), 1108(e)(3)(A).  Congress even provided favorable tax treatment to investment in company stock:  While net appreciation in most 401(k) investment options is taxed at the ordinary income rate, appreciation in employer stock is taxed at the capital gains rate.  26 U.S.C. § 402(e)(4).

Due to the strong congressional encouragement for investment in company stock, courts have been extremely deferential to a fiduciary's decision to offer employer stock as an investment option.  After all, "Congress 'expect[ed] that the courts will interpret th[e] prudent man rule (and the other fiduciary standards) bearing in mind the special nature and purpose of employee benefit plans.'" *Varity Corp.*, 516 U.S. at 497.  Some courts have even concluded that where, as here, a plan explicitly requires that a fiduciary offer employer stock, "that action becomes non-discretionary and therefore not a fiduciary act at all." *Gearren v. McGraw-Hill Cos., Inc.*, Nos. 08-7890, 09-5450, 2010 WL 532315, at *7 (S.D.N.Y. Feb. 10, 2010) (citing *In re Citigroup ERISA Litig.*, No. 07-9790, 2009 WL 2762708, at *10 (S.D.N.Y. Aug. 31, 2009); *Urban v. Comcast Corp.*, No. 08-773, 2008 WL 4739519, at *12 (E.D. Pa. Oct. 28, 2008)); *see also Wright*, 360 F.3d at 1097 (noting that any requirement to diversify an ESOP "arguably threatens to eviscerate congressional intent and the guiding rationale" behind such plans).

14

At a minimum, a general consensus has formed that fiduciaries of 401(k) plans that offer company stock as an investment option are entitled to a "presumption of prudence"—*i.e.*, a rebuttable presumption that a "fiduciary who invests [plan] assets in employer stock . . . act[s] consistently with ERISA by virtue of that decision." *E.g.*, *Moench*, 62 F.3d at 571; *Kirschbaum*, 526 F.3d at 254-55. Although since expanded to EIAPS in general, *see Edgar*, 503 F.3d at 347; *Wright*, 360 F.3d at 1098 n.3, the presumption of prudence was first formulated in cases involving ESOPs. *See Moench*, 62 F.3d at 571; *Kuper v. Iovenko*, 66 F.3d 1447, 1458-59 (6th Cir. 1995).

When it first faced the issue seven years ago, the First Circuit was hesitant to adopt the presumption of prudence as a hard and fast rule. *See LaLonde*, 369 F.3d at 6. In *LaLonde*, the court declined to adopt the presumption because "the important and complex area of law implicated by plaintiffs' claims is neither mature nor uniform," and it would be beneficial to have "input from those with expertise in the arcane area of the law where ERISA's ESOP provisions intersect with its fiduciary duty requirements." *Id.*

Since *LaLonde*, however, the weight of the authority has moved overwhelmingly in favor of the presumption. Two courts of appeals—the Fifth and Seventh Circuits—have joined the Third Circuit and the Sixth Circuit and have adopted the presumption. *See Kirschbaum*, 526 F.3d at 254; *Pugh v. Tribune Co.*, 521 F.3d 686, 701 (7th Cir. 2008). Like the *Moench* and *Kuper* courts, both the *Kirschbaum* and *Pugh* decisions considered at length the intersection of a fiduciary's duties with the expressed congressional preference for investment in employer stock. *See Kirschbaum*, 526 F.3d at 253-56; *Pugh*, 521 F.3d at 701. Both courts ultimately found that the presumption should apply given the "long-term horizon of retirement investing, as well as the favored status Congress has granted to employee stock investments in their own companies."

*Pugh*, 521 F.3d at 702 (internal quotations omitted); *Kirschbaum*, 526 F.3d at 254.  In addition to the Fifth and Seventh Circuits, numerous district courts have also adopted the presumption of prudence since the ruling in *LaLonde*.  *See, e.g.*, *In re Merck & Co. Vytorin ERISA Litig.*, No. 08-1974, 2009 WL 2834792, at *2 (D.N.J. Sept. 1, 2009); *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *28; *Morrison v. MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1051 (D. Minn. 2009); *Lehman Bros. Sec. & ERISA Litig.*, No. 09-5598, 2010 WL 354937, at *5 (S.D.N.Y. Feb. 2, 2010); *McGraw-Hill*, 2010 WL 532315, at *10.[6]

---

[6]    Most courts that have declined to adopt *Moench*'s presumption of prudence have done so not because they determined that the presumption is not what ERISA requires, but because they view it as an evidentiary standard not applicable at the motion-to-dismiss stage.  *See, e.g.*, *Alvidres v. CountryWide Fin. Corp.*, No. 07-05810, 2008 WL 819330, at *2 (C.D. Cal. Mar. 18, 2008); *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, Nos. 03-2218 & 03-2219, 2004 WL 758990, at *8 (D. Minn. Mar. 10, 2004) (determining, pre-*Iqbal*, that the *Moench* presumption is not appropriate at the motion-to-dismiss stage); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 86 F. Supp. 2d 481, 492 (E.D. Pa. 2000) (same).

   The better view, and the one adopted by the majority of courts to address the question, is that the presumption does apply to a motion to dismiss.  *See Edgar*, 503 F.3d at 349 (applying the presumption at the motion-to-dismiss stage); *In re Avon Prods., Inc. Sec. Litig.*, No. 05-6803, 2009 WL 848083, at *10 (S.D.N.Y. Mar. 3 2009) (same); *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *16 (same); *In re Bausch & Lomb Inc. ERISA Litig.*, No. 06-6297, 2008 WL 5234281, at *5-6 (W.D.N.Y. Dec. 12, 2008) (same); *Graden v. Conexant Sys., Inc.*, 574 F. Supp. 2d 456, 462-64 (D.N.J. 2008); *Halaris v. Viacom, Inc*., No. 06-1646, 2008 WL 3855044, at *2 (N.D. Tex. Aug. 19, 2008); *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681, 692-93 (W.D. Tex. 2008); *In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d 606, 614 (N.D. Tex. 2008).  These courts have essentially concluded that, although a "presumption of prudence" sounds in evidentiary considerations, in reality it is

> merely a shorthand way to refer to what the *Moench* court called a standard of review. . . .  At least post-*Iqbal*, it is not enough simply to make a conclusory allegation that the defendants breached their fiduciary duties.  Instead, a plaintiff must allege facts that make it plausible that a breach of fiduciary duty actually occurred.  The applicability of the presumption of prudence directly affects the plausibility of an allegation that a particular action was imprudent.

*McGraw-Hill*, 2010 WL 532315, at *12.

[Footnote continued on next page]

Moreover, the First Circuit appears to have warmed to the presumption of prudence since its ruling in *LaLonde*. In *Bunch v. W.R. Grace Co.*, the First Circuit addressed whether a fiduciary acted prudently in divesting an ERISA plan of employer stock. 555 F.3d at 10. Rejecting the appellants' effort to use the presumption as a basis to hold the fiduciaries liable, the First Circuit held that to do so would controvert the purpose of the presumption and "transform" it from a "shield" for a fiduciary to a "sword" to be used against the fiduciary. *Id.* The court noted, however, that the presumption would be "applicable in another context," *i.e.*, where, as here, it would operate as a shield. *Id.*[7]

To overcome the presumption that continued offering of employer stock is prudent, plaintiffs must allege facts that plausibly establish that the "ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate." *Moench*, 62 F.3d at 571; *see also Pugh*, 521 F.3d at 701; *Kirschbaum*, 526 F.3d at 256. Put another way, to rebut the presumption, the plaintiff must show that "owing to circumstances not known to the settlor and not anticipated by him [the making of such investment] would defeat or substantially impair the accomplishment of the purposes of the trust." *Moench*, 62 F.3d at 571 (quoting Restatement (Second) of Trusts § 227, cmt. g). Given that the Textron Stock Fund is an ESOP, which was expressly established to hold Company stock, the circumstances must be compelling before the Plan fiduciaries would

---

[Footnote continued from previous page]

Although the Ninth Circuit has so far declined to apply the *Moench* presumption, *see In re Syncor ERISA Litig.*, 516 F.3d 1095, 1102 (9th Cir. 2008), it viewed the presumption favorably in *Wright*, 360 F.3d at 1097.

[7]   In *Harris v. Amgen, Inc.*, No. 07-5442, 2010 WL 744123, at *9 (C.D. Cal. Mar. 2, 2010), the district court read *Bunch* as having adopted the presumption of prudence.

be justified in disregarding the Plan sponsor's direction and divest Textron stock as plaintiffs say that the Defendants should have done.  Since even the most successful of companies suffer through difficult periods, it would be unreasonable to infer that Textron would not have anticipated when it established the Textron Stock Fund as an ESOP that there might well be times when the price of its stock might well decline sharply, especially during periods of economic upheaval.

As the Fifth Circuit explained in *Kirschbaum*, the "courts must interpret ERISA's fiduciary duties in a manner consistent with 'the special nature and purpose of employee benefit plans.'"  526 F.3d at 254 (quoting *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 308 (5th Cir. 2007)).  And where, as here, the plan sponsor has mandated that the Textron Stock Fund be an investment option, a greater degree of deference and a lesser degree of judicial scrutiny is in order.  *See Kirschbaum*, 526 F.3d at 256; Restatement (Third) of Trusts § 228 (trustee must comply with settlor direction unless compliance would be impossible or illegal).  As demonstrated below, the allegations in the Complaint here fall far short not only under the presumption of prudence standard, but also if the presumption is not applied.

## 2.    *The Complaint Does Not Allege Facts That Plausibly Show That Maintaining The Textron Stock Fund Was Imprudent.*

Plaintiffs allege that the Textron Stock Fund was an imprudent investment option because "objective measures"—the sharp drop in Textron's stock price and the downgrade of Textron's debt rating—indicated that the Company faced a substantial risk of bankruptcy.  Complaint ¶ 115-17.  None of those matters is sufficient to plausibly establish that the Defendants should have divested the Plan of Textron stock.  It plainly is not the case that "whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from ESOP . . . plan provisions."  *Kirschbaum*, 526 F.3d at 256.  Instead, a plain-

18

tiff challenging the fiduciary's decision to retain company stock must present "persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest." *Id.* Plaintiffs' allegations in this case are at best inexact and conclusory.

First, plaintiffs operate from an incorrect premise—alleging, or even showing, a "substantial risk of bankruptcy" is not itself sufficient to prove that a fiduciary breached its duty. In *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 425 (4th Cir. 2005), the Fourth Circuit rejected the view that "given [plan participants'] losses and U.S. Airways' undisputed knowledge of its uncertain financial condition over the class period [which resulted in bankruptcy], U.S. Airways *must* have violated ERISA's 'prudent man' duty when it continued to offer the Company Fund as a Plan option." 497 F.3d at 424. Although "[t]hroughout the class period, U.S. Airways remained an embattled company 'facing serious hurdles, with its long-term success, and indeed, viability in doubt,'" the *DiFelice* court still held that the defendants there had not breached their fiduciary duties by continuing to offer U.S. Airways' stock in the 401(k) plan. *DiFelice*, 497 F.3d at 424; s*ee also In re Lehman Bros.*, 2010 WL 354937 at * 14 (dismissing complaint alleging it was a breach of fiduciary duty to continue to offer company stock as an investment option when the company later went bankrupt). Indeed, the Department of Labor has recognized that maintaining an investment in a company that is in bankruptcy is not *per se* imprudent. *See* U.S. Dep't of Labor, Field Assistance Bulletin 2004-03, n.6 (Dec. 17, 2004), *available at* http://www.dol.gov/ebsa/regs/fab_2004-3.html ("[I]t might not be imprudent to purchase or hold stock in a distressed company in bankruptcy. There may be situations in which the plan's fiduciaries could reasonably conclude that the stock investment makes sense, even for a long-term investor, in light of the proposed restructuring of the company's debts or other factors.").

Second, and more important, plaintiffs have not alleged facts that would plausibly show that at any time during the putative class period the Defendants had information that Textron had no future prospects.[8]   Indeed, plaintiffs' own allegations are to the contrary.  They note that analysts at J.P. Morgan "cut its rating on Textron to neutral from overweight."  Complaint ¶ 107.  Advising clients to hold a stock, rather than to sell it, is hardly evidence that the company is headed for certain bankruptcy.  *See DiFelice*, 497 F.3d at 419-20 (neutral recommendations from analysts and bleak, "but not dire," bond ratings showed a substantial chance the company could avoid bankruptcy).

Plaintiffs' complementary allegation that rating agencies downgraded Textron's debt is similarly insufficient.  Although plaintiffs state that "it is wholly unreasonable for prudent fiduciaries to keep Plan assets invested in Company Stock" when its debt has been downgraded to non-investment grade by only one of the three major rating agencies (Complaint ¶ 117), they offer no factual support for that wholly conclusory assertion.  Many companies with non-investment grade debt offer company stock in their 401(k) plans, and there is no case or Department of Labor regulation or advisory opinion to the effect that it is imprudent to invest in such stocks—much less *per se* imprudent, as plaintiffs suggest.  Although the rating agencies placed U.S. Airway's debt in a category of less than investment grade ("CCC"), indicating that U.S. Airways would likely *not* be able to meet its financial commitments, no fiduciary breach was found from continuing to offer company stock.  *DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d

---

[8]     Plaintiffs' reliance on the Altman Z-score is misplaced.  Complaint ¶ 118-21.  As the Fourth Circuit stated, that analysis is "not generally relied upon by fiduciaries determining the bankruptcy risk of an investment in an individual security."  *DiFelice*, 497 F.3d at 419.  In any event, there were other factors that would indicate the market did not believe Textron was destined for bankruptcy which, of course, turned out to be correct.  *See infra* at 22-23.

756, 769 (E.D. Va. 2006), *aff'd* 497 F.3d 140 (4th Cir. 2007).  And plaintiffs have not offered well-pled facts that plausibly suggest that it would have been imprudent in this instance.

Similarly unavailing to plausibly show Defendants' imprudent behavior are the allegations that Textron suffered a sharp drop in the price of its stock.  Complaint ¶ 122.  The First Circuit has made clear that share price is not the determinate factor in assessing whether a fiduciary's course of action was prudent.  *See Bunch*, 555 F.3d at 7 ("Rather than emphasizing one factor, the market price, as proposed by appellants, State Street correctly considered the totality of the circumstances, including, of course, the market price of the Grace stock.").  The courts have overwhelmingly agreed that a sharp decline in a company's stock price even over a short period of time does not alone make company stock an imprudent investment option.[9]  *See, e.g.*, *Wright*, 360 F.3d at 1096 (seventy-five percent drop in stock price insufficient to show imprudence); *Kuper*, 66 F.3d 1447 (eighty percent drop in stock price insufficient to overcome the presumption); *McGraw-Hill*, 2010 WL 532315, at* 13 (sixty-four percent drop in stock price insufficient to overcome presumption); *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *9 (fifty-two percent drop in stock price insufficient to overcome presumption); *Kirschbaum*, 526 F.3d at 256 (forty-one percent drop in stock price in one week insufficient to overcome the presumption).  Again, the Department of Labor has reached the same conclusion: "[B]ecause stock

---

[9]    As one leading commentator has explained:

> The fact that stock values fluctuate all of the time, combined with the fact that 401(k) plans generally have fairly long-term horizons, means that the plan sponsor should be justified in continuing to make available a company stock investment option unless the fiduciary has information leading it to reasonably believe the company has no future prospects.

Susan J. Stabile, *Another Look at 401(k) Plan Investments in Employer Securities*, 35 J. Marshall L. Rev. 539, 562 (2002).

prices fluctuate as a matter of course, even a steep drop in a stock's price would not, in and of itself, indicate that a named fiduciary's direction to purchase or hold such stock is imprudent." U.S. Dep't of Labor, Field Assistance Bulletin 2004-03, *supra*.

Plaintiffs implausibly insist that the *only* reasonable response by the Defendants to Textron's falling stock price was to cease investment in Textron stock, and by definition, the company's contribution.  Stock prices fluctuate, sometimes widely, based on a variety of factors including general economic conditions and industry- and company-specific matters.  It is axiomatic that a reasonable fiduciary would take this into account.  Indeed, for the Defendants to eliminate the Textron Stock Fund as an option in the Plan, they also would have had to ignore the reasonable probability that Textron's stock price would recover with the rebound of the economy in general and Textron's businesses specifically, which in fact did occur.  The core of plaintiffs' complaint—that the only reasonable fiduciary response was to cease investment in Textron stock—is both illogical and otherwise meritless, which is further evidenced by the dramatic increase in Textron's stock price one year after its low point.

Retirement plans—like the 401(k) plan here with the Textron Stock Fund comprising its ESOP component—are not intended to be day trading platforms, but rather have long-term investment horizons.  *See Rogers*, 521 F.3d at 705 (observing that "buy-and-hold strategy is . . . particularly appropriate for pension investments").[10]  Under plaintiffs' theory, however, a plan

---

[10]    The "disruptive trading policy" of the Textron Savings Plan is meant to discourage day-trading and demonstrates the long-term investment horizon of the Plan.  The policy prohibits any participant who engages in two "Round Trip Transactions"—defined as an exchange of more than $1000 into the Textron Stock Fund followed by an exchange of more than $1000 out of the Textron Stock Fund within thirty days—from investing any of his or her Plan assets into the Textron Stock Fund for eighty-five days.  2009 Plan § 8.01(a)(1), (4).  Any participant who

[Footnote continued on next page]

would need to divest and then repurchase employer stock with every significant movement of the price of company stock. This is clearly untenable and ERISA "does not require fiduciaries to diversify their [ESOP] holdings before or after each major corporate development." *In re Bausch & Lomb*, 2008 WL 5234281, at *6.

Plaintiffs are notably silent as to when during the class period Defendants should have divested the Textron Stock Fund from the Plan. On July 17, 2007, the beginning of the proposed class period, Textron's stock closed at $53.75. *See* Exhibit B to Blankenstein Declaration. The stock continued to trade, for the most part, in the mid- to high- $50s for the Summer of 2007, then gradually increased during the Fall to the high $60s to low $70s, peaking at $74.40 on December 10, 2007. *Id.* Although the price of Textron's stock did not again reach a closing price of $70 per share after the end of 2007 (closing at $71.62 on December 12, 2007), it traded in the $50 and $60 range until June 25, 2008, when the share price closed at $48.68. *Id.* With the economic crisis of the Fall and Spring of 2009, the price of Textron stock steadily declined, hitting a low *closing* price of $3.57 on March 6, 2009, but then began immediately increasing, so that by April 13, 2009, the share price closed at $12.27. *Id.* By March 5, 2010, the price of a share of Textron stock closed at $21.64. *Id.*

All of this shows that there was simply no optimal time for the Defendants to have divested the Textron Stock Fund based on the movement of the price of the Company's stock during the class period. Had the Defendants divested soon after the beginning of the class period, the participants would have lost the benefit of the run up of the stock price to over $70. And had they sold when the share price was in the single digits in the Spring of 2009, the partici-

---

[Footnote continued from previous page]
engages in four Round Trip Transactions within a twelve month period is barred from investing in the Textron Stock Fund for a year. *Id*. at § 8.01(a)(2).

pants would have been denied the benefit of a price increase of as much as 600 percent. The volatile and unpredictable nature of stock prices is the precise reason that "determining the 'right' point, or even range of 'right' points, for an ESOP fiduciary to break the plan and start diversifying may be beyond the practical capacity of the courts to determine." *Summers v. State Street Bank & Trust Co.*, 453 F.3d 404, 411 (7th Cir. 2006).

Moreover, the courts have repeatedly warned that "if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive." *Moench*, 62 F.3d at 571-72; *see*, *e.g.*, *Edgar*, 503 F.3d at 348-49; *Kuper*, 66 F.3d at 1459. This is not a theoretical concern; fiduciaries who removed company stock from 401(k) plans have been sued for breach of fiduciary duty when the price of the stock subsequently increased. *See*, *e.g.*, *Bunch*, 555 F.3d 1; *Tatum v. R.J. Reynolds Tobacco Co.*, 392 F.3d 636 (4th Cir. 2004). Indeed, given that the price of Textron's stock has increased by 600 percent from its low of $3.57 on March 6, 2009, to $21.64 on March 5, 2010, a year later, *see* Exhibit B to Blankenstein Declaration, it is quite likely that these same Defendants would have been sued by Plan participants had they divested Textron stock from the Plan at anywhere near its low price. Simply put, "[a] fiduciary cannot be placed in the untenable position of having to predict the future of the company stock's perform-ance." *Kirschbaum*, 526 F.3d at 256.[11]

---

[11]    Plaintiffs allege Defendants French and Yates sold shares of their personal holdings in Textron stock during the putative class period. Complaint ¶ 27, 28. Their request for relief seeks the "[i]mposition of a constructive trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as a result of breaches of fiduciary duty." Complaint ¶ C. Such relief is not available here: In order to obtain a constructive trust, the Defendants must have improperly profited from a transaction with *Plan* assets. *See Bagley v. KB Home*, No. 07-1754, slip op. at *13 (C.D. Cal. May 5, 2008) (citing *Amalgamated Clothing & Textile Workers*

[Footnote continued on next page]

In sum, although plaintiffs attempt to paint a picture of impending collapse at Textron, they fail to allege facts showing that a reasonable fiduciary in a similar circumstance would have been compelled to divest Textron stock as an investment option.  Singularly or in combination, plaintiffs' allegations do not "nudge[] their claims across the line from conceivable to plausible, [and therefore] their complaint must be dismissed."  *Twombly*, 550 U.S. at 547.

### 3.   *Plaintiffs Have Not Plead Facts To Sustain A Claim That The Defendants Knew Or Should Have Known That Textron's Stock Was Trading At Inflated Prices Due To Undisclosed Material Adverse Information.*

Plaintiffs maintain that the Defendants breached their fiduciary duty by allowing participants to purchase Textron stock at inflated prices because they "knew or should have known" that there was material, undisclosed, adverse information about the Company's Cessna, Bell Helicopter, and Textron Financial segments which, when disclosed, would drive down the price of Textron stock.  Complaint ¶ 114.  Plaintiffs maintain that a reasonable fiduciary armed with that knowledge would have divested the Textron Stock Fund from the Plan.  Complaint ¶ 148. Plaintiffs' position fails on two separate and equally compelling grounds.

First, in circumstances where the price of company stock offered in a 401(k) plan is trading at an "inflated" price because of undisclosed information, divesting the stock is not the correct fiduciary response.  The Defendants could not do so without first disclosing the information to the market as a whole, as doing otherwise might well violate the securities laws.  *See Edgar*, 503 F.3d at 350 (divesting company stock based on "insider" information would have exposed

---

[Footnote continued from previous page]
*Union v. Murdock*, 861 F.2d 1406, 1418 (9th Cir. 1988)).  Plaintiffs do no allege that the Plan was the counter-party to the open-market sales by either Defendant.  Even assuming, *arguendo*, that these Defendants were "unjustly enriched" by those transactions, they did not do so at the Plan's expense, a necessary component of any claim for the imposition of a constructive trust. *See Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1011 (9th Cir. 1998).

plan fiduciaries to liability under the securities laws); *Wright*, 360 F.3d at 1098 n.4 ("[U]tiliz[ing] inside information for the exclusive benefit of the corporation and its employees . . . could potentially run afoul of the federal securities laws."); *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 879 (N.D. Ill. 2009) ("[S]elling off [company] stock based on non-public information known by Defendants risks running afoul of the insider trading laws.").  The Securities and Exchange Commission has warned fiduciaries that the securities laws apply to transactions in employer securities.  *See* Employee Benefit Plans, Exchange Act Release No. 33-6188, 1980 WL 29482, at \*28 and n.168 (Feb. 1, 1980).  In short, a fiduciary's obligations under ERISA "do[] not extend to violating the law."  *Harzewski v. Guidant Corp.*, 489 F.3d 799, 808 (7th Cir. 2007).[12]

Consequently, assuming that the fiduciary has a reasonable basis to believe that company stock was trading at inflated prices, and determines that some action is appropriate in the circumstances, the proper response is not to divest company stock from the plan.  Rather, the fiduciary should at most work with the company to have the undisclosed, material, adverse information disclosed to the market.  *See DiFelice*, 436 F. Supp. 2d at 762; *see also In re Enron Corp. Secs., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 564 (S.D. Tex. 2003).  However, as discussed *infra* at 33-39, the Complaint fails to allege facts that plausibly show that Textron's stock was trading at inflated prices because of undisclosed material adverse information.  It is important to note that plaintiffs do not maintain that Textron never disclosed any materially adverse information; indeed the Complaint details those disclosures.  Complaint ¶¶ 70(h), 73-75, 83(e), 85.

---

[12]    Nor could the fiduciary selectively disclose the information to only plan participants. Rather, they must disclose the information to the entire market. *See Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 26 (1st Cir. 1987) ("When a corporation does make a disclosure—whether it be voluntary or required—there is a duty to make it complete and accurate.").

Rather, plaintiffs charge that the information should have been disclosed sooner. But their allegations in that regard are wholly conclusory. *Id*. at ¶ 149.

Moreover, divesting the stock from the plan might well have an even more profound and deleterious affect on the price of the stock than the disclosure of the adverse information: "Eliminating [company stock] as an investment option for its employees is a clarion call to the investment world that the [fiduciaries] lacked confidence in the value of the [company] stock, and could have a catastrophic effect on [the company's] stock price, severely harming all . . . stockholders, including Plan members." *In re Computer Sciences Corp. ERISA Litig.*, 635 F. Supp. 2d 1128, 1136 (C.D. Cal. 2009). Fiduciaries must therefore be cautious in the message they convey to the market, so as not to precipitate an unwarranted drop in the company stock price, and depress the value of the assets plan participants already hold in their accounts.

Second, plaintiffs utterly fail to offer factual allegations that would plausibly support their charge that the information about Textron's worsening financial condition should have been disclosed sooner than it actually was. Plaintiffs do not allege a single fact tending to show that any of Textron's statements about its finances and operations were false or misleading when made. *See* discussion *infra* at 31-39. It does not follow that when a company makes disclosures about its declining financial condition, and the stock price thereby falls, the company *must* have known beforehand that the financial condition of the company would deteriorate, and that any statements indicating otherwise were misrepresentations. But that is the substance of plaintiffs' allegations. Stripped to its essence, the Complaint simply alleges that Textron failed to predict the murderous combination of credit crisis and financial turmoil that has gripped the world economy the past two years. Defendants' purported lack of clairvoyance and prescience is not a breach of fiduciary duty. *See DeBruyne v. Equitable Life Assurance Soc'y of the United States*,

920 F.2d 457, 465 (7th Cir. 1990) (ERISA's fiduciary duty of care "requires prudence, not pre-science").

B.   **The Complaint Fails to Allege Facts Sufficient To Plausibly Suggest That The Defendants Breached Their Fiduciary Duties Through Mis-representation Or Omission.**

In addition to their claims that the Defendants breached their respective fiduciary duties by not divesting the Textron Stock Fund, plaintiffs assert that the Defendants "also breached their duties of loyalty and prudence by failing to provide complete and accurate information regarding the Company's true financial condition and the Company's concealment of the same and, generally, by conveying inaccurate information regarding the Company's future outlook." Complaint ¶ 149.  Significantly, plaintiffs do not assert that the purported misstatements and omissions concern *how* the Plan was structured, *how* it operated, or *how* benefits are paid.  In-stead, plaintiffs catalogue alleged misstatements and omissions concerning the Company's fi-nances and operations made in SEC filings, press releases, and research analyst conference calls with respect to three of Textron's business segments:  Cessna Aircraft, Complaint ¶ 69-76; Bell Helicopter, Complaint ¶ 77-81; and Textron Financial, Complaint ¶ 82-85.  Plaintiffs have failed to state a claim in this regard for several reasons.

1.   *The Allegedly False And Misleading Statements Were Not Made By Fiduciaries Acting In A Fiduciary Capacity.*

ERISA's statutory disclosure requirements are both quite limited and well-defined.[13] The statutory disclosure provisions do not require plan fiduciaries to provide participants with

---

[13]   ERISA requires that every plan publish and file with the Secretary of Labor an annual report including certain financial information regarding the operation of the plan itself, not spe-cific investment options offered in the plan.  29 U.S.C. §§ 1023(a); 1204(a).  Fiduciaries must also furnish participants with certain information, including an SPD (including modifications and

[Footnote continued on next page]

information regarding the company's financial condition on an ongoing basis. *McGraw-Hill*, 2010 WL 532315, at *14; *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *21. In *Varity Corp. v. Howe*, the Supreme Court held that statements about a company's financial condition become subject to ERISA fiduciary duties only if they are made in an ERISA fiduciary capacity—*i.e.*, only if such statements are made by the plan fiduciaries and are intentionally connected to statements about the plan. 516 U.S. at 506.

Consistent with *Varity*, courts have routinely dismissed ERISA claims alleging breaches of fiduciary duty to disclose in the employer stock context where the challenged statements consisted of SEC filings and statements made to the market, because the filings and statements were made in a corporate, not an ERISA fiduciary, capacity. *See, e.g.*, *Edgar*, 503 F.3d at 350-51; *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *22-24; *DiFelice*, 397 F. Supp. 2d at 770; *Hull v. Policy Mgmt. Sys. Corp.*, No. 00-778, 2001 WL 1836286, at *4, 8 (D.S.C. Feb. 9, 2001); *In re Bausch & Lomb*, 2008 WL 5234281 at *7-8; *In re WorldCom Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 760 (S.D.N.Y. 2003); *In re Avon Products*, 2009 WL 848083, at *13-14. The reasoning of these opinions is evident from the following statement in *Hull*:

> If the allegations of wrongdoing, including the allegations of providing misinformation and failing to provide accurate information, ultimately prove true, the

---

[Footnote continued from previous page]
amendments) and the annual report, and must make available to participants for inspection any bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated. 29 U.S.C. § 1024(b). Annually, fiduciaries must provide participants with benefits statements and schedules showing the value of the assets in their individual accounts and to which investment options the assets are allocated. 29 U.S.C. § 1023(b)(3). The statement must also include an explanation of any limitation or restriction on any right of the participant to direct an investment, an explanation of the importance of a well-balanced and diversified portfolio, and a notice directing the participant or beneficiary to the website of the Department of Labor for sources of information on individual investing and diversification. *See* ERISA § 105. A participant is also entitled to information regarding benefit claim determinations, and specific disclosures for adverse benefit determinations. 29 C.F.R. § 2560.503-1.

> Plan's remedy will be the same as for the plaintiff class in the related securities
> action. This result is not at all unreasonable *as the duties of disclosure owed to
> the Plan by the corporate defendants are not based on the duties owed by an
> ERISA fiduciary to a Plan and its participants, but the general duties of disclo-
> sure owed by a corporation and its officers to the corporations' shareholders.*

2001 WL 1836286, at *8 (emphasis added); *see also In re WorldCom, Inc. ERISA Litig.*, 263 F.

Supp. 2d at 760.

In an unsuccessful attempt to transform the complained of statements into fiduciary com-

munications made to participants as participants, plaintiffs allege that the SEC filings were in-

corporated into the SPD. Complaint ¶ 70. The SPD says no such thing, however. In fact, the

SPD expressly states that while certain of Textron's SEC filings "are part of the Plan's prospec-

tus, *neither the Plan's prospectus nor [those SEC filings] are incorporated by reference into this*

*SPD.*" SPD at 49-50 (emphasis added). Providing participants with the Plan's prospectus is a

requirement under the securities laws, not ERISA. *See* 17 C.F.R. § 230.428(a)(1), (b)(1). Con-

sequently, when Textron incorporates its SEC filings into the Plan's prospectus, it "was dis-

charging its corporate duties under the securities laws, and was not acting as an ERISA fiduci-

ary." *Kirschbaum*, 526 F.3d at 257. And "[t]hose who prepare and sign SEC filings do not

become ERISA fiduciaries through those acts, and . . . do not violate ERISA if the filings contain

misrepresentations." *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d. at 766.

Plaintiffs do not allege that the identified press releases or analyst-call statements were

made by any Defendant, let alone were made by some Defendant in a fiduciary capacity. Those

statements, like the statements made in the unincorporated SEC filings, were "made to the mar-

ket in general, not to Plan participants specifically." *Stein v. Smith*, 270 F. Supp. 2d 157, 173

(D. Mass. 2003).  As such, they were not statements made in a fiduciary capacity.  *In re Bausch & Lomb Inc.*, 2008 WL 523481, at *7.[14]

### 2. ERISA Fiduciaries Do Not Have An Affirmative Duty To Disclose Information Regarding Their Company's Financial And Operational Status.

To the extent plaintiffs suggest that the Defendants had a fiduciary duty to make affirmative statements to them about Textron's financial and operational status outside of the Company's public statements to the market, they are wrong.  Plaintiffs attempt to locate a fiduciary duty in ERISA to disclose operational and financial company information from the general fiduciary duty "to speak truthfully to Participants, not to mislead them regarding the Plan or its assets, and to disclose information that Participants need in order to exercise their rights and interests under the Plan."  Complaint ¶ 147.  But it is "inappropriate to infer an unlimited disclosure obligation [under ERISA] on the basis of general provisions that say nothing about disclosure."  *Board of Trustees of CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 147 (2d Cir. 1997).  "ERISA does not create an obligation to disclose information about an investment option that the public itself does not know when the fiduciaries have made no false or misleading statement to the beneficiaries."  *Lingis*, 649 F. Supp. 2d at 876; *see also McGraw-Hill*, 2010 WL 532315, at *18.

---

[14]    Even assuming, contra factually, that the SEC filings were incorporated by reference into the SPD, "those connections are insufficient to transform those documents into a basis for ERISA claims against their signatories."  *In re World Com, Inc. ERISA Litig.*, 263 F. Supp. 2d at 760.  ERISA's duty of candor towards plan participants applies only to communications about the plan itself.  *See McGraw-Hill*, 2010 WL 532315, at *14 (dismissing similar claims because plaintiffs did "not allege that these purported misstatements concern how the plans themselves operate or are structured, how benefits are paid, or whether employees are eligible for benefits").  Plaintiffs have not alleged that Textron *intentionally* connected its allegedly false statements to information about the Plan.  *See Varity*, 516 U.S. at 505.

Moreover, creating a broad-based disclosure regime under ERISA would be counter-productive, especially if it would (as plaintiffs suggest) impose greater disclosure obligations than imposed under the securities laws.[15]  *See Baker v. Kingsley*, 387 F.3d 649, 662 (7th Cir. 2004) ("[I]f we were to create a new fiduciary duty" under ERISA requiring the disclosure of the economic well-being of the employer, "we run the risk of disturbing the carefully delineated corporate disclosure laws.").  As fiduciaries could not make selective disclosures about their company to plan participants and thereby allow them to take advantage of that information in the market, any disclosures would have to be to the market in general.  *See* discussion *supra* at 25-26.  If the required ERISA disclosures were more frequent or more detailed than those required under the securities laws, that disclosure regime would effectively render the securities laws a dead letter, or likely dissuade employers from offering company stock in its 401(k) plans. *McGraw-Hill*, 2010 WL 532315, at*16.  The first likely consequence is well-beyond the purpose of ERISA, which explicitly directs that nothing in the statute "shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law."  29 U.S.C.§ 1144(d).  The latter result would be contrary to the congressional preference that employers offer company stock in their plans.  As the Supreme Court pointed out in *Varity Corp.*, 516 U.S. at 497, Congress did not intend to create "a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [] benefit plans in the first place."

---

[15]    If it only paralleled the securities laws it would be obsolete—there would be little pur-pose in having redundant disclosures under the securities laws and ERISA.  Less than identical disclosures would likely cause confusion and lead to unnecessary and wasteful litigation.

Furthermore, "[t]o require plan fiduciaries to provide financial information about the companies that participants are allowed to invest in 'would transform fiduciaries into investment advisors.'" *McGraw-Hill*, 2010 WL 532315, at *14.   ERISA does not impose any duty on fiduciaries to "give investment advice" or "'opine on' the stock's condition." *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *22 (quoting *Edgar*, 503 F.3d at 350). *Accord In re Unisys Sav. Plan. Litig.*, 74 F.3d 420, 433 (3d Cir. 1996).   Rather, a fiduciary fulfills its duty of disclosure under ERISA by informing plan participants of the general risk associated with investment in a particular type of investment option. *Edgar*, 503 F.3d at 350.   It is beyond question that the Defendants fulfilled that duty here.   In discussing the Textron Stock Fund, the SPD informed participants that "unlike a mutual fund," the Textron Stock Fund is not a diversified investment vehicle, as it invests in a single stock, and that "[i]nvesting in a non-diversified single stock inherently involves more risk than investing in a diversified fund."  SPD at 17.

### 3. *The Plaintiffs Have Not Plead Facts But Have Only Made Conclusory Assertions That Any Alleged Misstatements By Textron Were False Or Misleading.*

Finally, even assuming, *arguendo*, that Textron's corporate statements are actionable under ERISA—a long, legal stretch to say the least—plaintiffs less than well-pled facts fail to plausibly suggest that any of Textron's statements were false when they were made.   Plaintiffs' allegation that the challenged "positive statements concerning the Company's fiscal 2008 operations were lacking in a reasonable basis when made and therefore were materially misleading," Complaint ¶ 86, sounds in fraud, and therefore must meet the heightened pleading requirement of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("a party must state with particularity the circumstances constituting fraud"); *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (noting application of Rule 9(b) in ERISA context where breach of fiduciary duty is claimed based on alleged fiduciary misrepresentations); *Johnson v. Radian Group, Inc.*, No. 08-2007, 2009 WL 2137241, at

*12 (E.D. Pa. July 16, 2009) ("Although Rule 8's pleading requirements apply generally to ERISA claims for breach of fiduciary duty . . . to the extent that any claims sound in fraud, they are subjected to the heightened pleading requirements of Rule 9(b).").

Under Rule 9(b), plaintiffs are required to plead with particularity the "who, what, where, and when of the allegedly false or fraudulent representation." *Rodi v. S. New England School of Law*, 389 F.3d 5, 15 (1st Cir. 2004). And plaintiffs must do so for each Defendant. *See*, *e.g.*, *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Parnes v. Gateway*, 122 F.3d 539, 549 (8th Cir. 1997).

Plaintiffs' allegations do not meet the Rule 9(b) standard of particularity as to each Defendant. Instead, they charge that all of the Defendants knew or should have known that the statements were false and/or misleading without providing any detail whatsoever as to each defendant. *E.g.*, Complaint ¶ 32. As the Seventh Circuit said in *Pugh*: "A conclusory statement that all defendants should have known specific facts about a company is generally insufficient to state a claim; it must be alleged that each defendant was in a position to know or learn of the information." 521 F.3d at 701. That the Individual Defendants were members of the Plan's Investment Committee is an insufficient basis for inferring that any of the Defendants was privy to certain information about Textron. *See Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1089-92 (N.D. Ill. 2004) (collecting cases). Nor is it enough to merely allege, as plaintiffs do, Complaint ¶ 32, that the Individual Defendants must have had access to the pertinent information simply by virtue of their positions in the Company. *See Carney v. Cambridge Tech. Partners, Inc.*, 135 F. Supp. 2d 235, 255 (D. Mass. 2001) ("attributing knowledge to a defendant merely

because of the defendant's status in the corporation" is insufficient to establish such knowledge).[16]

In any event, the absence of any factual allegation that would plausibly show that Textron's statements were not true when made requires dismissal of the Complaint, even under Rule 8(a). Plaintiffs trumpet Textron's communications regarding the extent of Cessna's backlog. Complaint ¶ 69-76. But the Complaint is bereft of a single factual statement that plausibly suggests that Textron's corporate disclosures falsely reported the size of the backlog during the class period. Plaintiffs accuse Textron of trying to hide the fact that "hundreds of orders reported as backlog at Cessna for future business-jet production were subject to deferral and cancellation." Complaint ¶ 72(b). Textron, however, expressly disclosed during the class period that "[a]ircraft customers . . . may respond to weak economic conditions by *delaying* delivery of orders or *cancelling* orders. . . . Reduced demand for new and used aircraft, spare parts and maintenance can have an adverse effect on our financial results of operations." February 20, 2008 Form 10-K, at 8 (cited in Complaint ¶ 70(e)), attached as Exhibit F to Declaration of Paul Blankenstein. *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1213 (1st Cir. 1996) ("[I]f a statement is couched in or accompanied by prominent cautionary language that clearly disclaims or discounts the drawing of a particular inference, any claim that the statement was materially misleading because it gave rise to that very inference may fail as a matter of law.").

---

[16]    Textron in its corporate capacity is charged with knowledge of all aspects of its operations. With respect to its fiduciary responsibilities, however, Textron can only be charged with the knowledge of those officers and employees who discharge the fiduciary functions for the Company. *See Trustees of the Graphic Comm. Int'l Union v. Bjorkedel*, 516 F.3d 719, 732 (8th Cir. 2008). As plaintiffs have not sufficiently alleged knowledge by the Individual Defendants in their respective fiduciary capacities, they have not alleged knowledge by Textron as a fiduciary.

In a misbegotten effort to show that Textron was artificially inflating its backlog, plaintiffs assert that "Textron was accepting orders for business jets from a growing number of customers that . . . neither intended to, nor possessed the financial resources to, pay for or take delivery of aircraft during 2009 and beyond."  Complaint ¶ 72(a).  Not only is this statement based upon nothing more than undisguised speculation regarding the intent and financial resources of Textron's customers, it does not make plausible economic or business sense.  Plaintiffs admit that Cessna clients must place a non-refundable deposit when ordering a plane.  Complaint ¶ 72(c).  Yet, they offer no explanation as to why any customer who did not intend to take delivery of a plane, or who did not possess the financial resources to pay for a plane, would make a *non-refundable* deposit.  A claim is not plausible if it does not make economic sense.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Plaintiffs' allegations in this respect do not.

Plaintiffs' allegations with regard to the purported misrepresentations at Bell Helicopter fair no better.  All plaintiffs can muster in that regard are assertions that Bell Helicopter conducted a substantial amount of business with the United States military and had a large backlog of helicopters, Complaint ¶ 77; that the military canceled one contract, reduced the profit on another, Complaint ¶¶ 79-80; and that a whistleblower reported issues with potential mischarging for labor on military contracts, Complaint ¶ 78.  What is missing is any allegations that would plausibly show that *any* statements made by Textron or its officers were false when made.

As with the Cessna backlog, there are no factual allegations that support a showing that the volume of the Bell Helicopter backlog, or the revenue associated with it, was falsely reported.  The allegation that the military canceled a "$6.2 billion Army contract" does nothing to support plaintiffs' charge of misrepresentation.  Complaint ¶ 79.  In fact, plaintiffs' own allega-

36

tion shows that the cancellation was due to an unfortunate "crash of the prototype helicopter, [which] threw the program four years behind its originally scheduled delivery."  Complaint ¶ 79.  Plaintiffs do not identify any statement regarding the contract that was false.  For that matter, they do not identify any statement regarding the contract that was even *made* by Textron or any of the Defendants.  And the same is true for the allegation that the "Bell Helicopter unit agreed to a reduced profit on a $210.1 million government contract to upgrade Huey helicopters," Complaint ¶ 80, and that the then CEO of Bell Aerospace Services, Inc., a subsidiary of Bell Helicopter, "reported numerous potential fraud and ethics violations."  Complaint ¶ 78.  Descriptions of adverse business events without identifying a single statement even made on those topics is clearly insufficient to plead a claim for misrepresentation.

The same lack of factual support also infects plaintiffs' conclusory assertions with regard to events at Textron Financial.  Plaintiffs fault the Defendants for not disclosing Textron's supposed "increase[ in] defaults by purchasers who did not have the means to pay for Textron's luxury products," Complaint ¶ 84(b), but in the previous paragraph plaintiffs admit that Textron "increase[d its] provision for loan losses [which] caused profits for the finance segment to drop."  Complaint ¶ 83(e).  Plaintiffs also detail a number of Textron's SEC filings in which the Company announced declining profits, lower earnings forecasts, and an increase in delinquent receivables.  Complaint ¶ 85.  These allegations show nothing but the declining and publicly announced economic circumstances of the Company, not fraud.  Once again plaintiffs have failed to identify a single communication that was false at the time it was made.

At bottom, plaintiffs fault Textron not because its statements were false, but for its allegedly "rosy picture of the Company's prospects"—in other words, its forward-looking statements.  Complaint ¶ 86.  But forward-looking statements are not prohibited; indeed they are specifically

encouraged by the securities laws, which provide a safe harbor if those statements are made in good faith and are based on reasonable projections.  17 C.F.R. § 230.175(a); *see In re Na-tionsMart Corp. Sec. Litig.*, 130 F.3d  309, 316 (8th Cir. 1997) ("A forward-looking statement" is protected under the securities laws, unless it is shown to have been made "without a reason-able basis or was disclosed other than in good faith"); *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1333 (7th Cir. 1995) ("[I]n 1978 the SEC reversed itself and adopted a policy that encouraged disclosure of management projections.").  In fact, "courts in the First Circuit gener-ally have declined to impose liability for so-called 'forward looking statements' . . . because these courts regard such statements as unlikely, as a matter of law, to be material to a reasonable investor."  *Carney*, 135 F. Supp. 2d at 245.  There is no basis to find the Defendants liable under ERISA if their forward looking statements satisfy the securities laws.  *See McGraw-Hill*, 2010 WL 532315, at *16 ("Plaintiffs' alternative theory—that Defendants are liable under ERISA even if they are found not to have violated securities law—has no basis in the statute or in case law, and its practical consequences are unappealing.") (emphasis omitted).

There are no factual allegations—as opposed to conclusory assertions—in the Complaint that Textron's forward looking statements were made other than in good faith or with less than a reasonable basis.  Even assuming that some of Textron's forward-looking statements have turned out to be too optimistic considering the financial and economic crisis that followed, Textron cannot now be faulted for failing to foresee those events.  No company, and no fiduciary, is required to possess clairvoyance; the vast majority of the financial community, including finan-cial regulators, failed to predict the credit crisis and the serious recession that followed, which significantly and adversely affected every sector of the economy.  Given the unprecedented economic downturn—the severest recession since the Great Depression—it is unsurprising that

38

Textron would experience "unprecedented" levels of cancellations for its products, Complaint ¶ 104, or "a deterioration of the Company's credit portfolio." Complaint ¶ 84(d). Plaintiffs' complaints regarding the way Textron chose to describe its future business prospects is not actionable misrepresentation. *See Lessler v. Little*, 857 F.2d 866, 875 (1st Cir. 1988) (dismissing misrepresentation claims that did not complain about incorrect facts, but rather the characterization of a business transaction).[17]

## II.   PLAINTIFFS' FAILURE-TO-MONITOR CLAIMS MUST BE DISMISSED.

Plaintiffs' failure-to-monitor claim against Textron in Count II of the Complaint fails for two reasons: First, because the plaintiffs' Complaint fails to state a claim for breach of fiduciary duty by any of the Plan's fiduciaries, the plaintiffs' claims for failing to adequately monitor these fiduciaries must also be dismissed. *McGraw-Hill*, 2010 WL 532315, at *16; *In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *10.

Second, although plaintiffs allege that Textron breached its duty to "ensure that the Monitored Fiduciaries had access to knowledge about the Company's business problems," Complaint ¶ 158, Textron has no such duty. "[C]ourts have properly taken a restrictive view of the scope of [the duty to monitor] and its attendant potential for liability." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1466 n.10 (4th Cir. 1996). The duty to monitor does not by its very nature include

---

[17]   In addition, plaintiffs' misrepresentation claims do not allege detrimental reliance by the plaintiffs on any alleged misrepresentation, as required to state a claim for misrepresentation. *Veranda Beach Club Ltd. Partnership v. W. Sur. Co.*, 936 F.2d 1364, 1380 (1st Cir. 1991) ("[O]ne element of this cause of action [misrepresentation] requires the plaintiff to show that defendant induced it to act, or to refrain from acting, to its detriment."); *see also Burstein v. Ret. Account Plan*, 334 F.3d 365, 384 (3d Cir. 2003) (detrimental reliance is a required element of a misrepresentation claim under ERISA). Plaintiffs bear the burden to prove reliance. *James v. Pirelli Armstrong Corp.*, 305 F.3d 439, 449 (6th Cir. 2002).

any obligation to inform the monitored fiduciary of information the monitor obtains when wearing its corporate hat. *See In re Williams Cos. ERISA Litig.*, 271 F. Supp 2d. 1328, 1338-1339 (N.D. Okla. 2003). "To hold that the Monitoring Defendants had a duty to provide material, non-public information to the Plans' fiduciaries would extend the Monitoring Defendants' fiduciary responsibilities far past their limited role as outlined by the Plan Agreement." *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at * 26 (dismissing failure-to-monitor claim under allegations similar to those here); *see also Hull*, 2001 WL 1836286, at *7-8 (dismissing claims of failure to monitor because the plan had no such requirement). Here, Textron had delegated to the Investment Committee all of its authority to select, monitor, and replace investment options in the Plan. 2000 Plan §8.02(a). In these circumstances, it certainly "would be[] unreasonable . . . to impose a duty on [Textron] . . . to keep the Committee informed of what can only be characterized as 'inside information' for use in the making of its investment decisions." *Hull*, 2001 WL 1836286 at *8.

## III.   PLAINTIFFS' CO-FIDUCIARY ALLEGATIONS FAIL TO STATE A CLAIM.

The claim of co-fiduciary liability under ERISA § 405(a) set out in Count III of the Complaint is, of course, dependent upon a breach of fiduciary duty by another fiduciary. *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *27; *In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *11; 29 U.S.C. § 1105(a). As previously established, the Complaint does not properly allege any primary breach of fiduciary duty by any of the Defendants. Consequently, plaintiffs' co-fiduciary claim must be dismissed for that reason alone. *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *27; *Radian Group*, 2009 WL 2137241, at *24.

What is more, plaintiffs' co-fiduciary claim fails on its own terms because the Complaint fails to allege facts that satisfy the statutory requirements for co-fiduciary liability. ERISA

40

imposes co-fiduciary liability only: (1) if the fiduciary knowingly participates in or conceals another fiduciary's breach; (2) the fiduciary's own breach enables the breach by the other fiduciary; or (3) the fiduciary has knowledge of another fiduciary's breach and does not take reasonable efforts to remedy the breach. 29 U.S.C. § 1105(a). But the Complaint does not allege *any* facts, let alone facts that would plausibly suggest that any of the Defendants has co-fiduciary liability under one of these scenarios. Instead, the plaintiffs formalistically recite the three bases for co-fiduciary liability as set out in ERISA § 405(a), then summarily conclude that "Defendants breached all three provisions." Complaint ¶ 165. There are no factual allegations as to what each Defendant knew, how each Defendant participated in a breach, or how each Defendant enabled a breach. Conclusory allegations such as those, that merely track the statutory elements, do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *27.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss plaintiffs' Complaint.

Respectfully Submitted,

Dated: March 19, 2010

 /s/  Paul Blankenstein
William J. Kilberg, P.C., *pro hac vice*
Paul Blankenstein, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

Mitchell A. Karlan, *pro hac vice*
Brian M. Lutz, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166

Telephone: (212) 351-4000
Facsimile: (212) 351-4035

 /s/  John A. Tarantino
JOHN A. TARANTINO (#2586)
jtarantino@apslaw.com
PATRICIA K. ROCHA (#2793)
procha@apslaw.com
NICOLE J. DULUDE (#7540)
ndulude@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
Telephone: (401) 274-7200
Facsimile: (401) 351-4607

*Attorneys for all Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true copy of the foregoing was served electronically via the CM/ECF system on all counsel of record on this 19th day of March, 2010.

 /s/  Nicole J. Dulude

42