**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**In re Textron, Inc. ERISA**
**Litigation**                    Case No.   09-cv-00383-PJB

### MEMORANDUM AND ORDER

The named plaintiffs in this class action are participants
in a retirement plan sponsored by Textron, Inc. (the "Plan")
that included as one of its investment options the Textron Stock
Fund (the "Fund").  Plaintiffs invoke the Employee Retirement
Income Security Act of 1974 ("ERISA") in asserting breach of
fiduciary duty claims against Textron, the committee that
oversaw administration of the Plan, and several individuals who
were members of the committee during the class period.  They
claim that the defendants are liable because they made
misleading statements about Textron's financial condition,
failed to disclose material adverse information about the
company, and allowed class members to make what the defendants
knew or should have known were imprudent investments in the
Fund.

Defendants have filed a motion to dismiss contending that
the complaint fails to state a claim for relief.  They argue

that plaintiffs cannot base a claim on the defendants' allegedly misleading statements because the defendants were not acting as ERISA fiduciaries when they made the statements.  They contend that they cannot be held liable for failing to disclose information because they did not have a duty to disclose the omitted information.  Finally, they assert that plaintiffs' imprudent investment claim is a nonstarter because the complaint does not sufficiently allege that the Fund was an imprudent investment.

## I.   BACKGROUND

Textron is a conglomerate that manufactures and sells helicopters, light transportation vehicles, and lawn care machinery.  It is also a major parts supplier to the automotive industry and it has a large commercial finance business. Textron operates through five business segments, three of which are involved in this case:  Cessna Aircraft Company ("Cessna"), a manufacturer of general aviation aircraft, Bell Helicopter Textron Inc. ("Bell Helicopter"), a manufacturer of military and general use helicopters, and Textron Financial Corporation ("TFC"), a commercial finance company.  Consolidated Class

Action Compl. ("Compl.") ¶ 65, Doc. No. 28.  Textron is also the administrator of the Plan at issue in this case.  Compl. ¶ 45.

Textron has delegated authority to an Investment Committee to make investment decisions for the Plan.  Compl. ¶ 26.  The individual defendants were members of the Investment Committee during the class period, as well as senior officers and employees of Textron.  Compl. ¶ 32.  Defendant Ted R. French was Textron's Chief Financial Officer until February 9, 2009, when he was succeeded by defendant Richard L. Yates.  Compl. ¶¶ 27-28.  Defendant Deborah A. Imondi was Textron's Assistant Treasurer for Investment Management during the class period and defendant Cathy A. Strecker was Textron's Vice President of Human Resources and Benefits beginning on October 3, 2007.  Compl. ¶¶ 29, 30.  Defendant Mary F. Lovejoy was Vice President and Treasurer of Textron during the class period.  Compl. ¶ 31.

The Plan itself is an "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), meaning that the Plan provides individual accounts for each participant with benefits based solely on the amount contributed to those accounts.  Compl. ¶ 34.  Eligible participants are allowed to choose from several investment options offered by the Plan.  Compl. ¶ 35.  One of these options, the Textron Stock Fund,

qualifies as an Employee Stock Ownership Plan ("ESOP"). Textron
Savings Plan (January 2009) ("2009 Plan"), § 1.02.[1] Textron
matches 50% of every employee contribution to the Plan, up to a
maximum of 5% of an employee's total eligible contributions, but
the matching contributions must be initially invested entirely
in the Fund. Compl. ¶ 35-36. Employees may thereafter move
contributions from the Fund to any of the Plan's other
investment options. 2009 Plan at § 8.03.

Throughout the class period, Textron reported in various
public statements and SEC filings that Cessna had increasing
amounts of backlogged orders for new planes. Compl. ¶ 69. The
company and its executives repeatedly pointed to the backlog as
a source of financial strength for Cessna and Textron. Id. The
complaint alleges, however, that Cessna was artificially
inflating its backlog by accepting orders for business jets from
startup and financially distressed companies that did not have

---

[1] The Complaint expressly references the Textron Inc. Savings
Plan, as Amended and Restated in 2009 ("2009 Plan"), the Textron
Inc. Savings Plan, as Amended and Restated in 1999 ("1999
Plan"), as well as the Summary Plan Description ("SPD"). E.g.,
Compl. ¶¶ 45, 48, 50, 52, 70. Defendants have attached portions
of several of those and other publicly available documents to
their motion to dismiss, and plaintiffs have not challenged
their authenticity. Thus these documents may be considered for
this motion to dismiss without transforming it into a motion for
summary judgment. See Curran v. Cousins, 509 F.3d 36, 44 (1st
Cir. 2007).

the financial wherewithal to pay for them and by providing incentives for companies not to cancel orders so that Textron could keep the backlog on its books. Compl. ¶ 72. In late 2008 and early 2009, Textron was forced to repeatedly lower its earnings projections for Cessna as customers cancelled a large number of planes that had been on the backlog. Compl. ¶¶ 73-75.

Textron also reported strong backlog growth in its Bell Helicopter division until the end of 2008. Compl. ¶ 77. In May of 2008, however, Michael Prieto, then President and Chief Executive Officer of Bell Aerospace Services Inc., a subsidiary of Bell Helicopter, notified the Defense Contract Management Agency that he had conducted an investigation which uncovered (i) fraud on U.S. government contracts; (ii) mischarges by Bell employees performed at the direction of Bell management; (iii) employees' concerns about management retaliation; (iv) management's breach of confidentiality. Compl. ¶ 78. One member of management was suspended pending the conclusion of the investigation, which was ongoing at the time of the disclosure. Id.

Meanwhile, longstanding quality and scheduling problems caused the U.S. Army to cancel a $6.2 billion Army contract with Bell Helicopter to build hundreds of Armed Reconnaissance

Helicopters, and Bell Helicopter had to agree to a reduced profit on a separate $210 million government contract to upgrade Huey helicopters to offset the added cost to the government of fixing a "design flaw" in a rotor blade component.  Compl. ¶¶ 79-80. The company also agreed to a reduced fee on another contract.  Compl. ¶ 80.  The complaint alleges that the price of Textron Stock was materially inflated during the class period because of these undisclosed problems at Bell Helicopter. Compl. ¶ 81.

TFC, Textron's financing arm, maintained a large quantity of financial receivables over a variety of industries during the class period.  Compl. ¶ 65.  The complaint alleges that at some point prior to or during the class period, TFC had begun to engage in undisclosed lending practices that increased the company's exposure to losses.  Compl. ¶ 82.  These practices included a company-wide policy of relaxing lending requirements in order to increase TFC's volume of sales, which resulted in TFC carrying a higher percentage of high-risk assets than it had historically.  Compl. ¶ 84.  In July 2008, Textron reported that TFC's revenue and profit had declined significantly, the percentage of its receivables that were over sixty days delinquent had almost doubled from the end of the first quarter

6

of 2008 to the end of the second quarter, and nonperforming assets had also increased significantly.  Compl. ¶ 85.  These issues continued throughout the remainder of 2008 as TFC suffered increasing losses.

As the problems at Textron grew, objective measures of the company's financial health began to be affected.  Textron's debt and preferred stock were repeatedly downgraded by all three of the major credit rating agencies that judge the financial risk of potential investments.  Compl. ¶ 117.  Textron's Altman Z-Score ("Z-Score"), a commonly-accepted bankruptcy prediction model, gave the company a score using data from July 2009 that placed it in a "distress zone," indicating a high probability that the company would go bankrupt within two years.  Compl. ¶¶ 118-21.  As a result of these disclosures, Textron's stock value dropped heavily, from a class-period high of $74.40 per share on December 10, 2007 to a class-period low of $3.57 per share on March 6, 2009.  Compl. ¶ 122.  Throughout these developments, the defendants continued to allow Plan participants to invest in and hold Textron Stock through the Fund.  Compl. ¶ 123.

Plaintiffs filed this three-count consolidated complaint in the District of Rhode Island in February 2010.  Count I charges all of the defendants with breach of fiduciary duty for failing

7

to loyally and prudently manage the Fund.  Count II charges

Textron with liability for failing to monitor the other

fiduciaries and provide them with accurate information.  Count

III charges that all of defendants are liable as co-fiduciaries.

## II.   **STANDARD OF REVIEW**

"[A] complaint should be dismissed under Fed. R. Civ. P.

12(b)(6). . . 'only if it is clear that no relief could be

granted under any set of facts that could be proved consistent

with the allegations.'"  <u>Gorski v. N.H. Dep't of Corr.</u>, 290 F.3d

466, 473 (1st Cir. 2002) (quoting <u>Hishon v. King & Spalding</u>, 467

U.S. 69, 73 (1984)).  As with any motion to dismiss a claim

filed pursuant to Fed. R. Civ. P. 12(b)(6), I accept as true all

well-pleaded facts in support of the claim and make all

reasonable inferences in the plaintiffs' favor.  <u>E.g.</u>,

<u>Blackstone Realty LLC v. Fed. Deposit Ins. Corp.</u>, 244 F.3d 193,

197 (1st Cir. 2001).

The parties disagree as to whether the claims at issue here

are governed by Rule 8(a) or Rule 9(b).  Under the basic

pleading standards of Rule 8(a), the complaint must provide "a

short and plain statement of the claim showing that the pleader

is entitled to relief."  Fed. R. Civ. P. 8(a).  The Supreme

8

Court has interpreted this provision to require that the well-pleaded facts in the complaint and all reasonable inferences that may be drawn from them be sufficient to show a "plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). In contrast, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Even when Rule 9(b) applies, however, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id.

The First Circuit has interpreted Rule 9(b) to apply not only to actual fraud claims but also to "associated claims where the core allegations effectively charge fraud." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009); see also Cooperman v. Individual, Inc., 171 F.3d 43, 47 n.6 (1st Cir. 1999) (noting that Rule 9(b)'s heightened pleading requirements do not apply to claims that do not "sound in fraud").

Plaintiffs contend that the defendants are liable for breach of fiduciary duty because: (1) they made misleading statements about Textron's financial condition; (2) they failed to disclose material information about the company; and (3) they

allowed beneficiaries to make imprudent investments in the Fund.
Because these theories of liability are analytically distinct, I
separately determine the pleading standard that applies to each
claim.

Defendants' misleading statements claim essentially alleges
a scheme to defraud Plan participants by misrepresenting
Textron's financial condition.  Because this claim alleges that
defendants actively misled investors, it sounds in fraud and is
subject to Rule 9(b).  See Hayduk v. Lanna, 775 F.2d 441, 443
(1st Cir. 1985) (holding that "in actions alleging conspiracy to
defraud or conceal, the particularity requirements of Rule 9(b)
must be met").  Plaintiffs' remaining two claims are somewhat
more difficult to categorize.  The failure to disclose claim
alleges that Plan participants did not receive information that
they needed to make informed investments in the Fund, but the
claim does not require proof of active misrepresentation by the
defendants to be successful.  The imprudent investment claim
also depends in part on a claimed failure to disclose
information concerning Textron's financial condition.  However,
it too can be established without proof of misrepresentation.
Accordingly, neither claim "sounds in fraud" and thus both are
subject only to the standard pleading requirements of Rule 8(a).

### III.   **ANALYSIS**

As I have explained, although Count I purports to assert a
single claim for breach of fiduciary duty, it is actually
comprised of three related but analytically distinct claims.
The first is based on a series of allegedly misleading
statements.  The second alleges a breach of a claimed duty to
disclose material adverse information.  The third is a straight-
forward imprudent investment claim.  Counts II and III are
derivative claims that seek to hold various defendants liable
for breaches of others' fiduciary duties.  I address defendants'
challenges to each of these claims in turn.

**A.**   **Count I**

1.   Misstatements

ERISA § 404(a) requires that a fiduciary shall act "with
the care, skill, prudence, and diligence under the circumstances
then prevailing that a prudent man acting in a like capacity and
familiar with such matters would use in the conduct of an
enterprise of a like character and with like aims."  29 U.S.C. §
1104(a)(1)(B).  The Supreme Court has ruled that this statute
subjects fiduciaries to liability for misleading Plan

11

participants and beneficiaries through material misstatements.
See Varity Corp. v. Howe, 516 U.S. 489, 505-06 (1996).
Plaintiffs argue that the defendants made such misstatements in
various SEC filings and other public statements that touted the
financial strength of the Cessna, Bell Helicopter, and TFC
divisions without mentioning the policy changes and developing
problems at those divisions.  I reject this argument because I
determine that defendants were not acting as ERISA fiduciaries
when they made the alleged misstatements.

Under ERISA, a corporation and its board members are
allowed to wear two hats: that of corporate employer and that of
an ERISA fiduciary.  ERISA liability can only arise from actions
taken in the performance of ERISA fiduciary obligations.  See
id. at 498, 506.  As a result, "the threshold determination in
making out an ERISA claim of misrepresentation is whether the
decision taken was a business corporate management decision or
whether it was an action falling within the fiduciary functions
delineated by ERISA."  Vartanian v. Monsanto Co., 880 F.Supp.
63, 70 (D.Mass. 1995) (quotation omitted).

The plaintiffs assert that most of the alleged
misstatements were incorporated in filings that Textron made
with the SEC.  They then argue that the misstatements qualify as

fiduciary communications because the company's SEC filings were incorporated into the Plan's prospectus, which was provided to Plan participants and therefore is a fiduciary communication. See Textron Savings Plan Summary Plan Description (October 2004) at 49 (noting that Plan participants "can also receive, upon request, copies of the following documents that are incorporated by reference in the Plan's prospectus: Textron's Annual Report on Form 10k; The Plan's Annual Report on Form 11-k; All other reports Textron files under Sections 13(a) or 15(d) of the Securities Exchange Act of 1934; [and] A description of Textron's common stock and associated Preferred Stock Purchase Rights.").[2]  In response, the defendants point out that the Plan's Summary Plan Description ("SPD") expressly states that "neither the Plan's prospectus nor [SEC filings that are made a part of the prospectus] are incorporated by reference into this SPD."  SPD at 49-50.  These statements are not contradictory; the former makes clear that the SEC filings at issue are

---

[2] Section 10(a) of the Securities Act of 1933 ("Securities Act") requires issuers of certain securities to prepare prospectuses that provide information related to stock issuances.  See 15 U.S.C. § 77j(a).  Securities regulations in turn require that a Section 10(a) prospectus incorporate by reference a variety of SEC filings, including the ones alleged to have contained the misstatements in this case.  See 17 C.F.R. § 230.428.  Those same regulations require that the prospectus be distributed to Plan participants.  Id.

incorporated into the prospectus, while the latter states that they are not incorporated into the SPD.  Therefore the question I must address is whether statements made in SEC filings that have in turn been incorporated into a plan prospectus are fiduciary communications that can lead to ERISA liability.

The case of Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243 (5th Cir. 2008) is helpful in resolving this issue.  In that case, just as in this one, the plaintiff sought recovery under ERISA for alleged misstatements that were made in SEC filings. Id. at 257.  The plaintiff argued that even though the filings were plainly made in the defendants' corporate capacity, they became fiduciary communications because they were incorporated into the defendant corporation's Form S-8 Registration Statement and its Section 10(a) prospectus.  Id.  The court rejected the plaintiff's argument because the obligation to file those forms, and to distribute the prospectus to Plan participants, arose not under ERISA but under corporate securities laws.  Id. Therefore, the court held that when the defendant made the allegedly misleading statements, it was "discharging its corporate duties under the securities laws, and was not acting as an ERISA fiduciary."  Id.

The defendants in this case, like the defendant in
Kirschbaum, were acting in a corporate capacity pursuant to
their obligations under federal securities laws when they made
the statements at issue in this case.  The fact that the filings
were made available to Plan participants does not transform them
into fiduciary communications.  While Plan participants
undoubtedly had a right to expect that defendants would not make
materially misleading statements in their SEC filings, any such
right should be enforced under securities laws rather than
ERISA.  Accordingly, I dismiss plaintiffs' breach of fiduciary
duty claim to the extent that it is based on these statements.

     2.    The Duty to Disclose

Plaintiffs also claim that defendants breached fiduciary
duties owed to Plan beneficiaries by failing to disclose
material information concerning Textron's financial condition.
Defendants challenge this claim by arguing that they did not
have a duty to disclose the information on which the claim is
based.

The First Circuit addressed the issue of a fiduciary's
disclosure obligations in Watson v. Deaconess Waltham Hospital,
298 F.3d 102 (1st Cir. 2002).  In that case, a beneficiary of a
long term disability plan alleged that his employer breached its

15

fiduciary duties under ERISA by failing to inform the
beneficiary that he would be ineligible for long-term disability
benefits if he returned to work on a part-time basis. Id. at
105.  The court of appeals assumed that the defendant, as an
ERISA fiduciary, had a duty to inform beneficiaries of generally
applicable material facts concerning the plan if the fiduciary
"should have known that his failure to convey the information
would be harmful." Id. at 115-16.

     The present case differs from Watson in that the
information that the defendants allegedly failed to disclose
concerned a publicly traded stock owned by the Plan rather than
information concerning the terms of the Plan itself.  This
distinction is potentially significant because disclosure
obligations with respect to such investments ordinarily are
established by the federal securities laws rather than by ERISA.
See generally, Clovis Trevino Bravo, ERISA Misrepresentation and
Nondisclosure Claims: Securities Litigation Under the Guise of
ERISA?, 26 Hofstra Lab. & Emp. L.J. 497 (2009).

     Although the plaintiffs cite Watson in support of their
nondisclosure claim, defendants address the case in only a
single footnote of the more than sixty pages of briefs that they
have filed in support of their motion to dismiss.  Accordingly,

the parties have failed to address important questions
concerning the duty to disclose that were not addressed in
Watson.   For example, they have failed to consider whether
Watson applies at all to claims such as the one at issue here,
whether the test of materiality that the court endorses in
Watson is identical to or more stringent than the test of
materiality used in securities cases, and whether the duty to
disclose encompasses all material omissions that defendants
should have known would be harmful or only omitted information
that makes disclosed information misleading.   Given that Watson
concerned a very different set of facts from the facts at issue
here, the complexity of the underlying problem, and its
significance to this emerging area of law, I am not prepared to
dismiss plaintiffs' failure to disclose claim on the basis of
such a poorly developed legal argument.   Accordingly, I deny
defendants' motion to dismiss plaintiffs' failure to disclose
claim.

> 3.   Prudence

Plaintiffs have also alleged a third form of breach of
fiduciary duty.   Independent of any specific obligation not to
make material misstatements or to withhold material information
from beneficiaries, plaintiffs argue that defendants breached

17

fiduciary duties by allowing plaintiffs to continue to invest in the Fund even though defendants knew or should have known that the value of Textron's stock was both artificially inflated based on undisclosed information and an excessively risky investment when judged by the publicly available information concerning the company's financial condition.

Defendants attack this claim by arguing that they could not have prevented beneficiaries from investing in the Fund because the Plan required fiduciaries to offer beneficiaries the option to invest in the Fund.  They also contend that their investment decisions are subject to a presumption of prudence that shields them from liability.  Finally, they argue that the complaint fails to allege sufficient facts to support plaintiffs' contention that the Fund was an imprudent investment even if they had discretion to prevent beneficiaries from investing in the Fund.  I address each of these arguments in turn.

### a.  Plan Restrictions

Defendants base their argument that they lacked the power to prevent beneficiaries from investing in the Fund on language in the Plan stating that "The ESOP portion of the Plan is designed to invest primarily in Textron Common Stock," and that "the Trustee shall invest 100% of all matching Contributions in

the Textron Stock Fund."   Textron Savings Plan, § 8.02, Doc. No.
34-3.   Plaintiffs respond by arguing that the Plan does not
require Textron stock to be an investment option.   They point to
the Plan requirement that the Committee be vested with "sole
discretion to determine the number and character of . . .
investment funds (including the underlying composition thereof)
. . . [and] to close, limit or eliminate the availability of any
of the investment funds."   Textron Savings Plan, § 8.01, Doc.
No. 34-3.

I need not determine at this time how the above provisions
should be reconciled, because even if the Plan explicitly
requires that Textron stock be offered, ERISA § 404(a)(1)(D)
provides that Plan fiduciaries are required to act "in
accordance with the documents and instruments governing the plan
insofar as such documents and instruments are consistent with
the provisions of [subchapters I and III of ERISA]."   Title I of
ERISA includes the prudence requirement at issue here.   Multiple
courts have addressed this tension and have found that the
fiduciary duties spelled out in ERISA trump requirements in
investment plan documents.   See In re Morgan Stanley ERISA
Litig., 696 F.Supp.2d 345, 358 (S.D.N.Y. 2009) (listing cases
holding that ERISA § 404(a)(1)(D) creates "grounds for finding

19

the fiduciaries liable even when the Plan does not appear to give them the discretion to make certain investment decisions"). The Supreme Court has stated a similar rule, holding that "trust documents cannot excuse trustees from their duties under ERISA." Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp. Inc., 472 U.S. 559, 568 (1985). As such, even if the Plan required the defendants to offer beneficiaries the opportunity to invest in Textron stock, the defendants would have been obligated to override those requirements if allowing such investment constituted a violation of ERISA's prudence requirements.

### b.  The Presumption of Prudence

Defendants next argue that plaintiffs have failed to state an actionable imprudent investment claim because they have failed to overcome the presumption that the defendants acted prudently in allowing investments in the Fund. I am unpersuaded by this argument.

Although other courts have held that an ERISA fiduciary's investment decisions are subject to a presumption of prudence, the First Circuit declined to adopt the presumption in Lalonde v. Textron, Inc., 369 F.3d 1, 6 (1st Cir. 2004). More recently, in Bunch v. W.R. Grace & Co., 555 F.3d 1, 10 (1st Cir. 2009),

20

the court again declined to adopt the presumption.  While the

court in Bunch left open the possibility that the presumption

might apply to certain investment decisions, it did not offer

further guidance as to when, if ever, such a presumption may be

warranted.  Id.  Absent further guidance from the court, its

decision in Lalonde is controlling and I decline to apply a

presumption of prudence in analyzing plaintiffs imprudent

investment claim.

###### c.  Sufficiency of the Claim

Defendants finally argue that the plaintiffs have not

pleaded sufficient facts to support their claim that the Fund

was an imprudent investment.

Although the plaintiffs' complaint alleges only a weak

claim that the Fund was an imprudent investment, I determine

that its allegations on this subject are minimally sufficient to

survive a motion to dismiss.  The complaint alleges that the

defendants continued to permit beneficiaries to invest in the

Fund even though they knew or should have known that the value

of the stock was artificially inflated.  In making this

contention, they rely primarily on three facts that they claim

the defendants either knew or should have known about: that the

supposedly record backlogs of unfilled orders at Cessna were

illusory because a growing number were from financially unsound customers who lacked the financial resources to pay for the aircraft themselves; that a series of undisclosed product defects and acts of misconduct related to Bell Helicopter's military contracts had impaired the value of those contracts; and that TFC had loosened its underwriting standards and thus diluted the value of its finance receivables.

As I discussed earlier, this portion of plaintiffs' claim is subject only to the standard pleading requirements of Rule 8(a) because it does not depend on a claim of misrepresentation. Thus, plaintiffs need only present facts supporting "plausible grounds" for recovery to survive the motion to dismiss stage, which can be present even what "actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (internal quotation marks omitted). Judged against this comparatively weak standard, plaintiffs have pleaded sufficient facts to plausibly state a claim upon which relief may be granted.

Plaintiffs have also alleged facts that plausibly suggest that investing in the Fund may have been an unreasonably risky investment under the circumstances. They note in the complaint that the value of Textron's debt and preferred stock were

22

repeatedly downgraded by all three of the major credit rating
agencies, indicating that any investment in Textron was viewed
as increasingly risky.  Additionally, plaintiffs note that the
Altman-Z score assigned to Textron in 2009 placed Textron in a
"distress zone" indicating a high probability of bankruptcy.
Although the decision is a close one, the excessively risky
investment theory of liability is also subject to Rule 8
standards of pleading and I am not prepared to prevent the
plaintiffs from proceeding with their claims at this early stage
of the litigation.[3]

---

[3] Defendants also argue that even if Textron stock was trading at
inflated prices because of undisclosed information, selling the
stock would not have been the correct fiduciary response because
it could have violated securities laws against insider trading.
See Edgar v. Avaya, Inc., 503 F.3d 340, 350 (3rd Cir. 2007).
Plaintiffs respond by noting that the complaint alleges that
defendants breached their fiduciary duties by doing nothing, and
that selling the stock was not their only option.  They could
have worked to ensure the proper disclosure of the omitted
information, for example, or halted any additional purchases of
Textron stock by the Plan.  In any event, the existence of
duties under securities laws does not necessarily trump any
duties existing under ERISA.  Indeed, even the court in Edgar
was careful to note that the potential for insider trading
liability did not mean that fiduciaries were relieved of their
obligations under ERISA.  Id.; see also In re Morgan Stanley
ERISA Litigation, 696 F. Supp. 2d 345, 360 (S.D.N.Y. 2009)
(analyzing this tension and noting that "Courts have regularly
rejected this argument as a justification for avoiding fiduciary
duties under ERISA").

**B.   Duty to Monitor**

Appointing fiduciaries have an ongoing duty to monitor whether the fiduciaries they appoint are fulfilling their own fiduciary obligations.  Defendants argue that this claim fails because courts have taken a "restrictive view" of the scope of the duty to monitor.  See Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1466 n.10 (4th Cir. 1996).  For their part, Plaintiffs argue that courts generally decline to decide whether a duty to monitor has been breached on a motion to dismiss because it is a highly fact-specific analysis.  See In re Xerox Corp. ERISA Litig., 483 F.Supp.2d 206, 215 (D.Conn. 2007); In re Syncor ERISA Litig., 351 F.Supp.2d 970, 986 (C.D.Cal. 2004) (citing cases).  I am persuaded by the cases cited by the plaintiffs. Accordingly, to the extent that plaintiffs' underlying claims are plausibly pleaded, the duty to monitor claims survive as well.

**C.   Co-Fiduciary Duties**

Finally, the defendants argue that the co-fiduciary claim fails because the complaint does not allege facts that satisfy the statutory requirements for co-fiduciary liability.  ERISA imposes liability on this basis when: (1) the fiduciary

24

knowingly participates in or conceals another fiduciary's
breach; (2) the fiduciary's own breach enables the breach by the
other fiduciary; or (3) the fiduciary has knowledge of another
fiduciary's breach and does not take reasonable efforts to
remedy the breach.    29 U.S.C. § 1105(a).    Defendants contend
that the complaint merely makes conclusory allegations with
regards to this claim, as it summarily states that "Defendants
breached all three provisions" that create co-fiduciary
liability.    Compl. ¶ 165.    The remainder of the complaint,
however, contains much more detailed allegations regarding the
alleged breaches by the defendants and the knowledge they should
have had about other fiduciaries and possible breaches they were
committing.    All of those provisions are incorporated by
reference into the claim for co-fiduciary liability.    Compl. ¶
162.

In any event, claims of co-fiduciary breach generally rise
and fall with the main claim of a breach of fiduciary duty.    See
Kling v. Fidelity Mgmt. Trust Co., 323 F.Supp.2d 132, 144
(D.Mass. 2004) (where a fiduciary breach was properly pleaded, a
co-fiduciary claim was also sufficient where plaintiffs alleged
that "defendants failed to remedy breaches of the co-fiduciaries
with knowledge of such breaches, and that their failure to

25

adequately monitor the appointed fiduciaries enables those fiduciaries to breach their duties"). Thus the co-fiduciary claims in this case also survive to the extent the underlying breach of fiduciary duty claims have been sufficiently pleaded.

## IV.   CONCLUSION

For the reasons stated above, the defendants' motion to dismiss (Doc. No. 33) is granted to the extent that plaintiffs base their breach of fiduciary duty claim on alleged misstatements by the defendants. In all other respects, the motion is denied.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge
Sitting by Designation

September 6, 2011

cc:  Counsel of Record