# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE TEXTRON, INC. ERISA LITIGATION | Civil Action No. 09-383-ML (Consolidated Actions) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (2) APPROVAL OF PLAN OF ALLOCATION; AND (3) CERTIFICATION OF SETTLEMENT CLASS AND CLASS COUNSEL'S MOTION FOR: (1) AWARD OF <u>ATTORNEYS' FEES AND EXPENSES AND (2) CASE CONTRIBUTION AWARDS</u>**

Vincent L. Greene IV
**MOTLEY RICE LLC**
321 South Main St.
Providence, RI 02903
Telephone:  (401) 457-7700
Facsimile:  (401) 457-7708
E-mail:  vgreene@motleyrice.com

Lori G. Feldman
Arvind B. Khurana
Jennifer J. Sosa
**MILBERG LLP**
One Pennsylvania Plaza
New York, NY 10119
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229
E-mail:  lfeldman@milberg.com
        akhurana@milberg.com
        jsosa@milberg.com

*Liaison Counsel for Plaintiffs and the Proposed Class*

*Class Counsel for Plaintiffs and the Proposed Class*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION........................................................................... 1

II.     SUMMARY OF ARGUMENT ...................................................... 1

III.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................. 4

IV.     ARGUMENT ................................................................................ 4

  A.   The Proposed Settlement Warrants Approval ................................ 4

    1.   The Complexity, Expense and Likely Duration of the Litigation.................... 5

    2.   The Reaction of the Settlement Class to the Settlement ................................. 6

    3.   The Stage of the Proceedings and the Amount of Discovery Completed........ 7

    4.   The Risks of Establishing Liability................................................................. 8

    5.   The Risks of Establishing Damages.............................................................. 10

    6.   The Risks of Maintaining the Class Action Through the Trial ..................... 11

    7.   The Ability of the Defendants to Withstand a Greater Judgment ................. 12

    8.   The Range of Reasonableness of The Settlement Fund in Light of the Best Possible Recovery ........................................................................................ 12

    9.   The Settlement Is Within the Range of Reasonableness Considering all the Attendant Risks of Litigation ....................................................................... 13

  B.   The Court Should Approve the Plan of Allocation ........................................ 14

  C.   Notice to the Settlement Class Was Adequate .............................................. 15

  D.   Certification of the Settlement Class Is Appropriate ..................................... 16

    1.   The Proposed Class Meets the Prerequisites for Class Certification under Rule 23(A)..................................................................................................... 16

      a.   Numerosity.......................................................................................... 17

      b.   Commonality ...................................................................................... 18

      c.   Typicality ........................................................................................... 18

      d.   Adequacy ............................................................................................ 18

    2.   The Settlement Class Should also Be Certified Under Fed. R. Civ. P. 23(b)(1) ..................................................................................................... 20

  E.   Plaintiffs' Request For Attorneys' Fees And Expenses Should Be Granted . 20

    1.   The Requested 30 Percent Fee Award Is Fair and Reasonable..................... 21

      a.   Time and Labor Expended by Counsel............................................... 22

      b.   Magnitude and Complexities of the Litigation ................................... 24

      c.   The Risks of the Litigation ................................................................. 26

        (i) Success on the Merits Was Far from Guaranteed ........................... 26

i

(ii) The Contingent Nature of Counsel's Representation Also Supports the Fee ........................................................................................ 26

d.  The Quality of Representation ............................................................ 28

e.  The Size of the Fee Compared to Size of the Settlement .................... 29

f.  Public Policy Consideration Supports the Requested Fee Award ................ 31

F.  Counsel's Request For Reimbursement Of Expenses Should Be Granted .... 31

G.  The Proposed Case Contribution Awards Are Reasonable ........................... 33

V.  CONCLUSION .......................................................................................... 34

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................................16

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985) ...................................................................................19

*In re AOL Time Warner ERISA Litig.*,
    No. 02-cv-8853, 2006 WL 2789862 (S.D.N.Y. 2006) ...........................................15

*In re Aquila ERISA Litig.*,
    No. 04-cv-865 (W.D. Mo. Nov. 29, 2007) ..............................................................31

*In re Bank of Boston Corp. Sec. Litig.*,
    762 F. Supp. 1525 (D. Mass. 1991) ........................................................................18

*Baptista v. Mut. of Omaha Ins. Co.*,
    859 F. Supp. 2d 236 (D.R.I. 2002) (Lisi, J) ................................................. *passim*

*Blum v. Stenson*,
    465 U.S. 886 (1984)..................................................................................................23

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)..................................................................................................21

*Bonime v. Doyle*,
    416 F. Supp. 1372 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 555 (2d Cir. 1977) ...............11

*Brieger v. Tellabs, Inc.*,
    No. 06-cv-1882, 2009 WL 1565203 (N.D. Ill. June 1, 2009)...................................9

*Bunch v. W.R. Grace & Co.*,
    555 F.3d 1 (1st Cir. 2009)..........................................................................................9

*Bussie v. Allmerica Fin. Corp.*,
    50 F. Supp. 2d 59 (D. Mass. 1999) .........................................................................14

*In re Citigroup ERISA Litig.*,
    662 F.3d 128 (2d Cir. 2011)......................................................................................8

*City P'ship Co. v. Atlantic Acquisition Ltd., P'ship*,
    100 F.3d 1041 (1st Cir. 1996)....................................................................................7

iii

*In re Computation Software, Inc. Sec. Litig.*,
    6 F. Supp. 2d 313 (D.N.J. 1998) ...............................................................29

*Coppess v. Healthways, Inc.*,
    No. 10-cv-109 (M.D. Tenn. Apr. 25, 2011) ...............................................30

*In re Delphi Corp. Secs., Derivative & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) .............................................................15

*DiFelice v. U.S. Airways, Inc.*,
    436 F. Supp. 2d 756 (E.D. Va. 2006), *aff'd,* 497 F.3d 410 (4th Cir. 2007).............................9

*Durrett v. Housing Auth.*,
    896 F.2d 600 (1st Cir. 1990) ...............................................................1, 4

*In re Elec. Data Sys. Corp. ERISA Litig.*,
    No. 03-cv-126 (E.D. Tex. Aug. 6, 2008) ...................................................31

*Eslava v. Gulf Tel. Co.*,
    No. 04-cv-297 (D. Ala. Nov. 16, 2007) .....................................................31

*Evans v. Akers*,
    534 F.3d 65 (1st Cir. 2008) .....................................................................10

*In re Fidelity/Micron Sec. Litig.*,
    167 F.3d 735 (1st Cir. 1999) ..............................................................21, 32

*In re Fleet/Norstar Sec. Litig.*,
    935 F. Supp. 99 (D.R.I. 1996) .................................................................30

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d. Cir. 1995) ......................................................................4

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .....................................................10, 12, 25

*Graden v. Conexant Sys., Inc.*,
    496 F.3d 291 (3d Cir. 2007).....................................................................10

*Graden v. Conexant Sys., Inc.*,
    No. 05-cv-695 (D.N.J. Sept. 11, 2009) .....................................................31

*Greenspun v. Bogan*,
    492 F.2d 375 (1st Cir. 1974) ......................................................................5

*Hochstadt v. Boston Scientific Corp.*,
    708 F.Supp. 2d 95 (D. Mass. 2010) ...........................................................20

iv

*Hochstadt v. Boston Scientific Corp.*,
　No. 08-cv-12139 (D. Mass Aug. 11, 2010) ..........................................................30

*In re Ikon Office Solutions Secs. Litig.*,
　209 F.R.D. 94 (E.D. Pa. 2002).............................................................................6

*Kinney v. Metro Global Media, Inc.*,
　No. 99-cv-579, 2002 U.S. Dist. LEXIS 18628 (D.R.I. Aug. 22, 2002)....................17

*Kirschbaum v. Reliant Energy, Inc.*,
　526 F.3d 243 (5th Cir. 2008) ...............................................................................8

*Kling v. Fidelity Mgm't*,
　No. 01-11939 (D. Mass June 29, 2006) ...............................................................21

*LaLonde v. Textron, Inc.*,
　369 F.3d 1 (1st Cir. 2004) ........................................................................5, 8, 9, 24

*Lanfear v. Home Depot, Inc.*,
　679 F.3d 1267 (11th Cir. 2012) .............................................................................8

*Langraff v. Columbia Healthcare Corp.*,
　No. 98-cv-0090, 2000 U.S. Dist LEXIS 21831 (M.D. Tenn. May 24, 2000)
　*aff'd* 30 Fed. Appx. 366 (6th Cir. 2006) ..............................................................9

*In re Lucent Techs., Inc. Sec. Litig.*,
　327 F. Supp. 2d 426 (D.N.J. 2004) ......................................................................12

*In re Lupron Mktg. & Sales Practices Litig.*,
　228 F.R.D 75 (D. Mass 2005).............................................................................4, 5

*In Re Lupron Mktg. and Sales Practices Litig.*,
　No. 01-cv-10861 2005 U.S. Dist. LEXIS 17456 (D. Mass. Aug. 17, 2005) ...........24

*In re Marsh ERISA Litig.*,
　265 F.R.D. 128 (S.D.N.Y. 2010) .....................................................................12, 13

*In re Marsh ERISA Litig.*,
　No. 04-cv-8157 (S.D.N.Y. Jan. 29, 2010) ...........................................................30

*Mazola v. May Dep't. Stores Co.*,
　No. 97-cv-10872, 1999 WL 126312 (D. Mass July 27, 1999) ...........................3, 30

*In re MBNA Corp. ERISA Litig.*,
　No. 05-cv-429 (D. Del. Mar. 27, 2009) ...............................................................31

*In re Merck & Co. Vytorin ERISA Litig.*,
　No. 08-cv-285, 2010 U.S. Dist. LEXIS 12344 (D.N.J. Feb. 9, 2010) ...................30

*In re MicroStrategy, Inc. Sec. Litig.,*
    148 F. Supp. 2d 654 (E.D. Va. 2001) ................................................................14

*In re Milken & Assoc. Sec. Litig.,*
    150 F.R.D. 46 (S.D.N.Y. 1993) ........................................................................11

*Milliron v. T-Mobile USA, Inc.,*
    No. 08-cv-4149, 2009 U.S. Dist. LEXIS 101201 (D.N.J. Sept. 10, 2009),
    *aff'd,* 423 F Appx 131 (3d Cir. 2011). ...............................................................31

*Missouri v. Jenkins,*
    491 U.S. 274 (1989).........................................................................................23

*Moench v. Robertson,*
    62 F.3d 553 (3d Cir. 1995)..................................................................................8

*Moore v. Comcast Corp.,*
    No. 08-cv-773 (E.D. Pa. Jan. 24, 2011) .............................................................30

*Morrison v. Moneygram Int'l, Inc.,*
    No.08-cv-1121 (D. Minn. May 20, 2011)...........................................................30

*Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.,*
    247 F.R.D. 253 (D. Mass. 2008).......................................................................17

*Nelson v. IPALCO Enters, Inc.,*
    480 F. Supp. 2d 1061 (S.D. Ind. 2007) ...............................................................9

*In re Oracle Sec. Litig.,*
    No. 09-cv-931, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 16, 1994)) ...........14

*Overby v. Tyco Int'l Ltd.,*
    02-1357 (D.N.H. Nov. 23, 2009) ......................................................................30

*Payne v. Goodyear Tire & Rubber Co.,*
    216 F.R.D. 21 (D. Mass. 2003).........................................................................18

*Pfeil v. State St. Bank & Trust Co.,*
    671 F.3d 585 (6th Cir. 2012) ..............................................................................8

*Quan v. Computer Scis. Corp.,*
    623 F.3d 870 (9th Cir. 2010) ..............................................................................8

*In re Radioshack Corp. ERISA Litig.,*
    No. 08-cv-1875 (N.D. Tex. Feb. 8, 2011)...........................................................30

*In re Relafen Antitrust Litig.,*
    231 F.R.D. 52 (D. Mass. 2005)..............................................................27, 30, 33

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
   50 F. Supp. 2d 100 (D.P.R. 1999) .........................................................................27

*In re Schering-Plough Corp.*,
   No. 08-cv-1432, 2012 U.S. Dist. LEXIS 75213 (D.N.J. May 31, 2012) .................10

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
   No. 08-cv-1432 (D.N.J. May 31, 2012) ...................................................................30

*Shanechian v. Macy's, Inc.*,
   07-cv-828 (S.D. Ohio June 25, 2013) ......................................................................30

*In re Sprint Corp. ERISA Litig.*,
   443 F. Supp. 2d 1249 (D. Kan. 2006) .....................................................................15

*Swack v. Credit Suisse First Boston*,
   230 F.R.D. 250 (D. Mass. 2005) ............................................................................18

*In re Syncor ERISA Litig.*,
   No. 03-cv-2446 (C.D. Cal. Mar. 30, 2009) ............................................................31

*In re Textron, Inc. ERISA Litig.*,
   No. 09-cv-383, 2011 U.S. Dist. LEXIS 100209 (D.R.I. Sept. 6, 2011) .............9, 10

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995) ...................................................................................21

*In re Tyco Int'l Ltd.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) .......................................................................26

*In re Tyco Int'l Ltd.*,
   No. 02-cv-1357, 2006 U.S. Dist. LEXIS 58278 (D.N.H. Aug. 15, 2006) ...............20

*Van Natta v. Sara Lee Corp.*,
   439 F. Supp. 2d 911 (N.D. Iowa 2006) .....................................................................5

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05-MDL-1695 2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) ...........14

*White v. Marshall & Ilsley Corp.*,
   714 F.3d 980 (7th Cir. 2013) ...................................................................................8

*White v. NFL*,
   822 F. Supp. 1389 (D. Minn. 1993), *aff'd*, 41 F.3d 402 (8th Cir. 1994) ................14

*In re Worldcom, Inc. ERISA Litig.*,
   No. 02-cv-4816, 2004 U.S. Dist. LEXIS 20671 (S.D.N.Y. Oct. 18, 2004) ............15

*In re Worldcom, Inc. ERISA Litig.*,
No. 02-cv-4816, 2005 WL 2035496 (S.D.N.Y. Aug. 24, 2005)..............................................15

*Zilhaver v. United Health Group, Inc.*,
646 F. Supp. 2d 1075 (D. Minn. 2009)......................................................................................24

**RULES**

Fed. R. Civ. P. 23 (a)(1).........................................................................................................17

Fed. R. Civ. P. 23 (a)(2).........................................................................................................18

Fed. R. Civ. P. 23 (a)(4).........................................................................................................18

Fed. R. Civ. P. 23 (b)(1).........................................................................................................20

**OTHER AUTHORITES**

John Langbein, *What ERISA means by "Equitable": The Supreme Court's Trial
Error in Russell,Mertens and Great West*, 103 Colum. L. Rev. 1317 (2003) ..........................5

Manual for Complex Litigation, 4th § 14.121 (2004..................................................................29

## I.   INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Diana Leach, Holly Sheets, Alma I. Perez, and Adrienne Harrington-Wheatley ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for an Order:  (i) giving final approval of the Settlement of this Action for $4.375 million in cash (plus accrued interest); (ii) and approval of the Plan of Allocation of the Settlement proceeds; and (iii) certifying the Settlement Class.[1]

Contemporaneously, Milberg LLP (hereinafter "Class Counsel") respectfully submits this memorandum of law in support of their motion under Rule 23(h) for an order granting:  (i) an award of attorneys' fees; (ii) reimbursement of expenses incurred by Class Counsel and other Plaintiffs' Counsel in connection with the successful prosecution of this ERISA class action; and (iii) case contribution awards to Plaintiffs.  Given the related issues involved in both motions, Plaintiffs and Class Counsel are filing one memorandum of law, in lieu of submitting two briefs with largely identical factual and legal arguments.  The motions of Plaintiffs and Class Counsel are supported by the Declaration of Jennifer J. Sosa, filed concurrently herewith (the "Sosa Declaration" or  "Sosa Decl.").

## II.   SUMMARY OF ARGUMENT

The Settlement is a result of nearly four years of hard-fought litigation.  The law generally favors the settlement of complex class actions.  *Durrett v. Housing Auth.*, 896 F.2d 600, 604 (1st Cir. 1990).  Courts will grant final approval to settlements such as this that are "fair, adequate, and reasonable." *Baptista v. Mut. of Omaha Ins. Co.*, 859 F. Supp. 2d 236, 240 (D.R.I. 2002) (Lisi, J) (quoting *City P'ship Co. v. Atlantic Acquisition Ltd., P'ship*, 100 F.3d

---

[1]  Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in the Class Action Settlement Agreement dated August 14, 2013 (the "Settlement Agreement"). (Dkt. No. 106).

1

1041, 1043 (1st Cir. 1996)).   In 2009, Plaintiffs brought this action against Textron, Inc. ("Textron" or the "Company") and certain fiduciaries[2] of the Textron Savings Plan (the "Plan") for improper conduct in violation of Section 502 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132.

This ERISA litigation arises out of Defendants' continued investment of the Plan's assets in the Textron Stock Fund, when Defendants allegedly knew or should have known that Textron stock was an imprudent investment.   Following a detailed and independent investigation of the complex facts of the case, Plaintiffs filed the Consolidated Class Action Complaint (the "Complaint") on February 2, 2010.   Defendants vigorously opposed the Action.   However, Plaintiffs obtained important victories when the Court denied, in large part, Defendants' motion to dismiss and their two motions for reconsideration.   Plaintiffs moved for class certification and Defendants indicated their intent to vigorously oppose that motion.   Defendants took discovery of the Plaintiffs including obtaining documents from and depositions of each of the Plaintiffs. Textron produced tens of thousands of documents.   The parties also engaged in extensive motion practice regarding various discovery disputes.   Each of these complex challenges, among others, presented risks to the ultimate success of the case and provide support for approval of the Settlement obtained.

Class Counsel and Plaintiffs believe this Action has significant merit and that they would prevail on the issues presented.   However, they are also aware that continued litigation due to Defendants' steadfast denial of liability would be costly and time-consuming and could ultimately jeopardize any recovery for the Settlement Class.   Class and Plaintiffs' Counsel are

---

[2]   "Defendants" are all fiduciaries of the Plan within the meaning of ERISA.   They include:  (A) the "Company," Textron, Inc.; (B) the "Investment Committee;" and (C) the "Individual Defendants," who served on the Investment Committee, Ted R. French, Richard L. Yates, Cathy A. Streker, Deborah A. Imondi, and Mary F. Lovejoy.

highly experienced in prosecuting ERISA breach of fiduciary duty class actions.  At the time of Settlement, which was facilitated by a respected experienced mediator, following more than three years of litigation, Plaintiffs and Plaintiffs' Counsel fully assessed the strengths and weaknesses of the claims and concluded that the Settlement is a very good result under the circumstances and is in the best interest of the Class.  For these reasons and those described herein and in the Sosa Declaration, the Court should find that the proposed Settlement and Plan of Allocation are "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e) and should be granted final judicial approval.  Likewise, the Court should grant final certification of the Settlement Class.

Additionally, the Court should approve the requested fees, expenses, and contribution awards.  The recovery of $4.375 million in cash (plus accrued interest) was achieved through the skill, work, dedication, and effective advocacy of Class Counsel and other Plaintiffs' Counsel. As payment for services rendered in achieving such a result, Class Counsel seek an award of attorneys' fees in the amount of 30% of the Settlement Fund, plus reimbursement of expenses reasonably incurred by Class Counsel and other Plaintiffs' Counsel in the prosecution of the Action in the amount of $162,757.34 plus interest on those amounts at the same rate and for the same period of time as that earned by the Settlement Fund until paid.  Class Counsel also seek case contribution awards for each of the Plaintiffs in the amount of $10,000.

District courts in this Circuit have found that attorneys' fees equating to between 20 and 35 percent of the settlement amount are appropriate.  *See, e.g.*, *Mazola v. May Dep't. Stores Co.*, No. 97-CV-10872, 1999 WL 126312, at *4 (D. Mass July 27, 1999) ("[I]n this Circuit percentage fees awards range from 20% to 35% of the fund.").  In this action, attorneys' fees equaling 30 percent of the Settlement Fund results in a fair and reasonable fee, especially given

that that the monetary result provides a benefit to the class, and society has an interest in seeing that the wrongdoing alleged is prevented in the future.  The services provided throughout the litigation were undertaken on a contingency basis.  Plaintiffs' Counsel is highly skilled and experienced in ERISA actions such as this, which aided their ability to litigate especially complex substantive and logistical issues presented by the case.

Plaintiffs' Counsel and their professional support staff expended thousands of hours in the prosecution of this Action, with a resulting lodestar of approximately $4.43 million.  The requested fee of 30% of the Settlement Fund or $1.31 million, is fair and reasonable considering the risks that Plaintiffs' Counsel took in prosecuting this Action.  The expenses requested are also reasonable in amount and were necessarily incurred for the successful prosecution of the Action.  Similarly, the proposed case contribution awards are reasonable given the Plaintiffs' dedication to the prosecution of this Action.

## III.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A detailed description of the factual background and procedural history of this Action is set forth in the Sosa Declaration, which is incorporated by reference.

## IV.   ARGUMENT

### A.   The Proposed Settlement Warrants Approval

As a matter of public policy, settlement is a highly favored means of resolving complex class action litigations.  *See Durrett*, 896 F.2d at 604 (recognizing a policy encouraging class action settlements); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 784 (3d. Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *In Lupron Mktg. & Sales Practices Litig.,* 228 F.R.D. 75, 88 (D. Mass. 2005) ("the law favors class action settlements.").  As the First Circuit has observed:

> [A]ny settlement is the result of a compromise -- each party surrendering something in order to prevent unprofitable litigation, and the risks and costs inherent in taking litigation to completion.  A district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose of settlement is precisely to avoid such a trial.

*Greenspun v. Bogan,* 492 F.2d 375, 381 (1st Cir. 1974); *see also In re Lupron Mktg.,* 228 F.R.D. at 97 (the court should not "hypothesize about larger amounts that might have been recovered").

As this Court has noted, approval of a class action settlement requires consideration of a number of factors:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Baptista*, 859 F. Supp. 2d at 240-241 (citations omitted).  Consideration of these factors supports approval of the Settlement.

## 1.    The Complexity, Expense and Likely Duration of the Litigation

Plaintiffs' claims are complex and novel.  ERISA jurisprudence as an "important and complex area of law" that "is neither mature nor uniform." *LaLonde v. Textron, Inc.,* 369 F.3d 1, 6 (1st Cir. 2004).  Courts have recently urged that since the law is so unsettled, "Congress and the Supreme Court [should] revisit what is an . . . entangled ERISA regime," *Van Natta v. Sara Lee Corp.*, 439 F. Supp. 2d 911, 940-41 (N.D. Iowa 2006), and academics have made similar points. *E.g.*, John H. Langbein, *What ERISA Means by "Equitable":  The Supreme Court's Trail of Error in Russell, Mertens, and Great-West*, 103 Colum. L. Rev. 1317, 1353-62 (2003) (critical examination of ERISA as a remedial law by one of the nation's premier ERISA expert).

As has been noted, the risks and complexities in ERISA company stock fund cases can be daunting.  *See In re Ikon Office Solutions Secs. Litig.*, 209 F.R.D. 94, 104 (E.D. Pa. 2002) (highlighting the complexities and risks of taking the challenging legal and fact intensive inquiries of a company stock ERISA case to trial).  This case is no different.  In addition to the aforementioned challenges, Plaintiffs were exposed to significant risks of failing to prove each factual and legal element of their claims, particularly:  (1) Defendants' fiduciary duty to sell or curtail investment in Textron stock; (2) causation; and (3) damages, each of which is contested.[3]

Further, this case required additional work to make it trial-ready. Depending upon the resolution of Plaintiffs' motion to compel additional discovery, there may have been significantly more documents produced, and there were numerous witnesses that Plaintiffs had yet to depose.  Significant (and expensive) expert discovery would also have been required for both sides.  It is also a virtual certainty that any judgment after trial or summary judgment would have presented numerous legal questions which would have been appealed, likely dragging this case out for years.

As such, the complexity, expense and likely duration of the litigation strongly favor settlement.

### 2.	The Reaction of the Settlement Class to the Settlement

As described in greater detail below, and the accompanying Declaration of Nashira Washington of Gilardi & Co. LLC submitted herewith as Exhibit 1 (hereinafter the "Gilardi

---

[3]  A number of novel and complicated legal issues have not been clearly resolved by the courts including:  (1) presumptions of prudence and the burden of proof; (2) liability standards; (3) the duty to sell company stock and/or curtail future investments; (4) the application of the efficient market hypothesis to ERISA actions; (5) the standards for loss causation; (6) whether the purpose of ERISA remedies is compensation or deterrence; (7) the measure and calculation of damages; and (8) the treatment of transfers in-kind for damages purposes.  If Plaintiffs were unsuccessful on *any* of these points, they risked a significant decrease in damages, which even on an otherwise full victory at trial could lower their damages below the value of the Settlement.

Decl."), notice was issued to the proposed Settlement Class in accordance with the notice plan approved by the Court.   The postcard notice was issued on September 17, 2013 and the Preliminary Approval Order required any objections to be filed by November 27, 2013.  *Id.*  A supplemental postcard notice will be issued on November 8, 2013.  *Id.*  The deadline for objections to that notice is January 13, 2014.  As such, Class Members still have time to file objections, although none have done so to date.  Accordingly, it is largely premature to consider this factor.  To the extent that objections are received after this filing, Plaintiffs will address them before or at the Fairness Hearing.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed

The extent of discovery conducted helps to determine the parties' grasp of the strengths and weaknesses of the case.  *See City P'ship Co. v. Atlantic Acquisition Ltd., P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the Settlement.").

Plaintiffs' Counsel have undertaken extensive discovery.   Plaintiffs propounded numerous requests for production of documents, along with interrogatories and requests for admissions on Defendants.   Plaintiffs also served and prepared subpoenas to be served on multiple third-parties.  Sosa Decl. at ¶ 24.  As a result of this formal discovery, Plaintiffs' Counsel received and began reviewing over two million pages of documents.  *Id.* at ¶ 6. Moreover, Plaintiffs have obtained and reviewed publically available information and have responded to extensive written discovery served by Defendants, including responding to requests for production of documents, interrogatories, and requests for admission.  *Id.* at ¶ 6.  Each of the Plaintiffs sat for a deposition as well.  *Id.* at ¶ 23.

Based on this formal and informal discovery, Plaintiffs' Counsel has in-depth knowledge of the issues of this case. Although more remained to be done to prepare for Defendants' anticipated summary judgment motions and/or trial, Plaintiffs and their counsel understand the strength of the claims and potential risks, and believe, without hesitation, that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Thus, the extent of discovery conducted weighs heavily in favor of preliminary approval of the Settlement.

### 4.	The Risks of Establishing Liability

As noted herein, Plaintiffs' claims are complex and novel, and ERISA jurisprudence in this area is "neither mature nor uniform." *LaLonde*, 369 F.3d at 6. This created considerable uncertainty and risk for Plaintiffs in establishing liability in this action.

By way of example, the Second, Third, Fifth, Ninth, and Eleventh Circuits have all adopted a "presumption of prudence" for a company stock fund if it is mandated, or strongly encouraged, by the language of documents establishing an ERISA retirement plan, which can only be overcome with a showing of generally undefined "dire circumstances."[4] The Sixth Circuit, however, has found the presumption is more flexible than the Second, Third, Fifth, Ninth, and Eleventh Circuits.[5] When the First Circuit last addressed the question directly, in 2004, it declined to "lay down a hard-and-fast rule . . . based only on the statute's text and

---

[4]	*See, e.g., White v. Marshall & Ilsley Corp.,* 714 F.3d 980, 990 (7th Cir. 2013); *Lanfear v. Home Depot, Inc.,* 679 F.3d 1267, 1279 (11th Cir. 2012); *In re Citigroup ERISA Litig.,* 662 F.3d 128, 138 (2d Cir. 2011); *Quan v. Computer Scis. Corp.,* 623 F.3d 870, 881 (9th Cir. 2010); *Kirschbaum v. Reliant Energy, Inc.,* 526 F.3d 243, 254 (5th Cir. 2008); *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995).

[5]	*See Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 595 (6th Cir. 2012) ("In contrast to our sister circuits, we have not adopted a specific rebuttal standard that requires proof that the company faced a dire situation, something short of the brink of bankruptcy or an impending collapse. The rebuttal standard adopted in this Circuit, and the one which we are bound to follow, requires a plaintiff to prove that a prudent fiduciary acting under similar circumstances would have made a different investment decision.") (internal quotation marks omitted).

history, the sparse pleadings, ***and the few and discordant judicial decisions discussing the issue***

*. . . .*" *LaLonde,* 369 F.3d at 6 (emphasis added).  *LaLonde,* however, was decided before the

doctrine had been adopted by the Second, Fifth, Seventh, Ninth and Eleventh Circuits.  Indeed,

the First Circuit's latest pronouncement on the issue, *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 10

(1st Cir. 2009), does not provide great comfort that the First Circuit will not apply that

presumption in the future.  While Plaintiffs prevailed on this issue in opposing Defendants'

motion to dismiss and multiple motions for reconsideration, Judge Barbadoro's opinion was

premised on the lack of any further guidance from the First Circuit post-*LaLonde.  See In re*

*Textron, Inc. ERISA Litig.*, No. 09-cv-383, 2011 U.S. Dist. LEXIS 100209, at *24 (D.R.I. Sept.

6, 2011) (internal citations omitted) ("[a]bsent further guidance from the court . . . I decline to

apply a presumption of prudence in analyzing plaintiffs imprudent investment claim.").  It is

entirely possible that Plaintiffs could establish liability and damages at trial only to have the

same overturned on appeal because of a decision by the Court of Appeals that the presumption

should be applied, either at the motion to dismiss stage or on the merits.

    If the case were tried, Plaintiffs would face additional risk and uncertainty.  To the best of

Plaintiffs' knowledge, only four ERISA company stock fund cases have been tried, with defense

verdicts in each trial.[6]  Although Plaintiffs believe that they would be able to establish liability,

they are mindful that Judge Barbadoro cautioned their imprudent investment claim allegations

---

[6]  *See DiFelice v. U.S. Airways, Inc*., 436 F. Supp. 2d 756 (E.D. Va. 2006), *aff'd,* 497 F.3d 410
(4th Cir. 2007) (The Fourth Circuit affirmed the district court's ruling that defendants did not
breach ERISA mandated fiduciary duties by continuing to offer company stock as plan
investment option.); *Nelson v. IPALCO Enters, Inc*., 480 F. Supp. 2d 1061 (S.D. Ind. 2007)
(Court determined Defendant fiduciaries did not breach their fiduciary duties under ERISA by
failing to remove company stock as a plan investment option*.); Brieger v. Tellabs, Inc*., No. 06-
cv-1882, 2009 WL 1565203 (N.D. Ill. June 1, 2009) (same);  *Langraff v. Columbia Healthcare
Corp*., No. 98-cv-0090, 2000 U.S. Dist LEXIS 21831 (M.D. Tenn. May 24, 2000) *aff'd* 30 Fed.
Appx. 366 (6th Cir. 2006) (same).

are "minimally sufficient to survive a motion to dismiss" under Fed. R. Civ. P. 8, and characterized the decision as a "close one." *In re Textron,* 2011 U.S. Dist. LEXIS 100209, at *24-26. Plaintiffs thus faced both the risk of not being able to prove their allegations and the prospect of proving their allegations but finding that, while their allegations were sufficient to meet their pleading burden, the allegations are insufficient to establish liability. This factor thus strongly favors settlement.

### 5.      The Risks of Establishing Damages

Assuming, *arguendo*, that Plaintiffs established liability, they also faced substantial risk in proving damages. ERISA requires the breaching fiduciaries to return to the plan the difference between what the challenged imprudent investment earned and what would have been in the plan had the imprudent investment option had not been offered. *See, e.g., Evans v. Akers*, 534 F.3d 65, 70-72 (1st Cir. 2008); *Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 301 (3d Cir. 2007) ("the measure of damages is the amount that affected accounts would have earned if prudently invested").

In general, the calculation of "ERISA" damages would be "complex, time-consuming and expensive." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004). As an initial matter, Plaintiffs would need to establish the precise dates during which the stock was an imprudent investment for the Plan. Furthermore, even if the Court found that the stock was imprudent during this period, some courts have suggested that it might, based upon a plaintiffs' proofs, only be appropriate to assess damages based on shares ***purchased*** by the Plan during that period, rather than including the shares that the Plan purchased earlier and merely held during the period. *See, e.g., In re Schering-Plough Corp.*, No. 08-cv-1432, 2012 U.S. Dist. LEXIS 75213, at *16 (D.N.J. May 31, 2012) ("Plaintiff faces many uncertainties regarding the proof of damages. For instance, if only Company Stock added to the Plans was considered in the

damages analysis, and not full liquidation of all Company Stock in the Plans, the damages amount would likely be under the amount currently sought.").

Regardless of the length of the period of imprudence or the number of shares included, Plaintiffs would need expert testimony to calculate damages, requiring a sophisticated computer model to track the purchase and sale of assets held by the Plan and its participants.  These calculations must be made for each participant's account as well as the Plan as a whole.  An expert must create a reliable and legally admissible model, which he or she must then test and be able to effectively present to the court.  This intricate and complex process creates the possibility of glitches and can have unexpected results.  This type of complexity favors early resolution. *See In re Milken & Assoc. Sec. Litig*., 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement and noting that damage calculations are often a "battle of experts at trial, with no guarantee of the outcome"); *Bonime v. Doyle*, 416 F. Supp. 1372 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 555 (2d Cir. 1977) (difficulty in determining damages a factor supporting settlement).

Here, the $4.375 million Cash Settlement provides valuable relief.  Once approved, the Settlement Fund will be allocated to each eligible Settlement Class Member's account without any further action being taken by the Settlement Class Members.  Thus, on balance, the risk of continued litigation compared with the form of relief favors approval of the Settlement.

### 6.    The Risks of Maintaining the Class Action Through the Trial

Plaintiffs' motion for class certification was pending and had not yet been opposed at the time of settlement.  Defendants took significant class-related discovery and it appeared that they were prepared to oppose Plaintiffs' motion on multiple grounds and possibly include expert testimony.  (Dkt. No. 109).  While Plaintiffs' Counsel believe that, had the matter been decided by the Court, this action by participants of the retirement plan would have prevailed on class certification, there is always a risk that the Court would have denied Plaintiffs' motion, and "the

11

uncertainty surrounding class certification supports approval of the Settlement." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 140 (S.D.N.Y. 2010) (citations omitted).

**7.    The Ability of the Defendants to Withstand a Greater Judgment**

Defendants could withstand a larger judgment, but that is not an obstacle to approving the Settlement.   "'The fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate.'"   *In re Global Crossing*, 225 F.R.D. at 460 (quoting *In re PaineWebber P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997)).   This is especially applicable where, as in this case, the other applicable factors weigh heavily in favor of settlement approval.

Here, there are tens of thousands of class members employed at Textron who will benefit from the Settlement.   It is clearly not in their interest to materially adversely damage the Company's finances.   *See In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 446 (D.N.J. 2004) ("Class needed a recovery substantial enough to compensate them for their severe losses, yet harmless enough to protect the Company as a viable corporate entity.").

**8.    The Range of Reasonableness of The Settlement Fund in Light of the Best Possible Recovery**

In discussing Plaintiffs' "best possible recovery" it is important to keep in mind that:

> [s]everal factors dictated a relatively wide range of potentially recoverable damages in this case.   For example, one significant factor would have been the Court's determination of the "breach" date—that is, the date on which Defendants knew or should have known that MMC stock was an imprudent investment for participants' retirement assets.   Plaintiffs allege that MMC common stock was an imprudent investment for the Plan from the beginning of the Class Period, and that losses to the Plan therefore should be calculated from July 1, 2000 to January 31, 2005.   Defendants almost certainly would have attempted to establish a breach date far later in the Class Period [assuming that liability is established].
>
> In addition, the amount of any recovery would have depended on various other circumstances and determinations, such as the possibility that

> MMC's stock price would increase, causing the Plan's losses to decrease accordingly; the Court's decision as to which measure to use when calculating damages; and the Court's determination as to whether "holder" losses are available.

*In re Marsh ERISA Litig.*, 265 F.R.D. at 141. Plaintiffs are also cognizant that their Class Period overlaps with the "Great Recession," which could impact damages calculations. In Plaintiffs' "best case" scenario – a scenario which assumes that any decreases in Textron's stock price are not related to external factors like the "Great Recession," the "breach" date is the first day of the class period, the best performing alternative plan investment is used as a measuring stick for damages, holder losses are available, and so on – damages could be substantial because there was a large amount of Textron stock in the Plan and there was a large decline in the price of the stock.

On the other hand, if the Court were to determine that damages should only be calculated for shares of Textron stock purchased by the Plan ***during the Class Period*** (eliminating "holder" damages altogether), Plaintiffs' maximum damages would have fallen to somewhere between $40 million and $80 million, depending upon the alternative investment used. This number could have been much lower if Defendants successfully convinced the Court that Plaintiffs' alleged period of imprudence was too long, or that a worse-performing "alternative investment," such as a blend of alternative Plan investments, should be used to calculate damages.

In light of the substantial variations on potential damages, this factor weighs in favor of the Settlement.

### 9. The Settlement Is Within the Range of Reasonableness Considering all the Attendant Risks of Litigation

In light of the attendant risks of continued litigation, including the wide fluctuations in the range damages recoverable depending on various factors and the chance that liability would not be established, the Settlement is reasonable. The amount of the recovery must be weighed

against the obstacles to any recovery in the litigation.  *See Bussie v. Allmerica Fin. Corp.,* 50 F. Supp. 2d 59, 76 (D. Mass. 1999) (approving settlement where plaintiffs faced several significant, viable legal defenses "any one of which, if successful, could result in entry of a judgment *with prejudice* against the Class.") (emphasis in original).  The $4.375 million proposed Settlement is fair, reasonable and adequate, and well within the range of possible approval based on a recoverable damages analysis alone, and especially when considering the risks of establishing liability.

     **B.**     **The Court Should Approve the Plan of Allocation**

Approval of a plan for the distribution of settlement proceeds in a class action is governed by the same standards as approval of the settlement as a whole: it must be fair and adequate.  *In re MicroStrategy, Inc. Sec. Litig.,* 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1284-85 (9th Cir.1992) and *In re Oracle Sec. Litig.,* No. 09-cv-931, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994)).  An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.  *In re Veeco Instruments Inc. Sec. Litig.,* No. 05-MDL-1695 2007 U.S. Dist. LEXIS 85629, at *39 (S.D.N.Y. Nov. 7, 2007); *White v. NFL,* 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), *aff'd,* 41 F.3d 402 (8th Cir. 1994).

Under the Plan of Allocation, the Net Proceeds will be allocated to Settlement Class Members on a *pro rata* basis such that the amount received by each Settlement Class Member will depend on the loss in his or her Plan account, relative to the losses of other Settlement Class Members in their Plan accounts.  The relative loss is calculated based on (A) the value of the participants' Plan account interest in the Textron Stock Fund at the beginning of the Settlement Class Period plus (B) the amount invested in the Textron Stock Fund during the Settlement Class Period minus (C) the amount withdrawn from the Textron Stock Fund during the Settlement

Class Period minus (D) the value of the participant's Plan account at the end of the Settlement Class Period.  No Settlement Class Member or group is singled out for either disproportionately favorable or unfavorable treatment; all participate in recoveries pursuant to the plan of allocation in the same objective manner.

This is substantially the same plan of allocation approved and used in the vast majority of ERISA company stock fund ERISA cases.  *See, e.g., In re Delphi Corp. Secs., Derivative & ERISA Litig.*, 248 F.R.D. 483, 491-93 (E.D. Mich. 2008) (approving a materially similar plan of allocation); *In re AOL Time Warner ERISA Litig.*, No. 02-cv-8853, 2006 WL 2789862, at *10 (S.D.N.Y. 2006) (approving materially identical plan of allocation where "Class members will have their recovery calculated according to the decrease in value of their Plan holdings during the Class Period.  All Class members are treated equally under the formula . . . ."); *In re Worldcom, Inc. ERISA Litig.*, No. 02-cv-4816, 2004 U.S. Dist. LEXIS 20671, at *29 (S.D.N.Y. Oct. 18, 2004) (approving plan of allocation based on the "proportional share of the loss of each participant"); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006) (same); *In re Worldcom, Inc. ERISA Litig.*, No. 02-cv-4816, 2005 WL 2035496, at *1 (S.D.N.Y. Aug. 24, 2005) (ordering plan of allocation materially the same as that proposed here).

Accordingly, the Plan of Allocation is fair and reasonable, and should be approved by the Court.

### C.   Notice to the Settlement Class Was Adequate

Pursuant to the Court's Preliminary Approval Order, on September 3, 2013 Textron provided the names and last-known addresses for approximately 34,000 Settlement Class Members to the Claims Administrator, and on September 17, 2013, the Settlement Administrator sent the long-form Notice of Class Action Settlement approved by the Court to each of the individuals on the list by first-class mail, postage pre-paid.  Gilardi Decl. at ¶¶ 4-8.  Additionally,

the Claims Administrator published the Summary Notice approved by the Court through *PR Newswire.  Id.* at ¶ 13.   Subsequently, the Claims Administrator received the names and addresses for approximately 23,000 additional potential Class Members that will be mailed on November 8, 2013. *Id.* at ¶ 9.

Each form of notice contained a toll-free number for class members to call if they had any questions or concerns regarding the proposed Settlement.  The toll-free number permitted Class Members to leave a voice message if they had further questions.

Counsel has also supervised the launching and maintenance of the dedicated settlement website, http://www.gilardi.com/TextronERISASettlement/ by Gilardi, which has links to certain case documents, answers to frequently asked questions, and contact information.  Additionally, the Court maintained a link to important case and settlement documents on its website.

Counsel have received no objections thus far related to the Settlement, but timely objections may still be filed.

**D.      Certification of the Settlement Class Is Appropriate**

**1.      The Proposed Class Meets the Prerequisites for Class Certification under Rule 23(A)**

In connection with granting preliminary approval of the Settlement, the parties have stipulated to a proposed Settlement Class.  Class certification must meet the requirements of Fed. R. Civ. P. 23, regardless of whether certification is sought pursuant to a contested motion or, as here, pursuant to a settlement. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 619-29 (1997).  To effectuate the Settlement, Plaintiffs seek:  (i) the designation of the Plaintiffs as representatives of the Settlement Class; (ii) the designation of Class Counsel for the Settlement Class; and (iii) conditional certification of a non-opt-out class in the Action pursuant to Rule 23(b)(1), defined as follows:

> All Persons who were participants in or beneficiaries of the Plan at any
> time between July 17, 2007 and December 31, 2011, and whose accounts
> included investments in the Textron Stock Fund and were damaged
> thereby.  Excluded are Defendants and their Immediate Family Members,
> any entity in which a Defendant has a controlling interest, and their heirs,
> Successors-in-Interest, or assigns (in their capacities as heirs, Successors-
> in-Interest, or assigns).

The starting point for seeking certification of a class is to first determine if the proposed

Class satisfies all the criteria for class certification under Federal Rule of Civil Procedure 23(a):

(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

### a.  Numerosity

Rule 23(a) permits class treatment where "the class is so numerous that joinder of all

members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The threshold to establish numerosity is

low.  *See Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 264 (D.

Mass. 2008) (numerosity satisfied where the class was comprised of 1,500 members).  Here, the

Plan's filings with the Department of Labor show that there were at least 38,884 Participants as

of January 1, 2008, and it is evident that, based upon Plan balances, at least tens of thousands of

those Participants must have held Company Stock in their Plan accounts during the Class Period

in that they collectively held some $1.6 billion in the Textron Stock Fund at year end 2007,

which is, on average greater than $41,000 per Participant.  As the Court found in *Kinney v.*

*Metro Global Media, Inc.*, No. 99-cv-579, 2002 U.S. Dist. LEXIS 18628 (D.R.I. Aug. 22, 2002),

"[b]y sheer virtue of the fact that Metro Global stock was traded over the Nasdaq small cap

market during the class period (over three years), and that during that time thousands, if not

millions, of the shares were traded, common sense dictates that the proposed class is very large."

*Id.* at *11.  The same is true here.

### b.  Commonality

The proposed Settlement Class also easily satisfies Rule 23(a)(2), which requires "questions of law and fact common to the class."  Actions involving breach of fiduciary duties under ERISA often present common questions of law and fact.  *Payne v. Goodyear Tire & Rubber Co.,* 216 F.R.D. 21, 25 (D. Mass. 2003).  Here, there are common questions concerning Defendants' alleged breaches of fiduciary duty under ERISA, such as whether Defendants were fiduciaries and whether the Textron Stock Fund was a prudent Plan investment option that predominate over any individual issues of law and fact.

### c.  Typicality

The Plaintiffs' claims are also typical of the claims of the Settlement Class, as required by Rule 23(a)(3).  Rule 23(a)(3)'s typicality requirement asks whether the representative plaintiffs and putative class members' claims arise from the same practice or course of conduct engaged in by the defendants and whether their claims are based on the same legal theory.  *See Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005).  Factual distinctions between the plaintiffs and putative class members' claims will not destroy typicality as long as they have the same essential characteristics.  *See Id.* at 260; *see also In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991).  Each of the Plaintiffs were employed by Textron and were Plan participants or beneficiaries whose claims arise from their holding of Company stock in their respective Plan accounts during the Class Period.  Plaintiffs' claims are identical to the legal claims belonging to all Settlement Class members and they would present proof of Textron's liability on the basis of common facts underlying those claims.

### d.  Adequacy

Rule 23(a)(4) requires that the class representatives will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  To fulfill this requirement, two factors must be

satisfied: "[t]he moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). Together, these elements require that both counsel and representatives be able to zealously represent and advocate on behalf of the Settlement Class as a whole. *Id.*

Both prongs of the adequacy requirement are met. Plaintiffs' interests are fully aligned with those of absent class members because they bring the same claims for the same remedies under the same legal theories, and each will get their *pro rata* share under the Plan of Allocation (disregarding any incentive awards the Court sees fit to award Plaintiffs). Moreover, Plaintiffs' adequacy is also demonstrated by their active participation, including their production of documents, answering of interrogatories, and giving of depositions, among other activities. Their dedication to the case and the Settlement Class is clear. There is no antagonism between the Plaintiffs and the Settlement Class; all seek to increase the value of the Plan's holdings, and thus the holdings in their individual Plan accounts, as much as they can.

The second prong of the adequacy requirement is also met, as Plaintiffs' Counsel have vigorously prosecuted the Action as discussed above. Plaintiffs' Counsel have extensive experience in class actions on behalf of employees, and actions based on alleged violations of ERISA. Plaintiffs' Counsel have sufficient knowledge about the applicable law of both class actions in general and ERISA cases and have devoted ample resources to the prosecution of the Actions. *See* Sosa Decl., ¶ 59 and Exhibits 2-9, which contain the firm résumés. Accordingly, the adequacy requirement is satisfied.

## 2. The Settlement Class Should also Be Certified Under Fed. R. Civ. P. 23(b)(1)

Under Rule 23(b)(1), a class may be certified if the prosecution of separate actions would create a risk of inconsistent judgments that would establish incompatible standards of conduct for Defendants or if adjudication of individual members' clams would be, as a practical matter, dispositive of the claims of other class members.  Fed. R. Civ. P. 23(b)(1).  The representative nature of claims under Section 502(a)(2) has led courts in the First Circuit to certify ERISA fiduciary breach cases under Rule 23(b)(1)(B).  *See, e.g.*, *In re Tyco Int'l Ltd.*, No. 02-cv-1357, 2006 U.S. Dist. LEXIS 58278, at *30 (D.N.H. Aug. 15, 2006) (certifying 23(b)(1) class); *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 104-106 (D. Mass. 2010) (same).

As was discussed at length in the motions supporting preliminary approval, Plaintiffs respectfully submit that there is both good reason and just cause to certify the case for settlement purposes only under Rule 23(b)(1) because, *inter alia*:  (i) the relief obtained in this case is for the benefit of the Plan and not any one Plan participant; (ii) the Settlement proceeds will be allocated to all participants on a *pro rata* basis; (iii) the release resolves the total liability of the fiduciaries to the Plan; and (iv) Defendants do not oppose Rule 23(b)(1) certification for settlement purposes only.

Accordingly, the claims should be certified under Rule 23(b)(1), the Plaintiffs should be designated as representatives of the Settlement Class, and Milberg LLP were properly designated as class counsel for the Settlement Class.

## E. Plaintiffs' Request For Attorneys' Fees And Expenses Should Be Granted

For their efforts in creating a common fund for the benefit of the Settlement Class, Class Counsel and other Plaintiffs' Counsel seek an award of reasonable attorneys' fees and expenses.

The Supreme Court has recognized that recovery of such fees and expenses are appropriate.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in an amount, that were necessary to bring the action to a climax").

The determination of the appropriate amount of attorneys' fees and expenses rests in the court's sound discretion.  *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 302 (1st Cir. 1995) ("*Thirteen Appeals*") (court has substantial discretion in evaluating fairness of fees); *see also Baptista*, 859 F. Supp. 2d at 242 (a "trial court has considerable discretion when awarding attorney fees").  It has been recognized that awarding attorneys' fees from a common fund furthers ERISA's policies by providing prospective relief to plaintiffs and an economic incentive to attorneys to bring meritorious ERISA cases.  *See, e.g. Kling v. Fidelity Mgm't*, No. 01-11939, slip op. at 4 (D. Mass June 29, 2006) (granting requests for attorneys' fees based on common fund doctrine).[7]

### 1.     The Requested 30 Percent Fee Award Is Fair and Reasonable

Although the First Circuit has not established specific factors to assess a common fund fee request, district courts including this one have considered the following factors:  (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *Baptista*, 859 F. Supp. 2d at 242.

---

[7]     A compendium of the slip opinions and orders referenced herein is being filed contemporaneously herewith as Exhibit 14.

Plaintiffs' Counsel respectfully submit that the requested fee in this case—30% of the Gross Settlement Fund ($4.375 million), which if awarded would represent approximately 30% of Plaintiffs' Counsel's total lodestar—is fair and reasonable, particularly in light of the extensive efforts and risks fared over the course of four years of litigation, and it is well within the range of fees awarded by courts in this and other circuits.

### a.      Time and Labor Expended by Counsel

The requested fees are fair and reasonable and should be approved.  In this Court it is appropriate to evaluate the fee award using the lodestar method or by using a reasonable percentage of the fund.  *See Baptista*, 859 F. Supp. 2d at 242.  Either method confirms that the fee requested by Class Counsel is reasonable and should be approved.  Under the lodestar method, a court engages in a two step analysis:   first to determine the lodestar, the court multiplies the number of hours spent by the reasonable rate; and second, the court adjusts the lodestar (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorney's work.

As set forth in the Sosa Declaration, Plaintiffs' Counsel dedicated substantial time and effort to this Action, resulting in the lodestar of approximately $4.43 million.  The requested fee amount, 30% of the total recovery is approximately $1.3 million.  The Action was litigated over the course of four years and involved thorough investigation, complicated motion practice on the motion to dismiss, motions for reconsideration and class certification, extensive and contested negotiations and motion practice related to discovery, and careful oversight of settlement process.

The hourly rates of Plaintiffs' Counsel that were used to generate the lodestar are reasonable and appropriate.   Reasonable hourly rates are determined by reference to the prevailing market rates charged by attorneys of comparable skill and experience in the

22

community.  The Supreme Court has held that the hourly rate to be applied is calculating the lodestar is that which is normally charged in the community where the attorneys practices.  *See, e.g., Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The relevant legal community is the national market for complex class-action firms with the skill and resources to undertake contingent litigation of this magnitude and to do so for years at a time without any assurance of payment. Plaintiffs' Counsel are among the most prominent, experienced and well regarded class action litigators in the nation.  A nationwide market is also appropriate given that Defendants retained firms of national scope, including the New York and Washington, D.C. offices of Gibson, Dunn & Crutcher LLP.

It is appropriate to calculate Plaintiffs' Counsel's lodestar at current billing rates, as the use of current rates offsets the delay between counsel's expenditure of time and a court's award of attorneys' fees.  The Supreme Court has recognized that in cases such as this, where counsel's entitlement to attorney's fees must await the conclusion of the case several years after the services are rendered, courts typically offset the delay in payment by either basing the award on current, instead of historical billing rates, or by adjusting historical fees to account for their present value (i.e., by awarding prejudgment interest on the fee award).  *See Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989).

The number of hours expended by Plaintiffs' Counsel is reasonable in light of the length of the Action, the hard-fought nature of the litigation, and the complexity of the issues involved. Class Counsel sought throughout this litigation to avoid duplication of effort by counsel.  Time is only being submitted on behalf of Class Counsel and other Plaintiffs' Counsel.  Several other firms, Harwood Feffer LLP, Kessler, Topaz, Metzler & Check, LLP, Wolf Haldenstein Adler Freeman & Herz LLP, and Johnson & Weaver, LLP, also have time in the case, but are only

seeking expenses as part of this motion.  Their portion of the fee award, if any, will be distributed in accordance with the agreement between all counsel regarding fee.[8]

### b.        Magnitude and Complexities of the Litigation

The complexity of the litigation is another factor courts examine in evaluating the reasonableness of attorneys' fees requested by class counsel.  *Baptista*, 859 F. Supp. 2d at 242; *see also In Re Lupron Mktg. and Sales Practices Litig.*, No. 01-cv-10861 2005 U.S. Dist. LEXIS 17456, at *12 (D. Mass. Aug. 17, 2005) (considering same).  It is widely recognized that ERISA class actions are complex, involving the application of an intricate statutory scheme.  *See LaLonde*, 369 F.3d at 6 (ERISA breach of fiduciary duty actions are an "important and complex area of law … [that] is neither mature nor uniform."); *see also Zilhaver v. United Health Group, Inc.*, 646 F. Supp. 2d 1075, 1083 (D. Minn. 2009) (approving settlement of ERISA breach of fiduciary duty case noting that ERISA cases "present[ ] complex legal and factual issues.").

As described herein, in the Sosa Declaration, and in the prior submission supporting preliminary approval, the Action involved many complex issues, many of which were being decided against a changing and often unfavorable legal landscape.  Indeed, the Action had already been litigated for more than three years when the parties entered into the Settlement Agreement.  After Plaintiffs filed Complaint in February 2010, Defendants moved to dismiss. The case was then administratively transferred to New Hampshire.  Judge Barbadoro considered complex questions concerning:  (i) who qualified as a fiduciaries of the Plan; (ii) the duties these fiduciaries had to participants of the Plan; (iii) the obligations these fiduciaries had to the participants of the Plan; (iv) the extent to which each fiduciary could be held liable for losses

---

[8]  Plaintiffs' Counsel anticipate that they will spend additional time in connection with the Fairness Hearing before this Court and in connection with the administration of the Settlement, but they will not seek additional fees for those efforts and those expected future hours are not included in the time summaries submitted.

incurred by the Plan; and (v) how damages should be measured.  *See In re Global Crossing*, 225 F.R.D. at 456 ("Fiduciary status, the scope of fiduciary responsibility, the appropriate response to the Plans' concentration in company stock and [company] business practices … would substantially increase the ERISA cases' complexity, duration, and expense -- and thus militate in favor of settlement approval.").

Judge Barbadoro granted Defendants' motion in part, and denied in part, allowing Plaintiffs to proceed on their prudence and omissions claims.[9]  Defendants made two motions seeking reconsideration, neither of which was granted.  Subsequently, the parties embarked on discovery, which proved challenging at every turn.  The parties disagreed over the proper scope of discovery responses and production and motions to compel were filed regarding same.  Class Counsel pushed to get documents and spent thousands of hours analyzing and digesting both the millions of pages documents that were included in Defendants' production and those that were not produced but were otherwise publicly available.  Plaintiffs' Counsel also pursued certification of a class and defended, along with Plaintiffs' Counsel, the contentious depositions of the four named Plaintiffs.  That motion, which would have implicated many complex issues in its resolution, was pending at the time the parties agreed to mediation.

In sum, this highly complex case has been extensively litigated and vigorously contested over an extended period of time.  Despite the difficulty of the issues raised, Plaintiffs' Counsel secured an excellent result for the Settlement Class.  As a result this factor weighs in favor of the requested fee award.

---

[9]  Importantly, while permitting several claims in this ERISA action to proceed, Judge Barbadoro dismissed an action involving related claims pursuant to §10(b) of the Securities Exchange and an action bringing derivative claims on the pleadings.

c.       The Risks of the Litigation

(i)       Success on the Merits Was Far from Guaranteed

Although Plaintiffs and Class Counsel strongly believe in the merits of the Action, the Plan and the proposed Settlement Class faced a very real risk of recovering nothing at all if the case continued.  As was discussed at length in the papers supporting preliminary approval, and above in connection with the factors for approving settlement, there were many risks related to developing ERISA law that could have precluded ultimate success in the First Circuit.

Moreover, given the developments in other Circuits on the presumption of prudence, liability of the underlying prudence claim could turn on whether the Court found that Textron's situation was sufficiently "dire" to overcome the presumption.  While some metrics pointed to a dire situation, Textron's stock price was over $10 per share during all but a couple months of the class period as alleged in the Complaint and never dipped below $5 per share.  Moreover, Defendants would argue that Textron's circumstances were substantially less dire than in other cases where courts granted motions to dismiss.  And there was, based upon discovery to date, a substantial risk that the Court would find Defendants had not violated their duty of prudence— or, if they *had*, that the Court would have found that the period of imprudence was far shorter than Plaintiffs had alleged, substantially reducing recoverable damages.

These factors suggest a high degree of risk of no recovery at all and accordingly, Plaintiffs' counsel went into the mediation believing that the settlement value of the case was somewhere in the low-to-mid-seven figures.

(ii)       The Contingent Nature of Counsel's
Representation Also Supports the Fee

Class actions present even more substantial risk than other forms of litigation.  *See In re Tyco Int'l Ltd.*, 535 F. Supp. 2d 249, 268 (D.N.H. 2007) ("Co-Lead Counsel, it must be

remembered, took this case on a wholly contingent basis.  Had they lost on summary judgment or fallen short of establishing liability at trial, they would have lost the tens of millions of dollars in expenses and all of the attorney time that they collectively invested in the case."); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 87 (D. Mass. 2005) ("As class counsel notes, indeed, when Class Counsel undertook representation of the End Payor Purchaser Class there were no assurances that any fees would be received.  Class Counsel were aware that they would likely have to expend thousands of hours, and hundreds of thousands dollars, in prosecuting this case over an extended period of time before having even a possibility of recovering a fee.  Class Counsel alone bore the risk of the case being dismissed at the pretrial stage, of not prevailing at trial, or even losing on appeal."); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 50 F. Supp. 2d 100, 104 (D.P.R. 1999) ("[C]ounsel have undertaken this litigation subject to substantial risks of loss on the merits and have devoted many hours to the prosecution of this cause with virtually no assurances of payment of their fees.").

The reasonableness of the requested fee is supported by an evaluation of the risks undertaken by Plaintiffs' Counsel in prosecuting this complex ERISA class action.  Plaintiffs' Counsel undertook this action on a wholly contingent basis, investing a substantial amount of time and money to prosecute this action with no guarantee of compensation or even the recovery of out of pocket expenses.  Unlike counsel for Defendants, who are paid hourly rates and reimbursed for their expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any of their time or expenses since this case began, and would have received no compensation or reimbursement of expenses had this case not been successfully resolved.

From the outset, Plaintiffs' Counsel understood they were embarking on a complex, expensive, and lengthy litigation with no guarantee of every being compensated for the

enormous investment of time and money the case would require.  Plaintiffs' Counsel were obligated to assure that sufficient attorney and paraprofessional resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and to pay for the considerable out of pocket costs a case such as this entails.  Because of the nature of a contingent practice where cases predominately complex and last several years, not only do contingent litigation firms have to pay regular overhead, but they must also advance the expenses of the litigation.  Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.  The factor labeled by courts as "the risks of litigation" is not an empty phrase.  It is only because defendants and their counsel know that Plaintiffs' Counsel, as leading members of the plaintiffs' bar, are prepared to, and will, force a resolution the merits and go to trial, and pursue appeals as necessary, that meaningful actions such as this case occur and provide relief to class members.

### d.      The Quality of Representation

The attorneys representing the proposed Settlement Class are experienced litigators and have fully demonstrated their knowledge, skill and efficiency during this proceeding.  Plaintiffs' Counsel are nationally known leaders in the field of complex representative litigation, including ERISA class action litigation.  *See* Sosa Decl. ¶ 59 and Exhibits 2 - 9.  The quality of Plaintiffs' Counsel's work in this case is apparent from the vigorous prosecution of this case over the course of nearly four years.  As a result of Plaintiffs' Counsel's diligent efforts and their skill and expertise, Plaintiffs' Counsel were able to negotiate an excellent Settlement for the Settlement Class.

As detailed in the Sosa Declaration, Plaintiffs' Counsel conducted an extensive pre-filing investigation that included witness interviews and a thorough review of publicly available information.  As a result of their efforts, Plaintiffs' Counsel were able to plead detailed and

unique allegations and defeat, in great part, Defendants' motion to dismiss as well as their motions for reconsideration.  Plaintiffs' Counsel engaged in extensive negotiations with Counsel for Textron to develop a discovery plan and to establish the appropriate scope of discovery. Plaintiffs also issued a subpoena to a non-party.  Despite the discovery disagreements between the parties, Plaintiffs' Counsel were adept at continuing their pursuit for relevant discovery and were in the process of attempting to procure additional documents, preparing for depositions and were always willing, as was made clear to Defendants, to take the Action to trial if necessary.

Plaintiffs' Counsel also demonstrated the quality of their work in successfully achieving the Settlement totaling $4.375 million on behalf of the Settlement Class in the face of potential weaknesses in the case and highly qualified opposing counsel.  Indeed, the quality and vigor of opposing counsel is an important factor in evaluating the quality of the services rendered by plaintiffs' counsel.  *See, e.g., In re Computation Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998) (performance and quality of opposing counsel was a factor in determining the appropriate fee).  Here, Defendants were represented vigorously by experienced and able counsel from Gibson, Dunn & Crutcher LLP, a prominent and highly respected firm with ample resources, who proved themselves formidable opponents throughout the Action.

### e.      The Size of the Fee Compared to Size of the Settlement

The proposed Settlement is very beneficial to the Settlement Class.  Pursuant to the parties' Settlement Agreement, the Settlement Class will obtain an immediate benefit of $4.375 million minus fees and expenses.  A fee of 30% has been found to be within an approximate range applied by courts in the First Circuit.

Courts have repeatedly found that a significant factor in setting attorneys' fees is the result obtained for the class.  *See Manual for Complex Litig.* 4th, §14.121 (2004) (factor given the "greatest emphasis is the size of the fund created, because 'a common fund is itself a measure

of success. . .[and] represents the benchmark from which a reasonable fee will be awarded.'") (quoting *4 Alba Coute v. Herbert Newberg*, *Newberg* on Class Action, § 14.6, at 547, 550 (4th Ed. 2002)).  After deducting notice and administration costs, if the requested attorneys' fee and costs and contribution awards are approved, qualified Settlement Class Members will receive payments that average approximately $100.  Although the Settlement Fund amount of $4.375 million is a substantial recovery for the Settlement Class, in the realm of reported decisions, it is on the small end.  This fact makes a higher percentage award not only logical, but fair and acceptable.  In fact, an award of 30% is consistent with attorneys' fees awarded by Courts in this Circuit and elsewhere.  *See, e.g. Mazola*, 1999 WL 1261312, at *4 ("[I]n this Circuit, percentage fee awards range from 20% to 35% of the fund); *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 109 (D.R.I. 1996) (same); *Overby v. Tyco Int'l Ltd.*, 02-1357, slip op at 1 (D.N.H. Nov. 23, 2009) (30%  fee award of recovery); *Relafen*, 231 F.R.D. at 82 (33-1/3% fee award).

Moreover, the requested fee is in line with percentages that have been awarded in other ERISA company stock fund cases nationwide.  *See, e.g., Hochstadt v. Boston Scientific Corp.*, No. 08-cv-12139 (D. Mass Aug. 11, 2010) (33-1/3% of the fund); *Shanechian, et al. v. Macy's, Inc.*, 07-cv-828 (S.D. Ohio June 25, 2013), (30%); *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432 (D.N.J. May 31, 2012) (1/3 of common fund); *Morrison v. Moneygram Int'l, Inc.*, No. 08-cv-1121 (D. Minn. May 20, 2011) (1/3); *Coppess v. Healthways, Inc.*, No. 10-cv-109 (M.D. Tenn. Apr. 25, 2011)  (33.3%); *In re Radioshack Corp. ERISA Litig.*, No. 08-cv-1875 (N.D. Tex. Feb. 8, 2011)  (33.3%); *Moore v. Comcast Corp.*, No. 08-cv-773 (E.D. Pa. Jan. 24, 2011)  (awarding 33% fee); *In re Merck & Co. Vytorin ERISA Litig.*, No. 08-cv-285, 2010 U.S. Dist. LEXIS 12344, at *42 (D.N.J. Feb. 9, 2010) (awarding 33.3% fee); *In re Marsh ERISA Litig.*, No. 04-cv-8157 (S.D.N.Y. Jan. 29, 2010) (one-third); *Graden v. Conexant Sys., Inc.*, No.

05-cv-695 (D.N.J. Sept. 11, 2009) (33% fee); *Milliron v. T-Mobile USA, Inc.*, No. 08-cv-4149, 2009 U.S. Dist. LEXIS 101201, at *24 (D.N.J. Sept. 10, 2009), *aff'd*, 423 F. Appx. 131 (3d Cir. 2011) (awarding 33.3% fee); *In re Syncor ERISA Litig.*, No. 03-cv-2446 (C.D. Cal. Mar. 30, 2009) (33.3%)*; In re MBNA Corp. ERISA Litig.*, No. 05-cv-429 (D. Del. Mar. 27, 2009) (33%); *In re Elec. Data Sys. Corp. ERISA Litig.,* No. 03-cv-126 (E.D. Tex. Aug. 6, 2008) (33.3%); *Eslava v. Gulf Tel. Co.*, No. 04-cv-297 (D. Ala. Nov. 16, 2007) (35%); *In re Aquila ERISA Litig.*, No. 04-cv-865 (W.D. Mo. Nov. 29, 2007) (33%).

### f.    Public Policy Consideration Supports the Requested Fee Award

Rewarding class action attorneys benefits society because most claimants in similar situations would not have the resources to litigate an individual case and the individual recoveries are often too small to justify the burden and expense of such complex litigation. During the four years that Plaintiffs' Class Counsel litigated the Action, they expended significant time and monetary resources, consulted with experts, and conducted extensive discovery.  Without the Action, it is highly unlikely that individual claimants would have the resources to pursue claims of this magnitude.  As discussed above, attorney's fees are not in excess of compensation at a reasonable billing rate and is balanced with the recovery to the Class Members whose retirement funds were protected by Plaintiffs' Counsel's effort

### F.    Counsel's Request For Reimbursement Of Expenses Should Be Granted

In addition to attorneys' fees, Plaintiffs' Counsel also respectfully request that the Court grant their motion of reimbursement of $162,757.34 in litigation expenses incurred by themselves and other Plaintiffs' counsel in connection with the prosecution of this litigation.  It is well-settled that attorneys who have created a common fund for the benefit of a class are entitled

to be reimbursed for their expenses in creating the fund.  *See In re Fidelity/Micron Sec. Litig.*, 167 F.3d at 736 (citing *Thirteen Appeals*, 56 F.3d at 309).  Reimbursing expenses is subject to the "Court's 'informed discretion,' guided by the principle of reasonableness and based on an individualized assessment of each request."  *Bapista*, 859 F. Supp. 2d at 244 (quoting *In re Fidelity/Micron Sec. Litig*., 167 F.3d at 737*)*.  The submitted expenses in this case were all reasonable, necessary, and directly related to the prosecution of the action.[10]

Plaintiffs' Counsel incurred expenses include, among others:  (1) fees charged by consulting experts; (2) costs of computerized legal and factual research; (3) costs for court reporters, transcripts and videos; (4) costs for the mediation services provided in this case; (5) litigation fund contributions; (6) filing and witness fees; (7) travel costs; (8) costs associated with photocopies, reproduction and printing of documents; (9) postage and notice costs; (10) telephone charges; and (11) costs of messengers and express services.  The expenses were reasonably incurred in light of the work performed, the legal and factual issues presented, the vigorous defense mounted by Defendants, and the results obtained.

The expenses for which Plaintiffs' Counsel seek reimbursement are the types of expenses routinely charged to hourly paying clients.  For example, a large portion of the expenses for which reimbursement is sought were incurred in payment for work performed by consulting experts on damage issues, which were strongly contested.  Other significant expenses include costs related to the processing, uploading and hosting of hundreds of thousands of pages of documents and online legal research services such as LexisNexis and Westlaw.  These legal research costs were necessary in light of the substantial motion practice that occurred in this litigation.

---

[10]   The expenses incurred in this litigation are described in further detail in the accompanying declarations of Plaintiffs' Counsel, attached as Exhibits 2-9.

The Court-approved notice provided to potential Settlement Class Members informed them that counsel intended to apply for the reimbursement of litigation expenses of up to $195,000.  The actual amount of expenses sought, $162757.34 is less than the amount stated in the Notice, to which there was no objection  Plaintiffs' Counsel respectfully request the Court approve the expense request.

### G.   The Proposed Case Contribution Awards Are Reasonable

Federal courts often exercise their discretion to approve case contribution awards to plaintiffs who instituted and prosecuted actions on the theory that there would be no class-wide benefit absent their suits.  "The purpose of the incentive awards is to compensate named plaintiffs for services they provided and the risks they incurred during the court of class action litigation." *Baptista*, 859 F. Supp 2d at 244 (internal quotations omitted) (approving an award of $2,000 at early, pre-discovery stage of litigation); *see also In re Relafen*, 231 F.R.D. at 82 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.").

Plaintiffs Alma I. Perez, Adrienne Harrington-Wheatley, Diana Leach, and Holly Sheets, as proposed representatives of the Settlement Class, have each spent a substantial amount of time assisting counsel and providing discovery.  They have each, reviewed multiple complaints and briefs, discussed litigation strategies with counsel, searched for and produced documents, answered interrogatories, prepared for, traveled to, and provided deposition testimony, and discussed mediation and settlement with counsel.  *See* Plaintiffs' Declarations submitted as Exhibits 10-13.

The Notice advised the Settlement Class that the Plaintiffs would seek up to $10,000 each as a case contribution award for bringing this action and servicing as representative plaintiffs. No objections to the request for awards have been received so far.

## V.      CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that the Court (a) grant final approval of the class action Settlement and Plan of Allocation and certify the Settlement Class; and (b) grant Class Counsel's motion for an award of attorneys' fees and reimbursement of expenses and case contribution awards.

Dated:  November 6, 2013              Respectfully submitted,

                                      s/ Vincent L. Greene IV
                                      Vincent L. Greene IV
                                      MOTLEY RICE LLC
                                      321 South Main Street
                                      Providence, RI  02903
                                      Telephone:     (401) 457-7700
                                      Facsimile:     (401) 457-7708
                                      E-mail:vgreene@motleyrice.com

                                      *Liaison Counsel for Plaintiffs and the Proposed Class*

                                      Lori G. Feldman
                                      Arvind B. Khurana
                                      Jennifer J. Sosa
                                      MILBERG LLP
                                      One Pennsylvania Plaza
                                      New York, NY  10119
                                      Telephone:     (212) 594-5300
                                      Facsimile:     (212) 868-1229
                                      E-mail:  lfeldman@milberg.com
                                               akhurana@milberg.com
                                               jsosa@milberg.com

                                      *Class Counsel for Plaintiffs and the Proposed Class*

## **Certificate of Service**

I certify that a true copy of the foregoing was served electronically via the CM/ECF system on all counsel of record on this 6th day of November, 2013.

/s/ Vincent L. Greene