**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| IN RE TEXTRON, INC. ERISA LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Civil Action No. 09-383-ML<br>(Consolidated Actions) |

**DECLARATION OF JENNIFER J. SOSA IN SUPPORT OF PLAINTIFFS' MOTION FOR:  (1) FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, (2) APPROVAL OF PLAN OF ALLOCATION, AND (3) CERTIFICATION OF SETTLEMENT CLASS AND CLASS COUNSEL'S MOTION FOR (1) AWARD OF ATTORNEYS' FEES AND EXPENSES, AND (2) CASE CONTRIBUTION AWARDS**

I, Jennifer J. Sosa, hereby make this Declaration pursuant to 28 U.S.C. § 1746:

1. I am an associate with the law firm of Milberg LLP ("Milberg").  Milberg is counsel for Plaintiff Alma I. Perez, and was appointed Interim Lead Class Counsel on December 13, 2011 (Dkt. No. 67) and as Class Counsel on August 21, 2013 (Dkt. No. 107), in the above captioned litigation (the "Action").  I have personal knowledge of the matters set forth herein based upon my active participation in all material aspects of the Action and my review of the records in this Action.  Unless otherwise indicated, the statements in this declaration are based on my personal knowledge, and if called to do so, I could and would testify competently thereto.

2. As Class Counsel, I submit this declaration in support of Plaintiffs' motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for this Court's final approval the settlement of this Action (the "Settlement"), the Plan of Allocation of Settlement proceeds, and the certification of the Settlement Class and in support of Class Counsel's motion for an award of attorneys' fees, reimbursement of expenses, and an award of case contribution awards to Plaintiffs (collectively the "Motion").

3. The Class Action Settlement Agreement (the "Settlement Agreement," "Settlement" or "Agreement"),[1] executed on August 14, 2013, and filed as Document 106-1 in this Action, provides for a $4,375,000 cash fund to be created for the benefit of the Textron Savings Plan (the "Plan") and will substantially benefit the Settlement Class.

4. The Settlement involves the class action brought on behalf of participants in the the Plan during the period from July 17, 2007 through December 31, 2011 (the "Class Period") whose individual Plan accounts included investments in the Textron Stock Fund.

5. In accordance with the proposed Plan of Allocation, former Plan participants and beneficiaries will receive checks for any amounts due above $10.00 under the Settlement, and current Plan participants and beneficiaries will be paid through the Plan. Payments will be made as soon as practicable after all relevant orders become final.

6. The Settlement, which fully resolves this case, was achieved following almost four years of litigation, during which Class Counsel and counsel for plaintiffs Adrienne Harrington-Wheatley, Alma I. Perez, Diana Leach and Holly Sheets (collectively with Class Counsel, "Plaintiffs' Counsel"): (i) researched and drafted multiple complaints, including the Consolidated Class Action Complaint (the "Complaint"); (ii) drafted comprehensive briefs in response to Defendants' motion to dismiss and their two motions for partial reconsideration; (iii) moved for class certification; (iv) engaged in extensive discovery including the production of over two million pages of documents by Defendants, service of interrogatories and document requests, and motion practice regarding multiple discovery disputes; (v) engaged in extensive

---

[1] The provisions of the Agreement, including defined terms, are incorporated by reference herein. All capitalized terms not otherwise defined herein have the same meaning as ascribed to them in the Agreement.

settlement negotiations; and (vi) oversaw administration of the Settlement, including notice to Settlement Class Members, which will continue for the foreseeable future.

7. The Court conducted a preliminary review of the proposed settlement agreement, the first step of a three-step process for approval of the Settlement Agreement. In its Preliminary Approval Order, the Court certified the Settlement Class and authorized the publication of the proposed class notice that has been mailed to all identifiable Settlement Class Members with known addresses, published, and made available on a website dedicated to the Settlement as well as the Court's website. Postcard notices were mailed on September 17, 2013 and additional notices will be mailed on November 8, 2013.

8. I believe that the Settlement Agreement is a good result for the Settlement Class for the reasons discussed herein and in Plaintiffs' Motion. I submit this declaration in support of the Settlement on the terms and conditions reflected in the Settlement Agreement and the Court's final consideration of whether: (i) the proposed Settlement is fair, reasonable and adequate and in the best interests of the Class; (ii) the proposed Plan of Allocation for the proceeds of the Settlement is fair, reasonable and adequate; (iii) a settlement class should be finally certified; (iv) an award of attorneys' fees and reimbursement of expenses to Plaintiffs' Counsel is reasonable and should be approved by the Court; and (v) case contribution awards should be granted to Plaintiffs.

9. This declaration describes the claims asserted, the principal proceedings to date, the legal services provided by Plaintiffs' Counsel, and the Settlement. This declaration also demonstrates why the Settlement and Plan of Allocation are fair, reasonable and adequate, and in the best interests of the proposed Settlement Class, and why the application for award of

attorneys' fees and reimbursement of expenses as well as for Plaintiffs' case contribution and should be approved by the Court. The fairness hearing is scheduled for January 24, 2014.

## II. SUMMARY OF THE LITIGATION UP TO SETTLEMENT

10. In mid-2009, several plaintiffs filed putative class actions alleging violations of ERISA against one or more of the Defendants. The first of the related Textron ERISA actions, *Leach v. Textron Inc., et al,* 09-cv-00383-ML-LDA, was filed on August 21, 2009. Subsequently, *Sheets v. Textron Inc., et al,* 09-cv-00412-ML-LDA, was filed on September 2, 2009; *Felton v. Textron Inc., et al,* 09-cv-00421-ML-DLM, was filed on September 9, 2009; *Perez v. Textron Inc., et al,* 09-cv-00424-ML-LDA, was filed on September 24, 2009; *Tomkins v. Textron Inc., et al,* 09-cv-00440-ML-LDA, was filed on September 18, 2009; and *Harrington, Arthur and Hook v. Textron Inc., et al,* 09-cv-00504-ML-LDA, was filed on October 20, 2009. The foregoing cases, collectively the "Textron ERISA Actions" were consolidated by Court Order of December 21, 2009. (Dkt. No. 24)

11. Plaintiffs' Counsel conducted a thorough investigation into the claims and allegations prior to preparing their initial complaints in the Textron ERISA Actions and prior to filing the consolidated Complaint. These investigative efforts included: (a) review and analysis of Plan-related documentation and communications, including Plan annual reports to the SEC and Department of Labor; (b) review and analysis of the Company's public disclosures to the SEC; (c) analysis of the Company's and the Plan's publicly disseminated financial statements; (d) review of media reports and financial analyst reports; (e) review and analysis of voluminous publicly-available materials – *e.g.*, media reports and filings in factually related cases[2] – with

---

[2] *City of Roseville Employees' Retirement System v. Textron, Inc et al*, Docket No. 1:09-cv-00367, was filed under the Private Securities Litigation Reform Act, and related to substantially the same underlying alleged misconduct. It was dismissed on a FRCP 12 motion for failure to state a claim (*City of Roseville Emples. Ret. Sys. v. Textron, Inc.*, 810 F. Supp. 2d 434 (D.R.I.

regards to the factual predicates outlined in the Complaint; (f) interviews of participants, including Plaintiffs and potential fact witnesses; (g) extensive research of the applicable law with respect to the claims asserted in the Complaint and Defendants' potential defenses thereto; and (h) monitoring and evaluating the performance of Textron stock before and during the proposed class period. Thereafter, Plaintiffs' Counsel reviewed newly filed and published public filings, annual reports, press releases, other public statements, and media reports as part of their ongoing investigation.

12. After considerable additional legal and factual research, Plaintiffs filed their Complaint on February 2, 2010. The Complaint provides details regarding the operation and administration of the Plan and alleges, *inter alia*, that Defendants breached their fiduciary duties by allowing the Plan to hold shares of Textron stock, and even purchase additional shares, when Textron stock was an imprudent investment. Plaintiffs further alleged that Defendants failed to adequately inform the Plan participants about the true risk and return characteristics of Textron stock, including a failure to adequately inform the participants about the true state of affairs with respect to: (1) backlogs of unfilled orders at Cessna which were allegedly misleading because a growing number of orders were from financially unsound customers who lacked the financial resources to pay for the aircraft themselves; (2) allegations that a series of undisclosed product defects and acts of misconduct related to Bell Helicopter's military contracts had impaired the value of those contracts; and (3) allegations that TFC had loosened its underwriting standards and thus diluted the value of its finance receivables. Moreover, Plaintiffs alleged that certain

---

2011)) and that dismissal was affirmed by the Court of Appeals. *Auto. Indus. Pension Trust Fund v. Textron, Inc.*, 682 F.3d 34 (1st Cir. 2012). Additionally, this court dismissed a derivative suit for failure to state a claim. *In re Textron, Inc.*, 811 F. Supp. 2d 564 (D.R.I. 2011). The derivative dismissal was not appealed and is "final." Thus, the related securities fraud and derivative actions resulted in no recovery.

5

Defendants breached their fiduciary duties by failing to adequately monitor other persons to whom management/administration of Plan assets was delegated, despite the fact that such Defendants knew or should have known that such other fiduciaries were imprudently allowing the Plan to continue offering Textron stock as an investment option.

13. This complex litigation was aggressively contested by Defendants from the outset.

### B. Defendants' Motion to Dismiss the Complaint

14. Defendants moved to dismiss on March 19, 2010. (Dkt. No. 33). Defendants argued, among other things, that Plaintiffs' claims required dismissal because the allegedly misleading statements were not made in a fiduciary capacity, they had no duty to disclose the allegedly omitted information, and the Complaint did not demonstrate the Fund's imprudence.

15. Plaintiffs filed their opposition to the motion to dismiss on May 3, 2010, countering that the misleading statements were fiduciary communications because they were incorporated into plan documents, that Defendants did have a duty of disclosure, and that Defendants breached their fiduciary duty by allowing continued investment in the Fund when it was not prudent to do so. (Dkt. No. 36).

16. Defendants filed their reply brief in further support of their motion to dismiss on June 2, 2010. (Dkt. No. 38) Both parties submitted supplemental authority in support of the dismissal arguments. (Dkt. Nos. 37, 48, 55)

17. Briefing was complicated by the fact that this novel and uncertain area of ERISA law was developing rapidly while the dismissal motions were pending, requiring Class Counsel and the Court to consider an ever-increasing list of new decisions. For example, the Court recognized that, while the law is different in other Circuits, the Court of Appeals had not yet

6

decided that a presumption of prudence applies to Defendants' actions, or what was required to overcome it if it did apply. *In re Textron, Inc. ERISA Litig.*, No. 09-383-ML , 2011 U.S. Dist. LEXIS 100209, at *23-24 (D.R.I. Sept. 6, 2011). (Dkt. No. 56).

18. On February 15, 2011 the case was reassigned to Judge Barbadoro (of the District of New Hampshire) sitting by designation.

19. The Court heard oral argument on June 29, 2011 and granted in part, and denied in part, Defendants' motion to dismiss by Order on September 5, 2011. (Dkt. No. 56) Although the Court dismissed the breach of fiduciary duty claim to the extent it was based on statements in the SEC filings, it did sustain the claims based on Defendants' omissions and on their breach of fiduciary duty claims. *Id.*

20. On September 20, 2011 and October 21, 2011 Defendants filed motions for reconsideration. (Dkt. Nos. 57, 60). Defendants' primary arguments on reconsideration focused on the duty to disclose. Both motions were denied. (December 5, 2011 Minute Order and Dkt. No. 65).

    **C.**    **Class Certification and Discovery**

21. The Court held a conference on December 2, 2011 to consider, among other things, the pretrial schedule for the Action. Following this conference, the Court entered a Pretrial Scheduling Order setting the discovery, motion, and trial deadlines. Dkt. No. 66.

22. From the outset, discovery was hotly contested. The parties exchanged their Rule 26(a)(1) initial disclosures, and thereafter Plaintiffs began their effort to obtain substantive fact discovery from Defendants and non-parties. Plaintiffs served document requests and Class Counsel held numerous discussions with defense counsel to negotiate: (1) agreements over the scope of the document requests; and (2) the parameters for electronic and hard-copy document production. Plaintiffs' Counsel worked diligently to obtain the relevant discovery in this action.

23. Plaintiffs moved for class certification on February 29, 2012 (Dkt. No. 74) at which time Defendants propounded discovery relevant to the factors of Rule 23, including requests for production and interrogatories on each Plaintiff. Each Plaintiff responded to the relevant discovery requests and each Plaintiff gave deposition testimony.

24. The parties conducted substantial discovery. Both parties propounded interrogatories and document requests. Plaintiffs also served a subpoena on a plan-related third party. Both parties filed multiple motions to compel, any of which could have significantly changed the landscape of discovery. The discovery taken has allowed Plaintiffs to understand the strengths and weaknesses of their claims and Defendants' defenses. For example, during the course of prosecuting this Action, Plaintiffs diligently reviewed: the Plan's governing documents and materials, communications with participants, internal Textron documents regarding the Plan and the alleged problems at Textron, SEC filings, press releases, public statements, news articles, and other publications.

### III. SETTLEMENT NEGOTIATIONS

25. In September 2012, the Parties began to discuss engaging an independent mediator and agreed upon respected and experienced mediator, David Geronemus of JAMS (the "Mediator").

26. After mediation was agreed upon, the parties moved the Court to stay discovery and other proceedings pending the conducting of the mediation. (Dkt. No. 102). The Court granted the Parties' request by text order of October 4, 2012.

27. In preparation for the mediation, Plaintiffs submitted detailed submissions and exhibits in which they assessed key issues including the elements of their claims, defenses, recent case law developments and damages. The mediation submissions and negotiations were lengthy and both sides argued their respective positions strenuously.

28. In advance of mediation, Plaintiffs also retained a damages consultant to estimate what damages would have been based upon: (1) potential periods of imprudence; and (2) what alternative investment would be used to measure damages during that period. This helped to calculate hypothetical damages for theoretical breach periods and allowed Counsel to handicap likely and potential damages.

29. The Parties met on December 13, 2012 at the office of JAMS in New York City.

30. Late in the afternoon of December 13, 2012, at the conclusion of the mediation session, and with considerable assistance from the Mediator, the Parties agreed upon the $4.375 million Class Settlement Amount and then negotiated certain further parameters that were detailed in a memorandum of understanding that formed the basis for the Settlement Agreement.

31. While the Parties were discussing the terms of the Settlement, on December 17, 2012, the Parties sent a joint notice to the Court informing it they had reached an agreement in principle and asked that the stay be extended. (Dkt. No. 103). The stay was extended by text order the next day.

32. Following this agreement in principle and the execution of a memorandum of understanding, Plaintiffs' Counsel spent significant time and effort negotiating further details of the Settlement Agreement. The parties executed the Settlement Agreement on April 15, 2013. At the direction of the Court, the parties revised and submitted an updated Settlement Agreement on August 14, 2013. The resulting settlement was the product of arms'-length bargaining, achieved only with the aid of an impartial mediator after significant research and consultation with experts.

### IV. THE SETTLEMENT

33. The Settlement Agreement provides that Defendants shall pay $4.375 million for the benefit of the Plan, which in accordance with the proposed plan of allocation, will then be

distributed to the current and former participants.  *See* Proposed Plan of Allocation, Exhibit 3 to the Settlement Agreement.  (Dkt. No. 106).

34.     Plaintiffs entered into this Settlement with full and comprehensive understanding of the strengths and weaknesses of their claims, which are based on Plaintiffs' Counsel's extensive investigation during the prosecution and discovery taken in this Action.  This Settlement is a good result for the Settlement Class, especially when considering that the related securities and derivative litigations were dismissed on the pleadings.  It represents approximately five to ten percent of the damages Plaintiffs might have achieved (after eliminating "holder damages") if Plaintiffs succeeded completely on all claims for the entire Class Period and the Court adopted an aggressive damages theory.  For example, the five to ten percent estimate assumes, *inter alia*, that Defendants should have liquidated the entire Fund early in the Class Period and without a corresponding drop for disclosure which might be required by insider trading laws, and then invested the proceeds thereof in the S&P 500 index (which yields the approximately 5% figure) or in a weighted portfolio of the other investments available to Plan participants (which yields the approximately 10% figure).[3]  Were a more conservative approach used reflecting a different date to liquidate the Fund used, a worse performing alternative investment used, or a discount given for disclosure before liquidating the over 13 million Textron shares held in the Fund, the potential damages would drop precipitously and the percentage of the recovery would correspondingly rise.  Even assuming liability is proven, if

---

[3]  Additionally, certain of Plaintiffs' damages consultant's calculations were based upon assumptions and averaging out Plan purchases of Textron stock throughout calendar years. Defendants asserted at the mediation that Plaintiffs' assumptions were wrong and that the Plan has, in fact, made a large number of its purchases when Textron was at or near historically low prices.  That, also, would significantly decrease Plaintiffs' damages calculations.

10

Defendants were to succeed on one or more of these (or other) damages mitigating factors, recovery could be significantly lower than Plaintiffs' damages consultant calculated.

35.     As further described in the accompanying memorandum of law, based upon the facts, governing law, and substantial litigation risks, Plaintiffs and their counsel submit that the Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class. Indeed, each of the factors identified in *Baptista v. Mut. of Omaha Ins. Co.*, 859 F. Supp. 2d 236, 240-241 (D.R.I. 2012) (Lisi, J.), supports final judicial approval of the Settlement. Plaintiffs and their Counsel also submit that the proposed Plan of Allocation is also fair, reasonable and adequate and that the proposed Settlement Class should be approved, as further described in the accompanying memorandum of law.

## V.     PRELIMINARY APPROVAL OF THE SETTLEMENT

36.     Plaintiffs moved for entry of a preliminary approval order, the first step of a two-step process for approval of the Settlement Agreement, on April 25, 2013.  (Dkt. No. 105).

37.     A conference was held in chambers on June 17, 2013 and the Court asked for further information in connection with Plaintiffs' motion.

38.     Plaintiffs filed a supplemental memorandum in support of their motion for preliminary approval on August 14, 2013.  (Dkt. No. 106).

39.     The court held a telephonic conference on August 21, 2013 to discuss the Plaintiffs' preliminarily approval motion and supplemental memorandum.

40.     The Court granted preliminary approval of the Settlement on August 21, 2013. (Dkt. No. 107).  In its Preliminary Approval Order, the Court:  (1) preliminarily certified the settlement class for purposes of settlement only; (2) authorized the publication of proposed notice of pendency and settlement that has been mailed to all identifiable Class members and posted to the web; (3) approved of the notice plan proposed by Counsel (compliance therewith is

11

demonstrated herein); and (4) preliminarily found, *inter alia*, that the Settlement resulted from extensive arm's-length negotiations, was executed only after Class Counsel had conducted appropriate investigation and discovery regarding the strengths and weaknesses of Plaintiffs' claims, and that the Settlement was sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed Settlement to the Settlement Class.

41.     To date, counsel for the parties are not aware of any objections to the Settlement, the proposed Settlement Class, the Plan of Allocation, or Plaintiffs' counsel's fee and expense request or requests for case contribution awards to the Class Representatives.  Timely objections may still be filed, and any objection received by Counsel will be addressed as provided for in the Preliminary Approval Order.

42.     A fairness hearing, which is the second step for approval of the Settlement and related relief, is scheduled for January 24, 2014.

## VI.    EFFECTUATION OF NOTICE & SETTLEMENT ADMINISTRATION

43.     Pursuant to the Court's Preliminary Approval Order, notice, including individual and website publication, was effectuated on September 18, 2013 and publication notice, on September 30, 2013 respectively.  *See* Declaration of Nashira Washington of Gilardi & Co. LLC. (the "Gilardi Declaration").  The Gilardi Declaration demonstrates full compliance with the Preliminary Approval Order, and includes further details about administration of the Settlement.

44.     Class Counsel have also supervised the launching and maintenance of the dedicated settlement website, http://www.gilardi.com/TextronERISASettlement/ by Gilardi, which has links to certain case documents, answers to frequently asked questions, and contact information.

45.     In addition, each form of notice also contained a toll-free number, 888-270-0711, for Settlement Class Members to call if they had any questions or concerns regarding the

proposed Settlement. The toll-free number contained a pre-recorded message which gave an overview of both the Settlement and the approval process.

46. In addition, the toll-free number permitted Settlement Class Members to leave a voice message if they had further questions.

47. Plaintiffs' Counsel will continue to be available to communicate with Settlement Class Members and we expect that a significant amount of time will be spent on this Action after the Effective Date. For example, distributions will have to be calculated and Settlement Class Members may inquire about their distributions. We will also spend time, implementing the Settlement after its approval, including the mechanical aspects of reviewing Plan of Allocation calculations and supervising the transfer of funds to the Plan, for distribution into the individual participant accounts.

## VII. REVIEW BY AN INDEPENDENT FIDUCIARY

48. ERISA prohibits certain transactions between an ERISA plan and a "party in interest." *See* ERISA § 406(a) regarding prohibited transactions (the term "party in interest" is defined in ERISA § 3(14)). In the context of a proposed settlement of litigation between an ERISA plan and the company sponsor of the plan, the settlement agreement could be deemed a prohibited transaction because the ERISA plan is agreeing to release claims against parties in interest. Accordingly, the U.S. Department of Labor ("DOL") has granted Prohibited Transaction Class Exemption 2003-39, 68 Fed. Reg. 75,632 (2003) (the "Exemption"), which sets forth certain conditions for the exemption of settlements from ERISA's prohibited transaction restrictions and from the corresponding monetary sanctions of the Internal Revenue Code. ERISA § 406(a); Internal Revenue Code § 4975.[4] The Exemption specifically permits

---

[4] As noted by the Department of Labor, "the exemption is being granted in response to uncertainty expressed on the part of plan fiduciaries charged with the responsibility under

transactions engaged in by a plan in connection with the settlement of litigation with a party in interest, provided the conditions of the Exemption are followed.

49. Gallagher Fiduciary Advisors, LLC (the "Independent Fiduciary") was retained by the Defendants to act as the independent fiduciary to determine whether the proposed settlement meets the Exemption. The Independent Fiduciary's report (the "Report") is due to be filed with the Court at least two weeks before the deadline for Settlement Class Members to file and serve objections. (Dkt. No. 107 ¶ 14). Objections are due by November 27, 2013 or January 13, 2014. The Report will thus be filed with the Court by November 13, 2013, and made available on the Settlement website, and it is expected that it will discuss, *inter alia*, the terms of the Settlement and Plaintiff's request for attorneys' fees, reimbursement of expenses, and Case Contribution Awards.

## VIII. THE PROPOSED SETTLEMENT AND PLAN OF ALLOCATION SHOULD BE APPROVED BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE

50. As further described in the accompanying memorandum of law, based upon the facts, governing law, and substantial litigation risks, Plaintiffs and their Counsel submit that the Agreement is fair, reasonable and adequate, and in the best interests of the Settlement Class. Indeed, the factors identified in *Baptista v. Mut. of Omaha Ins. Co.*, 859 F. Supp. 2d 236, 240-241 (D.R.I. 2012) (Lisi, J.), supports final judicial approval of the Settlement.

(1) Plaintiffs' claims are complex and novel and exposed Plaintiffs and the Settlement Class to what would have presented significant legal and factual challenges to recovery.

---

ERISA for determining whether it is in the interests of a plan's participants and beneficiaries to enter in a settlement agreement with a party in interest." *See* Exemption – Discussion of Comments Received, paragraph A.

(2) There are currently no objections from the Settlement Class. Any objections will be addressed as set forth in ¶ 15 of the Preliminary Approval Order.

(3) Plaintiffs' Counsel engaged in extensive discovery, permitting a fair evaluation the strength of Plaintiffs' claims.

(4) There were significant hurdles to overcome in establishing liability.

(5) Proving damages would be highly complex and subject to competing expert proofs. Assuming liability were proven, if Defendants prevailed on defeating any of a number of Plaintiffs' damages assumptions (e.g. the date of imprudence, the effect of the "Great Recession" on damages, or the alternative investment methodology) then damages could be reduced significantly.

(6) Absent settlement, significant litigation risks remained, including class certification, motions to compel, summary judgment, and trial.

(7) While Defendants could have withstood a greater judgment, that is not a reason to reject the Settlement, especially as here where many Settlement Class Members are employed by Textron and would it would not be in their best interest to adversely affect the finances of the Company.

(8) While damages could be substantial if the trier of fact found Defendants should and could have liquidated the Plan's Textron stock holdings on the first day of the Class Period without disclosing inside information, and that they would have invested the Plan's assets in the best performing investment option, there is a risk that the finder of fact would not have found that appropriate. Eliminating any of those assumptions lowers damages significantly. For example, eliminating "holder damages" and assuming Defendants should have stopped Plan purchases in Textron stock during the Class Period, damages would be between $40 and $80

million, depending upon the alternative investment used. That puts the Settlement at approximately 5-10% of recoverable damages, but also assumes liability as of the first day of the Class Period. If it were not proven that Textron was an imprudent investment for the Plan until later in the Class Period, damages could decrease significantly.

(9) The Settlement is fair, reasonable, and adequate in light of the attendant risks of no recovery or of a recovery smaller than the Class Settlement Amount.

51. Plaintiffs and their counsel also submit that the proposed Plan of Allocation is also fair, reasonable and adequate, as further described in the accompanying memorandum of law. The proposed Plan of Allocation distributes the settlement fund to Plan participants/beneficiaries based upon a formula which compares their individual losses to the individual losses of all other qualifying plan participants/beneficiaries, objectively distributing to each qualifying Settlement Class Member a share of the Net Settlement Fund proportionate to his or her share of the qualifying Settlement Class Members' aggregate losses.

## IX. ATTORNEYS' FEES

52. Plaintiffs' Counsel have not been paid any amounts for services rendered in this case. Plaintiffs' Counsel's compensation has been and is entirely contingent upon a recovery for the class and an award of attorneys' fees, set by the Court, based on Rule 23 and the common fund doctrine. Plaintiffs' Counsel risked a substantial amount of time, effort and expense in litigating this case. It is respectfully suggested that the amount of attorneys' fees to be awarded under the common fund doctrine should take into account the entirely contingent nature of the attorneys' fees in this case and the attendant litigation risks.

53. Consistent with the law in the First Circuit, and as explained in further detail in the accompanying memorandum of law, Plaintiffs' Counsel request an award of attorneys' fees and expenses from the Settlement Fund based on a percentage of the Settlement Fund recovered

for the Settlement Class. Plaintiffs' Counsel make an application to the Court for 30% of the Settlement Fund, or $1.31 million.

54. An analysis of the relevant factors, as explained in further detail in the accompanying memorandum of law, reveals that Plaintiffs' Counsel's requested fee is reasonable.

55. As set forth in further detail in the contemporaneously filed memorandum, the $4.375 million cash settlement is a good result given the risks of not being able to establish liability under the facts of this case coupled with the difficulty in proving damages. This case was undoubtedly complex, and many ambiguous legal issues remained concerning the standard for imprudence and damages.

56. As described above and in the contemporaneously filed memorandum, Plaintiffs' Counsel litigated this case diligently and thoroughly. Plaintiffs' Counsel has devoted significant resources, as detailed below, to the prosecution and settlement of this Action beginning well before the initial complaints were filed and likely to continue for years in the form of communication with Settlement Class Members and supervision of the claims process. The requested fee is eminently reasonable when viewed in light of the significant work Plaintiffs' Counsel has done in this litigation, the significant settlement achieved, and the work still to be done.

57. Plaintiffs' Counsel undertook to represent Plaintiffs in an unclear and ever-developing area of the law with the substantial risk that they would not be compensated at all for their efforts. and instead would not be reimbursed for time spent and would.

58. The skill and expertise of Plaintiffs' Counsel also weighs in favor of approval of the requested attorneys' fees. Plaintiffs' Counsel's efforts produced a good result which will greatly benefit the members of the Class.

59. Plaintiffs' Counsel are well-regarded nationally for their successful representation of clients in complex ERISA class action matters, as demonstrated by their firm résumés, which are submitted as exhibits to the Motion. Acknowledging their history and track record of impressive results, courts have not hesitated to appoint Plaintiffs' Counsel as lead and class counsel in numerous ERISA breach of fiduciary duty class actions analogous to this Action.

60. The skill and expertise of Plaintiffs' Counsel in this Action is best demonstrated by the fact that they obtained a significant settlement in this case despite the quality and resources of Defendants' Counsel—lawyers from the skilled and highly respected law firms of Gibson, Dunn & Crutcher LLP and Adler, Pollack & Sheehan.

61. Given the unsettled nature of the claims pursued, the legal uncertainties facing the Settlement Class, the skill demonstrated by Plaintiffs' Counsel when faced with determined counterparts on the defense side, and most important, the results achieved, the requested fee and reimbursement of expenses are reasonable.

## X. REIMBURSEMENT OF EXPENSES

62. As detailed in the accompanying declarations, Plaintiffs' Counsel have also advanced significant out-of-pocket expenses in the aggregate amount of $162,757.34. As detailed in the individual declarations, most of these expenses have been incurred in retaining experts and consultants, computerized legal research charges, and costs associated with document management, depositions, and mediation fees.

63. The expenses incurred are commercially reasonable and are reflected on the books and records of each firm, which are available for inspection at the Court's request. The

expenses for which payment is being sought were necessary and appropriate for the prosecution. Courts have often found that such expenses are properly paid from a fund recovered by counsel for the benefit of the class.

64. The notice informed the Class that Plaintiffs' Counsel would be seeking reimbursement of expenses of $195,000. To date, no objection to that request has been raised.

## XI. CASE CONTRIBUTION AWARDS FOR NAMED PLAINTIFFS

65. Plaintiffs also respectfully request that the Court grant Case Contribution Awards to the Named Plaintiffs of $10,000, each.

66. The awards sought by Plaintiffs are well within the range of case contribution awards typically granted, and have been disclosed the Settlement Class and Independent Fiduciary for objection.

67. Federal courts often exercise their discretion under Rule 23(d) and (e) to approve case contribution awards to plaintiffs who instituted and prosecuted an action on the theory that there would be no class-wide benefit absent their suit. These awards recognize the burdens assumed by plaintiff litigants in instituted and prosecuting the action, the time spent by plaintiffs on communicating with counsel and fulfilling class responsibilities of supervision, and the risks that plaintiffs bear in bringing the suit.

68. Plaintiffs expended significant effort and time prosecuting this action over three and a half years. Plaintiffs searched their files for relevant records, obtained copies of documents concerning the Plan and provided information to counsel to assist in the preparation and litigation of this case. Plaintiffs communicated regularly with Plaintiffs' Counsel as the case developed, and acknowledged their willingness to sit for deposition, give trial testimony, and assist in the prosecution of the Plan's and class claims as necessary. Plaintiffs were sent copies of material filings and letters describing the case progress, they reviewed these documents as

they were received and they frequently discussed them with counsel. Plaintiffs were apprised of the mediation progress and provided their consent to the Settlement of this Action.

69. Further details about Plaintiffs' participation in the Action can be found in the accompanying Plaintiff declarations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th day of November 2013, at New York, New York.

                                                     /s/ Jennifer J. Sosa
                                                   JENNIFER J. SOSA