## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE TEXTRON, INC. ERISA LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Civil Action No. 09-383-ML<br>(Consolidated Actions) |

### DECLARATION OF JENNIFER J. SOSA ON BEHALF OF MILBERG LLP

I, Jennifer J. Sosa, declare as follows:

1.      I am an associate with the law firm of Milberg LLP (the "Firm"), which served as Interim Lead Counsel in the above-captioned litigation (the "Litigation").  I have personal knowledge of the matters set forth herein based upon my active supervision and participation in all material aspects of the Litigation.

2.      I submit this declaration in support of my Firm's application for an award of attorneys' fees in connection with services rendered as well as the reimbursement of expenses incurred by my Firm.

3.      My Firm has extensive class action experience. The Firm represents individuals, small businesses, institutional investors and employees in class action cases litigated in the United States. My Firm has served as sole lead-counsel, co-lead counsel or on an executive committee in numerous class actions, including cases brought on behalf of employees under the ERISA statute.  Attached hereto as Exhibit 1 is my Firm's résumé and brief biographies for the attorneys in my Firm who were principally involved in this Litigation.

4.      My Firm was appointed Interim Lead Counsel for Plaintiffs and the Proposed Class in the Litigation on December 13, 2011 and has been actively involved in virtually every material aspect of this case.  By way of example, Milberg's attorneys and in-house investigators undertook a comprehensive pre-filing investigation and Milberg attorneys drafted the initial complaint on behalf of

their client Alma I. Perez.  The initial complaint was detailed and included analysis of the Textron

Savings Plan and the factual and legal predicate for the ERISA claims at issue in the Litigation.  After

the initial complaints were consolidated, my Firm took a lead role in the extensive, continuing factual

investigation to support the claims in the comprehensive operative Complaint, which my Firm also

helped to draft.  My Firm also took a lead role in drafting the opposition to Defendants' motion to

dismiss and argued that motion in front of Judge Barbadoro.   My Firm took the lead on opposing both

of Defendants' motions for reconsideration.  My Firm took the lead on drafting discovery requests,

including document requests, interrogatories and requests for admission.  My Firm also took the lead on

negotiating the protective order governing confidentiality and met and conferred with Defendants

regarding the parameters and scope of electronic and hard copy discovery.  My Firm was primarily

responsible for the preparation of Plaintiffs' class certification motion.  My Firm oversaw discovery,

including managing teams of attorneys for document review, overseeing third party discovery and

initiating/responding to all motion practice regarding discovery disputes.  My Firm also defended the

deposition of Alma Perez and her husband, Miguel Perez, and attended the depositions of all named

Plaintiffs.  My Firm took the lead role in conducting the settlement negotiations, preparing the

settlement proposals, drafting the Plaintiffs' submissions to the mediator, and consulting with experts

regarding damages for that submission.  At the mediation, my Firm participated in the negotiations that

ultimately led to the proposed settlement.  Following the mediation, my Firm took a lead role in the

negotiations of the terms and conditions set forth in the Settlement Agreement, the forms of the

Proposed Approval Order, Class Notice, and the proposed Final Order and Judgment.  My Firm took the

lead role at the preliminary approval conference, prepared supplemental submission at the Court's

request, and attended the telephonic conference regarding preliminary approval of the settlement.

Following preliminary approval, my Firm handled numerous matters relating to the Settlement,

including providing the information requested by Gallagher Fiduciary Advisors, Inc., the Independent

Fiduciary to the Plan, and preparing the papers in support of final Settlement approval.

5.       The schedule attached hereto as Exhibit 2 is a detailed summary indicating the amount of

time spent by the partners, other attorneys, and professional support staff of my Firm who were involved

in this litigation, and the lodestar calculation based on my firm's current billing rates.[1]  The schedule

was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm,

which are available at the request of the Court for review *in camera*.[2]

6.       The hourly rates for the partners, other attorneys, and professional support staff in my

firm included in Exhibit 2 are the same as the regular current rates charged for their services in non-

contingent matters and which have been used in the lodestar cross check accepted by courts in other

class litigation. For personnel who are no longer employed by my firm, the lodestar calculation is based

upon the billing rates for such personnel in his or her final year of employment by my firm.  Time

expended in preparing this application for fees and reimbursement of expenses has not been included in

this request.

7.       The total number of hours expended on this litigation by my firm is 5,162.25 hours.  The

total lodestar for my firm is $ 2,459,577.50, consisting of $1,994,493.75 for attorneys' time and

$465,083.75 for professional support staff time.

8.       My firm's lodestar figures are based upon the firm's billing rates, which rates do not

include charges for expense items.  Expense items are billed separately and such charges are not

duplicated in my firm's billing rates.

9.       As detailed in Exhibit 3, my firm has incurred a total of $99,004.15 in un-reimbursed

expenses in connection with the prosecution of this litigation.

---

[1]  This application does not include time for anyone who spent fewer than 5 hours on this litigation.

[2]  These records may include information concerning privileged and/or confidential attorney-client
communications or work product.

3

10.     The expenses incurred in this action are reflected on the books and records of my firm, which are available at the request of the Court. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses as charged by the vendors. Third-party expenses are not marked up.

11.     By agreement between Plaintiffs' Counsel, My Firm is not charging separately for the following costs and expenses:  secretarial and clerical overtime, including their meals and local transportation; after-hours HVAC; word processing; secretarial/clerical time for document preparation; time charges for routine copying, faxing or scanning; incoming/outgoing fax charges; office supplies (such as paper, binders, etc.); special publications; continuing legal education seminars; working meals for attorneys (with the exception of meals with clients, expert or other witnesses, or meal expenses for meetings between Plaintiffs' Counsel); and local overtime meals and transportation for attorneys.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th  day of November, 2013, at New York, New York.

JENNIFER J. SOSA

 **MILBERG**LLP

# EXHIBIT 1

## THE FIRM'S PRACTICE AND ACHIEVEMENTS

Milberg LLP, founded in 1965, was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The Firm pioneered this type of litigation and is widely recognized as a leader in defending the rights of corporate and other large-scale wrongdoing. The Firm's practice focuses on the prosecution of class and complex actions in many fields, including securities, corporate fiduciary, ERISA, consumer, False Claims Act, antitrust, bankruptcy, mass tort, and human rights litigation. The Firm has offices in New York City, Los Angeles, and Detroit.

In its early years, the Firm built a new area of legal practice in representing shareholder interests under the then recently amended Rule 23 of the Federal Rules of Civil Procedure, which allowed securities fraud cases, among others, to proceed as class actions. In the following decades, the Firm obtained decisions establishing important legal precedents in many of its areas of practice and prosecuted cases that set benchmarks in terms of case theories, organization, discovery, trial results, methods of settlement, and amounts recovered and distributed to clients and class members.

Important milestones in the Firm's early years include the Firm's involvement in the *U.S. Financial* litigation in the early 1970s, one of the earliest large class actions, which resulted in a $50 million recovery for purchasers of the securities of a failed real estate development company; the Ninth Circuit decision in *Blackie v. Barrack* in 1975, which established the fraud-on-the-market doctrine for securities fraud actions; the Firm's co-lead counsel position in the *In re Washington Public Power Supply System Securities Litigation*, a seminal securities fraud action in the 1980s in terms of complexity and amounts recovered; the representation of the Federal Deposit Insurance Corporation in a year-long trial to recover banking losses from a major accounting firm, leading to a precedent-setting global settlement; attacking the Drexel-Milken "daisy chain" of illicit junk-bond financing arrangements with numerous cases that resulted in substantial recoveries for investors; representing life insurance policyholders defrauded by "vanishing premium" and other improper sales tactics and obtaining large recoveries from industry participants; and ground-breaking roles in the multi-front attack on deception and other improper activities in the tobacco industry.

Milberg remains at the forefront in its areas of practice. Significant litigation results include: *In re Vivendi Universal, S.A. Securities Litigation* (post-verdict proceedings pending with claims valued at over $1 billion); *In re Tyco International, Ltd. Securities Litigation* ($3.2 billion settlement); *In re Nortel Networks Corp. Securities Litigation* (settlement for cash and stock valued at $1.142 billion); *In re Lucent Technologies, Inc. Securities Litigation* ($600 million recovery); *In re Raytheon Co. Securities Litigation* ($460 million recovery); *In re Managed Care Litigation* (recoveries over $1 billion and major changes in HMO practices); the *In re Washington Public Power Supply System Securities Litigation* (settlements totaling $775 million), and the *In re NASDAQ Market-Makers Antitrust Litigation* ($1 billion in recoveries). Milberg has been responsible for recoveries valued at approximately $55 billion during the life of the Firm.

The Firm's lawyers come from many different professional backgrounds. They include prosecutors, private defense attorneys, and government lawyers. The Firm's ability to pursue claims against defendants is augmented by its team of investigators, headed by a 27-year veteran of the Federal Bureau of Investigation, as well as in-house staff with expertise in forensic accounting and financial analysis. In addition, Milberg offers in-house e-discovery specialists and data hosting capabilities. The Firm is regularly recognized as one of the nation's leading plaintiffs' law firms by the *National Law Journal*, *Legal 500*, *Chambers USA*, and *Super Lawyers*, among others.

For more information, please visit www.milberg.com.

❖ **MILBERG**LLP

NEW YORK
LOS ANGELES
DETROIT

## JUDICIAL COMMENDATIONS

Milberg has been commended by countless judges throughout the country for the quality of its representation.

Milberg partners played leading roles in representing class plaintiffs in a nearly four-month jury trial in *In re Vivendi Universal, S.A. Securities Litigation*, No. 02-5571 (S.D.N.Y.), which in January 2010 resulted in a jury verdict for an international class of defrauded investors (with claims valued at over $1 billion; claims procedure pending).  At the close of the trial, Judge Richard Holwell commented:

> I can only say that this is by far the best tried case that I have had in my time on the bench.  I don't think either side could have tried the case better than these counsel have.

In approving a $3.2 billion securities fraud settlement, one of the largest in history, in *In re Tyco International, Ltd. Securities Litigation*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007), Judge Barbadoro lauded Milberg's efforts as co-lead counsel:

> This was an extraordinarily complex and hard-fought case.  Co-Lead Counsel put massive resources and effort into the case for five long years, accumulating [millions of dollars in expenses] and expending [hundreds of thousands of hours] on a wholly contingent basis.  But for Co-Lead Counsel's enormous expenditure of time, money, and effort, they would not have been able to negotiate an end result so favorable for the class. . . .  Lead Counsel's continued, dogged effort over the past five years is a major reason for the magnitude of the recovery. . . .

In *Simon v. KPMG LLP*, No. 05-3189, 2006 U.S. Dist. LEXIS 35943, at *18, 30-31 (D.N.J. June 2, 2006), a case in which Milberg served as class counsel, Judge Cavanaugh, in approving the $153 million settlement, found that "Plaintiffs . . . retained highly competent and qualified attorneys" and that "[t]he Initial Complaint . . . demonstrates that [Milberg] expended considerable time and effort with the underlying factual and legal issues in this case before even filing this lawsuit. . . .  Settlement discussions were conducted over a period of some fourteen months with the supervision and guidance of Judges Politan and Weinstein, and are evidence of [Milberg's] appreciation of the merits and complexity of this litigation."

In *In re Lucent Technologies, Inc. Securities Litigation*, 307 F. Supp. 2d 633, 641-47 (D.N.J. 2004), Judge Pisano issued an opinion approving the $600 million settlement and complimenting Milberg's work as co-lead counsel for the class as follows:

> [T]he attorneys representing the Plaintiffs are highly experienced in securities class action litigation and have successfully prosecuted numerous class actions throughout the United States. They are more than competent to conduct this action.  Co-Lead Counsel diligently and aggressively represented the Plaintiffs before this Court and in the negotiations that resulted in the Settlement. . . .  [T]he efforts and ingenuity of Lead Plaintiffs and Lead Counsel resulted in an extremely valuable Settlement for the Benefit of the Class.

In *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003), Judge Dalzell commented on the skill and efficiency of the Milberg attorneys litigating this complex case:

> At the risk of belaboring the obvious, we pause to say a specific word about . . . the skill and efficiency of the attorneys involved.  [Milberg was] extraordinarily deft and efficient in handling this most complex matter.  [T]hey were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write-down of over $1.6 billion in previously reported Rite Aid earnings. . . .  In short, it would be hard to equal the skill class counsel demonstrated here.

✦ **MILBERG** LLP

NEW YORK<br>
LOS ANGELES<br>
DETROIT

In *In re IKON Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 195 (E.D. Pa. 2000), Judge Katz commented on Milberg's skill and professionalism as one of plaintiffs' co-lead counsel:

> First, class counsel is of high caliber and has extensive experience in similar class action litigation. . . . Each of the co-lead counsel firms has a national reputation for advocacy in securities class actions, and there is no doubt that this standing enhanced their ability both to prosecute the case effectively and to negotiate credibly. . . .
>
> Of particular note in assessing the quality of representation is the professionalism with which all parties comported themselves. The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines. This professionalism was also displayed in class counsel's willingness to cooperate with other counsel when appropriate. . . . This cooperation enabled the parties to focus their disputes on the issues that mattered most and to avoid pointless bickering over more minor matters.

In *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), in an opinion approving settlements totaling over $1.027 billion, Judge Sweet commented:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

Judicial recognition of Milberg's excellence is not limited to courts within the United States. In *In re Flag Telecom Holdings, Ltd. Securities Litigation*, No. 02-3400 (S.D.N.Y. 2009), Milberg litigated a discovery dispute before the English Royal High Court of Justice, Queens Bench Division, which recognized the Milberg attorney handling the matter as a "Grade A" lawyer and a "vital cog in the machine." Likewise, in *Sharma v. Timminco Ltd.*, 09-378701 (Can. Ont. Sup. Ct. 2009), Canada's Ontario Superior Court of Justice recognized Milberg's "fine reputation and excellent credentials" in connection with Milberg's representation in a securities case pending in Canada.

Milberg has also been recognized for its commitment to public service. In lauding Milberg's work representing victims of the September 11th attack on the World Trade Center in connection with the September 11 Victims Compensation Fund, Special Master Kenneth R. Feinberg stated the following:

> Once again, as I have learned over the years here in New York, the [Milberg] firm steps up to the plate in the public interest time and time again. The social conscience of the [Milberg] firm, acting through its excellent associates and partners, help deal with crises that confront the American people and others, and I am personally in the debt of Milberg . . . for the work that it is doing . . . . [T]hey are second among none in terms of the public interest, and I'm very, very grateful, not only to you guys for doing this, but . . . for the firm's willingness to help out. I wanted to let everybody know that.

*In re September 11 Victim Compensation Fund*, Preliminary Hearing, Claim No. 212-003658 (Dec. 9, 2003).

 MILBERG LLP

# NOTEWORTHY RESULTS

The quality of Milberg's representation is further evidenced by the Firm's numerous significant recoveries, some of which are described below.

- *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, No. 09-2032 (N.D. Cal.). Milberg served on the Executive Committee representing the class in this action against JP Morgan Chase & Co. The complaint alleged that Chase improperly increased by 150% the minimum monthly payment requirement for customers who entered into balance transfer loans with "fixed" interest rates that were guaranteed to remain so for the "life of the loan." Milberg and its co-counsel, achieved a $100 million settlement for the class.

- In *In re Vivendi Universal, S.A. Securities Litigation*, No. 02-5571 (S.D.N.Y.), Milberg lawyers were instrumental in obtaining a jury verdict for an international class of defrauded investors after a trial lasting nearly four months. The jury found Vivendi liable for 57 false or misleading class period statements. The case is now in post-verdict proceedings. Even with claimants who made foreign purchases removed from the class after the Supreme Court's *Morrison* decision, total damage claims exceed $1 billion.

- *Mason v. Medline*, No. 07-05615 (N.D. Ill.). Milberg successfully represented a healthcare worker in a False Claims Act case against his former employer, Medline Industries, Inc., one of the nation's largest suppliers of medical and surgical products, along with its charitable arm, The Medline Foundation. The suit alleged that Medline engaged in a widespread illegal kickback scheme targeting hospitals and other healthcare providers that purchase medical products paid for by federal healthcare programs. Although a party to the settlement agreement, the U.S. Department of Justice chose not to intervene in the lawsuit. Milberg pursued the case on a non-intervened basis and recovered $85 million on behalf of the federal government -- one of the largest settlements of a False Claims Act case in which the government declined to intervene. The whistleblower was awarded 27.5% of the proceeds.

- *Blessing v. Sirius XM Radio, Inc.*, No. 09-10035 (S.D.N.Y.). This antitrust case stemmed from the 2008 merger of Sirius Satellite Radio, Inc. and XM Satellite Holdings, Inc. that created Sirius XM, the nation's only satellite radio company. The plaintiffs alleged that the merger of the only two U.S. satellite radio providers was an illegal move to eliminate competition and monopolize the satellite radio market. Before the merger, Sirius CEO Mel Karmazin convinced regulators not to block the deal by promising that "the combined company will not raise prices" and that the merger would actually result in "lower prices and more choice for the consumer." After the merger, Sirius quickly reversed course, raised prices by 15-40%, and eliminated multiple radio stations. Milberg achieved a settlement for the class valued at $180 million.

- *In re Initial Public Offering Securities Litigation*, No. 21-92 (S.D.N.Y.). Milberg represented investors in 310 consolidated securities actions arising from an alleged market manipulation scheme. Plaintiffs alleged, among other things, that approximately 55 defendant investment banks, in dealing with certain of their clients, conditioned certain allocations of shares in initial public offerings on the subsequent purchase of more shares in the aftermarket, thus artificially boosting the prices of the subject securities. This fraudulent scheme, plaintiffs alleged, was a major contributing factor in the now infamous technology "bubble" of the late 1990s and early 2000s. As a member of the court-appointed Plaintiffs' Executive Committee, and with certain partners appointed by the court as liaison counsel, Milberg oversaw the efforts of approximately 60 plaintiffs' firms in combating some of the most well-respected defense firms in the nation. In granting final approval to a

**MILBERG** LLP

NEW YORK
LOS ANGELES
DETROIT

$586 million settlement on October 5, 2009, the court described the law firms comprising the Plaintiffs' Executive Committee as the "cream of the crop."

- *Carlson v. Xerox*, No. 00-1621 (D. Conn). Milberg served as co-lead counsel in this lawsuit, which consolidated 21 related cases alleging violations of the federal securities laws. Plaintiffs alleged that Xerox and several of its top officers reported false financial results during the class period and failed to adhere to the standard accounting practices the company claimed to have followed. In the course of litigating plaintiffs' claims, Milberg engaged in arduous and exhaustive factual discovery, including review and analysis of more than four million pages of complex accounting and auditing documents and thousands of pages of SEC deposition transcripts. Plaintiffs' claims survived three motions to dismiss and a motion for summary judgment, ultimately resulting in a $750 million settlement, which received final approval on January 14, 2009.

- *In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.). Milberg served as co-lead counsel in this litigation, which involved claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 against Tyco and its former CEO, CFO, general counsel, and certain former directors arising out of allegations of Tyco's $5.8 billion overstatement of income and $900 million in insider trading, plus hundreds of millions of dollars looted by insiders motivated to commit the fraud. Plaintiffs also asserted claims under the 1933 and 1934 Acts against PricewaterhouseCoopers LLP for allegedly publishing false audit opinions on Tyco's financial statements during the class period and failing to audit Tyco properly, despite knowledge of the fraud. On December 19, 2007, the court approved a $3.2 billion settlement of the plaintiffs' claims and praised the work of co-lead counsel.

- *In re Sears, Roebuck & Co. Securities Litigation*, No. 02-7527 (N.D. Ill.). This case involved allegations that Sears concealed material adverse information concerning the financial condition, performance, and prospects of Sears' credit card operations, resulting in an artificially inflated stock price. The approved settlement provided $215 million to compensate class members.

- *In re General Electric Co. ERISA Litigation*, No. 04-1398 (N.D.N.Y.). This ERISA class action was brought on behalf of current and former participants and beneficiaries of the General Electric ("G.E.") 401(k) Plan. Milberg, serving as co-lead counsel, achieved a $40 million settlement on behalf of current and former G.E. employees who claimed that the company's 401(k) Plan fiduciaries imprudently invested more than two-thirds of the Plan's assets in company stock. The settlement included important structural changes to G.E.'s 401(k) plan valued at more than $100 million.

- *In re Biovail Corp. Securities Litigation*, No. 03-8917 (S.D.N.Y.). Milberg, representing Local 282 Welfare Trust Fund and serving as co-lead counsel, litigated this complex securities class action brought on behalf of a class of defrauded investors, alleging that defendants made a series of materially false and misleading statements concerning Canadian company Biovail's publicly reported financial results and the company's then new hypertension/blood pressure drug, Cardizem LA. This was a highly complex case in which counsel took numerous depositions across the U.S. and Canada and obtained documents from defendants and several third-parties, including, among others, UBS, McKinsey & Co., and Merrill Lynch. Milberg obtained a $138 million settlement for the class, and Biovail agreed to institute significant corporate governance changes.

- *In re Nortel Networks Corp. Securities Litigation*, No. 01-1855 (S.D.N.Y.). In this federal securities fraud class action, Milberg served as lead counsel for the class and the court-appointed lead plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund. In certifying the class, the court specifically rejected the defendants' argument that those who traded in Nortel securities on the Toronto Stock Exchange (and not the New York Stock Exchange) should be excluded from the class. The Second Circuit denied the defendants' attempted appeal. On January 29, 2007, the



court approved a settlement valued at $1.142 billion.

- *In re American Express Financial Advisors Securities Litigation*, No. 04-1773 (S.D.N.Y.). This case involved allegations that American Express Financial Advisors violated securities laws by representing to class members that the company would provide tailored financial advice, when the company actually provided "canned" financial plans and advice designed to steer clients into American Express and certain nonproprietary mutual funds. The case settled for $100 million, with the settlement agreement requiring that the company institute remedial measures.

- *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-621 (D.N.J.). In this federal securities fraud action in which Milberg served as co-lead counsel, plaintiffs alleged, *inter alia*, that Lucent and its senior officers misrepresented the demand for Lucent's optical networking products and improperly recognized hundreds of millions of dollars in revenues. The settlement provided compensation of $600 million to aggrieved shareholders who purchased Lucent stock between October 1999 and December 2000.

- *In re Raytheon Co. Securities Litigation*, No. 99-12142 (D. Mass.). This case, in which Milberg served as lead counsel, concerned claims that a major defense contractor failed to write down assets adequately on long term construction contracts. In May 2004, Raytheon and its auditor, PricewaterhouseCoopers LLP, settled for a total of $460 million.

- In *In re Rite Aid Corp. Securities Litigation*, No. 99-1349 (E.D. Pa.), in which Milberg served as co-lead counsel, the plaintiffs asserted federal securities fraud claims arising out of allegations that Rite Aid failed to disclose material problems with its store expansion and modernization program, resulting in artificially inflated earnings. Judge Dalzell approved class action settlements totaling $334 million against Rite Aid ($207 million), KPMG ($125 million), and certain former executives of Rite Aid ($1.6 million).

- In *In re CMS Energy Corp. Securities Litigation*, No. 02-72004 (E.D. Mich.), a federal securities fraud case arising out of alleged round-trip trading practices by CMS Energy Corporation, Judge Steeh approved a cash settlement of more than $200 million. Milberg served as co-lead counsel in this litigation.

- *In re Deutsche Telekom AG Securities Litigation*, No. 00-9475 (S.D.N.Y.). Milberg served as co-lead counsel in this securities class action alleging that Deutsche Telekom issued a false and misleading registration statement, which improperly failed to disclose its plans to acquire VoiceStream Wireless Corporation and materially overstated the value of the company's real estate assets. On June 14, 2005, Judge Buchwald approved a $120 million cash settlement.

- *In re CVS Corp. Securities Litigation*, No. 01-11464 (D. Mass). Milberg served as co-lead counsel in this class action alleging that defendants engaged in a series of accounting improprieties and issued false and misleading statements which artificially inflated the price of CVS stock. On September 7, 2005, Judge Tauro approved a $110 million cash settlement for shareholders who acquired CVS stock between February 6, 2001, and October 30, 2001.

- *Scheiner v. i2 Technologies, Inc.*, No. 01-418 (N.D. Tex.). Milberg served as lead counsel in this securities fraud case, filed on behalf of certain purchasers of i2 common stock. The plaintiffs alleged that certain of the company's senior executives made materially false and misleading statements and omissions in i2's public statements and other public documents regarding i2's software, thereby artificially inflating the price of i2's common stock. In May 2004, Milberg recovered a settlement of $84.85 million.

- *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 04-1398 (D.N.J.). This was an ERISA breach of fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of certain of the companies' U.S. employee investment plan participants. Notably, the $90 million settlement included important provisions regarding the

**MILBERG**LLP

monitoring and training of individuals appointed to be ERISA fiduciaries.

- Milberg served as co-lead counsel in *Irvine v. ImClone Systems, Inc.*, No. 02-0109 (S.D.N.Y.), in which a $75 million cash settlement was approved by the court in July 2005. Plaintiffs alleged that ImClone issued a number of misrepresentations and fraudulent statements to the market regarding the likelihood of approval of the drug Erbitux, thereby artificially inflating the price of ImClone stock.

- In *In re W.R. Grace & Co. (Official Committee of Asbestos Personal Injury Claimants v. Sealed Air Corp. and Official Committee of Asbestos Personal Injury Claimants v. Fresenius Medical Care Holdings, Inc.)*, Nos. 02-2210 and 02-2211 (D. Del.), Milberg acted as lead counsel for the asbestos personal injury and property damage committees in two separate fraudulent conveyance actions within the W.R. Grace bankruptcy. The actions sought to return the assets of Sealed Air Corporation and Fresenius Medical Care Holdings (each of which had been Grace subsidiaries pre-bankruptcy) to the W.R. Grace bankruptcy estate. Complaints in both cases were filed in mid-March 2002, and agreements in principle in both cases were reached on November 27, 2002, the last business day before trial was set to begin in the Sealed Air matter. The two settlements, which consisted of both cash and stock, were valued at approximately $1 billion.

- *Nelson v. Pacific Life Insurance Co.*, No. 03-131 (S.D. Ga.). Milberg served as lead counsel in this securities fraud class action arising from allegations of deceptive sales of deferred annuity tax shelters to investors for placement in retirement plans that are already tax-qualified. The court approved a $60 million settlement of claims arising from such deception.

- The Firm was lead counsel in *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.), a landmark case challenging Prudential's sales practices that resulted in a recovery exceeding $4 billion for certain policyholders. The settlement was approved in a comprehensive Third Circuit decision.

- In *In re NASDAQ Market-Makers Antitrust Litigation*, MDL 1023 (S.D.N.Y.), Milberg served as co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After more than three years of intense litigation, the case settled for a total of $1.027 billion, one of the largest antitrust settlements at that time.

- *In re Washington Public Power Supply System Securities Litigation*, MDL 551 (D. Ariz.) was a massive securities fraud litigation in which Milberg served as co-lead counsel for a class that obtained settlements totaling $775 million, the largest-ever securities fraud settlement at that time, after several months of trial.

- *In re Exxon Valdez*, No. 89-095 (D. Alaska) and *In re Exxon Valdez Oil Spill Litigation*, 3 AN-89-2533 (Alaska Sup. Ct. 3d Jud. Dist.). Milberg was a member of the Plaintiffs' Coordinating Committee and co-chair of the Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. Plaintiffs obtained a jury verdict of $5 billion, which, after years of appeals by Exxon, was reduced to approximately $500 million by the United States Supreme Court. Recently the United States Court of Appeals for the Ninth Circuit held that plaintiffs are entitled to post judgment interest on the award in the amount of approximately $470 million.

- In *In re Managed Care Litigation*, MDL 1334 (S.D. Fla.). Final approval of a settlement between a nationwide class of physicians and defendant CIGNA Healthcare, valued in excess of $500 million, was granted on April 22, 2004. A similar settlement valued in excess of $400 million involving a nationwide class of physicians and Aetna was approved by the court on November 6, 2003. The settlements stem from a series of lawsuits filed in both state and federal courts by physicians and medical associations against many of the nation's largest health insurers arising from allegations that the insurers engaged in a fraudulent scheme to systematically obstruct, reduce, delay, and deny payments and reimbursements to health care

**MILBERG** LLP

providers. These settlements brought sweeping changes to the health care industry and significant improvements to physician-related business practices.

- *In re Sunbeam Securities Litigation*, No. 98-8258 (S.D. Fla). Milberg acted as co-lead counsel for the class. Plaintiffs alleged that Sunbeam, its auditor, and its management engaged in a massive accounting fraud which led to a restatement of over three years of previously reported financial results. The court approved a combined settlement of more than $140 million, including a $110 million settlement with Arthur Andersen LLP, Sunbeam's auditor. At that time, the Andersen settlement was one of the largest amounts ever paid by a public accounting firm to settle federal securities claims. The settlement with the individuals was achieved on the eve of trial, and ended almost four years of litigation against Andersen and Sunbeam's insiders, including Albert Dunlap, Sunbeam's former Chairman and CEO. The settlement included a personal contribution from Dunlap of $15 million.

- *In re Triton Energy Limited Securities Litigation*, No. 98-256 (E.D. Tex.). Plaintiffs alleged that defendants misrepresented, among other things, the nature, quality, classification, and quantity of Triton's Southeast Asia oil and gas reserves during the period March 30, 1998 through July 17, 1998. The case settled for $42 million.

- In *In re Thomas & Betts Securities Litigation*, No. 00-2127 (W.D. Tenn.), the plaintiffs, represented by Milberg as co-lead counsel, alleged that Thomas & Betts engaged in a series of accounting improprieties while publicly representing that its financial statements were in compliance with GAAP, and failed to disclose known trends and uncertainties regarding its internal control system and computer and information systems. The case settled for $46.5 million dollars in cash from the company and $4.65 in cash from its outside auditor, KPMG.

- *In re MTC Electronic Technologies Shareholder Litigation*, No. 93-0876 (E.D.N.Y.). Plaintiffs alleged that defendants issued false and misleading statements concerning, among other things, purported joint venture agreements to establish telecommunications systems and manufacture telecommunications equipment in China. The court approved a settlement of $70 million, including $65 million in cash and $5 million worth of MTC Class A shares with "put" rights.

- In *In re PaineWebber Limited Partnerships Litigation*, No. 94-8547 (S.D.N.Y.). Milberg represented investors alleging that PaineWebber developed, marketed, and operated numerous investment partnerships as part of an ongoing conspiracy to defraud investors and enrich itself through excessive fees and commissions over a twelve-year period. On March 20, 1997, Judge Sidney Stein approved a $200 million settlement, consisting of $125 million in cash and $75 million worth of guarantees and fee waivers.

- In *Andrews v. AT&T*, No. 91-175 (S.D. Ga.) the Firm represented a class of persons who paid for premium-billed "900-number" calls that involved allegedly deceptive games of chance, starting in 1993. Defendants included major long-distance companies, which approved the call programs and billed for the calls. Defendant MCI settled for $60 million in benefits. The class against AT&T was decertified on appeal and the Firm prosecuted the individual plaintiffs' claims, obtaining a jury verdict in 2003 for compensatory and punitive damages.

In the context of shareholder derivative actions, Milberg has protected shareholder investments by effectuating important changes in corporate governance as part of the global settlement of such cases. Cases in which such changes were made include:

- *In re Comverse Technology, Inc. Derivative Litigation*, No. 601272/2006 (N.Y. Sup. Ct. N.Y. Cnty.). On December 28, 2009, Milberg announced a $62 million settlement for the derivative plaintiffs, which was approved by the Court on June 23, 2010. The settlement also resulted in significant corporate governance reforms, including the replacement of the offending directors and officers with new independent directors and officers; the amendment of the company's bylaws to permit certain long-term substantial shareholders to

**❖❖❖ MILBERG** LLP

propose, in the Company's own proxy materials, nominees for election as directors (proxy access); and the requirement that all equity grants be approved by both the Compensation Committee and a majority of the non-employee members of the Board.

- *In re Topps Co., Inc. Shareholder Litig.*, No. 600715/2007 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 17, 2007). Milberg served as co-lead counsel in this transactional case, which led to a 2007 decision vindicating the rights of shareholders under the rules of comity and the doctrine of *forum non conveniens* to pursue claims in the most relevant forum, notwithstanding the fact that jurisdiction might also exist in the state of incorporation. This case was settled in late 2007 in exchange for a number of valuable disclosures for the class.

- *In re Marketspan Corporate Shareholder Litigation*, No. 15884/98 (N.Y. Sup. Ct. Nassau Cnty.). The settlement agreement in this
  
  (i)

  (ii)

derivative case required modifications of corporate governance structure, changes to the audit committee, and changes in compensation awards and to the nominating committee.

- *In re Trump Hotels Shareholder Derivative Litigation*, No. 96-7820 (S.D.N.Y.). In this case, the plaintiff shareholders asserted various derivative claims on behalf of the company against certain Trump entities and senior Trump executives in connection with the self-serving sale of a failing casino to the company in which the plaintiffs held stock. Milberg negotiated a settlement on behalf of the plaintiffs that required Donald Trump to contribute a substantial portion of his personal interest in a pageant he co-owned. In addition, the settlement required the company to increase the number of directors on its board, and certain future transactions had to be reviewed by a special committee.



        (iii)    Precedent-Setting Decisions

Milberg has consistently been a leader in developing the federal securities, antitrust, and consumer protection laws for the benefit of investors and consumers. The Firm has represented individual and institutional plaintiffs in hundreds of class action litigations in federal and state courts throughout the country. In most of those cases, Milberg has served as lead or co-lead counsel. The Firm has also been responsible for establishing many important precedents, including the following:

- ***Platinum Partners v. Chicago Board Options Exchange, Inc.***, No. 1-11-2903 (Ill. App. Ct. 2012). Milberg represented an investment management group in a case against the Chicago Board Options Exchange, Inc. ("CBOE") and Options Clearing Corp. ("OCC"). The plaintiff investment management group alleged that it was injured when the CBOE and OCC privately disclosed strike price information to certain insiders prior to the information being made public. In the interim between the private disclosure and the public announcements, the plaintiff purchased tens of thousands of affected options. The lower court dismissed the complaint on the grounds that the CBOE and OCC, as self-regulatory organizations, were immune from suit. However, the Appellate Court reversed, holding that a private disclosure to insiders served no regulatory purpose and should not be protected from suit. The Illinois Supreme Court declined the defendants' petition for leave to appeal.

- In *Merck & Co., Inc. v. Reynolds* 130 S. Ct. 1784 (2010), Milberg, along with other co-lead counsel, won a significant victory before the U.S. Supreme Court, which issued a decision addressing when an investor is placed on "inquiry notice" of a securities fraud violation sufficient to trigger the statute of limitations under 28 U.S.C. § 1658(b). The Court unanimously ruled that the two-year statute of limitations was not triggered because plaintiffs did not have actual or constructive knowledge of "the facts constituting the violation," and as such, the case was not time-barred. Importantly, the Court held that the plaintiff must be on actual or constructive notice of facts concerning the defendants' scienter in order to trigger the statute of limitations. This decision is significant in that it potentially enables

plaintiffs to bring claims based on misstatements that are more than two years old.

- ***In re Lord Abbett Mutual Funds Fee Litigation***, 553 F.3d 248 (3d Cir. 2009). This important decision set significant precedent regarding the scope of preemption under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). In reversing the District Court's dismissal of the plaintiffs' claims, the Third Circuit held that "SLUSA does not mandate dismissal of an action in its entirety where the action includes only some pre-empted claims." In so holding, the court explained that "nothing in the language, legislative history, or relevant case law mandates the dismissal of an entire action that includes both claims that do not offend SLUSA's prohibition on state law securities class actions and claims that do . . . ."

- ***Abdullahi v. Pfizer, Inc.***, 562 F.3d 163, 170 (2d Cir. 2009). In this matter, the plaintiffs, Nigerian children and their families, asserted claims under the Alien Tort Statute ("ATS") in connection with Pfizer's clinical trial of the drug, Trovan, without their knowledge. In January 2009, the Second Circuit reversed the District Court's dismissal for lack of jurisdiction. The court held that plaintiffs pled facts sufficient to state a cause of action under the ATS for a violation of international law prohibiting medical experimentation on human subjects without their consent.

- ***In re Comverse Technology, Inc. Derivative Litigation***, 866 N.Y.S.2d 10 (App. Div. 1st Dep't 2008). In this derivative case in which Milberg serves as co-lead counsel, plaintiff shareholders sued certain of the company's officers and directors based on allegations of illegal options backdating. The lower court dismissed the plaintiffs' claims, holding that the

plaintiffs failed to make a pre-suit demand on the company's board, and that in any event, the board had already formed a special committee to investigate the misconduct. In this significant opinion reversing the lower court's dismissal, the Appellate Division clarified the standards of demand futility and held that a board of directors loses the protection of the business judgment rule where there is evidence of the directors' self-dealing and poor judgment. The court noted that the mere creation of a special committee did not justify a stay of the action and did not demonstrate that the board took appropriate steps. Rather, "the picture presented in the complaint is that of a special committee taking a tepid rather than a vigorous approach to the misconduct and the resultant harm. Under such circumstances, the board should not be provided with any special protection."

- *South Ferry LP #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). The important opinion issued by the Ninth Circuit in this securities fraud class action clarified, in the post-*Tellabs* environment, whether a theory of scienter based on the "core operations" inference satisfies the PSLRA's heightened pleading standard. In siding with the plaintiffs, represented by Milberg, the Ninth Circuit held that "[a]llegations that rely on the core operations inference are among the allegations that may be considered in the complete PSLRA analysis." The court explained that under the "holistic" approach required by *Tellabs*, all allegations must be "read as a whole" in considering whether plaintiffs adequately plead scienter. After remand, the District Court found that the plaintiffs sufficiently alleged scienter under the Ninth Circuit's analysis.

- *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049 (9th Cir. 2008). In this securities fraud class action in which Milberg represents the plaintiffs, the Ninth Circuit reversed the District Court's dismissal of the complaint in this opinion clarifying loss causation pleading requirements. In ruling that the plaintiffs adequately pled loss causation, the Ninth Circuit held that the plaintiffs' complaint identified a "specific economic loss" following the issuance of a specific press release, along with

allegations of misrepresentations that were described in "abundant detail." The opinion established that plaintiffs in a securities fraud action adequately plead loss causation where they provide sufficient detail of their loss causation theory and some assurance that the theory has a basis in fact. Based on this analysis, the dismissal was reversed, and the case was remanded to the District Court for further proceedings.

- *In Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), in which Milberg is lead counsel for the class, the United States Supreme Court announced a uniform standard for evaluating the sufficiency of a complaint under the PSLRA. The court held that on a motion to dismiss, a court "must consider the complaint in its entirety," accepting "all factual allegations in the complaint as true," as well as "tak[ing] into account plausible opposing inferences." On remand, the Seventh Circuit concluded that "the plaintiffs have succeeded, with regard to the statements identified in our previous opinion as having been adequately alleged to be false and material, in pleading scienter in conformity with the requirements of the PSLRA. We therefore adhere to our decision to reverse the judgment of the district court dismissing the suit." The unanimous decision was written by Judge Richard A. Posner.

- *Asher v. Baxter International, Inc.*, 377 F.3d 727 (7th Cir. 2004). In reversing and remanding the District Court's dismissal, the Seventh Circuit resolved in plaintiffs' favor an important issue involving the PSLRA's "safe harbor" for forward-looking statements. The court held that whether a cautionary statement is meaningful is an issue of fact, because whether a statement is meaningful or not depends in part on what the defendant knew when the statement was made as well as other issues of fact. Thus, this issue is not appropriately resolved on a motion to dismiss.

- *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824 (8th Cir. 2003). This important decision strongly reaffirmed the principle that whether an undisclosed fact would have been material to investors cannot ordinarily be decided on a motion to dismiss. The Eighth Circuit, stressing that "[t]he question of materiality hinges on the

❖ **MILBERG** LLP

particular circumstances of the company in question," observed that even relatively small errors in financial statements might be material if they concern areas of particular importance to investors and raise questions about management integrity.

- *In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002). In this opinion, the First Circuit joined the Second Circuit in allowing a complaint to be based on confidential sources. The court also accepted the argument made by plaintiffs, represented by Milberg, that courts should consider the amount of discovery taken place prior to deciding a motion to dismiss, with a lack of discovery resulting in a correspondingly less stringent standard for pleading securities fraud claims with particularity.

- In *Puckett v. Sony Music Entertainment*, No. 108802/98 (N.Y. Sup. Ct. N.Y. Cnty. 2002), a class action was certified against Sony Music Entertainment on behalf of a class of recording artists who were parties to standard Sony recording or production agreements entered into during the class period. The complaint alleged that Sony had a policy of treating the value added tax on foreign sales of recordings improperly thereby impermissibly reducing the royalties paid or credited to the class members. Justice DeGrasse of the New York State Supreme Court determined that class certification was appropriate and that Gary Puckett (of Gary Puckett & the Union Gap) and jazz musician and composer Robert Watson were appropriate class representatives to represent the class of artists and producers to whom Sony accounts for foreign record royalties.

- *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000). The Firm was lead counsel in this seminal securities fraud case in which the Second Circuit undertook an extensive analysis of the statutory text and the legislative history of the PSLRA and pre-existing Second Circuit case law. Among other things, the Second Circuit held that the PSLRA's pleading standard for scienter was largely equivalent to the pre-existing Second Circuit standard and vacated the District Court's dismissal which sought to impose a higher standard for pleading scienter

under the PSLRA. The Second Circuit also rejected any general requirement that plaintiffs' confidential sources must be disclosed to satisfy the PSLRA's newly-enacted particularity requirements.

- *In re Advanta Corp. Securities Litigation*, 180 F.3d 525 (3d Cir. 1999). Here, the plaintiffs, represented by Milberg, successfully argued that under the PSLRA, scienter is sufficiently pled by making an adequate showing that the defendants acted knowingly or with reckless disregard for the consequences of their actions. The Third Circuit specifically adopted the Second Circuit's scienter pleading standard for pleading fraud under the PSLRA.

- In *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998), the Second Circuit reversed the District Court's ruling, which denied plaintiffs leave to amend to assert a cause of action against defendants for failing to disclose that the defendant Trust was unable to utilize proper "hedging" techniques to insure against risk of loss. In the court's view, taken together and in context, the Trust's representations would have misled a reasonable investor.

- In *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194 (1st Cir. 1996), the First Circuit remanded plaintiffs' action after affirming, in part, Milbergs' position that in association with the filing of a prospectus related to the issuance of securities, a corporate-issuer must disclose intra-quarter, materially adverse changes in its business, if such adverse changes constitute "material changes" the disclosure of which is required pursuant to the Securities Act of 1933.

- *In re Salomon, Inc. Shareholders Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995). The Second Circuit affirmed the District Court's holding that derivative federal securities claims against defendants would not be referred to arbitration pursuant to the arbitration provisions of the Rules of the New York Stock Exchange, but would be tried in District Court. Shortly thereafter, the case settled for $40 million.

- *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991). The Supreme Court upheld the right of a stockholder of a mutual fund to bring a derivative suit without first making a pre-suit

**MILBERG** LLP

demand. Specifically, the Court held that "where a gap in the federal securities laws must be bridged by a rule that bears on the allocation of governing powers within the corporation, federal courts should incorporate state law into federal common law unless the particular state law in question is inconsistent with the policies underlying the federal statute. . . . Because a futility exception to demand does not impede the regulatory objectives of the [Investment Company Act], a court that is entertaining a derivative action under that statute must apply the demand futility exception as it is defined by the law of the State of incorporation."

- *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir. 1984), *cert. denied*, 469 U.S. 932 (1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for Section 10(b) suits that are favorable to investors.

- *Hasan v. CleveTrust Realty Investors*, 729 F.2d 372 (6th Cir. 1984). The Sixth Circuit very strictly construed, and thus narrowed, the ability of a "special litigation committee" of the board of a public company to terminate a derivative action brought by a shareholder.

- *Fox v. Reich & Tang, Inc.*, 692 F.2d 250 (2d Cir. 1982), *aff'd sub nom*, *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984). The court held that a Rule 23.1 demand is not required in a shareholder suit brought pursuant to Section 36(b) of the Investment Company Act.

- *Rifkin v. Crow*, 574 F.2d 256 (5th Cir. 1978). The Fifth Circuit reversed an order granting summary judgment for defendants in a Section 10(b) case, paving the way for future acceptance of the "fraud-on-the-market" rationale in the Fifth Circuit.

- *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976). This is the seminal appellate decision on the use of the "fraud-on-the-market" theory of reliance, allowing investors who purchase stock at artificially inflated prices to recover even if they were personally unaware of the false and misleading statements reflected in the stock's price. In so holding, the court noted that class

actions are necessary to protect the rights of defrauded purchasers of securities.

- *Bershad v. McDonough*, 300 F. Supp. 1051 (N.D. Ill. 1969), *aff'd*, 428 F.2d 693 (7th Cir. 1970). In this case, the plaintiff, represented by Milberg, obtained summary judgment on a claim for violation of Section 16(b) of the Securities Exchange Act, where the transaction at issue was structured by the defendants to look like a lawful option. The decision has been cited frequently in discussions as to the scope and purpose of Section 16(b).

- *Heit v. Weitzen*, 402 F.2d 909 (2d Cir. 1968). The court held that liability under Section 10(b) of the Securities Exchange Act extends to defendants, such as auditors, who were not in privity with the named plaintiffs or the class represented by the named plaintiffs.



# PARTNERS

**SANFORD P. DUMAIN** attended Columbia University where he received his B.A. degree in 1978. He graduated *cum laude* from Benjamin N. Cardozo School of Law of Yeshiva University in 1981.

Mr. Dumain represents plaintiffs in cases involving securities fraud, consumer fraud, insurance fraud, and violations of the antitrust laws.

Mr. Dumain was co-lead counsel in *In re Tyco International Ltd., Securities Litigation* in which $3.2 billion was recovered for investors. Mr. Dumain also served as lead counsel in the securities class actions against Nortel and Biovail, which are the highest and third highest recoveries ever in cases involving Canadian companies. The *Nortel* settlement was valued at over $1 billion and *Biovail* settled for over $138 million in cash. Mr. Dumain successfully represented the City of San Jose, California against 13 of the City's broker-dealers and its outside accountants in connection with major losses in unauthorized bond trading.

Mr. Dumain began his career as a law clerk to Judge Warren W. Eginton, United States District Court for the District of Connecticut 1981-1982. During the early years of his practice, he also served as an Adjunct Instructor in Legal Writing and Moot Court at Benjamin N. Cardozo School of Law.

Mr. Dumain has lectured for ALI-ABA concerning accountants' liability and has prosecuted several actions against accounting firms.

Judge Janet C. Hall of the District of Connecticut made the following comment in *In re Fine Host Corporation Securities Litigation* No. 97-2619 (D.Conn.): "The court also finds that the plaintiff class received excellent counseling, particularly from the Chair of the Plaintiffs' Executive Committee, Attorney Dumain."

Mr. Dumain is admitted to practice in the State of New York, United States District Court for the Southern, Eastern, and Western Districts of New York, District of Colorado, and District of Connecticut, and United States Courts of Appeals for the First, Second, Third, Sixth, Seventh, and Eighth Circuits.

Mr. Dumain is the Chair of the Firm's Executive Committee.

**LORI G. FELDMAN** is a daughter of retired public employees and understands the importance of protecting the investments of employees, as well as the general public, against corporate fraud and breaches of fiduciary duty.

In addition to lecturing on class action practice, Ms. Feldman has served as co-chair of the Continuing Legal Education Committee of the Federal Bar Association for the Western District of Washington. Ms. Feldman has participated as panel faculty in national continuing legal education programs on ERISA and securities fraud class actions arising from the subprime and liquidity crisis. She was named a "Rising Star of Washington Law" by practitioners in Seattle and named a Super Lawyer in 2011 and 2012 by practitioners in the New York Metro area.

Ms. Feldman's representative recoveries exceed $150 million. Recently, she recovered $41.5 million for class members in litigation involving Washington Mutual, Inc. (W.D. Wash.), where plaintiffs received favorable appellate court opinions on the issues of scienter (*South Ferry LP, #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008)) and class certification. Ms. Feldman also recovered millions of dollars for class members in litigation involving General Electric Co. (N.D.N.Y.), Rhythms Net Connections (D. Colo.), Gilead Sciences, Inc. (N.D. Cal.), and Boston Scientific Corp., among others. She is currently representing participants of defined contribution retirement plans in ERISA litigation

✦ **MILBERG**LLP

involving, among others, British Petroleum (BP) (MDL), Morgan Stanley & Co., Inc. (S.D.N.Y.), Macy's, Inc. (S.D. Ohio), Textron, Inc. (D.R.I.), and AIG (S.D.N.Y.).

Ms. Feldman graduated from Albany Law School in 1990, where she served as an Executive Editor of the *Albany Law Review.* She has interned at the Civil Division of the United States Attorney's Office in Brooklyn, New York. She is admitted to the bars of the States of Washington and New York and federal district and appellate courts throughout the country.

Ms. Feldman is a member of the Firm's Executive Committee.

**PAUL J. ANDREJKOVICS** graduated from Union College in 1992, *Phi Beta Kappa, magna cum laude,* with a B.A. degree in political science. In 1995, Mr. Andrejkovics received his J.D. degree from Albany Law School.

Mr. Andrejkovics's practice concentrates on class action settlements and settlement administration. He was admitted as a member of the New York bar in 1996 and is admitted to practice before the United States District Court for the Northern, Southern, and Eastern Districts of New York.

**ARVIND B. KHURANA** received his B.A. from State University of New York at Albany in 1993, and a J.D. from St. John's University School of Law in 1999, *Dean's List Graduate.* While in law school, Mr. Khurana was on the Dean's List from 1995-1999 and a member of the *American Bankruptcy Institute Law Review.*

Mr. Khurana focuses his practice primarily on class actions on behalf of defrauded investors and consumers, as well as complex commercial litigation. Prior to joining Milberg in August 2005, Mr. Khurana worked as an associate with a major international law firm in New York, concentrating in the area of complex commercial litigation.

Mr. Khurana is a member of the Federal Bar Council and admitted to practice in the state and federal courts of New York. He is also a member of the Firm's Diversity Committee.

**TODD KAMMERMAN** focuses his practice on securities class action litigation, shareholder derivative litigation and commercial litigation. Mr. Kammerman's successful litigations include *In re CMS Energy Securities Litigation,* No. 02-72004 (E.D. Mich.) ($200 million recovery); *In re Royal Dutch/Shell Transport ERISA Litigation,* No. 04-1398 (D.N.J.) ($90 million recovery); *Scheiner v. i2 Technologies,* No. 01-0418 (N.D. Tex.) ($87.8 million recovery); *In re Collins & Aikman Corporation Securities Litigation,* No. 03-71173 (E.D. Mich.) ($10.8 million recovery), and *Mich II Holdings LLC v. Schron,* No. 600736/10 (Sup. Ct. N.Y. Cnty.) (represented certain defendants in connection with real estate dispute and successfully litigated motion to dismiss all claims against those defendants).

Mr. Kammerman played a pivotal role in the *In re Comverse Technology, Inc. Derivative Litigation,* No. 601272/06 (Sup. Ct. N.Y. Cnty.) ($62 million recovery), particularly in drafting the appellate briefs which led to the seminal New York Appellate Division opinion, reported at 56 A.D.3d 49 (1st Dept 2008), clarifying the standards of demand futility, and holding that a board of directors loses the protection of the business judgment rule where there is evidence of self-dealing and poor judgment by the directors. He was also a member of the team that litigated the appeal in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* before the United States Supreme Court, in which the Supreme Court issued an opinion defining the pleading standard for scienter in all federal securities fraud cases, and is reported at 551 U.S. 308 (2007).

While at Cardozo, Mr. Kammerman was named an Alexander Fellow, through which he worked as a judicial intern in the chambers of the Honorable Joseph A. Greenaway, Jr., United States District Judge in Newark, New Jersey. Mr. Kammerman is a member of the bars of the



States of New York and New Jersey and is admitted to practice before the United States Courts of Appeals for the Third and Eleventh Circuits and the United States District Courts for the District of New Jersey, Southern and Eastern Districts of New York, and Eastern District of Michigan.

**MILBERG**LLP

NEW YORK
LOS ANGELES
DETROIT

## ASSOCIATES

**JENNIFER J. SOSA** graduated from Northeastern University with a B.S. degree in Chemical Engineering, *cum laude*, in 2002. In 2005, she earned her J.D. degree from Temple University Beasley School of Law. During law school, she was a member of the Environmental Moot Court Team and was awarded the David Sive Award for Best Brief overall in the 2004 Pace National Environmental Law Moot Court Competition.

Ms. Sosa focuses her practice on ERISA litigation and is actively involved in a number of matters including *In re Boston Scientific Corp. ERISA Litigation* (D. Mass.), *In re Morgan Stanley ERISA Litigation* (S.D.N.Y.), and *In re First American Corp. ERISA Litigation* (C.D. Cal.). Ms. Sosa has also concentrated part of her practice on class actions against defrauded stockholders in cases such as *South Ferry LP # 2 v. Killinger, et al.* (W.D. Wash.), as well as the investigation and prosecution of antitrust and consumer protection actions.

Ms. Sosa is admitted to practice law in the Eastern and Southern Districts of New York and the District of New Jersey, as well as New York and New Jersey state courts. Prior to law school, Ms. Sosa worked as a Chemical Engineer.

**SCOTT FOGLIETTA [Former Associate]** received his B.A., from Clark University, 2006, his M.B.A., from Clark University, 2007, and his J.D., from Brooklyn Law School, 2010.

Mr. Foglietta practices in the areas of securities and consumer class action litigation.

Prior to law school, Mr. Foglietta earned his M.B.A. in finance from Clark University and worked as an analyst for an investment banking firm. As an undergraduate, he was a member of the Gryphon & Pleiades Honor Society and captain of the Clark University Lacrosse Team.

Mr. Foglietta is admitted to practice in the courts of the States of New York and New Jersey.

**SARA FUKS [Former Associate]** graduated from New York University with a B.A. degree in Politics, *summa cum laude*, in 2001. In February 2005, she earned her J.D. degree from Fordham University School of law, *cum laude*. During law school, she was a member of the *Fordham Law Review*.

Ms. Fuks focuses her practice primarily on ERISA litigation and is actively involved in a number of matters including *In re Boston Scientific Corp. ERISA Litigation* (D. Mass.), *In re Morgan Stanley ERISA Litigation* (S.D.N.Y.), and *In re First American Corp. ERISA Litigation* (C.D. Cal.). Ms. Fuks's practice also includes class actions on behalf of defrauded investors and *qui tam* cases.

Prior to joining Milberg in 2006, Ms. Fuks worked at the New York office of Dewey Ballantine LLP, focusing her practice on general commercial litigation.

Ms. Fuks is admitted to practice law in the Eastern and Southern Districts of New York as well as the State Court of New York.

**DAVID PEPPER [Former Associate]** received a B.A. from Northwestern University in 1998, and a J.D. *magna cum laude* from New York Law School in 2011. Mr. Pepper's practice is concentrated in investor and consumer rights litigation, with a particular focus on class action securities litigation. Among other cases, he currently represents defrauded investors in *In re Merck & Co. Securities Litigation* (D. N.J.) and *In re Jiangbo Pharmaceuticals, Inc., Securities Litigation* (S.D. Fla.).

Prior to becoming an associate, Mr. Pepper worked at Milberg as a financial analyst. In that role, he analyzed complex capital markets issues, such as asset-backed securitizations, currency and interest rate swaps, auction rate securities, and securities lending. His analysis involved deciphering manipulative trading practices and patterns in a wide array of financial markets and

 **MILBERG**LLP

assessing corporate transactions through fundamental and market-based valuation methods.

Before joining Milberg, Mr. Pepper enjoyed a seven-year career on Wall Street as an equities trader and market-maker.

While in law school, Mr. Pepper was a staff editor for the *New York Law School Law Review*, in which he had two articles published.  Mr. Pepper won the 2010 Best Case Comment Award for his student Comment published in the 2010-11 edition of the *New York Law School Law Review*.

**EXHIBIT 2**

*In re Textron, Inc. ERISA Litigation*, **Civil Action No. 09-383-ML (D.R.I.)**

**MILBERG LLP**
**TIME REPORT — Inception through October 30, 2013**

| Name | Total Hours | Hourly Rate | Total Lodestar |
|---|---|---|---|
| **PARTNERS:** | | | |
| Andrejkovics, Paul J. | 106.25 | 625.00 | $66,406.25 |
| Dumain, Sanford P. | 42.00 | 875.00 | $36,750.00 |
| Feldman, Lori G. | 590.25 | 750.00 | $442,687.50 |
| Kammerman, Todd | 17.00 | 550.00 | $9,350.00 |
| Khurana, Arvind B. | 716.25 | 575.00 | $411,843.75 |
| **ATTORNEYS:** | | | |
| Foglietta, Scott | 484.75 | 350.00 | $169,662.50 |
| Fuks, Sara | 20.00 | 375.00 | $7,500.00 |
| Pepper, David | 27.25 | 350.00 | $9,537.50 |
| Sosa, Jennifer J. | 1,978.25 | 425.00 | $840,756.25 |
| **PROFESSIONAL SUPPORT STAFF:** | | | |
| Barrett, Meredith (PL) | 174.75 | 325.00 | $56,793.75 |
| Dennehy, Erin (PL) | 144.00 | 325.00 | $46,800.00 |
| Dube, Newman (PL) | 10.25 | 300.00 | $3,075.00 |
| Henry, Clarence (PL) | 18.00 | 220.00 | $3,960.00 |
| Joseph, Jason A. (PL) | 7.00 | 325.00 | $2,275.00 |
| Knoetgen, Danielle (PL) | 26.75 | 275.00 | $7,356.25 |
| Liefer, David (PL) | 22.50 | 325.00 | $7,312.50 |
| Sclafani, David (PL) | 19.00 | 325.00 | $6,175.00 |
| Brown, James M. (FA) | 95.75 | 475.00 | $45,481.25 |
| Bursey, W.S. (I) | 68.00 | 550.00 | $37,400.00 |
| Petrick, Michelle A. (I) | 46.00 | 475.00 | $21,850.00 |
| Weintraub, Jeffrey (I) | 351.00 | 475.00 | $166,725.00 |
| Ortiz, Jessica (C) | 22.50 | 300.00 | $6,750.00 |
| **PROFESSIONAL SUPPORT STAFF CONT'D:** | | | |
| McVoy, Paul (LS) | 6.75 | 360.00 | $2,430.00 |
| Naumov, Eugene (LS) | 162.00 | 300.00 | $48,600.00 |
| Yesilevich, Allen (FAnalyst) | 6.00 | 350.00 | $2,100.00 |

| Name | Total Hours | Hourly Rate | Total Lodestar |
|---|---|---|---|
| **TOTALS:** | | | $2,459,577.50 |
| (PL) Paralegal | | | |
| (FA) Forensic Accountant | | | |
| (I) Investigator | | | |
| (C) Clerk | | | |
| (LS) Litigation Support | | | |
| (FAnalyst) Financial Analyst | | | |

**EXHIBIT 3**

*In re Textron, Inc. ERISA Litigation*, Civil Action No. 09-383-ML (D.R.I.)

**MILBERG LLP**

**EXPENSE REPORT — Inception through October 30, 2013**

| Categories: | Amount |
|---|---|
| Photocopying/Reproduction | $5,223.85 |
| Postage/Notice Costs | $210.38 |
| Telephone | $225.43 |
| Messengers/Express Services | $846.47 |
| Filing/Witness Fees | $145.00 |
| Court Reporters/Transcript/Video | $1,798.50 |
| Computer Research (Lexis, Pacer, etc.) | $28,306.83 |
| Experts/Consultants/Professional Services | $47,554.62 |
| Document and Data Management Expenses | $6,310.00 |
| Out-of-Town Meals/Hotel/Transportation | $8,383.07 |
| | |
| **TOTAL EXPENSES:** | $99,004.15 |