## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOHN G. KLING**, personally and in a representative capacity for the Joy Global Retirement Savings Plan f/k/a the Harnischfeger Industries Employees' Savings Plan, | |
| Plaintiff | CIVIL ACTION |
| v. | **No. 01-11939-MEL** |
| **FIDELITY MANAGEMENT TRUST COMPANY**, a Massachusetts corporation; et al., | |
| Defendants | |

## FINAL ORDER AND JUDGMENT

The motion of the Settling Parties for final approval of this class action settlement, as well as the application of Class Counsel for an award of attorney's fees, reimbursement of litigation costs and expenses, and an incentive payment to Plaintiff John G. Kling, (collectively, the "Motions") came for hearing on June 29, 2006.

On March 22, 2006, this Court entered an order granting preliminary approval (the "Preliminary Approval Order") of the settlement memorialized in the Stipulation of Settlement and Release of Claims (the "Settlement Agreement"), conditionally certifying the Action as a mandatory non-opt-out class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1) and (b)(2) for purposes of settlement, and approving the form of Class Notice and directing the manner of delivery and publication thereof.

Declarations attesting to the delivery and publication of the Class Notice were filed with the Court in accordance with the Preliminary Approval Order.

On June 29, 2006, the Court held a settlement fairness hearing (the "Settlement Fairness Hearing"), for which members of the Class had been given appropriate notice. A full and fair

opportunity to be heard was given to all persons who requested to be heard in accordance with the Preliminary Approval Order and Class Notice.

Having considered the parties' moving papers, the Settlement Agreement, the Plan of Allocation, and all other evidence concerning the Motions,

IT IS HEREBY ORDERED AND ADJUDGED:

1.    To the extent not otherwise defined herein, all terms shall have the same meaning as used in the Settlement Agreement.

2.    The Court has jurisdiction over the subject matter of this Action and over all parties to the Action and the Settlement Agreement, including the Joy Global Retirement Saving Plan (the "Joy Plan") and all members of the Class.

3.    The Court hereby approves and confirms the settlement embodied in the Settlement Agreement as being (a) fair, reasonable, adequate, and in the best interest of the Class members and the Joy Plan, and (b) prudent, for the exclusive benefit of the participants and beneficiaries of the Joy Plan and all predecessor plans, and in compliance with all applicable provisions of the Employee Retirement Security Act of 1974, as amended ("ERISA"). Upon the Effective Date, the Parties are directed to consummate the Settlement in accordance with the terms and provisions of the Settlement Agreement. Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any provisions of the Settlement Agreement.

4.    Three members of the Class filed timely written objections to the Settlement Agreement. This Court has considered each of those objections and rules _____against_____

_____The objections_____ **[Court to insert]**.

5.    The Court determines that the Settlement Agreement has been negotiated vigorously, in good faith, and at arm's-length by the Plaintiff and his counsel on behalf of the Joy

2

Plan and the Class members and further finds that the Plaintiff has acted independently and that his interests are identical to the interests of the Joy Plan and the Class members.

6.     The Court determines that the Class Notice transmitted to the Class members pursuant to the Preliminary Approval Order and the Settlement Agreement constituted the best notice practicable under the circumstances and provided individual notice to all members of the Class who could be identified through reasonable efforts. The Class Notice provides valid, adequate, and sufficient notice of, among other things, these proceedings, the settlement, the Released Claims, and the Plan of Allocation to all persons entitled to such notice. Such notice has fully satisfied the requirements of Fed. R. Civ. P. 23 and the requirements of due process.

7.     The Court hereby approves the maintenance of this Action as a mandatory non-opt-out class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1) and (b)(2). The Class consists of the following individuals:

All participants (excluding the Defendants) in the Joy Global Retirement Savings Plan; the Harnischfeger Industries Employees Savings Plan; the Joy Technologies, Inc. Savings Plan; the Joy Technologies, Inc. Savings Plan for Salaried and Hourly Non-Bargaining Unit Employees; or the Joy Technologies, Inc. Savings Plan for Bargaining Unit Employees (collectively the "Plans"), and their beneficiaries, for whose benefit any of the Plans acquired or held units in a fund consisting wholly or primarily of Harnischfeger Industries, Inc. stock during the period November 1, 1997 to March 31, 2000.

8.     The Court finds that the prerequisites for a class action under Fed. R. Civ. P. 23 have been satisfied in that:

a.     The Class, consisting of thousands of members, is so numerous that joinder of all members is impracticable;

b.     There are questions of law and fact common to the Class;

c.     The Plaintiff, John G. Kling, is a member of the Class and his claims are typical of the claims of the Class;

d.     The Plaintiff has and will fairly and adequately represent the interests of the Class, and has no interests antagonistic to the Class, and has retained qualified,

3

experienced, and able counsel, and is suitable for appointment as Class Representative;

e.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants;

f.   The prosecution of separate actions by individual members of the Class would also create a risk of adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not party to the adjudications or substantially impair or impede their ability to protect their interests;

g.   Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole;

h.   The definition of the Class is sufficiently precise and proper notice was provided to the Class; and

i.   Class Counsel is appropriately qualified and suitable for appointment to represent the Class.

9.   Attorney's fees are hereby awarded to Class Counsel in the amount of $ _____ of _30_ percent of the Settlement Fund, which the Court finds to be fair and reasonable, and litigation costs and expenses are hereby awarded to Class Counsel in the amount of $ 173,707.41 , with such amounts to be paid out of the Settlement Fund to Class Counsel within 15 days after the Effective Date.

10.   An incentive payment is hereby awarded to the Class Representative, Plaintiff John G. Kling, for his role in prosecuting the Action on behalf of the Joy Plan and the Class in the amount of $ 10,000 , to be paid out of the Settlement Fund within 15 days after the Effective Date.

11.   Pursuant to Fed. R. Civ. P. 41(a)(2), the Court hereby dismisses the Action against the Settling Defendants with prejudice on the merits, and the Released Claims are released and discharged as of the Effective Date of this Final Order and Judgment.

4

12.     The Plaintiff, the Class members and any other person or entity purporting to act on their behalf, and the Joy Plan are enjoined and barred from commencing or prosecuting any action that asserts any Released Claim against any of the Released Parties (as those terms are defined in the Settlement Agreement). Any person or entity who knowingly violates this injunction may be required to pay the costs and attorney's fees incurred by the Settling Defendants or other Released Persons as a result of the violation.

13.     Without affecting the finality of this Final Order and Judgment, the Court retains jurisdiction to implement, interpret, or enforce the Final Order and Judgment, the Preliminary Approval Order, and the Settlement Agreement.

14.     In the event that (i) the Settlement Agreement is terminated pursuant to its terms, (ii) the Settlement Agreement, Preliminary Approval Order, and Final Order and Judgment do not for any reason become effective, or (iii) the Settlement Agreement, Preliminary Approval Order, or Final Order and Judgment are reversed, vacated, or modified in any material respect, then any and all orders entered pursuant to the Settlement Agreement, including this Final Order and Judgment, shall be deemed vacated.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

SO ORDERED this 25 day of _____ June _____, 2006.

_____
HON. MORRIS E. LASKER
United States Senior District Judge
District of Massachusetts

5

U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

NOV 23 2009

**FILED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

:

MARVIN OVERBY, ET. AL.                       :

:

      Plaintiffs,                              :

:         Case No. 02-CV-1357-B

vs.                                          :

:         This Document Relates To:

TYCO INTERNATIONAL LTD., ET. AL.             :         ERISA Actions

:

      Defendants.                              :

:

## ORDER ON PLAINTIFFS' MOTION FOR
## AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF
## EXPENSES AND CASE CONTRIBUTION AWARDS

Plaintiffs having moved the Court pursuant to Fed. R. Civ. P. 23(e) and (h) for an award of attorneys' fees, reimbursement of expenses, and case contribution awards, and the Court having considered the Motion, the supporting papers, opposing papers, class member objections, if any, and the entire record herein,

It is hereby ORDERED that:

1.    *Co-Lead Counsel* are awarded attorneys' fees in the amount of 30% of the $70,525,000 million Settlement Fund established in this case. The attorneys' fees and expenses awarded in this paragraph shall be allocated by *Co-Lead Counsel* among Plaintiffs' Counsel in a fashion which, in the opinion of *Co-Lead Counsel,* fairly compensates counsel for their respective contributions to the prosecution and/or settlement of the Action, and;

2.    *Co-Lead Counsel* are awarded the sum of $1,982,873.88 as reimbursement of their expenses expended to date and reasonably anticipated to be appropriately

and necessarily incurred hereafter, which Co-Lead Counsel shall distribute among Plaintiffs' Counsel at the discretion of Co-Lead Counsel;

3.   Class Representatives Edmund Dunne, Kay Jepson, John Gordon, Gary Johnson, Peter Poffenberger, and Karen Wade, and Named Plaintiff Marvin Overby, are each awarded the sum of $15,000 as a case compensation award, with all of the awards made herein to be paid from the Settlement Fund pursuant to the Class Action Settlement Agreement and this Order.


SO ORDERED this 23rd day of July, 2009.

--------------------------------------
Hon. PAUL J. BARBADORO
United States District Judge

Case 1:09-cv-00388-ML-DLM Document 109-16 Filed 11/06/10 Page 8 of 152 PageID #:
Case 1:08-cv-12139-DPW Document 95 Filed 08/11/10 Page 8 of 45
2557

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT HOCHSTADT and EDWARD HAZELRIG, )
JR., on behalf of themselves, )
the Boston Scientific Corp. 401(k) )
Retirement Savings Plan, and )
all other similarly situated, )
                                        )      CIVIL ACTION NO.
        Plaintiffs,                     )      08-12139-DPW
                                        )
v.                                      )
                                        )
BOSTON SCIENTIFIC CORP. *et al.*        )
                                        )
        Defendants.                     )

ORDER AND FINAL JUDGMENT
August 11, 2010


        This Order and Final Judgment relates to claims brought

under the Employee Retirement Income Security Act of 1974, as

amended, 29 U.S.C. § 1001 *et seq.* ("ERISA").  In early 2006,

several individual actions for violations of ERISA were filed

against one or more of the Defendants.[1]  On April 4, 2006, the

Honorable Joseph L. Tauro granted a motion to consolidate those

actions (the "Fletcher/Lowe Action").[2]  On August 23, 2006, a

---

[1]      *Larson v. Boston Scientific Corp.*, No. 06-CV-10105-JLT;
*Hochstadt v. Boston Scientific Corp.*, No. 06-CV-10159-JLT;
*Klunke v. Boston Scientific Corp.*, 06-CV-10236-JLT; *Harvey
v. Boston Scientific Corp.*, 06-CV-10265-RCL; *Lowe v. Boston
Scientific Corp.*, 06-CV-10336-JLT; *Fletcher v. Boston
Scientific Corp.*, 06-CV-10438-JLT.
[2]      *In re Boston Scientific Corp. ERISA Litig.*, No. 06-CV-
10105-JLT.  Capitalized terms not otherwise defined in this
Order and Final Judgment shall have the meaning ascribed to
them in the Parties' Amended Stipulation and Agreement of

-1-

Consolidated Class Action Complaint was filed before Judge Tauro.
On November 3, 2008, Judge Tauro (a) after finding that the
proposed class representatives, Douglas Fletcher and Michael
Lowe, lacked Article III standing, denied the motion for class
certification and dismissed the Fletcher/Lowe Action and (b)
denied Robert Hochstadt's motion to intervene in the
Fletcher/Lowe Action.[3]  Messrs. Fletcher, Lowe, and Hochstadt
appealed.[4]

On December 24, 2008, Robert Hochstadt and Edward Hazelrig,
Jr. filed the Instant Action.[5]  The Consolidated Class Action
Complaint in the Fletcher/Lowe Action and the Complaint in the
Instant Action are based on identical underlying allegations and
the defendants named in the Instant Action are the same
defendants that are named in the Fletcher/Lowe Action.

The Parties, Douglas Fletcher, and Michael Lowe reached an
agreement in principle to settle both the Instant Action and the
Fletcher/Lowe Action on September 11, 2009.  The Settlement
memorialized in the Amended Stipulation, entered into by
Defendants and by Named Plaintiff Edward Hazelrig, Jr., on behalf

---

Settlement dated February 17, 2010 (the "Amended
Stipulation").

[3]     See *In re Boston Scientific Corp. ERISA Litig.*, 254
F.R.D. 24 (D. Mass. 2008).

[4]     *In re Boston Scientific Corp. ERISA Litig.*, Appeal No.
08-CV-2568.

[5]     *Hochstadt, et al. v. Boston Scientific Corp., et al.*,
No. 08-CV-12139-DPW.

Case 1:08-cv-12139-DPW Document 95 Filed 08/11/10 Page 9 of 15

of himself, on behalf of the Boston Scientific 401(k) Retirement Savings Plan (the "Plan"), and on behalf of the Proposed Class, encompasses the Instant Action. Defendants and Douglas Fletcher and Michael Lowe have entered into a separate settlement agreement to resolve Fletcher and Lowe's individual claims, including dismissal of the currently-pending appeal of the Fletcher/Lowe Action. After Final Court approval of the Settlement, Defendants, Douglas Fletcher, and Michael Lowe will seek dismissal of the currently-pending appeal from the Fletcher/Lowe Action. As provided for at Paragraphs 8.1.4 and 8.2 of the Amended Stipulation, the First Circuit's dismissal of that appeal with prejudice is a precondition to the Amended Stipulation having any effect.

The Amended Stipulation was filed with the Court on February 17, 2010. After further submissions and a hearing on April 21, 2010, the Court entered its Order for Notice and Hearing on April 27, 2010, accompanied by a detailed Memorandum and Order also issued that day. A hearing was held on August 5, 2010 (the "Fairness Hearing") to: (i) determine whether the Instant Action satisfies the applicable prerequisites for class action treatment under Rules 23(a) and (b) of the Federal Rules of Civil Procedure; (ii) determine whether the proposed Settlement is fair, reasonable, and adequate, and should be approved by the Court; (iii) determine whether an Order of Final Judgment,

-3-

substantially in the form of Exhibit C to the Amended Stipulation, should be entered, which would, among other things, dismiss the Instant Action with prejudice, and to determine whether the release by the Class of the Settled Claims, as set forth in the Amended Stipulation, should be provided to the Released Parties; (iv) determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable, and should be approved by the Court; (v) consider Plaintiffs' Co-Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses; (vi) consider the application for a case contribution award for the Named Plaintiff; and (vii) rule upon such other matters as the Settlement contemplates and as the Court may deem just and proper.

The Court having considered all matters submitted to it at the Fairness Hearing and otherwise, including the favorable determinations made by the Independent Fiduciary for the Proposed Settlement, and it appearing that the mailing of the Notice and publication of the Publication Notice in accordance with the Order for Notice and Hearing has occurred;

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1.    The Court has jurisdiction over the subject matter of the Instant Action, all members of the Proposed Class, and all settling Defendants pursuant to 29 U.S.C. § 1132(e).

-4-

Case 1:09-cv-00388-ML-DPW Document 109-16 Filed 11/06/13 Page 12 of 152 PageID #:
Case 1:08-cv-12189-DPW Document 95 Filed 08/13/10 Page 9 of 15
2561

2.    The Court finds that the requirements of the United
States Constitution, the Federal Rules of Civil Procedure, the
Local Rules of the United States District Court for the District
of Massachusetts, and any other applicable laws have been met as
to the "Class" defined below, in that:

(a)  The Class is cohesive and well defined;

(b)  The members of the Class are ascertainable from
records kept with respect to the Plan, and the members of the
Class are so numerous that their joinder before the Court would
be impracticable;

(c)  Based on allegations in the Complaint in the
Instant Action, there are one or more questions of fact and/or
law common to the Class.

(d)  Based on allegations in the Complaint in the
Instant Action, the claims of the Named Plaintiff are typical of
the claims of the Class;

(e)  The Named Plaintiff will fairly and adequately
protect the interests of the Class in that:  (i) the interests of
the Named Plaintiff and the nature of his alleged claims are
consistent with those of the members of the Class; (ii) there
appear to be no conflicts between or among the Named Plaintiff
and the Class; and (iii) the Named Plaintiff and the members of
the Class are represented by qualified, reputable counsel who are

-5-

experienced in preparing and prosecuting large, complicated ERISA class actions; and

(f) The prosecution of separate actions by individual members of the Class would create a risk of: (i) inconsistent or varying adjudications as to individual Class members that would establish incompatible standards of conduct for the parties opposing the claims asserted in the Instant Action; or (ii) adjudications as to individual Class members that would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede the ability of those Persons to protect their interests.

3. Based on the findings set out in paragraph 2 above, the Court certifies the following class (the "Class") for settlement purposes under Fed. R. Civ. P. 23(b)(1):

> All Participants in the Plan for whose individual accounts the Plan held an interest in Boston Scientific common stock at any time during the Class Period. Excluded from the Class are Douglas Fletcher, Michael Lowe, Defendants, members of the Defendants' Immediate Families, any officer, director or principal stockholder of Boston Scientific under Section 16 of the Securities Exchange Act of 1934, any entity in which a Defendant has a controlling interest, and their heirs, Successors-In-Interest, or assigns (in their capacities as heirs, Successors-In-Interest, or assigns).

4.    The Named Plaintiff Edward Hazelrig, Jr. is an adequate class representative of the Class and, therefore, the Court appoints Edward Hazelrig, Jr. as class representative for the Class.

5.    As required by Fed. R. Civ. P. 23(g), the Court has considered:  (i) the work class counsel has done in identifying or investigating potential claims in this action; (ii) class counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in this action; (iii) class counsel's knowledge of the applicable law and, in particular, its knowledge of ERISA as it applies to claims of the type asserted in this action; and (iv) the resources class counsel has committed to representing the class.  Based on these factors, the Court finds that class counsel has and will continue to fairly and adequately represent the interests of the Class. Accordingly, the Court hereby appoints Milberg LLP and Harwood Feffer LLP as joint lead counsel for the Class ("Plaintiffs' Co-Lead Counsel").

6.    In accordance with the Court's Order for Notice and Hearing, proper and adequate notice was given to all Class members who could be identified with reasonable effort.  The form and content of the Notice, and the method of notifying the Class of the Settlement and its terms and conditions, (a) were

-7-

appropriate and reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to notice; and (b) met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, due process, and any other applicable law and constituted the best notice practicable under the circumstances. Plaintiffs' Co-Lead Counsel has filed with the Court proof of mailing of the Notice and proof of publication of the Publication Notice. Defendants' Counsel has filed with the Court proof of compliance with the Class Action Fairness Act of 2005.

7.   The Settlement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of the Instant Action and of the strengths and weaknesses of their respective positions. The Settlement was reached after the Parties had engaged in substantial discovery and extensive negotiations. Plaintiffs' Co-Lead Counsel and Defendants' Counsel are therefore well positioned to evaluate the benefits of the Settlement, taking into account the expense, risk, and uncertainty of protracted litigation over numerous questions of fact and law.

8.   The Settlement was intended by the Parties to be a contemporaneous exchange of value, and in fact constitutes such a contemporaneous exchange.

-8-

9.    The proposed Settlement warrants final approval pursuant to Federal Rule of Civil Procedure 23(e)(2) because it is fair, reasonable and adequate to the Class and others whom it affects based upon:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the Class to the Settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through the trial; (7) the range of reasonableness of the Settlement Fund in light of the best possible recovery; and (8) the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation.

10.    The Settlement is hereby APPROVED as fair, reasonable and adequate to the Class, and in the public interest.  The Parties are directed to consummate the Settlement in accordance with the terms of the Amended Stipulation.

11.    The Court having certified the Instant Action as a non-opt-out class action under Fed. R. Civ. P. 23(a) and 23(b)(1), Class members shall be bound by the Settlement.

12.    The Plan of Allocation is hereby APPROVED as fair, reasonable and adequate. Upon or after the Effective Date of the Settlement, the Escrow Agent shall, at the direction of

-9-

Plaintiffs' Co-Lead Counsel, disburse the Net Settlement Fund to the Plan for distribution by the Plan's trustee(s) in accordance with the Plan of Allocation, subject to any amounts withheld by the Escrow Agent for the payment of Taxes and related expenses as authorized in the Amended Stipulation, and attorneys' fees and expenses and a case contribution award to Named Plaintiff as authorized by this Order and Final Judgment.  The Court finds payments and distributions made in accordance with such Plan of Allocation to be "restorative payments" as defined in IRS Revenue Ruling 2002-45.  Any modification or change in the Plan of Allocation that may hereafter be approved shall in no way disturb or affect this Order and Final Judgment and shall be considered separate from this Order and Final Judgment.

13.  The Court finds that all Parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

14.  A case contribution award of $1,000.00 payable from the Gross Settlement Fund is awarded to the Named Plaintiff.  Such award may be distributed to the Named Plaintiff by the Escrow Agent upon the Effective Date of the Settlement.

15.  Plaintiffs' Co-Lead Counsel are hereby awarded $2,733,433.20 (or 33⅓% of the Gross Settlement Fund) in fees, which amount the Court finds to be fair and reasonable, and

-10-

Case 1:09-cv-00338-ML-DLM   Document 100-16   Filed 11/06/13   Page 18 of 152 PageID #:
Case 1:08-cv-12139-DPW   Document 95   Filed 08/11/10   Page 11 of 45
2567

$475,000.00 in reimbursement of expenses, which amounts shall be paid to Plaintiffs' Co-Lead Counsel from the Settlement Fund with interest from the date such Settlement Fund was funded to the date of payment at the same net rate that the Settlement Fund earns. Plaintiffs' Co-Lead Counsel shall allocate the attorneys' fees amongst Plaintiffs' Counsel in a manner in which they in good faith believe reflects the contributions of such counsel.

16. As required by Fed. R. Civ. P. 23(h)(3), in making this award of attorneys' fees and reimbursement of expenses, the Court has considered and found that:

(a) The settlement created a fund of $8.2 million in cash, plus interest thereon, for Participants in the Plan and that numerous Class members will benefit from the Settlement;

(b) Over 9,800 copies of the Notice were disseminated to putative Class members indicating that Plaintiffs' Co-Lead Counsel were moving the Court to award attorneys' fees from the Gross Settlement Fund in an amount not to exceed one-third (33⅓%) of the Gross Settlement Fund and for reimbursement of their expenses in the approximate amount of $475,000, plus interest on such expenses at the same rate as earned by the Settlement Fund, and no objections were filed against the terms of the proposed Settlement or the fees and expenses requested by Plaintiffs' Co-Lead Counsel contained in the Notice;

-11-

(c)  Plaintiffs' Co-Lead Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(d)  The Instant Action and the Fletcher/Lowe Action involve complex factual and legal issues and have been actively prosecuted over four years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

(e)  Had Plaintiffs' Co-Lead Counsel not achieved the Settlement there would remain a significant risk that the Named Plaintiff and the Class may have recovered less or nothing from the Defendants;

(f)  Plaintiffs' Counsel have devoted over 22,601 hours, with a lodestar value of $9,925,656.65, to achieve the Settlement; and

(g)  The amount of attorneys' fees awarded and expenses reimbursed are fair and reasonable and consistent with awards in similar cases.

17.  The Court retains jurisdiction over the Instant Action, the Parties, the Plan, and members of the Class for all matters relating to the Instant Action, including (without limitation) the administration, interpretation, effectuation or enforcement

-12-

Case 1:09-cv-00388-ML-LDA Document 100-16 Filed 11/06/13 Page 20 of 152 PageID #:
Case 1:08-cv-12139-DPW Document 95 Filed 08/11/10 Page 13 of 15
2569

of the Amended Stipulation and of this Order and Final Judgment,
and including any application for fees and expenses incurred in
connection with administering and distributing the Settlement
proceeds to members of the Class.

18.  Without further order of the Court, the Parties may
agree in writing to reasonable extensions of time to carry out
any of the provisions of the Amended Stipulation.

19.  Upon the Effective Date of the Settlement, the Named
Plaintiff, the Plan, and the Class members, on behalf of
themselves or itself and their or its Representatives, heirs,
executors, administrators, trustees, Predecessors, Successors-In-
Interest, and assigns (in their capacities as such), with respect
to each and every Settled Claim, release and forever discharge
and are forever enjoined from prosecuting any Settled Claim
against any of the Released Parties and covenant not to sue any
of the Released Parties with respect to any of the Settled
Claims, provided that, no Released Party shall seek any remedy
for violation of the foregoing injunction by any Class member
other than the Named Plaintiff until at least thirty (30) days
after having provided such Class member with written notice of
such injunction and a demand to desist from any conduct in
violation thereof.

20.   Upon the Effective Date of the Settlement, Defendants, on behalf of themselves and the other Released Parties and their Representatives, heirs, executors, administrators, trustees, Predecessors, Successors-In-Interest, and assigns (in their capacities as such) release and forever discharge and are forever enjoined from prosecuting the Settled Defendants' Claims against the Named Plaintiff, all members of the Class, and their respective counsel.

21.   All counts asserted in the Instant Action are DISMISSED WITH PREJUDICE, without further order of the Court, pursuant to the terms of the Amended Stipulation.

22.   Under no circumstances shall this Order and Final Judgment, the Amended Stipulation, any of their terms and provisions, the negotiations or proceedings connected with them, or any of the documents or statements referred to therein, be construed, deemed or used as an admission, concession or declaration by or against any of the Defendants of any fault, wrongdoing, breach or liability.  Nor shall this Order and Final Judgment, the Amended Stipulation, any of their terms and provisions, the negotiations or proceedings connected with them, or any of the documents or statements referred to therein, be construed, deemed or used as an admission, concession or declaration by or against the Named Plaintiff or the Class that

-14-

their claims lack merit or that the relief requested in the Instant Action or the Fletcher/Lowe Action is inappropriate, improper or unavailable, or as a waiver by any party of any defenses or claims he, she or it may have.

23. If the Effective Date of the Settlement does not occur, this Order of Final Judgment shall be null and void and shall be vacated *nunc pro tunc*, and paragraph 8.3 of the Amended Stipulation shall govern the rights of the Parties thereto.

24. The Parties are hereby authorized, without needing further approval from the Court, to agree to and adopt such amendments to, and extensions, modifications, and expansions of the Settlement as are consistent with this Order of Final Judgment and that do not limit the rights of members of the Class.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

Case 1:09-cv-00388-MLA-DA Document 109-16 Filed 11/06/13 Page 23 of 152 PageID #:
Case 1:07-cv-00828-SAS-SKB Doc #: 230 Filed: 05/25/13 Page: 1 of 23 PAGEID #: 8474
2572

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


EBRAHIM SHANECHIAN, ANITA          :
JOHNSON, DONALD SNYDER and          :     NO. 1:07-CV-828
JOSEPH STENGEL, individually        :
and on behalf of all others         :     **OPINION & ORDER**
similarly situated,                 :
                                    :
            Plaintiffs,             :
                                    :
                                    :
      v.                            :
                                    :


MACY'S, INC., et al.,

            Defendants.


        The Court held a fairness hearing on May 1, 2013, at
which the Court heard from counsel from each side of this
litigation.  For the following reasons, the Court approves the
parties' proposed settlement, including the payment of the
requested attorneys' fees and costs and GRANTS Plaintiffs'
motion for settlement approval and allocation of settlement
proceeds (doc. 219).  This Opinion and Order amends, and
supercedes in its entirety, the Court's Opinion and Order filed
May 8, 2013 (doc. 228).

**I.  BACKGROUND**

   **A. History of the Litigation**

        On August 30, 2005, Defendant Macy's completed a
merger with The May Department Stores, acquiring nearly 500 May
stores.  According to the Plaintiffs' complaint, after the

acquisition, Macy's "made a series of material misrepresentations and omissions regarding [Macy's] declining sales growth and its failures in converting the newly acquired May stores into Macy's brand stores...which caused Macy's common stock to trade at artificially inflated levels" (doc. 27). Plaintiffs filed this class action on October 3, 2007, asserting claims under Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Plaintiffs claimed that Defendants were fiduciaries of certain ERISA plans and that they breached their fiduciary duties under ERISA by allowing the plans to invest in Macy's stock and by encouraging plan participants to invest in Macy's stock. Plaintiffs alleged that as a result of Defendants' ERISA violations, Plaintiffs and members of the proposed class suffered substantial losses of retirement savings and anticipated retirement income.

This case then proceeded to be one of the most vigorously contested cases to come before the Court, but on March 10, 2011, the Court certified Plaintiffs' proposed class, defining it as follows:

> All participants in or beneficiaries of the Macy's, Inc. Profit Sharing 401(k) Investment Plan and the May Department Stores Company Profit Sharing Plan at any time from February 27, 2005, through and including the present, whose accounts included investments in Macy's stock and were damaged thereby.

> The Class specifically excludes Defendants, members of the Defendants' immediate families, any officer, director, or partner of any Defendant, any entity in which a Defendant has a controlling interest, and the heirs, successors or assigns of the foregoing.

On April 21, 2011, the Court heard arguments on Defendants' motion for partial summary judgment and partial judgment on the pleadings, but stayed its decision on the motion pending the resolution of Defendants' appeal of the Court's class certification order. The Sixth Circuit declined Defendants' petition for permission to appeal the class certification order, and the Court held a settlement conference on September 7, 2011. On February 22, 2012, the Court granted Plaintiffs' motion to continue Defendants' motion for partial summary judgment, finding it proper to all the parties to complete discovery before deciding any motion for summary judgment. On July 26, 2012, Plaintiffs informed the Court that a tentative settlement had been reached, and on December 20, 2012, the Court issued an order in which the Court, among other things, certified the following class for settlement purposes:

> All individuals who were Participants in either the Macy's Plan or the May Plan at any time between February 27, 2005 and July 24, 2012 whose Plan account included an investment in the Macy's Company Stock Fund at any time during that period. The Class specifically excludes the

Individual Defendants, their Immediate Family, and all current officers and directors of Macy's.[1]

The Court also determined that the matter should proceed as a non-opt-out class action under Federal Rule of Civil Procedure 23(a) and (b)(1); approved the notice to be sent to class members; set a class settlement fairness hearing; and approved the selection of the settlement administrator.

Pursuant to that order, notice of the proposed settlement was sent to more than 200,000 potential class members; the long form of the notice and other settlement-related documents were hosted on a dedicated website; and a summary notice was published over the PR Newswire. The deadline to file objections was March 21, 2013, and as of the date of the May 1, 2013 hearing, no objections to the settlement were filed.

**B.  The Settlement Agreement**

The parties engaged in three formal settlement conferences, with the final conference ultimately resulting in the settlement proposal now before the Court. The parties executed the settlement agreement on November 14, 2012. The parties have agreed to settle this matter for $8,500,000, from which would be taken attorneys' fees, costs, and case contribution awards for the named plaintiffs. The net

---

[1] Capitalized terms not defined herein shall have the meanings set forth in the parties' settlement agreement.

4

settlement award would then be allocated to the class members'
plan accounts according to a formula established by the
settlement administrator.  Specifically, Plaintiffs' counsel
noted at the hearing that, after the deduction of fees and
expenses, the settlement award will be paid to the plans'
fiduciary, who will make available to the settlement
administrator the class members' trading history.  Looking at
four specific dates that correspond with the alleged
misrepresentations and using regression analyses, the settlement
administrator will determine what, if any, damages each member
suffered, based on when they bought what and what they owned as
of and after the relevant dates.  The plans' fiduciary will then
allocate the money accordingly to each class member's individual
plan account, and the class members can then do with it what
they choose.  For those class members who are no longer
participants in the plans, their proceeds will be deposited into
a specific account, and they can withdraw the money at their
election.

At the fairness hearing, Plaintiffs' counsel
represented that notices were sent to over 99.9% of the
potential class; fifty-six requests were received for the long
form; four letters were received and responded to; and two
hundred ninety-four telephone calls were received and responded
to by the settlement administrator, and Plaintiffs' counsel

fielded ten additional phone calls. Plaintiffs' counsel noted that all inquiries were addressed to the satisfaction of the class member making the inquiry, and no objections to the settlement were made.[2]

In addition, Plaintiffs' counsel noted that Defendants retained an independent fiduciary on behalf of the ERISA plans at issue here to review the settlement agreement to determine whether to approve it on behalf of the plans or whether the plans should object to the settlement. Based on his review of the relevant documents in this case, he believes that the proposed settlement is reasonable and fair to the plans and approved the agreement on behalf of the plans.

Having heard from both Class Counsel and Defense Counsel and having read the comprehensive filings in this matter, the Court has been adequately briefed on the fairness and reasonableness of the proposed settlement. The Court is therefore prepared to rule on the Lead Plaintiffs' Motion for: (1) Final Approval of Class Action Settlement and (2) Plan of Allocation of Settlement Proceeds and Lead Counsel's Motion for: (1) Award of Attorneys' Fees and Reimbursement of Expenses and (2) Case Contribution Awards (doc. 219).

---

[2] The Court notes that Defendants represented to the Court that all requirements of the Class Action Fairness Act have been met, including the mailing of CAFA notices to the state attorneys general (doc. 227).

## II. DISCUSSION

### A. The Class Action Settlement and Plan of Allocation

Rule 23(a) of the Federal Rules of Civil Procedure provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Court's task is to determine whether settlement of this class action pursuant to Rule 23 is appropriate at this time. The first issue before the Court is to decide whether the settlement is fair, reasonable, and adequate.

### 1. Legal Standard

According to Rule 23 of the Federal Rules of Civil Procedure, court approval is required to settle a class action. Fed. R. Civ. P. 23(e) ("A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs.").

The law generally favors the settlement of complex class actions. _Enterprise Energy Corp. v. Columbia Gas_

7

Transmission Corp., 137 F.R.D. 240, 246 (S.D. Ohio 1991). There are three steps that must be taken by the Court in order to approve a settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) after holding a hearing, the Court must give its final approval of the settlement. Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir. 1983); Enterprise Energy Corp., 137 F.R.D. at 245; In re Dun & Bradstreet Credit Services Customer Litigation, 130 F.R.D. 366, 369 (S.D. Ohio 1990).

Although Rule 23(e) is silent as to the standard courts should apply to approve or disapprove a proposed settlement, the standard developed by the courts is to determine whether the proposed settlement is fair, adequate, and reasonable under the circumstances, and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued. Bailey v. Great Lakes Canning, Inc., 908 F.2d 38, 42 (6th Cir. 1990)(a district court may give its final approval of a class action settlement if it determines that the settlement is "fair, adequate, and reasonable, as well as consistent with the public interest."). This is determined by examining the settlement "in its entirety and not as isolated components." Enterprise Energy Corp., 137 F.R.D. at 245.

The Court is not "to determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." <u>Vukovich</u>, 720 F.2d at 921. Instead, when determining whether the proposed settlement is fair, adequate, and reasonable, the Court takes into account several factors:

> (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;
>
> (2) the complexity, expense and likely duration of the litigation;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the judgment of experienced trial counsel;
>
> (5) the nature of the negotiations;
>
> (6) the objections raised by the class members; and,
>
> (7) the public interest.

<u>In re Dun</u>, 130 F.R.D. at 371 (citing <u>Vukovich</u>, 720 F.2d at 922); <u>Enterprise Energy Corp.</u>, 137 F.R.D. at 245.

With these rules in mind, the Court now turns to an examination of the proposed settlement. The Court has previously made a preliminary approval of the settlement (doc. 218). In addition, the Court finds that the notice sent to the class regarding settlement of this matter was reasonable and that the settlement administrator was extraordinarily successful

in ensuring that the notice reached members of the class.
Therefore, the Court will now proceed with an analysis of the
factors involved in a determination of whether this proposed
settlement is proper.

>        **2.   Plaintiffs' Likelihood of Ultimate Success on the
> Merits Balanced Against the Amount of Settlement**

It is important to note that Defendants have
steadfastly denied any liability in this case.  Plaintiffs did
succeed in defeating the bulk of Defendants' motion to dismiss,
and the Court did certify the class.  However, Class Counsel
acknowledged at the hearing that the developing law in the Sixth
Circuit negatively impacted their chances for obtaining a high
verdict in this case.  Indeed, at the hearing, Defendants
reiterated their contention that the developing law in the
Circuit would mean that no damages would be appropriate in this
case, and they believe that rightly influenced Plaintiffs'
decision to settle.  In addition, Defendants noted that cases
like this one rarely go to trial, and the only trial verdicts
with publicly traded companies have been for the defendants.  In
short, as noted by the independent fiduciary retained by the
plans, there are significant factual and legal obstacles
remaining in Plaintiffs' path, both as to whether Defendants
actually have liability here and, if so, whether any amount of
damages would be appropriate.  Balancing Plaintiffs' likelihood

of success on the merits and the amount of a potential award against the amount of the settlement clearly weighs in favor of this settlement.

**3. The complexity, expense and likely duration of the litigation, the stage of the proceedings, and the amount of discovery completed all militate in favor of settlement.**

Class counsel indicated at the hearing that they believe that this litigation would likely continue for another five to six years if settlement were not consummated. Both sides repeatedly acknowledged that this was a hard-fought case and that it would continue to be vigorously defended and tenaciously prosecuted, which necessarily means that the transactional costs, already substantial, would only continue to grow in the event litigation were to continue.

Both sides have engaged in significant formal and informal discovery, including extensive document review and depositions and consultations with economic experts. Both sides have represented to the Court that they have a full understanding of the strengths and weaknesses of their respective positions, and, given that full understanding, both sides desire to settle this matter.

This case is six years old already. Given that dispositive motions would still need to be addressed, that trial could result, that preparation for trial would be lengthy and expensive, and that an appeal would be all but inevitable, it

Case 1:07-cv-00333-MSA-DAK Document 309-16 Filed 11/06/13 Page 34 of 152 PageID #:
Case 1:07-cv-00833-SAS-SKB Doc #: 230 Filed: 06/26/13 Page: 12 of 20 PAGEID #: 9485
2583

could be another six years and millions of dollars before this
case would be put to rest. To delay the resolution of this case
would not benefit the class. In addition, given the amount of
discovery both sides have engaged in, they come to the proposed
settlement after having fully evaluated the strength of their
positions. These factors weigh in favor of the proposed
settlement.

**4. Experienced Trial Counsel and the Nature of the
Negotiations Support Settlement**

The class members are represented by counsel with
extensive litigation experience, including significant
experience in the prosecution of complex class actions,
including ERISA actions. Indeed, both Milberg and Harwood
Feffer are leading law firms in pursuing ERISA litigation. The
Court notes that Class Counsel's endorsement of the proposed
settlement is informed both by the attorneys' vast experience in
these types of cases and by the amount of discovery completed in
this case.

The Court further notes that this settlement was
reached through significant and substantial arms-length
negotiations, with absolutely no hint or suggestion of collusion
or illegality. The Court itself conducted one of the three
formal settlement conferences, and the other two were conducted
by independent mediators jointly chosen by the parties.

Case 1:07-cv-00883-MSK-DAK  Document 309-16  Filed 11/06/13  Page 35 of 152 PageID #:
Case 1:07-cv-00828-SAS-SKB  Doc #: 230-1  Filed: 06/26/13  Page: 13 of 20  PAGEID #: 9486
2584

The recommendation of highly-regarded and highly-experienced Class Counsel and the arms-length nature of the settlement negotiations support the Court's determination that the proposed settlement is fair, adequate and reasonable.

**5.   No Objections Were Raised by the Class Members, and the Settlement is in the Public Interest**

Class Members were given a deadline of March 21, 2013 to file objections to the proposed settlement, and no objections were filed.   In addition, the Court opened the floor at the fairness hearing to any objectors, and none was present.   More than 200,000 notices were successfully sent, and a total of 318 contacts from class members who had questions or comments were fielded by either Class Counsel or the settlement administrator, each to the satisfaction of the class member.

It is notable that no objections were lodged with a class this large, with such effective and comprehensive notice provided, and this strongly supports the adoption of the proposed settlement.   In addition, the public will be better served by the settlement of this case rather than having the case continue for another six years.   Not only will settlement free up the Court's resources, but it will also provide a substantial benefit to the class members without further delay.

**B. The Award of Attorneys' Fees and Reimbursement of Expenses**

13

Plaintiffs' counsel took this case on a contingent basis and thus have been prosecuting this case for over five years without compensation. They now seek an award of attorneys' fees in the amount of 30% of the settlement fund ($2,550,000), plus the reimbursement of expenses incurred in the prosecution of this case ($435,916.32). Plaintiffs' attorneys and their support staff spent over 7,000 hours litigating this case, and the lodestar totals approximately $3,600,000. The request before the Court, then, is less than seventy percent of the time Class Counsel has spent in the case and equates to an approximate average of $345 per hour.

"It is within the district court's discretion to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." Bowling v. Pfizer, Inc., 102 F.3d 777, 779 (6th Cir. 1996). Moreover, an award of attorneys' fees in common fund cases need only be "reasonable under the circumstances." Rawlings v. Prudential-Bache Props., Inc., 9 F.3d 513, 516 (6th Cir. 1993).

Courts typically employ one of two methods in analyzing a request for attorneys' fees—the lodestar analysis or the percentage of the fund analysis. Id. To determine the

14

"lodestar" figure, the Court multiplies the proven number of
hours reasonably expended on the litigation by a reasonable
hourly rate. Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 1999).
The Court may then adjust the lodestar figure up or down based
on a number of factors designed to account for case-specific
circumstances. Id. at 471-72.

Under the percentage of the fund method, the court
simply determines a percentage of the settlement to award the
class counsel, based on several case-specific factors.
Rawlings, 9 F.3d at 516. Sometimes courts employ both methods,
using each as a "cross-check" against on the other. See, e.g.,
In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig., 268
F.Supp.2d 907, 923 (N.D. Ohio 2003). Here, based on the record
before the Court, a lodestar approach would yield fees in excess
of those requested. The Court will therefore analyze the fees
under the percentage of the fund method alone.

The Sixth Circuit established the relevant factors for
determining a reasonable fee award in Ramey v. Cincinnati
Enquirer, Inc., 508 F.2d 1188, 1196 (6th Cir. 1974). The Ramey
factors include: "1) the value of the benefit rendered ... 2)
society's stake in rewarding attorneys who produce such benefits
in order to maintain an incentive to others, 3) whether the
services were undertaken on a contingent fee basis, 4) the value
of the services on an hourly basis [the lodestar cross-check],

5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides." 508 F.2d at 1196. There is no formula for weighing these factors. Rather, this Court must be mindful of the facts and circumstances of this specific case. Rawlings, 9 F.3d at 516.

Applying these factors to this case, the Court finds that Class Counsel's request is reasonable under the circumstances. The settlement provides immediate cash benefit[3] to the class members and cuts off what would otherwise be protracted litigation with significant obstacles to success and a real likelihood of a smaller ultimate recovery or even no recovery at all. As noted above, Class Counsel took this case on a contingent fee basis and thus assumed a huge financial risk. This is a complex case that has been fiercely prosecuted and defended, and Class Counsel are highly skilled, as are Defendants' counsel.

The Raney factors weigh in favor of approving Class Counsel's request for attorneys' fees and reimbursement of expenses.

### C. Case Contribution Awards for the Named Plaintiffs are Reasonable

---

[3] Recognizing that the money will go into plan participants' individual accounts and will not be a typical cash payment, it is the functional equivalent of cash, and there will not be a protracted payout.

"Courts within the Sixth Circuit ... recognize that, in common fund cases and where the settlement agreement provides for incentive award, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." Lonardo v. Travelers Indem. Co., 706 F.Supp.2d 766, 787 (N.D. Ohio 2010). Class Counsel here ask the Court to award $5,000 to each of the class representatives and $1,000 to Plaintiff Shanehchian for their contributions to the prosecution and settlement of this case, such awards to be paid out of the settlement amount.[4] As support for this request, Class Counsel note that the class representatives and Mr. Shanehchian contributed considerable time to the prosecution of this case by reviewing the complaint; staying informed of the progress of the case and being available at all times to discuss the case; providing information and document in response to Defendants' discovery requests; participating in teleconferences; reviewing, considering and approving the proposed settlement agreement; and, with respect to the class representatives, appearing for depositions.

---

[4] The class representatives were designated by the Court in its Opinion and Order of March 10, 2011, and are Anita Johnson, Donald Snyder, and Joseph Stengel (doc. 164).

The Court finds Class Counsel's request on behalf of the class representatives and Plaintiff Shanehchian to be reasonable.

**III.   CONCLUSION**

The Court has thoroughly reviewed all aspects of the proposed settlement agreement and the motion for attorneys' fees. Under the circumstances of this case, the Court finds that the proposed settlement is fair, reasonable and adequate. Further, the Court finds that Class Counsel's request for attorneys' fees and reimbursement of expenses is reasonable under the circumstances and that a case contribution award to the class representatives and to Plaintiff Shanechian is appropriate.

Accordingly, for the reasons set forth herein, the Court GRANTS Lead Plaintiffs' Motion for: (1) Final Approval of Class Action Settlement and (2) Plan of Allocation of Settlement Proceeds and Lead Counsel's Motion for: (1) Award of Attorneys' Fees and Reimbursement of Expenses and (2) Case Contribution Awards (doc. 219); APPROVES the parties' settlement of this case as fair, adequate, and reasonable; AWARDS Plaintiffs' attorneys fees in the amount of 30% of the settlement fund and reimbursement of expenses in the amount of $435,916.32;  and AWARDS case contribution payments of $5,000 to class

representatives Anita Johnson, Donald Snyder, and Joseph Stengel and of $1,000 to named Plaintiff Ebrahim Shanehchian.

The Court further ORDERS that, upon the Effective Date of the Settlement, the Class Representatives, the Plans, and the Class Members, on behalf of themselves and their Representatives, heirs, executors, administrators, trustees, Predecessors, Successors-In-Interest, and assigns (in their capacities as such), release and forever discharge and are forever enjoined from prosecuting any Settled Claim against any of the Released Parties and covenant not to sue any of the Released Parties with respect to any of the Settled Claims; provided, however, that no Released Party shall seek any remedy for assertion of Settled Claims by any Class Member other than the Class Representatives until at least thirty (30) days after providing such Class Member with written notice of his or her release of, and the injunction against asserting, Settled Claims and demanding such Class Member to desist from any conduct in violation thereof.

The Court ORDERS that, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, the other Released Parties and their Representatives, heirs, executors, administrators, trustees, Predecessors, Successors-In-Interest, and assigns (in their capacities as such) release and forever discharge and are forever enjoined from prosecuting the Settled

19

Defendants' Claims against the Class Representatives, all members of the Class, and Plaintiffs' Counsel.

Finally, the Court ORDERS that all claims that were asserted in the Action are hereby DISMISSED WITH PREJUDICE, without further order of the Court, pursuant to the terms of the parties' settlement agreement, which is incorporated herein by reference and made part of this Order. The Court retains jurisdiction over all matters arising out of or related to the Settlement.

SO ORDERED.

Dated: July 25, 2013        s/S. Arthur Spiegel_____
                            S. Arthur Spiegel
                            United States Senior District Judge

NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| : | **Hon. Dennis M. Cavanaugh** |
| : |  |
| : | **ORDER** |
| IN RE SCHERING-PLOUGH CORP.: ENHANCE ERISA LITIG. : |  |
| : | Civil Action No. 08-1432  (DMC)(JAD) |
| : |  |
| : |  |
| : |  |

**DENNIS M. CAVANAUGH, U.S.D.J.**

This matter having come before the Court on Plaintiff's Motion for Final Approval of Class

Certification, Final Approval of Class Action Settlement, Final Approval of the Proposed Plan of

Allocation, and for an Award of Attorneys' Fees (ECF No. 136), and the Court having considered

the submissions of the parties, and based upon the fairness hearing conducted on May 30, 2012;

IT IS on this _31_ day of May, 2012;

**ORDERED** that Plaintiff's Motion is **granted**.



Dennis M. Cavanaugh, U.S.D.J.

Orig.:  Clerk
cc:  All Counsel of Record
  Hon. Joseph A. Dickson, U.S.M.J.
  File

Case 1:07-cv-00323-S-LDA   Document 210-1   Filed: 02/23/13   Page 11 of 45   PageID #: 2758

Case 1:09-cv-00323-ML-DA   Document 109-16   Filed 11/06/13   Page 46 of 152 PageID #:
2595
Case 1:07-cv-00323-MLS-DA   Document 218   Filed 11/30/10   Page 46 of 152 PageID #:59

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| DELILAH MORRISON and SHERRI ARGUELLO, On Behalf of Themselves And All Others Similarly Situated, | Case No. 08-CV-1121 (PJS/JJG) |
| Plaintiffs, | |
| vs. | FINAL ORDER FOR JUDGMENT |
| MONEYGRAM INTERNATIONAL, INC., PHILIP W. MILNE, JESS T. HAY, LINDA JOHNSON RICE, ALBERT M. TEPLIN, TIMOTHY R. WALLACE, MONTE E. FORD, JUDITH K. HOFER, ROBERT C. KRUEGER, DONALD E. KIERNAN, DOUGLAS L. ROCK, OTHÓN RUIZ MONTEMAYOR, DAVID J. PARRIN, ANTHONY P. RYAN, THE MONEYGRAM INTERNATIONAL, INC. PENSION AND 401(k) COMMITTEE, and JOHN DOES 1-20, | |
| Defendants. | |

This action came on for a final hearing on a proposed settlement (the
"Settlement") of the action entitled *Morrison v. MoneyGram International, Inc.*, 08-CV-
1121 (the "Action"). Based on the parties' submissions, the Court finds and states as
follows:

1.     To the extent not otherwise defined herein, all terms shall have the same
meaning as used in the Settlement Agreement in this Action dated October 7, 2010
[Docket No. 113-1] (the "Settlement Agreement").

2.     The Court has jurisdiction over the subject matter of the Action and over all
parties to it, including all members of the Settlement Class.

1

3.      Pursuant to Fed. R. Civ. P. 23(e), the Court hereby approves and confirms the Settlement embodied in the Settlement Agreement as being a fair, reasonable, and adequate settlement and compromise of the Action and in the best interests of the Settlement Class.  It is ordered that the Settlement Agreement shall be consummated and implemented in accordance with its terms and conditions.

4.      The Court determines that the Settlement Agreement has been negotiated vigorously and at arm's length by Plaintiffs and their counsel on behalf of the Plan and the Settlement Class and further finds that, at all times, Named Plaintiffs have acted independently and that their interests are identical to the interests of the Plan and the Settlement Class.  If settlement of Named Plaintiffs' claims had not been achieved, both Named Plaintiffs and Defendants faced the expense, risk, and uncertainty of extended litigation.  The Court further finds that the settlement complies with the terms of the Department of Labor's Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation PTE 2003-39, and is supported by a determination from an independent fiduciary that the settlement is appropriate for the Plan. Accordingly, the Court determines that the negotiation and consummation of the Settlement by the Plaintiffs on behalf of the Plan and the Settlement Class do not constitute "prohibited transactions" as defined in ERISA §§ 406(a) or (b).

5.      The Court determines that the Class Notice transmitted to the Settlement Class and the published Summary Notice provided pursuant to the Preliminary Approval Order concerning the Settlement and the other matters set forth therein, are the best notice practicable under the circumstances and, in the form of the Class Notice, included

individual notice to all members of the Settlement Class who could be identified through reasonable efforts. Such Notices provided valid, due, and sufficient notice of these proceedings and of the matters set forth therein, including the Settlement described in the Settlement Agreement and the Plan of Allocation, to all persons entitled to such notice, and such Notices have fully satisfied the requirements of Fed. R. Civ. P. 23 and the requirements of due process.

6. The Court hereby finds that the Plan of Allocation (Exhibit D to the Settlement Agreement) provides a fair and equitable basis upon which to allocate the proceeds of the Settlement Fund among the Settlement Class members. A full and fair opportunity was accorded to all Settlement Class members to be heard with respect to the Plan of Allocation. Accordingly, the Court hereby approves the Plan of Allocation.

7. The Court hereby approves the maintenance of the Action as a class action for settlement purposes only pursuant to Fed. R. Civ. P. Rule 23(a) and 23(b)(1) and (b)(2), with the class being defined as follows:

> All persons (other than Defendants or members of the MoneyGram International, Inc. Pension & 401(k) Committee and their beneficiaries, alternate payees (including spouses) and successors-in-interest) who both (i) were participants in or beneficiaries of the *Plan* at any time during the period starting on July 1, 2004, through October 7, 2010 and (ii) as part of their participation in the *Plan*, held Employer Stock within the Employer Stock Fund, as those terms are defined in the *Plan*; and as to each such *Person*, his, her, or its beneficiaries, alternate payees (including spouses of deceased Persons who were Plan participants), and *Successors-In-Interest*.

8.      The Court appoints Delilah Morrison and Sherri Arguello as Class Representatives for settlement purposes only.  The Court appoints Gainey & McKenna as Lead Counsel, Perry & Perry LLP as Liaison Counsel, and the two together as Class Counsel for the Settlement Class.  The Court has considered each of the elements required by Fed. R. Civ. P. 23(g) in order to ensure that Class Counsel will fairly and adequately represent the interests of the Settlement Class.  Class Counsel who seek to represent the Settlement Class in the Action have done sufficient work to represent the interests of the Settlement Class.

9.      The Action is hereby dismissed with prejudice, each party to bear its own costs, except as provided herein.

10.      Effective upon the entry of this Order, the Plan, by and through the Independent Fiduciary retained pursuant to Section 3.2.3 of the Settlement Agreement, and by operation of this Order, both on the Plan's own behalf and on behalf of all Plan participants who are members of the Settlement Class, has absolutely and unconditionally released and forever discharged each and all of the Releasees from Released Claims that the Plan directly, indirectly, derivatively, or in any other capacity every had, now has, or hereafter may have.

11.      Effective upon the entry of this Order, Named Plaintiffs, on behalf of themselves and on behalf of the Settlement Class, have absolutely and unconditionally released and forever discharged the Releasees from Released Claims that Named Plaintiffs or the Settlement Class directly, indirectly, derivatively, or in any other capacity ever had, now have, or hereafter may have.  Nothing herein, however, shall

4

preclude any action or claim related to the implementation and/or enforcement of the Settlement Agreement.

12.     Nothing herein and nothing in the Settlement Agreement shall be construed to include release by the Settlement Class members of Evercore Trust Company in its capacity as independent fiduciary to the Plan with respect to the Settlement.

13.     Effective upon the entry of this Order, Defendants have absolutely and unconditionally released and forever discharged the Named Plaintiffs, the Settlement Class and Class Counsel from any and all Claims relating to the institution or prosecution of the Action or the settlement of any Released Claims, except that the release shall not include claims relating to the covenants or obligations set forth in the Settlement Agreement. The Settling Parties intend the Settlement to be a final and complete resolution of all disputes asserted or which could have been asserted by Named Plaintiffs, the Settlement Class, the Plan, and Class Counsel against the Releasees with respect to the Released Claims. Accordingly, Named Plaintiffs and Defendants shall not assert in any forum that the claims asserted in the Action were brought or defended in bad faith or without a reasonable basis. The Settling Parties shall not assert any contention regarding a violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense or settlement of the Action. Except as expressly set forth in the Settlement Agreement, each party shall bear his, her or its own costs and expenses, including attorney's fees.

14.     In the event that the Settlement does not become effective in accordance with the terms of the Settlement Agreement, the Final Order shall be rendered null and

void and shall be vacated *nunc pro tunc*, and the Action shall proceed in the manner provided in the Settlement Agreement and the Order of Preliminary Approval.

15. Effective upon the entry of this Order, Plaintiffs, the Plan, and all Settlement Class members are permanently enjoined and barred from commencing or prosecuting any action asserting any of the Released Claims against any of the Releasees, either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or other authority, tribunal, or forum wherever located.

16. The Settlement Agreement and this Final Order, whether or not consummated, do not and shall not be construed, argued, or deemed in any way to be (a) an admission or concession by Defendants with respect to any of the Released Claims or evidence of any violation of any statute or law or other wrongdoing, fault, or liability by Defendants, or (b) an admission or concession by Named Plaintiffs or any member of the Settlement Class that their claims lack merit or that the defenses that have been or may have been asserted by Defendants have merit.

17. The Settlement Agreement and the Final Order shall not be offered or received in evidence by any class member or party to this action in any civil or administrative action or proceeding other than proceedings necessary to approve or enforce the terms of the Settlement Agreement and this Order and Final Judgment.

18. The attorney fees sought by Class Counsel in the amount of one-third of the Settlement Fund established in this Action are reasonable in light of the successful results achieved by Class Counsel, the monetary benefits obtained in this Action, the substantial

risks associated with the Action, Class Counsel's skill and experience in class action litigation of this type, and the fee awards in comparable cases. Accordingly, Class Counsel is awarded attorney's fees in the amount of one-third of the Settlement Fund, specifically $1,500,000.

19.     The litigation expenses incurred by Class Counsel in the course of prosecuting this action are reasonable. Accordingly Class Counsel is awarded expenses in the amount of $111,430.13, to be paid from the Settlement Fund.

20.     Plaintiff Delilah Morrison is awarded $10,000 as a Named Plaintiff Service Award and Plaintiff Sherri Arguello is awarded $10,000 as a Named Plaintiff Service Award, as defined in the Settlement Agreement, in recognition of their contributions to this Action.

21.     Without affecting the finality of the Judgment, the Court retains jurisdiction for purposes of implementing the Settlement Agreement and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Settlement Agreement and the Settlement, as may from time to time be appropriate, and resolution of any and all disputes arising thereunder.

22.     To ensure compliance with the Class Action Fairness Act, the Court delayed its entry of this Order until more than 90 days had passed after Defendants served the notices required by CAFA.

ORDER

Accordingly, based on all of the files, records, and proceeding herein, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' motion for final approval of class-action settlement and certification of settlement class [Docket No. 121] IS GRANTED.

2. Plaintiffs' motion for attorney's fees, expenses, and a case-contribution award [Docket No. 123] is GRANTED.

3. Defendants' motion to modify proposed final order and delay entry [Docket No. 131] is GRANTED.

4. The terms of the Settlement Agreement and the Plan of Allocation are APPROVED.

5. The Court certifies the following class pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2):

    a. All persons (other than Defendants or members of the MoneyGram International, Inc. Pension & 401(k) Committee and their beneficiaries, alternate payees (including spouses) and successors-in-interest) who both (i) were participants in or beneficiaries of the *Plan* at any time during the period starting on July 1, 2004, through October 7, 2010 and (ii) as part of their participation in the *Plan*, held Employer Stock within the Employer Stock Fund, as those terms are defined in the *Plan*; and as to each such *Person*, his, her, or its beneficiaries, alternate payees (including spouses of deceased Persons who were Plan participants), and *Successors-In-Interest*.

6. The parties, the class, and the Plan are ORDERED to abide by the terms of the Settlement Agreement and the Plan of Allocation.

Case 1:09-cv-00323-MLS-DAB Document 109-16 Filed 11/06/13 Page 54 of 152 PageID #: 2603

7.  Class counsel is awarded attorney's fees of $1,500,000 and expenses of $111,430.13 to be paid from the Settlement Fund.

8.  Plaintiff Delilah Morrison is awarded a Named Plaintiff Service Award of $10,000 to be paid from the Settlement Fund.

9.  Plaintiff Sherri Arguello is awarded a Named Plaintiff Service Award of $10,000 to be paid from the Settlement Fund.

10. This Action is DISMISSED WITH PREJUDICE.

11. The Court retains jurisdiction for the purpose of implementing and enforcing the Settlement Agreement.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 20, 2011

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge

9

Case 1:07-cv-00828-SAS-SKB Document 210-10 Filed: 02/28/14 Page: 23 of 55 PAGEID #: 3768

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

DOUGLAS J. COPPESS, Individually and on )
Behalf of All Others Similarly Situated, )
                                  )
       Plaintiff,                 )
                                    )
vs.                                     )
                                    )
HEALTHWAYS, INC; BEN R. LEEDLE, JR., )
THOMAS G. CIGARRAN, JOHN A. WICKENS )
HENRY D. HERR, WARREN NEEL, )
WILLIAM C. O'NEIL, JR., JAY C. BISGARD, )
JOHN W. BALLATINE, MARY JANE )
ENGLAND, ALISON TAUNTON-RIGBY, )
L. BEN LYTLE, MARY A. CHAPUT, ALFRED )
LUMSDAINE, BETTY ANN LAY, AMY )
MOORE, KEITH BRALY, GLENN )
HARGREAVES, HANS BERTIL WESTIN, )
CLAIBRONE RICHARDS, JERRY )
ARMSTRONG, and JOHN DOE 1-10, )
                                    )
       Defendants.             )
                                    )

Case No. 3:10-cv-00109
Judge Todd J. Campbell
Magistrate Judge John Bryant

## ORDER AND FINAL JUDGMENT

This action came on for a final fairness hearing, held on April 25, 2011, on a proposed settlement (the "Settlement") of this class action (the "Action") preliminarily certified for settlement purposes, and the issues having been duly heard and a decision having been duly rendered,

**IT IS HEREBY ORDERED AND ADJUDGED:**

To the extent not otherwise defined herein, all terms shall have the same meaning as used in the Stipulation of Settlement dated July 30, 2010 (Docket Entry #32)(the "Agreement").

The Court has jurisdiction over the subject matter of this Action and over all Parties to this Action, including all Members of the Settlement Class.

The Court hereby approves and confirms the Settlement embodied in the Agreement as being a fair, reasonable, and adequate settlement and compromise of this Action, adopts the Agreement as its Judgment, and orders that the Agreement shall be effective, binding, and enforced according to its terms and conditions.

The Court determines that Plaintiff is asserting, among others, claims on behalf of the Healthways Inc. Retirement Savings Plan (the "Plan") to recover losses alleged to have occurred as a result of a breach of fiduciary duty pursuant to ERISA § 502(a)(2).  See Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985).

The Court determines that the Settlement, which includes the payment of $1,250,000.00 on behalf of Defendants, has been negotiated vigorously and at arm's length by Class Counsel, and further finds that, at all times, Plaintiff has acted independently and that his interests are identical to the interests of the Plan and the Settlement Class.  The Court further finds that the Settlement arises from a genuine controversy between the Parties and is not the result of collusion, nor was the Settlement procured by fraud or misrepresentation.

The Court finds that the Plan's participation in the Settlement is on terms no less favorable than Plaintiff's and the Settlement Class's and that the Plan does not have any additional claims above and beyond those asserted by Plaintiff that are released as a result of the Settlement.

The Court determines that the Settlement is not part of an agreement, arrangement, or understanding designed to benefit a party in interest, but rather is designed and intended to benefit the Plan, Plan participants, and Plan beneficiaries.

Accordingly, the Court determines that the negotiation and consummation of the Settlement by Plaintiff on behalf of the Plan and the Settlement Class does not constitute "prohibited transactions" as defined by ERISA §§ 406(a) or (b), 29 U.S.C. §§ 1106(a) or (b). Further, the Court finds that, to the extent any of the transactions required by the Settlement constitute a transaction prohibited by ERISA § 406(a), 29 U.S.C. §§ 1106(a), such transactions satisfy the provisions of Prohibited Transaction Exemption 2003-39. 68 Fed. Reg. 75632 (2003).

The Court determines that the Notice transmitted to the Settlement Class, pursuant to the Preliminary Approval Order concerning the Settlement and the other matters set forth therein, is the best notice practicable under the circumstances and included individual notice to all Members of the Settlement Class who could be identified through reasonable efforts. Such Notice provides valid, due and sufficient notice of these proceedings and of the matters set forth therein, including the Settlement described in the Agreement to all persons entitled to such Notice, and such Notice has fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.

The Court hereby approves the maintenance of the Action as a non-opt-out class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1) with the class being defined as:

> All persons (other than Defendants and Kenneth Banks) who were participants in or beneficiaries of the Healthways Inc. Retirement Savings Plan at any time between May 16, 2005 and July 30, 2010, and whose accounts included investments in Healthways stock.

Pursuant to Federal Rule of Civil Procedure 23(g), the Court hereby confirms its prior appointment of Thomas J. McKenna of Gainey & McKenna as Class Counsel.

Based on the Settlement, the Court hereby dismisses the Complaint and the Action against Defendants with prejudice on the merits.

As of the date of Complete Settlement Approval and payment of the Settlement Amount

(as defined in the Agreement), the Plaintiff, the Plan, and each Member of the Settlement Class on their own behalf and on behalf of their present or former agents, employees, attorneys, accountants, representatives, advisers, investment bankers, trustees, parents, heirs, estates, executors, administrators, successors and assigns, shall be deemed to have released each and all of the Releasees from the Released Claims.

As of the date of Complete Settlement Approval and payment of the Settlement Amount (as defined in the Agreement), Defendants (their present or former agents, employees, attorneys, accountants, representatives, advisers, investment bankers, trustees, parents, heirs, estates, executors, administrators, successors and assigns) shall be deemed to have released the Plaintiff Released Parties from any claims that may have arisen out of this Action.

As of the date of Complete Settlement Approval and payment of the Settlement Amount (as defined in the Agreement), all release provisions shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown, unsuspected, or future claims, demands, or causes of action. Further, Plaintiff assumes for himself, and on behalf of the Settlement Class, and Defendants assume the risk of any subsequent discovery of any matter, fact, or law, that, if now known or understood, would in any respect have affected or could have affected any such Person's entering into this Agreement.

The Court further determines that Defendants have fully complied with the notice requirements of the Class Action Fairness Act of 2005, to the extent possible.

All members of the Settlement Class and the Plan are hereby barred and enjoined from the institution and prosecution, either directly or indirectly, of any other actions in any court asserting any and all Released Claims against any and all Releasees.

The litigation expenses incurred by Class Counsel in the course of prosecuting this action are reasonable. Accordingly Class Counsel is awarded expenses in the amount of $ 88,100.50, to be paid from the Settlement Fund.

The attorney fees sought by Class Counsel in the amount of 33⅓ percent ( 33⅓ %) of the common fund established in this Action are reasonable in light of the successful results achieved by Class Counsel, the monetary benefits obtained in this Action, the substantial risks associated with the Action, Class Counsel's skill and experience in class action litigation of this type, and the fee awards in comparable cases. Accordingly, Class Counsel is awarded attorney's fees in the amount of 33⅓ percent ( 33⅓ %) of the common fund established in this Action net of the expenses awarded herein, specifically $ 416,250 .

Plaintiff Douglas J. Coppess is awarded $ 10,000 as a Case Contribution Award, as defined in the Settlement Agreement, in recognition of his contributions to this Action.

The Plan of Allocation for the Settlement Fund submitted by the Parties is approved as fair, reasonable and adequate.

The Court finds that the payment and distribution of the Settlement Amount, as allocated in the Agreement, is a "restorative payment" as defined in IRS Revenue Ruling 2002-45.

Without affecting the finality of this Judgment, the Court retains jurisdiction for purposes of implementing the Agreement and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Agreement and Settlement, as may from time to time be appropriate, and resolution of any and all disputes arising thereunder.

SO ORDERED this 25 day of April ,2011.

TODD J. CAMPBELL
United States District Court Judge

Case 1:07-cv-00325-S-LDA Document 216-10 Filed: 02/23/13 Page: 2 of 106 PAGEID #: 14

# IN UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: RADIOSHACK CORP. | § | Case 4:08-MD-1875-Y |
| "ERISA" LITIGATION | § | |
| | § | |
| MDL 1875 | § | |
| | § | |

---

### FINAL ORDER AND JUDGMENT

AND NOW, this 8th day of February, 2011,

1.    Upon consideration of (I) the motion of Plaintiffs[1] for approval of a settlement ("the Settlement") of this Action pursuant to the terms of a Stipulation of Settlement (the "Stipulation") dated September 29, 2010, among the Named Plaintiffs and RadioShack; (ii) Class Counsel's Fee and Expense Motion; and (iii) the applications of Alan Goldstein, Keith Reiders, Robert Maxwell, Robert Outlaw, and Jeffrey Cormier for Case Contribution Awards (collectively, "the Motions"); and

2.    The Court having entered an Order on October 12, 2010, preliminarily approving the Settlement, certifying the Settlement Class as a mandatory non-opt-out class pursuant to Federal Rules of Civil Procedure 23(b)(1) and (b)(2) for purposes of proceedings to consider final approval of the Settlement, approving the form of notice and directing the manner of delivery and publication thereof, and scheduling a hearing to consider the fairness of the Settlement, pursuant to Federal Rule of Civil Procedure 23(e), among other matters; and

3.    The Court, having received declarations attesting to the delivery and publication of the notice in accordance with the Preliminary Approval Order; and

4.    A hearing having been held before this Court on February 8, 2011, (the "Settlement Fairness Hearing") (I) to determine finally whether this action satisfies the applicable prerequisites for class action treatment under Rules 23(b)(1) and (b)(2); (ii) to consider the fairness of the Settlement, pursuant to Rule 23, and to determine whether to enter this Order approving the Settlement; (iii) to determine whether the proposed Plan of

---

[1] Capitalized terms not otherwise defined in this Order shall have the meanings set forth or utilized in the Stipulation of Settlement.

Allocation of the Settlement Fund is fair and reasonable and should be approved; (iv) to consider Class Counsel's Fee and Expense Motion; (v) to consider the applications of Alan Goldstein, Keith Reiders, Robert Maxwell, Robert Outlaw, and Jeffrey Cormier for Case Contribution Awards; and (vi) to rule upon such other matters as the Court might deem appropriate,

AND THE COURT, HAVING FOUND AND/OR CONCLUDED THAT:

1.      The Court has jurisdiction over the subject matter of the Action, the Settlement Class, and Defendants pursuant to 29 U.S.C. § 1132(e).

2.      The Court finds that the prerequisites for a class action under Rule 23 have been satisfied in that:

1.   The class, consisting of thousands of members, is so numerous that joinder of all members thereof is impracticable;

2.   There are questions of law and fact common to the Settlement Class;

3.   The Class Representatives Robert Outlaw and Jeffrey Cormier are members of the class and their claims are typical of the claims of the Settlement Class;

4.   The Class Representatives have fairly and adequately represented the interests of the Settlement Class and will continue to do so, they have no interests antagonistic to the Settlement Class, and they have retained qualified, experienced and able counsel;

5.   Prosecutions of separate actions by individual members of the settlement class could create a risk of inconsistent or varying adjudications with respect to individual members of the settlement class which would establish incompatible standards of conduct for Defendants;

6.   Prosecution of separate actions by individual members of the Settlement Class could result in adjudications with respect to

2

individual members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

7.   The Class Representatives contend that Defendants have allegedly acted or allegedly failed to act on grounds generally applicable to the class, thereby justifying equitable and/or declaratory relief for the class as a whole if the Class Representatives prevail as to their claims;

8.   The class definition is sufficiently precise and proper notice was provided to the Settlement Class; and

9.   Class Counsel is appropriately qualified and suitable for appointment to represent the Class.

10.  In accordance with the Court's Preliminary Approval Order, notice was timely given to all members of the Settlement Class who could be identified with reasonable effort by the Settlement Administrator and was published on the website maintained by the Settlement Administrator. The form and methods of notifying the Settlement Class of the terms and conditions of the proposed Stipulation met the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

ACCORDINGLY:

1.  This Court hereby finally certifies the Settlement Class as a mandatory non-opt-out class pursuant to Rules 23(b)(1) and 23(b)(2) consisting of:  all current and former participants in, or beneficiaries of, the RadioShack 401(k) Plan and the RadioShack Supplemental Stock Purchase Plan whose accounts included interests in investments in Company Stock and/or Putnam Funds for their benefit during the period of time from January 1, 1996, through the Stipulation's Execution Date.  No class member shall have the right to opt out of the Settlement Class.

2.  The motion for approval of the Settlement is hereby GRANTED, and the Settlement is APPROVED as fair, reasonable and adequate, and the terms of the Settlement are hereby determined to be prudent, for the exclusive benefit of participants and beneficiaries of the Plan and in compliance with all applicable provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and consistent with, and will not adversely offset, either the tax-qualified status of the Plan or the exempt status of its associated trust.  The parties are directed to consummate the Settlement in accordance with the terms of the Stipulation.

3.  Upon this order's becoming final, the Class Representatives, the Named Plaintiffs, the Settlement Class, all members of the Settlement Class, and the Plans shall be deemed to have, and by operation of the Final Order and Judgment shall have, absolutely and unconditionally released, waived, and forever discharged the Released Persons from all Released Claims that the Plaintiffs directly, indirectly, derivatively, or in any other capacity had, now have, hereafter may have, or may ever bring, under state, federal, or local law of any type from the prosecution of, any and all Released Claims against any and all of the Released Persons as provided in the Stipulation.

4.  The Plan of Allocation is APPROVED as fair and reasonable, and the Settlement Administrator and the Plan's trustee or its designee are directed to administer the payment of the Net Settlement Fund in accordance therewith.

4

5. Named Plaintiffs, Alan Goldstein, Keith Reiders, and Robert Maxwell, are hereby awarded, as Case Contribution Awards for their roles in prosecuting the Action on behalf of the Settlement Class, $2,500 each, payable from the Settlement Fund within five (5) days of the Effective Date.

6. Class Representatives Jeffrey Cormier and Robert Outlaw are each hereby awarded, as Case Contribution Awards, for their roles in prosecuting the Action on behalf of the Settlement Class, $10,000 each, payable from the Settlement Fund within five (5) days of the Effective Date.

7. Class Counsel are hereby awarded, as and for attorney fees, $800,000, which represents thirty-three and one-third percent of the Settlement Fund and which the Court finds to be fair and reasonable, and the sum of $ 94,131 as reimbursement of costs and expenses, to be paid out of the Settlement Fund to Class Counsel five (5) days after the Effective Date pursuant to Section 7 of the Stipulation.

8. Jurisdiction is hereby retained over this Action and the Parties, the Plans, and the Settlement Class members for all matters relating to the Action, including (without limitation) the administration, interpretation, effectuation or enforcement of the Stipulation and this Final Order and Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the members of the Settlement Class.

9. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

SIGNED February 8, 2011.

_Terry R. Means_

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

Case 1:07-cv-00328-SAS-DCF Document 210 Filed: 02/23/10 Page 33 of 176 PAGEID #: 3070

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JANELL T. MOORE, et al.          :          CIVIL ACTION
                                 :
              v.                 :
                                 :
COMCAST CORPORATION, et al.      :          NO. 08-773

MEMORANDUM

Bartle, C.J.                                   January 24, 2011

          Before the court are the motions of class

representative Janell T. Moore for final approval of the proposed

class action settlement and plan of allocation and for the award

of attorneys' fees, litigation costs, and compensation award to

herself as the named plaintiff.  Defendants have filed a brief in

support of plaintiffs' motions.

          Named plaintiff Janell T. Moore, a former Comcast

Corporation employee, brought this class action under §§ 409 and

502(a) of the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. §§ 1109 and 1132(a), on behalf of

participants in and beneficiaries of the Comcast Corporation

Retirement-Investment Plan (the "Plan").  Defendants are the

Comcast Corporation ("Comcast"), several current and former

members of Comcast's Investment Committee (the "Investment

Committee defendants"), and several Comcast employees allegedly

responsible for monitoring the membership of the Investment

Committee in 2007 (the "Monitoring defendants").

Plaintiffs assert claims that defendants breached their fiduciary duties to Plan participants in violation of the ERISA statute with respect to the Plan's investment in and behavior surrounding Company Stock during the Class Period.  In short, plaintiffs allege that defendants had knowledge that Comcast Corporation Stock ("Company Stock") was artificially inflated but nonetheless continued to offer such stock as a Plan investment to class members and that doing so was imprudent.  On July 7, 2008, defendants filed a motion to dismiss Moore's claims.  The court granted that motion as to defendant Michael J. Angelikas on all claim and as to all defendants on Moore's claim for breach of the fiduciary duty to provide complete and accurate information.  The motion was denied in all other respects.

On April 6, 2010, this court certified a class consisting of all persons who were participants in or beneficiaries of the Comcast Corporation Retirement-Investment Plan at any time from February 1, 2007 to December 5, 2007 and whose accounts included investments in the Comcast Class A Common Stock Fund or the Comcast Class A Special Common Stock Fund.  On April 19, 2010, defendants filed a petition for leave to appeal this certification to the United States Court of Appeals for the Third Circuit pursuant to Rule 23(f) of the Federal Rules of Civil Procedure.  On July 8, 2010, the Court of Appeals denied their petition.

On December 30, 2010, we held a hearing on Moore's motion for approval of the settlement and for the award of attorney's fees, litigation costs, and a compensation award.

I.

We turn first to Moore's motion for final approval of the class action settlement. Plaintiffs and defendants have entered into a proposed settlement agreement, which provides $5,000,000 and certain non-monetary benefits to the class in exchange for a release of all claims brought in the complaint. The monetary proceeds of the settlement agreement are to be distributed pro rata based on their holdings of Company Stock in the Plan during the class period, including purchases and sales of Company Stock during the period.

The plan of allocation calculates this pro rata award through a mathematical formula. First, the "recognized loss" for each class member is the difference between the dollar value of a class member's Company Stock holdings at the start of the class period and at its close, taking into account the member's purchases and sales of Company Stock during the class period. Class members with a recognized loss of less than $5 will be deemed to have a de minimus loss and excluded from the pro rata allocation of the settlement fund. The "aggregate recognized loss" will then be calculated by totaling all class members' recognized losses. Each class member will receive a percentage of the settlement fund that is equal to their personal percentage of the aggregate recognized loss.

-3-

The non-monetary benefits in the settlement agreement are composed of base-level investment advisory services provided to all class members for a period of three years, an annual diversification notice to all Plan participants holding more than 10% of their account balance in Company Stock, additional Plan disclosures, and annual fiduciary training for members of the Plan's Investment Committee. Finally, Comcast has agreed to take no action to limit Plan participants' ability to sell their Company Stock for three years.

A district court may only approve a settlement of class action litigation if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). Our Court of Appeals has identified nine factors to guide the district courts in approving proposed class action settlements. See Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975). These factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534-35 (3d Cir. 2004) (citing Girsh, 521

-4-

F.2d at 156-57).  The court has further held that a presumption
of fairness attaches to agreements if the district court finds:
(1) the negotiations occurred at arms length; (2) there was
sufficient discovery; (3) the proponents of the settlement are
experienced in similar litigation; and (4) only a small fraction
of the class objected.  In re Cendant Corp. Litig., 264 F.3d 201,
233 n.18 (3d Cir. 2001) (citation omitted).

     In evaluating the proposed settlement in this case, we
note that "there is an overriding public interest in settling
class action litigation, and it should therefore be encouraged."
In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.
Litig., 55 F.3d 768, 784 (3d Cir. 1995).  Settlement of complex
class action litigation conserves valuable judicial resources,
avoids the expense of formal litigation, and resolves disputes
that otherwise could linger for years.  See id.; In re Sch.
Asbestos Litig., 921 F.2d 1330, 1333 (3d Cir. 1990).

     Plaintiffs' counsel maintains that the settlement is
fair and reasonable as it is the product of arms'-length
negotiation by experienced counsel familiar with class action
litigation.  The settlement came about after several months of
negotiations between the parties and after the determination of
highly contested motions to dismiss and for class certification.
Substantial discovery was conducted, including the deposition of
Moore and of several defendants to the action.  Class counsel has
significant experience in this field of class action litigation.
Finally, no class members have filed any objections to the

-5-

proposed settlement. We find that this settlement is entitled to a presumption of fairness.

Nonetheless, we will evaluate the settlement in light of the factors first enunciated by the Court of Appeals in Girsh, some of which overlap with the those that establish the presumption of fairness. See Warfarin, 391 F.3d at 534-35.

This litigation has been ongoing for more than two years before the parties reached the agreement now before this court for approval. Were this case to continue, the ensuing litigation would require extensive fact and expert discovery about which defendants owed a fiduciary duty to the class, whether any of the defendants had breached that fiduciary duty, and whether the fiduciaries reasonably should have known that the Company Stock was too risky to offer through the Plan. Furthermore, given the evolving and unsettled state of ERISA class action law, defendants anticipated filing a motion for summary judgment and appealing any adverse verdict. The expense, duration, and complexity of this case weigh in favor of approving a settlement brokered after protracted negotiations.

Plaintiffs face a significant risk in this litigation since ERISA class action law, as noted, is evolving and unsettled and all previous verdicts on similar claims have been in favor of defendants. Similarly, the risk of maintaining the class action through trial, the sixth factor, was substantial and favors early settlement of this case. Class certification was granted based on several novel issues presented in this case, any of which

-6-

could be overturned on appeal or reconsidered by the court during the litigation.

After careful consideration of the risks to the class of proceeding to trial including the novelty of the class' legal theories, resources expended in this litigation, the lack of objection to the settlement, and the manner in which the settlement agreement was created, we conclude that the decision of the class representatives on behalf of the class to settle this case for the amount of $5,000,000 is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). Accordingly, we will grant plaintiffs' motion to approve the settlement and plan of allocation.

## II.

We turn now to Moore's motion for attorneys' fees. Class counsel has requested an award of $1,650,000 from the Settlement Fund, which represents 33% of the $5,000,000 settlement amount. Counsel contends that its request is supported by the time and effort it has expended throughout this litigation, the risk undertaken, the quality of services rendered, the efficiency of the litigation, and the results achieved. Counsel also requests payment of $153,609.67 of litigation costs and a compensation award of $10,000 to be paid to named plaintiff Janell T. Moore for her time and efforts expended on this litigation.[1]

———————————————

1. The class notice informed class members that class counsel
(continued...)

-7-

We must engage in a "thorough judicial review" as "required in all class action settlements." In re Gen. Motors Corp. Pick-Up Truck Fuel, Tank Prods. Liab, Litig., 55 F.3d 768, 819 (3d Cir. 1995). According to our Court of Appeals, a district court reviewing a fee petition "must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 730 (3d Cir. 2001) (quoting Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1328-29 (9th Cir. 1999)). We must "engage in robust assessments of the fee award reasonableness factors." In re AT&T, 455 F.3d at 166 (quoting Rite Aid, 396 F.3d at 302).

For many years, both the Supreme Court and our Court of Appeals have favored calculating attorney's fees as a percentage of the class recovery. See Boeing Co. v. Van Gemert, 444 U.S. 472, 478-79 (1980); In re AT&T Corp., 455 F.3d 160, 164 (3d Cir. 2006); In re Prudential Ins. Co. America Sales Practice Litig. Agent, 148 F.3d 283, 333 (3d Cir. 1998); Court Awarded Attorney Fees, Report of Third Circuit Task Force, 108 F.R.D. 237 (1985). Our Court of Appeals has set forth the standards by which we measure and evaluate the reasonableness of proposed counsel fees. See Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d Cir.

---

1.(...continued)
intended to seek up to $1,750,000 from the settlement fund, up to $200,000 in litigation costs, and a $10,000 compensation award to Moore. No objections have been filed to that proposed settlement agreement.

2000). Those factors include: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. See Gunter, 223 F.3d 195 n.1. These factors are not to be applied in a rigid, formulaic manner, but rather a court must weigh them in light of the facts and circumstances of each case. Finally, if we do not reach a conclusion considering the Gunter factors, we may conduct a lodestar cross-check. See Cendant, 264 F.3d at 284-85.

We first consider the results obtained by class counsel for the benefit of the class. Specifically, we look to the size of the recovery in relation to the size of the class. Class counsel obtained a settlement of $5,000,000 for a class estimated to number 35,360 members. Because the precise size of the class is not certain, the precise benefit per share or per class member cannot be determined. This would amount to approximately $142.85 per class member if the settlement fund were allocated on a per person basis. Nevertheless, the size of the settlement is reasonable considering the defendants denied, and continue to deny, liability and litigated this case before the court for two years before they settled. Furthermore, each class member will

-9-

be compensated pro rata, depending on the amount estimated to be lost based on a formula included in the plan of allocation.

Pursuant to this court's Order of September 28, 2010, copies of the proposed settlement and notice were mailed to the 35,360 members of the class along with notice of the opportunity to object to the attorney's fee and cost reimbursement provisions. Class counsel supplemented their mailed notice by publicizing the settlement in USA Today. Not one member of the class has filed an objection to the settlement or attended the December 30, 2010 hearing.

We also observe that the settlement obtained by class counsel was achieved after they alone conducted the investigation and prosecuted the case against opponents represented by highly skilled counsel. No agency of the United States, including the Securities and Exchange Commission, conducted any investigation of this matter, and class counsel performed all the work. Class counsel successfully litigated defendants' motion to dismiss, engaged in extensive discovery, and obtained class certification by pursuing novel legal theories. The defendants opposed class counsel each step of the way. Class counsel nevertheless engaged in this litigation for two years on a contingent basis. Furthermore, we note that in similar cases our Court of Appeals has approved awards of counsel fees that range from 19% to 45%. See GM Trucks, 55 F.3d at 822. The fee represents 33% of the monetary value of the settlement and in this case is comparable to the average fee customary in this circuit.

-10-

In sum, the facts and circumstances of this case in addition to the efforts of counsel evaluated pursuant to the Court of Appeals' command in <u>Gunter</u> weigh in favor of approving the counsel fee agreement between class counsel and the class representatives. Furthermore, even though the court is not required to perform one, the lodestar cross-check reveals that class counsel's fee is reasonable. Counsel submit that they have expended a total of 2,610 hours on this case. Adjusted for the various rates charged, the cumulative lodestar for counsel fee is $1,573,604. The lodestar suggests a modifier of less than 1.05, which is significantly lower than numerous cases in which multipliers of up to 4 have been approved. The lodestar analysis confirms our conclusion that the fee agreement is reasonable under <u>Gunter</u>.

Plaintiffs' counsel has also requested reimbursement of $153,609.67 in litigation costs. Counsel "is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." <u>In re Cendant Corp.</u>, 232 F. Supp. 2d 327, 343 (D.N.J. 2002); <u>see also</u> <u>Abrams v. Lightolier Inc.</u>, 50 F.3d 1204, 1225 (3d Cir. 1995).

Counsel initially provided to the court a somewhat abbreviated break-down of the $153,609.67 in costs expended by class counsel. At the December 30, 2010 hearing, the court requested that class counsel provide further information about certain categories of expenses, namely computer research, expert

-11-

fees, secretarial overtime, and "travel/carfare/meals" expenses. Counsel recently submitted those materials and revised their request to $153,339.97. After reviewing the materials, we find that class counsel's request for reimbursement of litigation costs are reasonable and fair to counsel and the class with the exception of their costs for secretarial overtime in the amount of $5,027.32. It is appropriate that class counsel should be reimbursed for litigation costs in the amount of $148,312.65.

Finally, we turn to the request for a $10,000 award to Moore to compensate her for her time and efforts in serving as the named plaintiff for this class. Courts "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000) (quoting In re S. Ohio Corr. Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997)). Such an award is particularly appropriate when the named plaintiff has actively assisted class counsel in the litigation on behalf of the class. See Bradburn Parent Teacher Store, Inc. v. 3M, 513 F. Supp. 2d 322, 342 (E.D. Pa. 2007).

After a previous named plaintiff withdrew from the case, Moore stepped forward to intervene. In preparing for the litigation, she reviewed the complaint, met with counsel, provided information and documents responsive to defendants' discovery requests, participated in teleconferences, sat for her deposition, and reviewed and approved the proposed settlement

Case 1:07-cv-00323-S-LS-DRB   Document 210-16   Filed: 02/28/13   Page: 80 of 152 PageID #: 3

agreement.  We agree that it is appropriate to compensate Moore
in the amount of $10,000 for her considerable efforts in
prosecuting this litigation on behalf of the class.

Accordingly, we will grant class counsel's motion for
an award of $1,650,000 in attorneys' fees, $148,312.65 in
litigation costs, and $10,000 to compensate Moore.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1/29/10__

--------------------------------------------------x

IN RE MARSH ERISA LITIGATION                    04 Civ. 8157 (CM)

--------------------------------------------------x

DECISION AND ORDER APPROVING THE CLASS ACTION SETTLEMENT;
CERTIFYING THE CLASS FOR SETTLEMENT PURPOSES; APPROVING THE PLAN OF
ALLOCATION; AWARDING ATTORNEYS' FEES AND EXPENSES; GRANTING CASE
CONTRIBUTION AWARDS; AND REJECTING THE OBJECTIONS RECEIVED

McMahon, J.:

## INTRODUCTION

Named Plaintiffs Donald Hundley, Conrad Simon and Leticia Hernandez ("Named

Plaintiffs"), on behalf of themselves and the Class (as defined herein), move for (1) final

approval of a proposed settlement of $35 million (the "Settlement") with Marsh & McLennan

Companies, Inc. ("MMC") and the various other individuals and entities named as defendants in

this consolidated litigation (collectively, "Defendants"); (2) certification of the Class for

Settlement purposes; and (3) final approval of the Revised Plan of Allocation (the "Plan of

Allocation").

The Court preliminarily approved the Settlement in its Preliminary Approval Order of

November 10, 2009 (Docket No. 131.) Not one potential Class member objects to the amount of

the proposed Settlement or to any of its terms; only two potential Class members have objected

to the amount of attorneys' fees requested. For the reasons stated below, the Court approves the

Settlement, concluding that it is fair, reasonable and adequate. The Court also certifies the Class

for Settlement purposes and approves the Plan of Allocation.

In addition, Plaintiffs' Counsel[1] move for (1) an award of attorneys' fees in the amount of $11,665,500 (33.33% of the recovery); (2) reimbursement of litigation expenses of $1,270,915.40; and (3) case contribution awards of $15,000 for each of the Named Plaintiffs. For the reasons stated below, the Court grants all three requests.

## BACKGROUND

### I.  Summary of Plaintiffs' Claims

This litigation arises out of the underlying allegation that MMC engaged in a systematic plan to increase insurance placement revenues through improper bid manipulation and illicit client steering, all designed to generate a critical source of income known as "contingent commissions." Plaintiffs allege that Defendants violated their fiduciary and co-fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"), by, inter alia: (1) failing to prudently and loyally manage the Marsh & McLennan Companies 401(k) Savings & Investment Plan (formerly the Marsh & McLennan Companies Stock Investment Plan or "SIP," herein referred to as the "Plan") and the Plan's assets; (2) failing to properly monitor the performance of their fiduciary appointees; and (3) failing to provide participants with complete and accurate information regarding the MMC Stock Fund. Plaintiffs claim that Defendants knew or should have known that the Plan's investment in MMC stock was not a prudent retirement investment during the Class Period, and that Defendants acted imprudently by continuing to hold MMC stock in the Plan.

### II.  Procedural History

In 2004, numerous complaints were filed against MMC and the Plan's other fiduciaries. On February 9, 2005, Judge Kram consolidated those complaints into this action, styled In re

---

[1] Capitalized terms not otherwise defined herein have the meanings assigned to them in the Stipulation and Agreement of Settlement (the "Settlement Agreement") (Docket No. 128-2).

Marsh ERISA Litigation (the "ERISA Action").  (Docket No. 17.)  Plaintiffs filed their

Consolidated Class Action Complaint (the "Complaint") on June 21, 2005.  (Docket No. 32.)

### A.    Coordination with the Securities Action

Judge Kram coordinated the schedules of this ERISA Action and In re Marsh &

McLennan Companies, Inc. Securities Litigation, No. 04 Civ. 8144 (the "Securities Action").

Although the plaintiffs' interests in the two actions overlapped, they were far from identical.

Extensive negotiation was required to reach an agreement all of plaintiffs' counsel could live

with—and Judge Kram would accept.  (Lead Counsel's Corrected Mem. in Supp. of Mot. for

Award of Attorneys' Fees, Expenses and Case Contribution Awards, Dec. 30, 2009 ("Fees

Mem."), at 3.)  Ultimately, under the scheduling order adopted on April 18, 2007 (Docket No.

91), the ERISA and Securities Actions were to be litigated simultaneously, with the same motion

deadlines and discovery timeline.  Only the trial dates were different—the Securities Action

would be tried first, with the ERISA Action (a bench trial) to follow a month later.

### B.    The Motions to Dismiss

Defendants vigorously contested Plaintiffs' allegations from the outset and, in September

2005, moved to dismiss the Complaint.  The motions were fully briefed by January 2006.

Eleven months later, Judge Kram ruled on the motions, denying them in most respects.  (Docket

No. 76.)  Because the motions were under submission for such a long period of time, and

because of the rapidly evolving law concerning ERISA fiduciary duty issues in the context of

company stock in 401(k) plans, Plaintiffs supplemented their papers on six occasions.  (Decl. of

Lynn L. Sarko in Supp. of Mot. for Final Approval of Class Action Settlement, Settlement Class

Cert. and Plan of Allocation and Mot. for Award of Attorneys' Fees, Expenses and Case

Contribution Awards, Dec. 29, 2009 ("Sarko Decl."), ¶¶ 12-23.)

## C.    Class Certification

Following class document discovery, the three class representatives were deposed in Florida and Virginia in May and June 2008. Plaintiffs filed their motion for class certification on August 4, 2008, and briefing was complete in November 2008. Thereafter, both sides submitted several supplemental letter briefs, again reflecting the rapidly developing law in ERISA company stock litigation. (See id. ¶¶ 54-58.) The class certification motion was still pending at the time the proposed Settlement was reached.

## D.    Merits Discovery

Lead Counsel engaged in thirty-one months of merits discovery, which included reviewing many millions of pages of documents and participating in about 100 depositions. (Fees Mem. at 4-6.) There were numerous discovery disputes, many of which involved motion practice. Judge Kram appointed a Special Master, L. Peter Parcher, to hear and rule on disputed discovery issues.

Lead Counsel describe the document discovery in this case as "all but overwhelming." (Id. at 4.) More than thirty million pages of documents were assimilated; the documents included not only ERISA-specific documents produced in this case, but all of the documents produced by MMC in the Securities Action. (See Sarko Decl. ¶¶ 29-42 (detailing massive document review effort).)

The depositions in this litigation were "extensive, exhaustive, and expensive." (Fees Mem. at 5.) All told, Lead Counsel led or participated in about 100 depositions: the three Named Plaintiffs; twenty of the thirty-three individual defendants; eight depositions of non-defendant Plan personnel or employees of Plan service providers; and another sixty to seventy depositions of witnesses where the Securities plaintiffs took the lead and ERISA Plaintiffs'

4

Counsel questioned the witness at the end. (Sarko Decl. ¶¶ 43-48.) Lead Counsel, an experienced ERISA plaintiffs' firm, believes that, with "the possible exception of Enron, . . . it did more oral discovery in this case than in any other company stock case." (Fees Mem. at 6.)

Merits discovery concluded on September 25, 2009; however, expert discovery was still ongoing (and substantially completed) when the Settlement was reached. Plaintiffs' Counsel retained six ERISA experts, one expert on contingent commissions, and another on the factors that led to the drop in MMC's stock price. When the case settled, all expert reports and rebuttal reports had been submitted, and expert depositions had begun. (Sarko Decl. ¶¶ 49-52.)

### E. Settlement Negotiations and the Resulting Agreement

This Settlement is the product of hard-fought, arm's-length negotiations assisted by the experienced mediator and retired Judge of the Superior Court of California, Judge Daniel H. Weinstein. The parties attended one in-person mediation session and countless phone meetings with Judge Weinstein. In addition, Lead Counsel negotiated directly with MMC's General Counsel. Ultimately, the parties accepted Judge Weinstein's proposal, and in the days following engaged in extensive negotiations over the specific terms of the agreement. On November 9, 2009, the parties executed the Settlement Agreement. (Id. ¶¶ 60-64.)

This is a global Settlement—it releases all claims against Defendants and brings this litigation to a close. The amount of the Settlement is $35 million. The $35 million, minus attorneys' fees and expenses and certain other expenses described in paragraph 3.3 of the Settlement Agreement, will be directed to the accounts of Class members pursuant to the proposed Plan of Allocation.

F.    **Preliminary Approval and Notice to the Class**

In its November 10, 2009 Preliminary Approval Order, the Court preliminarily approved

the Settlement Agreement, approved the form of Notice and scheduled the Fairness Hearing for

January 29, 2010.  Pursuant to that Order, Lead Counsel, through the Settlement Administrator,

provided notice of the Settlement to Class members by (1) mailing the Court-approved Notice to

the last known address of each Class member who could be identified with reasonable effort; (2)

publishing the Publication Notice in the *The New York Times* and on *Business Wire*; and (3)

creating and administering a website to provide current information to Class members.  (See

Sarko Decl. Ex. C (Aff. of Eric Schachter, Dec. 22, 2009 ("Schachter Aff.") (describing

dissemination and publication of notice)).)  Because the Class does not allow for opting out, all

Class members will be eligible to receive a distribution from the Settlement regardless of their

actual notice.

G.    **Objections Received**

More than 30,000 Class Notices were mailed.  (Id. ¶ 8.)  No Class members object to the

Settlement itself.  Only two object to the requested fee award.

**DISCUSSION**

I.    **The Settlement Is Fair, Reasonable and Adequate**

There is a "strong judicial policy in favor of settlements, particularly in the class action

context."  In re PaineWebber Ltd. P'ships Litig., 147 F.3d 132, 138 (2d Cir. 1998). "Settlement

approval is within the Court's discretion, which should be exercised in light of the general

judicial policy favoring settlement."  In re Sumitomo Copper Litig., 189 F.R.D. 274, 280

(S.D.N.Y. 1999) (internal quotations omitted).  In a class action settlement, there is a

presumption of fairness, reasonableness and adequacy when the settlement is the product of

6

"arms-length negotiations between experienced, capable counsel after meaningful discovery."

Id. at 280 (citing Manual for Complex Litigation (Third) § 30.42 (1995)).

### A.   Standards for Approval of a Class Action Settlement

In evaluating a proposed settlement under Federal Rule of Civil Procedure 23, the Court

must determine whether the settlement, taken as a whole, is fair, reasonable and adequate.

Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1995); see In re

WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288, 2004 WL 2591402, at *10 (S.D.N.Y. Nov. 12,

2004).  It is well-established that courts in this Circuit examine the fairness, adequacy and

reasonableness of a class action settlement according to the "Grinnell factors":

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; and (9) the range of reasonableness of the
> settlement fund in light of all the attendant risks of litigation.

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted).  "In

finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the

court should consider the totality of these factors in light of the particular circumstances.'" In re

Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting Thompson

v. Metro. Life Ins. Co., 216 F.R.D. 55, 61 (S.D.N.Y. 2003)).  In deciding whether to approve a

settlement, a court "should not attempt to approximate a litigated determination of the merits of

the case lest the process of determining whether to approve a settlement simply substitute one

complex, time consuming and expensive litigation for another." White v. First Am. Registry,

Inc., No. 04 Civ. 1611, 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007).

### B. Application of the Grinnell Factors Supports Approval of the Settlement

#### 1. The Complexity, Expense and Likely Duration of the Litigation

Many courts have recognized the complexity of ERISA breach of fiduciary duty company stock claims. In In re WorldCom, Inc. ERISA Litigation, No. 02 Civ. 4816, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004), Judge Cote noted that there is a "general risk inherent in litigating complex claims such as these to their conclusion."

This case, even more than many other ERISA class action cases, was enormous in scope and extremely complicated. Plaintiffs' breach of fiduciary duty claims revolve around the allegedly fraudulent business practices at one of the world's largest insurance brokers. It is not surprising that the case involves scores of witnesses, more than thirty million pages of documents and extensive expert discovery.

This Settlement cuts short the costly and time-consuming expert discovery that remains, and eliminates the time and expense of the substantial additional briefing that undoubtedly would occur going forward. Moreover, even if the Class were to win a judgment at trial, the additional delay of trial, post-trial motions and appeals could deny the Class any actual recovery for years, further reducing its value. See Strougo v. Bassini, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003).

Thus, the first Grinnell factor weighs in favor of approving the Settlement.

#### 2. The Reaction of the Class to the Settlement

The Class's reaction to the Settlement also supports approval. Lead Counsel have kept the three Named Plaintiffs informed of the settlement negotiations with Defendants throughout the negotiating process, and all three Named Plaintiffs now fully support the Settlement. (Mem. in Supp. of Named Pls.' Mot. for Final Approval of Class Action Settlement, Settlement Class Cert. and Plan of Allocation, Dec. 29, 2009 ("Settlement Mem."), at 7.)

The Independent Fiduciary appointed to review the Settlement, Ms. Nell Hennessey of Fiduciary Counselors, also supports the Settlement. (Sarko Decl. Ex. B (Report of the Independent Fiduciary for the Settlement of In re Marsh ERISA Litigation, Dec. 10, 2009 (Independent Fiduciary Rpt.").).) The Independent Fiduciary's approval is critically important. Under well-established ERISA law, an ERISA plan that gives a litigation release to a "party of interest," such as the company itself or its employees, engages in a prohibited transaction under ERISA § 406, 29 U.S.C. § 1106. In 2003, the Department of Labor ("DOL") promulgated a Prohibited Transaction Exemption permitting such releases, but only if an independent fiduciary approves the terms of the settlement that include the release. See Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632-01 (Dec. 31, 2003). In other words, the independent fiduciary must determine that the plan received fair value for the release. Ms. Hennessey has done so in this case.

Pursuant to the Court-approved notice plan, the Notice was mailed to more than 30,000 potential Class members, and the Publication Notice was published in *The New York Times* and distributed via *Business Wire*. As set forth in the Preliminary Approval Order, the deadline for filing and serving objections was January 15, 2010. There has not been a single objection to the amount of the Settlement, to any of its terms, or to the adequacy of the Notice or Publication Notice.[2] The lack of any objections from Class members is an extremely strong indication that the Settlement is fair.

---

[2] One potential Class member, Lois Waldvogel, "objected," but only in the sense that she was concerned that she was not permitted to share in the Settlement because she had executed a severance agreement with MMC when she left in 2004. (Pls.' Supplemental Mem. Concerning Objections, Jan. 22, 2010 ("Objections Mem."), Ex. A (Waldvogel Objection).) Lead Counsel discussed the matter with Ms. Waldvogel, explaining that the severance agreement is not a bar to her participation. (Id. at 3.) Ms. Waldvogel has withdrawn her objection. (Id. Ex. C.)

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

At the time of the Settlement, Plaintiffs' Counsel had reviewed millions of pages of documents, participated in 100 depositions, exchanged expert reports and rebuttal reports, and fully briefed the issue of class certification. The advanced stage of the litigation and extensive amount of discovery completed weigh heavily in favor of approval. The parties' counsel were clearly in a position to realistically evaluate the strengths and weaknesses of the claims, and to evaluate the fairness of the proposed Settlement. See In re Lloyd's Am. Trust Fund. Litig., No. 96 Civ. 1262, 2002 WL 31663577, at *15 (S.D.N.Y. Nov. 26, 2002); see also In re Sumitomo, 189 F.R.D. at 281-82 (finding that the stage of the proceedings "strongly" favored approval of settlement reached after "[p]laintiffs had conducted extensive discovery, investigation and analyses, and the proceedings were in the advanced stage of pointing or preparing for trial"). This is not a case where the parties engaged only in "settlement discovery." Thus, the third Grinnell factor strongly supports approval.

### 4. The Risks of Establishing Liability

In assessing the Settlement, the Court balances the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. See Grinnell, 495 F.2d at 463. Here, the Class would have faced many hurdles going forward—for example, achieving and maintaining class certification, avoiding summary judgment, proving liability and damages at trial and then preserving any favorable judgment on appeal.

Contributing to Plaintiffs' risk is the fact that ERISA company stock cases involving 401(k) plans are quite new—the pioneering cases in this field were not filed until the late 1990s. The results in these cases have been decidedly mixed. Some complaints have been dismissed on motion, while others have not. And relatively few such cases have made it to the summary

judgment stage, let alone trial. In those cases that have gone to trial or reached an appellate court, the results for plaintiffs have not, on balance, been favorable. Defendants surely would have raised a host of defenses as this action progressed, any one of which might have ended or significantly limited Plaintiffs' case.

In short, there exists a substantial risk that Plaintiffs ultimately might have failed to establish Defendants' liability, and that the Class would have received nothing at all. Accordingly, the Court finds that the fourth <u>Grinnell</u> factor weighs in favor of approving the Settlement.

### 5.    The Risks of Establishing Damages

Establishing damages in this case would have been a complicated endeavor. The complex damages calculations in ERISA cases like this one are expert-intensive. The calculations require a computer model that tracks the plan's holdings of company stock, and is then compared with the performance of alternative investments on specified breach dates, subject to various additional factors and assumptions. Here, the parties have exchanged expert damages reports that reach widely divergent conclusions. (Settlement Mem. at 10.)

Moreover, the damages issue is uncertain because courts have not had occasion to apply a damages measure in a case like this after a trial. That uncertainty, coupled with Defendants' vigorous dispute of the damages issue, make establishing damages a risky proposition for Plaintiffs.

The presentation of expert testimony on complex damages issues inevitably creates significant risks that Plaintiffs avoid with this Settlement. See <u>In re Milken & Assocs. Sec. Litig.</u>, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement amounting to small percentage of total damages sought because magnitude of damages often becomes "battle of experts . . . with

no guarantee of the outcome"). Thus, the fifth <u>Grinnell</u> factor weighs in favor of approving the Settlement.

### 6. The Risk of Maintaining the Class Action Through Trial

There is also the risk that the Court would have denied Named Plaintiffs' motion for class certification on certain or all of their claims, thereby limiting or even precluding any possible recovery for the Class. The class certification motion was pending before the Court at the time of the Settlement. Thus, the uncertainty surrounding class certification supports approval of the Settlement. <u>See</u> <u>In re AOL Time Warner, Inc.</u>, No. 02 Civ. 5575, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) (finding that risk of plaintiffs not succeeding in certifying class supported approval of settlement); <u>In re Global Crossing</u>, 225 F.R.D. at 460 (same).

### 7. The Ability of Defendants to Withstand a Greater Judgment

It is undeniable that the current economic climate is not strong. MMC's financial condition undoubtedly has been adversely affected by the economic turmoil of the past year. Moreover, the value of MMC stock has not recovered since the alleged wrongdoing giving rise to this litigation. Accordingly, there is at least some risk that MMC would not have been able to pay an award higher than the Settlement. The Court agrees with Lead Counsel, however, that any such risk is remote. (<u>See</u> Settlement Mem. at 12 ("Accordingly, this factor was not a focus of the settlement negotiations.").) Thus, the seventh <u>Grinnell</u> factor is neutral or, if anything, weighs slightly in favor of approval.

### 8. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

The determination of a "reasonable" settlement "is not susceptible of a mathematical equation yielding a particularized sum." <u>In re Milken</u>, 150 F.R.D. at 66; <u>In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.</u>, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989). Rather, "in

any case there is a range of reasonableness with respect to a settlement." Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." Grinnell, 495 F.2d at 455 & n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.")

This Settlement is well within the range of reasonableness. Several factors dictated a relatively wide range of potentially recoverable damages in this case. For example, one significant factor would have been the Court's determination of the "breach" date—that is, the date on which Defendants knew or should have known that MMC stock was an imprudent investment for participants' retirement assets. Plaintiffs allege that MMC common stock was an imprudent investment for the Plan from the beginning of the Class Period, and that losses to the Plan therefore should be calculated from July 1, 2000 to January 31, 2005. Defendants almost certainly would have attempted to establish a breach date far later in the Class Period.

In addition, the amount of any recovery would have depended on various other circumstances and determinations, such as the possibility that MMC's stock price would increase, causing the Plan's losses to decrease accordingly; the Court's decision as to which measure to use when calculating damages; and the Court's determination as to whether "holder" losses are available.

In sum, the $35 million Settlement falls squarely within the range of reasonableness in light of the best possible recovery and all the attendant risks of litigation. The final two Grinnell factors therefore weigh in favor of approving the Settlement.

13

## C. The Proposed Settlement Is Procedurally Fair

"In addition to ensuring the substantive fairness of the settlement through full consideration of the Grinnell factors, the Court must also 'ensure that the settlement is not the product of collusion.'" In re Global Crossing, 225 F.R.D. at 461 (quoting In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 474 (S.D.N.Y. 1998)). However, "As long as the integrity of the negotiating process is ensured by the Court, it is assumed that the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides." Banyai v. Mazur, No. 00 Civ. 9806, 2007 WL 927583, at *12 (S.D.N.Y. Mar. 27, 2007) (approving settlement reached after months of good-faith, arm's-length negotiations) (quoting In re PaineWebber Ltd. P'Ships Litig., 171 F.R.D. 104, 132 (S.D.N.Y. 1997)).

Where, as here, "the settlement is the result of arm's length negotiations conducted by experienced counsel after adequate discovery and the settlement provokes only minimal objections, then it is entitled to '[a] strong initial presumption of fairness.'" In re Global Crossing, 225 F.R.D. at 461 (citation omitted). As set forth in the Sarko Declaration, this Settlement is the product of a rigorous and adversarial process.

Moreover, the negotiations were conducted with the assistance of Judge Weinstein, a highly regarded mediator with extensive experience in complex ERISA breach of fiduciary duty class actions. Judge Weinstein has submitted a declaration in strong support of the Settlement. (See Decl. of Hon. Daniel H. Weinstein in Supp. of Mot. for Final Approval of Class Action Settlement, Jan. 20, 2010, ¶¶ 17-18 ("[B]ased on my knowledge of this action, all of the materials provided to me, the efforts of counsel, the intensity of the negotiations, the litigation risks, and the benefits reached in the proposed settlement, I believe that this is a fair, reasonable and adequate settlement . . ., and I respectfully recommend that it be approved by the District

Court.").) In light of the foregoing, the Court has no reason to doubt that the Settlement is

procedurally fair.

**II.    Certification of a Settlement Class Is Appropriate Under Rule 23**

The Preliminary Approval Order preliminarily certified the following Class:

> (a) all current and former participants and beneficiaries of the Plan
> whose individual Plan account(s) included investments in MMC
> stock at any time during the Class Period and (b) as to each Person
> within the scope of subsection (a) of this, his, her or its
> beneficiaries, alternate payees (including spouses of deceased
> Persons who were participants of the Plan), Representatives and
> Successors-In-Interest, provided, however, that the Class shall not
> include any Defendant or any of their Immediate Family,
> beneficiaries, alternate payees (including spouses of deceased
> Persons who were Plan participants), Representatives or
> Successors-In-Interest, except for spouses and immediate family
> members who themselves are or were participants in the Plan, who
> shall be considered members of the Class with respect to their own
> Plan accounts.

(Prelim. Approval Order at 3.)  The Court also appointed the three Named Plaintiffs as Class

Representatives and Keller Rohrback L.L.P. as Lead Counsel for the Class.  (Id. at 4.)

The Second Circuit has long acknowledged the propriety of certifying a class solely for

purposes of a class action settlement. See Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir.

1982).  Classes certified for settlement purposes, like all other classes, must meet the

requirements of Rule 23(a) and at least one of three requirements set forth in Rule 23(b). See In

re Prudential Sec. Inc. Ltd. P'ships Litig., 163 F.R.D. 200, 205-10 (S.D.N.Y. 1995).

Here, Plaintiffs' ERISA breach of fiduciary duty claims are particularly appropriate for

class certification. See, e.g., In re WorldCom, Inc. ERISA Litig., No. 02 Civ. 4816, 2004 WL

2211664, at *3 (S.D.N.Y. Oct. 4, 2004) (certifying for class treatment similar ERISA claims).

Indeed, the Advisory Committee Notes to the 1966 Amendment of Rule 23(b)(1)(B) specifically

state that certification is especially appropriate in cases charging breach of trust by a fiduciary to

a large class of beneficiaries. Moreover, Congress has embraced the principle that ERISA "actions for breach of fiduciary duty [should] be brought in a representative capacity on behalf of the plan as a whole." See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n.9 (1985). Moreover, in the class certification briefing in this case, Defendants did not object to certification of Plaintiffs' prudence claims. (See Defs.' Opp. to Mot. for Class Cert., Sept. 18, 2008, at 1.)

### A. The Requirements of Rule 23(a) Are Satisfied

Certification under Rule 23(a) is proper if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the class representatives will fairly and adequately protect the interests of the class.

### 1. The Settlement Class Is Sufficiently Numerous

Numerosity is generally presumed when a class consists of forty or more members. See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). The proposed Class numbers in the thousands, easily meeting the numerosity requirement.

### 2. There Are Questions of Law or Fact Common to the Class

Rule 23(a)(2) requires a showing that common issues of fact or law affect all Class members. Commonality does not demand that every question of law or fact be common to every class member, but instead merely requires that the claims arise from a common nucleus of operative facts. See Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact.").

By their very nature, ERISA actions often present common questions of law and fact, and are therefore frequently certified as class actions. "In general, the question of defendants'

liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." Banyai v. Mazur, 205 F.R.D. 160, 163 (S.D.N.Y. 2002).

There are several common questions in this case with respect to each Class member, including (1) whether Defendants were fiduciaries of the Plan; (2) whether Defendants breached their fiduciary duties; (3) whether the Plan and its participants and beneficiaries were injured by Defendants' breaches; and (4) whether the Class is entitled to damages and, if so, the proper measure of damages. These common questions satisfy Plaintiffs' burden under Rule 23(a)(2).

### 3. Named Plaintiffs' Claims Are Typical of Those of the Class

Rule 23(a)(3) requires that the class representatives' claims are "typical" of those of the class. The typicality requirement does not require that all of the putative class members' claims are identical. E.E.O.C. v. Local 638, No. 71 Civ. 2877, 2004 WL 2414013, at *5 (S.D.N.Y. Oct. 28, 2004). Rather, "the focus of the typicality inquiry concerns whether 'each class member's claim arises from the same course of events, and [whether] each class member makes similar legal arguments to prove the defendant's liability.'" Cromer Fin. Ltd. v. Berger, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (citation omitted). The typicality requirement is often met in putative class actions brought for breaches of fiduciary duty under ERISA. See e.g., Koch v. Dwyer, No. 98 Civ. 5519, 2001 WL 289972, at *3 (S.D.N.Y. Mar. 23, 2001).

In this case, Named Plaintiffs' claims—for Defendants' alleged breach of their duties to the Plan and to all Plan participants whose accounts held MMC stock—are typical of the Class's claims, as all of the claims are effectively the same unitary claim asserted on behalf of the same Plan. In short, Named Plaintiffs and the absent Class members seek the same relief for the same wrongs by the same Defendants. Accordingly, Rule 23(a)(3)'s typicality requirement is met.

### 4. Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Courts consider two factors in measuring adequacy of representation: (1) whether the claims of the lead plaintiffs conflict with those of the class; and (2) whether the lead plaintiffs' counsel is qualified, experienced and generally able to conduct the litigation. See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992); In re Oxford Health Plans, 191 F.R.D. 369, 376 (S.D.N.Y. 2000). As many courts have observed, "the issues of typicality and adequacy tend to merge because they 'serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'" In re Vivendi Universal, S.A. Sec. Litig., 242 F.R.D. 76, 85 (S.D.N.Y. 2007) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982)).

First, Named Plaintiffs' claims and interests are aligned with those of the Class, as they are all seeking to prove Defendants' liability based on common facts and claims. Moreover, where, as here, Named Plaintiffs and absent Class members share the common goal of maximizing recovery, there is no conflict of interest between them. See In re Drexel Burnham Lambert, 960 F.2d at 291.

Second, Named Plaintiffs' counsel are highly qualified and experienced in this type of litigation, and undoubtedly capable of prosecuting this action to adequately protect the interests of the Class. (See Sarko Decl. ¶¶ 112, 143-50.) Accordingly, Named Plaintiffs and Lead Counsel meet the requirements of Rule 23(a)(4).

**B.     The Requirements of Rule 23(b)(1) Are Satisfied**

To satisfy Rule 23(b)(1), Named Plaintiffs must show that the prosecution of separate actions would create either (A) the risk of "inconsistent or varying adjudications with respect to individual class members," Fed. R. Civ. P. 23(b)(1)(A), or (B) the risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests," Fed. R. Civ. P. 23(b)(1)(B).

In this case, any one participant's claim would, as a practical matter, be dispositive of the interests of fellow Plan members because § 502(a)(2) claims must be brought in a representative capacity on behalf of the entire plan, and the relief granted by the Court to remedy a breach of fiduciary duty would "inure[ ] to the benefit of the plan as a whole," not to the individual plaintiff. See Russell, 473 U.S. at 140. Here, the three Named Plaintiffs were participants in the Plan during the Class Period. Consequently, the claims of each Named Plaintiff would be dispositive of the claims of the other Class members. Additionally, where, as here, "the allegations in the Complaint implicate misconduct in the management in the Plan[s] as a whole, disparate lawsuits by individual participants would raise the specter of 'varying adjudications.'" In re Polaroid ERISA Litig., 240 F.R.D. 65, 78 (S.D.N.Y. 2006).

Courts considering whether to certify ERISA breach of fiduciary duty claims have consistently followed the reasoning of the drafters of the Federal Rules of Civil Procedure in concluding that subsection 23(b)(1)(B) is the most appropriate basis for class certification. See Fed. R. Civ. P. 23(b)(1)(B) adv. comm. note, 1966 amend. (stating that certification under 23(b)(1)(B) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries); see, e.g., AOL Time Warner ERISA Litigation, No. 02 Civ. 8853, 2006 WL

19

2789862, at *3 (S.D.N.Y. Sept. 27, 2006); In re Global Crossing Sec. & ERISA Litig., 225

F.R.D. 436, 453 (S.D.N.Y. 2004). Certification of the Class as a non-opt-out class under Rule

23(b)(1)(B) is therefore appropriate.

### C. The Requirements of Rule 23(g) Are Met

Finally, the requirements of Rule 23(g) are met because Lead Counsel will provide

adequate representation to the Class. Lead Counsel include some of the preeminent ERISA class

action attorneys in the country, with many years of experience in ERISA law and in litigating

complex actions. There is no question that Lead Counsel have effectively prosecuted this action.

They prepared a detailed and thorough Complaint, responded to multiple motions to dismiss,

moved for class certification, conducted extensive discovery, consulted with numerous experts

and exchanged expert reports with Defendants, and engaged in hard-fought and ultimately

successful settlement negotiations with Defendants. Lead Counsel's efforts in prosecuting this

case, together with their background and experience in ERISA class action litigation, satisfy the

requirements of Rule 23(g).

### III. Transmission of the Notice to the Class Satisfied Both the Preliminary Approval Order and Applicable Law

In accordance with the Preliminary Approval Order, the Class has been provided with

ample and sufficient notice of this Settlement, and has been afforded an appropriate opportunity

to voice objections. The notice plan fully informed Class members of the lawsuit and proposed

Settlement, and enabled them to make informed decisions about their rights.

To satisfy due process, notice to class members must be "reasonably calculated, under all

the circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." In re Prudential Sec. Inc. Ltd. P'ships Litig., 164 F.R.D.

362, 368 (S.D.N.Y. 1996) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306,

314 (1950)), aff'd, 107 F.3d 3 (2d Cir. 1996). To satisfy Rule 23, "For non-opt out cases, such as the ERISA Actions, [all that is required is] such unspecified 'appropriate notice' as 'the court may direct.'" In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 448 (S.D.N.Y. 2004) (quoting Fed. R. Civ. P. 23(c)(2)(A)).

Here, the forms and methods of notice of the proposed Settlement satisfy due process considerations and meet the requirements of Rule 23. The notice plan, as approved by the Court and implemented by Lead Counsel, consisted of (1) mailing the Class Notice on December 8, 2009 to more than 30,000 potential Class members at their last known addresses; (2) publishing the Publication Notice in *The New York Times* and distributing it via *Business Wire*; (3) creating and administering a website to provide information to Class members; and (4) providing a toll-free telephone number that participants can call (and have called) to obtain information about the Settlement. (See Sarko Decl. ¶ 74; Schachter Aff.)

The Notice mailed to potential Class members provided important information regarding the proposed Settlement, including (1) a comprehensive summary of its terms; (2) notice of Lead Counsel's intent to request attorneys' fees, reimbursement of expenses and case contribution awards; and (3) detailed information about the Released Claims. In addition, the Class Notice provided information about the Fairness Hearing (including its date and time), Class members' rights to object (and deadlines and procedures for objecting), and the procedure to follow to receive additional information. Further, the Notice gave Class members contact information for Lead Counsel, the toll-free phone number and an email address for inquiries, and a website for further information. The Publication Notice summarized the above information for purposes of publication.

The notice forms and methods employed here are substantially similar to those successfully used in many previous ERISA class settlements. They "fairly, accurately, and neutrally describe the claims and parties in the litigation as well as the terms of the proposed settlement and the identity of persons entitled to participate in it." Foe v. Cuomo, 700 F. Supp. 107, 113 (E.D.N.Y. 1988), aff'd, 892 F.2d 196 (2d Cir. 1989). Accordingly, the notice provided to the Class satisfies due process and Rule 23.

**IV.    The Plan of Allocation Is Reasonable, Fair and Equitable**

A district court has broad supervisory powers with respect to allocating a class action settlement and wide latitude in determining what to consider in approving a settlement allocation. In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 179, 181 (2d Cir. 1987). "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'" In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (quoting In re Am. Bank Note Holographics, Inc. Sec. Litig., 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001)). In determining whether a plan of allocation is fair, courts give substantial weight to the opinions of experienced counsel. See In re Painewebber Ltd. P'ships. Litig., 171 F.R.D. 104, 133 (S.D.N.Y. 1997).

Here, the Plan of Allocation was designed by experienced Lead Counsel who have prepared similar plans for numerous other cases. It provides recovery to Class members, net of administrative expenses and attorneys' fees and expenses, on a pro rata basis.

The Plan of Allocation was described in the Notice approved by the Court and mailed to Class members. As stated in the Notice, the Net Settlement Fund will be allocated to Class members on a pro rata basis such that the amount received by each Class member will depend on

his or her calculated loss—relative to the losses of other Class members—related to the Plan's
investments in MMC stock.

Payments will be made by crediting the accounts of active Plan participants with the
appropriate amount, and by creating or recreating an account for Class members who are no
longer active participants and then crediting their accounts in the same manner. This is
substantially the same methodology used in other company stock ERISA cases in which the
private litigants were joined by the DOL as plaintiffs. In those cases, the methodology was
employed without objection from the DOL or any independent fiduciary, and was approved by
the court. See, e.g., In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., No. 02 Civ. 5575,
2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006). Here, Lead Counsel has not received a single
objection to the proposed Plan of Allocation.

The proposed Plan of Allocation also provides for the appointment of a Settlement
Administrator, who will perform the allocation calculation described in the Plan of Allocation,
"shall be responsible for administering the Settlement pursuant to the requirements of ERISA
and any other applicable law or regulation, and shall be a fiduciary under ERISA with respect to
such action." (Plan of Allocation ¶ 8.) Lead Counsel have selected A.B. Data, Ltd., an
experienced settlement administrator in complex class action litigation like this, to serve as
Settlement Administrator.

For the reasons set forth above, the Court concludes that the proposed Plan of Allocation
is fair, reasonable and equitable, and that it is not unduly complicated or expensive.
Accordingly, the Court approves the Plan of Allocation.

## V.  Attorneys' Fees

Lead Counsel move for (1) an award of attorneys' fees in the amount of $11,665,500 (33.33% of the recovery); (2) reimbursement of litigation expenses of $1,270,915.40; and (3) case contribution awards of $15,000 for each of the Named Plaintiffs. For the reasons set forth below, the Court grants all three requests.

### A.  Lead Counsel Are Entitled to an Award of Attorneys' Fees from the Settlement Fund

When attorneys create a settlement fund for the common benefit of members of a class, "the attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund." Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47 (2d Cir. 2000) (citing Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)). "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." Id. Common fund fee awards are therefore a common feature of class litigation. Here, Plaintiffs' Counsel successfully created a common fund of $35 million plus interest, and accordingly are entitled to a reasonable share of that fund as compensation for their work. See In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d 570, 584-85 (S.D.N.Y. 2008).

The Second Circuit approves two ways of determining a reasonable attorney's fee in common fund cases: the "percentage" method and the "lodestar" method. Under the percentage method, the fee is calculated simply as a percentage of the recovery. Under the "lodestar" method, the court determines the lodestar—that is, the number of hours reasonably expended on the case multiplied by the appropriate hourly rates—based on submissions from counsel regarding the work they performed. This lodestar is then adjusted, usually upward (by a "multiplier"), to arrive at the appropriate fee award for the case. See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005); Goldberger, 209 F.3d at 50.

24

A district court has discretion to use either method, although the trend in this Circuit is

toward the percentage method. See Wal-Mart, 396 F.3d at 121. Regardless of which method is

used, several factors identified by the Second Circuit in Goldberger (the "Goldberger factors"),

discussed below, ultimately determine what is a reasonable fee. Masters v. Wilhelmina

Modeling Agency, 473 F.3d 423, 436 (2d Cir. 2007).

As detailed in the Sarko Declaration, Plaintiffs' Counsel have invested about 45,000

hours in this case. The rates range from $125 for certain administrative personnel to $775 for the

most senior lawyers; the blended rate for the case as a whole is less than $300. The lodestar (as

of December 29, 2009) is $13,311,054.80. (Sarko Decl. ¶¶ 124-28.) The Court is satisfied that

the lodestar is reasonable. The fee requested ($11,665,500) is significantly less than the lodestar,

which strongly suggests that the requested fee is reasonable.

When expressed as a percentage of the recovery—33.33%—the requested fee is

reasonable under the circumstances of this case, consistent with the Goldberger factors.

**B.      The Fee Application Is Reasonable Under the Goldberger Factors**

The Goldberger factors are:

> (1) "the time and labor expended by counsel";
> (2) "the magnitude and complexities of the litigation";
> (3) "the risk of the litigation";
> (4) "the quality of the representation";
> (5) "the requested fee in relation to the settlement"; and
> (6) "public policy considerations."

209 F.3d at 50 (internal quotations omitted); see also In re WorldCom, Inc. ERISA Litig., No. 02

Civ. 4816, 2005 WL 3116188, at *7 (S.D.N.Y. Nov. 22, 2005).

In approving the ERISA and securities settlements in In re Global Crossing Securities &

ERISA Litigation, Judge Lynch observed that "the Second Circuit [in Goldberger] has identified

the risk of success as perhaps the foremost factor to be considered in determining a reasonable

award of attorneys' fees." 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (internal quotations omitted).
Because that factor is particularly important in this case, the Court addresses it first, and then
turns to the other Goldberger factors.

### 1.    The Risks of the Litigation Support the Requested Fee

Risk is not uniform in all class actions.  For example, in Goldberger itself the panel noted
that some securities fraud class actions are, in truth, really not that risky.  See 209 F.3d at 52.
Particularly when there has been a large accounting restatement, government enforcement action
or criminal prosecution, it can be argued that plaintiffs have a strong likelihood of securing a
substantial settlement.  The same argument an be made with respect to certain antitrust class
actions filed in the wake of a Department of Justice consent decree, or products-liability cases
filed shortly after a government-ordered recall.  These cases all have risk, the argument goes, but
the risk is limited.

That argument does not apply to ERISA class actions like this one.  There is, for
example, a sharp contrast between ERISA and securities fraud class actions.  On the securities
side, the securities laws have been around for more than seventy-five years; securities fraud class
actions have been litigated since at least the early 1940s, see, e.g., Deckert v. Indep. Shares
Corp., 39 F. Supp. 592 (E.D. Pa. 1941); there is a large body of appellate case law on the issues
that arise over and over in securities fraud class actions; and, over the years, tens of billions of
dollars have been paid in securities fraud settlements and judgments, yielding meaningful
comparison cases to guide settlement discussions and enable parties to assess litigation risk.

Company stock fiduciary litigation provides a stark contrast.  ERISA is a relatively new
statute (1974), and the laws creating 401(k) plans are even newer (1981).  Company stock
actions involving 401(k) plans are newer still.  The first cases in this field were not filed until the

late 1990s, only several years before this case was filed. ERISA case law remains thin in comparison to securities and antitrust jurisprudence. There have been some substantial settlements, but nothing to rival those in the securities field. In short, ERISA litigation has nothing like the mature body of law and practice present in the securities and antitrust fields.

Further, ERISA law is still developing. One reason is the newness of the statute, but it is also true that ERISA was designed primarily to regulate traditional defined benefit plans, as opposed to 401(k) plans, which did not even exist when ERISA was enacted. The unsettled nature of the law applicable to Plaintiffs' claims—especially as it existed more than five years ago when this case was filed—increases the risks for Plaintiffs' Counsel.

Because this case settled before the summary judgment stage, it is impossible to know precisely what defenses Defendants would have asserted. However, it seems almost certain that they would have argued that MMC stock was a mandatory feature of the Plan—a feature that the defendant fiduciaries had no power to remove or restrict—such that Defendants were not fiduciaries as to company stock and could not be liable. While that argument has been rejected by some courts, it was recently accepted by Judge Stein of this court in a well-reasoned opinion, In re Citigroup ERISA Litig., No. 07 Civ. 9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009). Were this Court to have reached the same conclusion as Judge Stein (which would have depended on many factors, including but not limited to any dissimilarities in the facts of the cases), it would have had to dismiss Plaintiffs' case.

Defendants also likely would have argued that the fiduciaries were shielded from liability by ERISA § 404(c), 29 U.S.C. § 1104(c), which provides a defense in certain cases for fiduciaries of individual account plans; that steering and bid-rigging were never widespread in the company such that MMC stock was never imprudent; and that even if the stock were

27

imprudent, the Plan suffered no loss (because other equity investments in the Plan also fared badly). These potential arguments created substantial litigation risk for Plaintiffs' counsel.

In sum, the risk for Plaintiffs' Counsel in this ERISA company stock case was significant. Moreover, in addition to the risks discussed above, Plaintiffs' Counsel had to contend with the traditional risks inherent in any contingent litigation. Lead Counsel accepted this case on a contingent basis, with the attendant risk that they would receive nothing at all. There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk. Cf. Blum v. Stenson, 465 U.S. 886, 902 (1984) (Brennan, J., concurring) ("[T]he risk of not prevailing, and therefore the risk of not receiving any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee."); Gaskill v. Gordon, 160 F.3d 361, 363 (7th Cir. 1998) ("Because they shift part of the risk of loss from client to lawyer, contingent-fee contracts usually yield a larger fee in a successful case than an hourly fee would."). The risk factor, then, strongly supports the requested fee.

### 2. Lead Counsel's Time and Labor and the Magnitude and Complexities of this Case Support the Requested Fee

As detailed in the Sarko Declaration, and as discussed at various points above, this is a complex case both legally and factually, and Plaintiffs' Counsel have dedicated an enormous amount of time and labor to prosecuting this case since it was filed more than five years ago. Thus, these Goldberger factors also support the requested fee.

### 3. The Quality of Plaintiffs' Counsel's Representation of the Class Supports the Requested Fee

Lead Counsel are national leaders in this type of litigation. Keller Rohrback has served as lead or co-lead counsel in numerous ERISA fiduciary breach cases, including, in this District alone, the WorldCom, Polaroid and Merrill Lynch cases. (Sarko Decl. ¶¶ 145-46.) As lead or co-lead counsel, it has recovered over $900 million in company stock litigation. (Id. ¶ 145.)

Izard Nobel and Cohen Milstein, two other members of the Executive Committee representing Plaintiffs, also have extensive experience in this type of litigation, including many cases in which they have served together as co-lead counsel. Labaton Sucharow, an Executive Committee member and liaison counsel, has a strong and well-deserved reputation for representing plaintiffs in complex class litigation. (Fees Mem. at 15-16.)

The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement. The O'Melveny & Myers ERISA group, headed by Robert Eccles, is an unquestioned national leader in ERISA fiduciary breach litigation. The ability of Plaintiffs' Counsel to obtain a favorable settlement for the Class in the face of such formidable legal opposition confirms the quality of their representation of the Class.

Accordingly, the Court finds that this Goldberger factor weighs in favor of approving the requested fee award.

### 4. The Fee Request Is Fair and Reasonable in Relation to the Settlement Amount

The requested fee of $11,665,500 represents one-third of the recovery and about 87.6% of the lodestar. It is fair and reasonable in relation to the recovery and compares favorably to fee awards in other risky common fund cases in this Circuit and elsewhere.

29

In <u>Wal-Mart</u>, the Second Circuit stated that "the percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." 396 F.3d at 96 (quoting <u>In re Indep. Energy Holdings PLC</u>, No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)). Several decisions in this District have applied this principle. <u>See, e.g.</u>, <u>Denney v. Jenkins & Gilchrist</u>, 230 F.R.D. 317, 351 (S.D.N.Y. 2005); <u>In re AOL Time Warner Sec. Litig.</u>, No. 02 Civ. 5575, 2006 WL 3057232, at *13 (S.D.N.Y. Oct 25, 2006). The empirical data attests that federal courts do, in fact, award larger percentage fees in smaller recoveries and smaller percentage fees in larger recoveries. <u>See</u> Theodore Eisenberg & Geoffrey P. Miller, <u>Attorneys Fees in Class Action Settlements: An Empirical Study</u>, 1 J. Empirical Stud. 27 (2004).

In light of this sliding-scale approach, the fee requested by Plaintiffs' Counsel is reasonable, and well within the range of awards made by district courts in this Circuit. In <u>In re Warner Communications Securities Litigation</u>, 618 F. Supp 735, 749 (S.D.N.Y. 1985), <u>aff'd</u>, 798 F.2d 35 (2d Cir. 1986), the court noted that "Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions."

Many non-ERISA cases in this Circuit have awarded percentage fees equal to or greater than that requested here. <u>E.g.</u>, <u>Frank v. Eastman Kodak Co.</u>, 228 F.R.D. 174, 188-89 (W.D.N.Y. 2005) (awarding 38.26%); <u>Strougo v. Bassini</u>, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (33.33%); <u>Maley v. Del Global Tech. Corp.</u>, 186 F. Supp. 2d 358, 370-71 (S.D.N.Y. 2002) (awarding 33.33%; noting "modest multiplier of 4.65 [was] fair and reasonable"); <u>Becher v Long Island Lighting Co.</u>, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (33.33%); <u>In re Crazy Eddie Sec. Litig.</u>, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8%).

Courts have also awarded percentage fees of one-third or higher in ERISA company stock cases in appropriate circumstances, and especially when, as here, the fund is not a "mega" recovery. For example, in the EDS ERISA litigation, the settlement was "only" $12.5 million. The court awarded the requested one-third fee, taking into account, among other things, that the awarded fee was only 70% of the lodestar. See In re EDS ERISA Litig., No. 03 Civ. 126, Order (E.D. Tex. Aug. 6, 2008). Further, in many ERISA company stock cases, courts have awarded fees of 30%, which yielded multipliers of over 1.0, and in some cases well over. E.g., In re AIG ERISA Litig., No. 04 Civ. 9387, Order (S.D.N.Y. Oct. 7, 2008) (30% fee of $24.2 million; 1.1 multiplier); In re Xerox Corp. ERISA Litig., No. 02 Civ. 1138, Order (D. Conn. Apr. 14, 2009) (30% fee of $51.0 million; 1.6 multiplier); In re Household Int'l ERISA Litig., No. 02 Civ. 7921, Minute Entry Order (N.D. Ill. Nov. 22, 2004) (30% fee of $46.5 million; 4.8 multiplier); Kling v. Fidelity Mgmt. Trust Co., No. 01 Civ. 11939, Order (D. Mass. June 29, 2006) (30% fee of $10.85 million; 1.3 multiplier); In re Westar Energy ERISA Litig., No. 03 Civ. 4032, Order & Final Judgment (D. Kan. July 27, 2006) (30% fee of $9.25 million; 1.9 multiplier). In some ERISA company stock cases, courts have awarded fees well over these percentages. See, e.g., Kolar v. Rite-Aid, No. 01 Civ. 1229, 2003 U.S. Dist. LEXIS 3646 (E.D. Pa. Mar. 11, 2003) (49% of monetary recovery; 2.5 multiplier).

Of course, all of these numerical comparisons, while helpful, only take the Court so far. Ultimately, the subjective factors discussed above—and especially the risk present in this litigation—are the heart of the analysis. Based on those factors, and in light of the comparative data from other cases, a 33.33% fee, yielding a below-lodestar recovery, is well warranted here.

### 5.     Public Policy Supports Granting the Requested Fee Award

Congress passed ERISA to promote the important goals of protecting and preserving the retirement savings of American workers. The ERISA statute itself specifically encourages private enforcement. See, e.g., ERISA § 502(a), 29 U.S.C. § 1132(a). The Supreme Court has noted (in the context of securities class actions) that private actions provide "a most effective weapon in the enforcement" of federal statutes that provide for both governmental and private rights of action. Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310 (1985) (quoting J.I. Case Co. v. Borak, 377 U.S. 426, 432 (1964)).

Particularly in the securities context, courts "have recognized the importance that fair and reasonable fee awards have in encouraging private attorneys to prosecute class actions on a contingent basis . . . on behalf of those who otherwise could not afford to prosecute." Maley, 186 F. Supp. 2d at 373; see Eltman v. Grandma Lee's, Inc., No. 82 Civ. 1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986) ("To make certain that the public [interest] is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.") (internal quotations omitted); Spann v. AOL Time Warner Inc., No. 02 Civ. 8238, 2005 WL 1330937, at *3, 9 (S.D.N.Y. June 7, 2005) (awarding 33.33% fee in ERISA fiduciary breach case; noting that such lawsuits create incentives for fiduciaries to comply with ERISA).

In this case, the DOL took no action against Defendants. Without the efforts of Plaintiffs' Counsel, the participants in MMC's Plan would not have obtained any relief at all. They should receive a reasonable attorney's fee for their efforts. Thus, this Goldberger factor, like the others, supports awarding the requested fee.

## VI.  The Expenses Incurred by Lead Counsel Were Reasonable and Necessary to the Effective Prosecution of this Action

It is well-established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses. See In re Veeco Instruments Sec. Litig., No. 05 Civ. 01695, 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007). The expenses that may be reimbursed from the common fund encompass "all reasonable" litigation-related expenses. See Trustees v. Greenough, 105 U.S. 527, 533 (1882).

Litigating complex contingent cases such as this one requires counsel to incur significant expenses. Plaintiffs' Counsel have advanced $1,270,915.40 (Sarko Decl. ¶¶ 159-60), and they are entitled to reimbursement of those expenses, see Miltland Raleigh-Durham v. Myers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients."). Because Plaintiffs' Counsel was proceeding on a contingent-fee basis, they had a strong incentive to keep expenses at a reasonable level, and the Court concludes that they did so. The expenses incurred by Plaintiffs' Counsel are itemized in detail in the Sarko Declaration, and are largely attributable to ordinary and necessary costs such as court reporters, expert fees, computer-assisted document organization, travel and copying.

The Court finds that the expenses incurred by Plaintiffs' Counsel were reasonable and necessary to the effective prosecution of this action. Accordingly, the Court orders reimbursement of expenses in the amount of $1,270,915.40.

## VII.  Named Plaintiffs Are Entitled to the Requested Case Contribution Awards

Case law in this and other circuits fully supports compensating class representatives for their work on behalf of the class, which has benefited from their representation. See, e.g., Dornberger v. Metro. Life Ins. Co., 203 F.R.D. 118, 124-25 (S.D.N.Y. 2001). Such awards are

compensatory in nature, reimbursing class representatives who "take on a variety of risks and tasks when they commence representative actions, such as complying with discovery requests and often must appear as witnesses in the action." Strougo v. Bassini, 258 F. Supp. 2d 254, 264 (S.D.N.Y. 2003) (granting award of $15,000 to class representative). In this case, the three Named Plaintiffs request modest case contribution awards of $15,000 each.

Named Plaintiffs Mr. Hundley, Mr. Simon and Ms. Hernandez have been active, hands-on participants in this litigation, expending significant amounts of their own time to benefit the Class. They came forward to initiate this action, and thereafter remained in frequent contact with Plaintiffs' Counsel. (Fees Mem. at 21.) They responded to document requests and interrogatories; reviewed and approved pleadings; assisted with discovery; and were involved in settlement discussions. (Id.) They prepared for, traveled to and sat for full-day depositions. (Id.) All of this can be unpleasant for people inexperienced in litigation. The Court easily concludes that Mr. Hundley, Mr. Simon and Ms. Hernandez should be compensated for their efforts on behalf of the Class, which has benefited greatly from their representation.

Accordingly, the Court grants case contribution awards in the amount of $15,000 to each of the three Named Plaintiffs.

## VIII. The Two Objections to Attorneys' Fees and Expenses Are Rejected

Notice was provided to more than 30,000 potential Class members, and only two objections have been lodged to the requested award of fees and expenses. The first objection was filed by William H. McIntyre, a retired MMC employee. (See Sarko Decl. Ex. A (McIntyre Objection).) Mr. McIntyre states that fees "should not simply be a flat percentage, but rather determined on a more reasonable decrimental [sic] scale to be in closer alignment with actual professional services rendered." (Id.) Plainly, Mr. McIntyre presumes that the fee requested

exceeds the value of the "actual professional services rendered." As the Court has explained above, it does not. In fact, the lodestar in this case is above the requested fee. Thus, Mr. McIntyre's objection is rejected.

The other objection was filed by Anthony Meerpohl, another former MMC employee. (See Objections Mem. Ex. D (Meerpohl Objection).) Mr. Meerpohl objects to both the requested fees and expenses (he does not object to the case contribution awards). Mr. Meerpohl's objection is less an objection to this case than to class litigation in general. Mr. Meerpohl asserts that "the fact that any Attorney can get both expenses that they generated without oversight other than by the Judicial system as well as a high percentage of the award is more of a conflict of interest than the laws should allow." (Id.) Ironically, this is one of the few cases in which there has been oversight other than by the "Judicial system," as the Independent Fiduciary, Ms. Hennessey, has approved the requested fee.

Mr. Meerpohl also opines that former New York Attorney General Eliot Spitzer used the MMC case as "a springboard to Governor of New York," and that an award of roughly 33% is an "irony" and "too great an issue to overlook by any justice, no matter how blind." (Id.) Mr. Meerpohl is, of course, entitled to vent his frustration, but he fails to articulate any reason why the requested fee and expenses are excessive. His suggestion that an award of "95% of expenses plus a reasonable finder's fee of 5 to 10% of the award would be fair," misunderstands the litigation process. Plaintiffs' Counsel are not requesting a "finder's fee," nor would it be appropriate to give them one. They are seeking a fee to be paid for the work they have done litigating this case. Accordngly, the Court rejects Mr. Meerpohl's objection to the requested fees and expenses.

Finally, the Court reiterates that the Independent Fiduciary has reviewed Lead Counsel's requests, and that she has no objection to the requested fees, expenses or case contribution awards. (Objections Mem. at 7.) The Independent Fiduciary's approval, together with the fact that only two objections have been filed—both meritless—weigh heavily in support of the Court's decision to award the requested fees and expenses.

## CONCLUSION

For the reasons stated above, the Court (1) approves the Settlement; (2) certifies the Class for Settlement purposes; (3) determines that the notice provided to the Class was appropriate and sufficient; (4) approves the Plan of Allocation; (5) awards attorneys' fees in the amount of $11,655,500; (6) orders reimbursement of $1,270,915.40 in expenses advanced by Plaintiffs' Counsel; and (7) awards $15,000 to each of the three Named Plaintiffs, Donald Hundley, Conrad Simon and Leticia Hernandez, in recognition of their efforts on behalf of the Class.

Dated: January 29, 2010

U.S.D.J.

BY ECF TO ALL COUNSEL

Case: 1:09-cv-00928-MAS-DKB Doc #: 219 Filed: 05/23/16 Page: Page 118 of 152 PageID #: 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HOWARD GRADEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CONEXANT SYSTEMS, INC., DWIGHT W. DECKER, ARMANDO GEDAY, MICHAEL VISHNY, BALAKRISHNAN S. IYER, ROBERT McMULLAN, DENNIS E. O'REILLY, and J. SCOTT BLOUIN,<br><br>Defendants. | Case No. 2:05-cv-00695-SRC |

## ORDER AND FINAL JUDGMENT

This action came on for a final hearing, held on September 11, 2009, on a proposed settlement (the "Settlement") of this class action (the "Action") preliminarily certified for settlement purposes, and the issues having been duly heard and a decision having been duly rendered,

**IT IS HEREBY ORDERED AND ADJUDGED:**

To the extent not otherwise defined herein, all terms shall have the same meaning as used in the Stipulation of Settlement dated May 15, 2009, as amended on September 11, 2009 (the "Agreement").

The Court has jurisdiction over the subject matter of this Action and over all Parties to this Action, including all members of the Settlement Class.

The Court hereby approves and confirms the Settlement embodied in the Agreement as being a fair, reasonable, and adequate settlement and compromise of this

1

Action, adopts the Agreement as its Judgment, and orders that the Agreement shall be effective, binding, and enforced according to its terms and conditions.

The Court determines that Plaintiff is asserting, among others, claims on behalf of the Plan to recover losses alleged to have occurred as a result of a breach of fiduciary duty pursuant to ERISA § 502(a)(2). *See Mass Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).

The Court determines that the Settlement has been negotiated vigorously and at arm's length by Plaintiff and his counsel, and further finds that, at all times, Plaintiff has acted independently and that his interests are identical to the interests of the Plan and the Settlement Class. The Court further finds that the Settlement arises from a genuine controversy between the Parties and is not the result of collusion, nor was the Settlement procured by fraud or misrepresentation.

The Court finds that the Plan's participation in the Settlement is on terms no less favorable to Plaintiff and the Settlement Class.

The Court hereby adopts and approves the findings of the Independent Fiduciary that approved the Settlement, that the Settlement is not part of an agreement, arrangement, or understanding designed to benefit a party in interest, but rather is designed and intended to benefit the Plan, Plan participants, and Plan beneficiaries.

Accordingly, the Court expressly adopts the findings of the Independent Fiduciary that, to the extent: (a) the negotiation and consummation of the Settlement by Plaintiff on behalf of the Plan and the Settlement Class could potentially constitute a prohibited transaction as defined by ERISA §§ 406(a) or (b), 29 U.S.C. §§ 1106(a) or (b); and (b) to the extent any of the transactions required by the Settlement constitute a transaction

prohibited by ERISA § 406(a), 29 U.S.C. §§ 1106(a), such transactions are exempted from the prohibited transaction provisions, pursuant to the findings of the Independent Fiduciary that the Settlement satisfies and complies with the provisions of Prohibited Transaction Exemption 2003-39. 68 Fed. Reg. 75632 (2003).

The Court determines that the Class Notices transmitted to the Settlement Class, pursuant to the Preliminary Approval Order concerning the Settlement and the other matters set forth therein, is the best notice practicable under the circumstances and included individual notice to all Members of the Settlement Class who could be identified through reasonable efforts. The Class Notice provides valid, due, and sufficient notice of these proceedings and of the matters set forth therein, including the Settlement described in the Agreement to all persons entitled to such notice, and such notice has fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.

The Court hereby approves the maintenance of the Action as a non-opt-out class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) with the Settlement Class being defined as follows:

> All current and former participants in the Plan for whose individual accounts the Plan held an interest in the common stock of Conexant at any time from March 1, 2004 to and including May 15, 2009. Excluded from the Class are Defendants herein; and, their beneficiaries, alternate payees, representatives and successors-in-interest, not including any of the defendants, defendants' immediate family, any subsidiary, affiliate, or control person of such person or entity, officers and directors of Conexant and the legal representatives, heirs, successors, or assigns of each such excluded party.

Such a class meets the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23.

Pursuant to Federal Rule of Civil Procedure 23(g), the Court hereby appoints as Class Counsel Harwood Feffer LLP.

The Court hereby dismisses the Complaint against all Defendants with prejudice based on the Settlement.

As of Effective Date, Plaintiff, the Plan, and each Member of the Settlement Class on their own behalf and on behalf of their present or former agents, employees, attorneys, accountants, representatives, advisers, investment bankers, trustees, parents, heirs, estates, executors, administrators, successors and assigns, shall be deemed to have released each and all of the Released Persons from the Released Claims.

All members of the Settlement Class and the Plan are hereby barred and enjoined from the institution and prosecution, either directly or indirectly, of any other actions in any court asserting any and all Released Claims against any and all Released Persons.

The Court awards Plaintiff's counsel attorneys' fees in the amount of $ 1,072,500, plus accrued interest, and orders that Plaintiff's counsel be reimbursed for costs and expenses in the amount of $88,432.64, all to be paid from the Settlement Fund, as provided for in the Stipulation. The Court finds that this fee and expense award is fair and reasonable based on all of the circumstances of this action. Lead Plaintiff, Howard Graden, is hereby awarded a Contribution Award in the amount of $10,000.

Without affecting the finality of this Judgment, the Court retains jurisdiction for purposes of implementing the Agreement and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the

4

Agreement and Settlement, as may from time to time be appropriate, and resolution of any and all disputes arising thereunder.

SO ORDERED this _____11th_____ day of _____September_____, 2009.

HONORABLE STANLEY R. CHESLER
UNITED STATES DISTRICT JUDGE

Case: 1:09-cv-00928-MJS-SKB Doc #: 219 Filed: 05/23/16 Page: Page 125 of 152 PageID #: 7

CLOSED

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 03-2446-RGK (RCx) | Date | March 30, 2009 |
|---|---|---|---|
| Title | IN RE SYNCOR ERISA LITIGATION | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**  **(IN CHAMBERS)** Order Re Motion for Award of Attorney's Fees, Reimbursement of Expenses, and Case Contribution Award (DE 310)

## I.    INTRODUCTION

Plaintiffs and Defendants entered into a settlement agreement as to as underlying Employee Retirement Income Security Act ("ERISA") class action. On October 22, 2008, the Court granted final approval of the settlement agreement, which provided for a $4 million settlement amount. The agreement also provided for attorneys fees, costs, and case contribution awards. As to attorneys fees, the agreement specified that the amount would be subject to Court approval and capped at an amount equal to one-third of the settlement amount. Plaintiffs now seek approval for $1,333,333.00 in attorneys' fees, $474,936.29 in costs, and $2,500.00 for each of the three named plaintiffs as case contribution awards.

## II.   JUDICIAL STANDARD

### A.    Attorneys' Fees

In calculating reasonable attorneys' fees, the Ninth Circuit employs the hybrid lodestar/multiplier factors method. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1383 (9th Cir. 1990).

First, the Court begins by calculating the lodestar, i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. *Hensley*, 461 U.S. at 433. Second, the court may adjust the lodestar amount based on the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). These factors include: (1) the time and labor involved, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or other circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys,

(10) the undesirabiltity of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.*

### B.    Costs

The cost shifting provision in ERISA, 29 U.S.C. § 1132(g), shifts only the category of costs that may be taxed under 28 U.S.C. § 1920. *Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996); *see also Bonilla v. KDH Backhoe Serv.*, 2007 U.S. Dist. LEXIS 3093 (N.D. Cal. 2007).[1]

> The types of costs allowed in section 1920 include:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

29 U.S.C. § 1920 (2006).

### C.    Case Contribution Awards

Case contribution awards to named class representatives are appropriate as incentives for individual plaintiffs to take on the risks of representing a class and as reimbursement for the time and effort spent participating in the case. *Staton v. Boeing Co.*, 327 F.3d 938, 975-78 (9th Cir. 2003); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (finding that it was within the district court's discretion to make $5,000 incentive awards to class representatives). Relevant factors in determining the reasonableness of a case contribution award include the benefits received by the class, the time and effort expended by the class representatives, and reasonable fears of workplace retaliation. *Staton*, 327 F.3d at 975-78.

## III.    DISCUSSION

In their motion, Plaintiffs request approval of a settlement agreement that would include $1,333,333.00 in attorneys' fees, $474, 936.29 in costs, and $2,500.00 to each of the three named plaintiffs as case contribution awards. This Court addresses each in turn.

---

[1] It should be noted that *Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996) spoke to section 29 U.S.C. section 1132(g)(1) (2006) and not section 1132(g)(2) which is being asserted here. For the relevant purpose here, the subsections are not distinct. The only difference between the two—1132(g)(1) awards costs at the court's discretion while 1132(g)(2) is mandatory—has been treated as insignificant. *See Bonilla v. KDH Backhoe Serv.*, 2007 U.S. Dist. LEXIS 3093 (N.D. Cal. Jan. 4, 2007).

**A.**    **Attorneys' Fees are Awarded in the Amount of $1,333,333.00**

The Court begins by assessing the lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In considering affidavits regarding time spent and the hourly rate, the Court finds $1,333,333.00 a reasonable lodestar amount.

Next, the Court may adjust the lodestar based on the factors in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). However, the circumstances of the case do not warrant any adjustment of the lodestar from the *Kerr* factors. Class Counsel achieved a favorable result, settling for $4 million. (*See* Order and Final J., Oct. 22, 2008.) Achieving that result required Class Counsel to not only oppose Defendants' Motion for Summary Judgment, but to successfully appeal this Court's Order granting that motion to the Ninth Circuit. (*See* J. in Favor Def.'s Syncor and Funari, Jan. 11, 2006; J. in Favor Def. Fu, Jan. 11, 2006; Mandate, April 23, 2008; Order and Final J., Oct. 22, 2008.) On remand, Class Counsel prepared the case as far as the evening before trial when it settled. (*See* Pl.'s Mot. Supp. Mot. Prelim. Approval Settlement, 4:23-5:4, June 24, 2008.) Because of Class Counsel's persistence, time and labor spent, and results obtained, the Court does not find a need for any further adjustment to the amount based on the factors in *Kerr*, 526 F.2d at 70.

Based on the foregoing facts, the Court finds $1,333,333.00 to be a fair and reasonable fee. Class Counsel is hereby awarded $1,333,333.00 in attorneys' fees.

**B.**    **Costs are Awarded in the Amount of $52,152.76**

In the settlement agreement, the parties stipulated: "The Company agrees to pay Class Counsel . . . expenses and costs under ERISA Section 502(g) (a '502(g) Award') incurred in litigating and settling the Action." (Pl.'s Mot. Prelim. Approval Settlement, Ex. 1, 15.) As stated above, section 502(g), codified at 29 U.S.C. § 1132(g), shifts the plaintiffs' "costs of the action, to be paid by the defendant . . . ."

Class Counsel seeks $474,936.29 in costs. (Mot. Award Att'ys Fees, Expenses, and Case Contribution Award 7:18-8:13, Feb. 6, 2009.) Class Counsel includes costs for "experts, document management, review and processing, a mediator, . . . travel expenses. . . . transcripts, photocopies, on-line legal research, messenger services, postage, express mail and next day delivery, long distance telephone and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this Action." (Mot. Award Att'ys Fees, Expenses, and Case Contribution Award 7:22-8:4.) However, a portion of those costs are not recoverable in the Ninth Circuit.

The Ninth Circuit has stated that costs under ERISA, 29 U.S.C. section 1132(g) are limited to those iterated in 29 U.S.C. section 1920. *Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996). Several of the itemized costs are outside the scope of that statute, while others are not described with sufficient information to place within section 1920.[2] For these expenditures, Class Counsel has failed to meet its burden to justify these costs.

Class Counsel is hereby awarded $52,152.76 for costs.

**C.**    **Case Contribution Awards are Awarded in the Amount of $2,500 Each**

---

[2] Among the itemized costs that this Court finds insufficient detail to place within section 1920 are the following: "Common Fund - Associate Counsel . . . $103,900.00," "Litigation Fund Contributions . . . $112,700.00," and "Professional Services . . . $5,637.53." (Mot. Award Att'ys Fees, Expenses, and Case Contribution Award, Copley Decl. ¶ 23; Ciolko Decl., Ex. B.)

Plaintiffs request $2,500.00 case contribution awards for each named plaintiff. The class representatives met with Class Counsel, responded to information and document requests, answered interrogatories, participated in depositions, and made difficult strategic decisions throughout litigation and settlement negotiations, (Mot. Award Att'ys Fees, Expenses, and Case Contribution Award, Nobrega Decl. ¶ 3-6; Pilkington Decl. ¶ 3-6; Thomson Decl. ¶ 3-6.) Based on their efforts and the personal and financial risks they undertook to represent the class, the Court finds this amount to be fair and reasonable.

Each of the three named plaintiffs is hereby awarded $2,500 as case contribution awards.

## V.   CONCLUSION

In light of the foregoing, Plaintiffs' Motion for Award of Attorney's Fees, Reimbursement of Expenses, and Case Contribution Award is **GRANTED IN PART**. Defendants are ordered to pay (1) attorneys' fees in the amount of $1,333,333.00; (2) litigation costs and expenses in the amount of $52,152.76; and (3) case contribution awards in the amount of $2,500.00 for each of the three class representatives.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer                     slw

Case: 1:09-cv-00923-MAS-DAB Doc #: 219 Filed: 05/23/10 Page: 9 of 153 PageID #: 2678

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re MBNA Corp. ERISA Litigation | ) | Master Docket No. 05-429 (GMS) |
| | ) | |
| | ) | |

### [PROPOSED] FINAL ORDER AND JUDGMENT

This Action involves claims for alleged violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq. ("*ERISA*"), with respect to the MBNA Corporation 401(k) Plus Savings Plan as amended and restated effective January 1, 2000, and any successor plans and trusts created under the foregoing plans (the "*Plan*").[1]

This matter came before the *Court* for a hearing pursuant to the Order of this Court entered on September 26, 2008, on the application of the *Parties* for approval of the *Settlement* set forth in the Class Action Settlement Agreement (the "*Settlement Agreement*"), executed by counsel on September 19, 2008 on behalf of the *Parties*. Due and adequate notice having been given to the *Class* as required in said Order, and the *Court* having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.     This *Court* has jurisdiction over the subject matter of this action and over all *Parties* to the *Action*, including all members of the *Class*.

2.     On September 26, 2008, for purposes of effectuating settlement, this *Court* certified a *Settlement* class in this *Action* consisting of all participants and beneficiaries of the

---

[1]     Capitalized terms not otherwise defined in this order shall have the same meaning as ascribed to them in the *Settlement Agreement* and *Preliminary Approval Order*.

Plan for whose individual accounts the *Plan* purchased and/or held investments in MBNA common stock, from January 7, 2005 through April 22, 2005, inclusive. Excluded from the *Class* are *Defendants* and MBNA's Board of Directors throughout the *Class Period* (the "*Settlement Class*").

     3.     On December 15, 2008, more than 14,000 copies of the *Class Notice* were mailed to *Class members*.

     4.     On December 15, 2008, a copy of the *Summary Notice* was published in *USA Today*.

     5.     In accordance with the *Court's Preliminary Approval Order*, the *Class Notice* and *Settlement Agreement* were posted on the following website: www.whafh.com.

     6.     The *Class Notice* and the *Summary Notice* fully informed *Class* members of their rights with respect to the *Settlement*, including the right to object to the *Settlement* or the application for an award of attorneys' fees and reimbursement of expenses.

     7.     The *Class Notice* and *Summary Notice* collectively met the statutory requirements of notice under the circumstances, including the individual notice to all members of the *Class* who could be identified through reasonable effort, and fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirement of due process.

     8.     The prerequisites of Rule 23(a) and (b) have been satisfied for the purpose of effectuating the Settlement as to the Class, and the Court finds that:

          a.     the Class is so numerous that joinder of all members is impracticable;

          b.     there are questions of law or fact common to the Class;

          c.     The *Named Plaintiffs'* claims are typical of the claims of members of the Class;

d. The *Named Plaintiffs* will fairly and adequately protect the interests of the Class in the implementation of this Settlement;

e. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants;

f. the prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to individual Class members which would, as a practical matter, be dispositive of the interests of other members not parties to the actions or would substantially impair or impede their ability to protect their interests; and

g. Defendants acted or failed to act on grounds generally applicable to the Class as a whole.

9. The *Action* and all claims contained therein, as well as all of the *Released Claims*, are dismissed with prejudice as to the *Named Plaintiffs*, the *Class* members, and the *Plan*, and as against the *Releasees*. The *Parties* are to bear their own costs, except as otherwise provided in the *Settlement Agreement*.

10. The *Court* finds that the *Settlement* is fair, just, reasonable, and adequate as to each member of the *Class*, and that the *Settlement Agreement*, and the *Settlement* contained therein, is hereby finally approved in all respects, and the *Parties* are hereby directed to implement the *Settlement* in accordance with its terms and conditions.

11. The *Named Plaintiffs*, on behalf of themselves, the *Plan* and the *Class*, are deemed to have, and by operation of this Order and Judgment shall have, absolutely and unconditionally released and forever discharged the *Releasees* from the *Released Claims*.

12.     All members of the *Class* are hereby forever barred and enjoined from prosecuting the *Released Claims* against the *Releasees*.  As set forth on Section 3.2 of the *Settlement Agreement*, the *Released Claims* shall be: any and all claims of any nature whatsoever (including claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification, or any other type or nature of legal or equitable relief), whether accrued or not, whether against *Persons* in their capacity as individuals or in their capacities as plan fiduciaries, whether already acquired or acquired in the future, whether known or unknown, in law or equity, brought by way of demand, complaint, cross-claim, counterclaim, third-party claim, or otherwise (collectively, *"Claims"*), which were or could have been asserted in the *Complaint* by or on behalf of *Plaintiffs* or the *Plan* arising out of or relating to the matters alleged, or matters that could have been alleged, in the *Complaint*, including but not limited to any *Claims* (i) related to any action or inaction relating to *Company* stock held in the *Plan;* (ii) arising under any law or act governing the regulation of securities; and (iii) that would be barred by principles of *res judicata* or collateral estoppel had the *Claims* asserted in the *Complaint* been fully litigated and resulted in a Final Judgment or order.  The *Releases* shall include *Released Claims* that are not known or suspected to exist at the time such *Releases* are given, and *Plaintiffs* waive any and all rights they may have under statutory provisions that protect unknown future claims.  However, the *Releases* shall not include the right of the Plan to participate in any recovery in the action entitled *In re MBNA Securities Litigation*, No. 05-272 (GMS) (D. Del.).

13.     Each of the *Defendants*, by operation of this Order and Judgment, absolutely and unconditionally release and forever discharge the *Named Plaintiffs*, the *Class*, and *Class Counsel*

from any and all claims relating to, or in connection with the institution or prosecution of the *Action* or the *Settlement* of any *Released Claim.*

14. The *Plan of Allocation* set forth in the *Class Notice* is approved as fair and reasonable. *Class Counsel* is directed to administer the *Settlement* in accordance with its terms and provisions. Any modification or change in the *Plan of Allocation* that may hereafter be approved shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment.

15. *Class Counsel* is hereby awarded attorneys' fees in the amount of _33_ % of the *Settlement Fund*, which the *Court* finds to be fair and reasonable, and $_76,069.87_ in reimbursement of *Class Counsel's* reasonable expenses incurred in prosecuting the Action. The attorneys' fees and expenses so awarded shall be paid from the *Settlement Fund* pursuant to the terms of the *Settlement Agreement*, as provided in the *Settlement Agreement*, with interest on such amounts from the date the *Settlement Fund* was funded to the date of payment at the same net rate that the *Settlement Fund* earns. All fees and expenses paid to *Class Counsel* shall be paid pursuant to the timing requirements described in the *Settlement Agreement*. The award of attorneys' fees shall be allocated by Wolf Haldenstein Adler Freeman & Herz LLP as *Lead Counsel* in a manner which, in its sole discretion, *Lead Counsel* determines fairly compensates all *Class Counsel* for their respective contributions to the prosecution of the *Action.*

16. The *Named Plaintiffs* are hereby awarded incentive awards in the following amounts: Ralph Kunes $_5,000_; Sally Cannon $_5,000_.

17. In making this award of attorneys' fees and reimbursement of expenses to be paid from the *Settlement Fund*, and the compensation awards to the *Named Plaintiffs*, the *Court* has considered and found that:

a.   The *Settlement* achieved as a result of the efforts of *Class Counsel* has created a fund of $4,500,000 in cash that is already on deposit, plus interest thereon, and will benefit thousands of *Class* members;

b.   Over 14,000 copies of the *Class Notice* were disseminated to *Class* members indicating that *Class Counsel* were moving for attorneys' fees in the amount of up to 33% of the *Settlement Fund* and for reimbursement of litigation expenses of up to $200,000, and that the *Named Plaintiffs* would seek compensation awards totaling no more than $20,000.  Only one objection was filed by a *Class* member concerning the terms of the proposed *Settlement*, and no objections were filed concerning the fees and expenses requested by *Class Counsel*, or against the compensation awards requested for the *Named Plaintiffs*;

c.   *Class Counsel* have conducted the litigation and achieved the *Settlement* with skill, perseverance, and diligent advocacy;

d.   The *Action* involves complex factual and legal issues prosecuted over several years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

e.   Had *Class Counsel* not achieved the *Settlement*, there would remain a significant risk that the *Named Plaintiffs* and the *Class* may have recovered less or nothing from the *Defendants*;

f.   The amount of attorneys' fees awarded and expenses reimbursed from the *Settlement Fund* are consistent with awards in similar cases; and

g.   The *Named Plaintiffs* rendered valuable service to the *Plan* and to all *Plan Participants*.  Without this participation, there would have been no case and no settlement.

6

18. Neither the *Settlement Agreement* nor the terms of the *Settlement Agreement* shall be offered or received into any *Action* or proceeding for any purposes, except (i) in an action or proceeding arising under this *Settlement Agreement* or arising out of or relating to the *Preliminary Approval Order* or the *Final Order*, or (ii) in any action or proceeding where the *Releases* provided pursuant to this *Settlement Agreement* may serve as a bar to recovery, or (iii) in any action or proceeding to determine the availability, scope, or extent of insurance coverage (or reinsurance related to such coverage) for the sums expended for the *Settlement* and defense of the *Action*.

19. Without affecting the finality of this Judgment in any way, this *Court* hereby retains continuing jurisdiction over: (a) implementation of the *Settlement* and any award or distribution of the *Settlement Fund*, including interest earned thereon; (b) disposition of the *Settlement Fund*; (c) hearing and determining applications for attorneys' fees, costs, interest and reimbursement of expenses in the *Action*; and (d) all *Parties* hereto for the purpose of construing, enforcing and administering the *Settlement*.

20. The *Court* finds that during the course of the litigation, the *Named Plaintiffs* and the *Defendants* and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

21. This Order and Judgment shall not be considered or used as an admission, concession, or declaration by or against *Defendants* of any fault, wrongdoing, breach or liability.

22. In the event that the *Settlement* does not become effective in accordance with the terms of the *Settlement Agreement* or in the event that the *Settlement Fund*, or any portion thereof, is returned to the *Defendants* or their insurers, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the *Settlement Agreement* and shall be

vacated, and in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the *Settlement Agreement*.

23.    Final Judgment shall be entered herein.

SO ORDERED this _____27/ᵗʰ_____ day of __March__, 2009.

GREGORY M. SLEET
CHIEF UNITED STATES DISTRICT JUDGE

535228

8

Case: 1:09-cv-00383-SAS-SKB Doc #: 210-1 Filed: 07/26/13 Page: 1 of 138 PAGEID #: 351

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| IN RE: ELECTRONIC DATA | § | |
| SYSTEMS CORP. "ERISA" | § | |
| LITIGATION | § | **CASE NO. 6:03-MD-1512** |
| | § | **LEAD CASES 6:03-CV-126** |
| | § | **("ERISA")** |
| THIS DOCUMENT RELATES TO | § | |
| ALL ACTIONS | § | |

## ORDER

Before the Court is Class Counsel's Joint Petition for An Award of Attorneys' Fees, Reimbursement of Expenses, and An Incentive Award to the Named Plaintiffs, as well as Class Counsel's Supplement thereto. After careful consideration, the Court concludes that it should **GRANT** the Petition.

It is therefore **ORDERED** that

1. class counsel shall be and hereby is awarded an amount equal to one-third of the $12.5 million monetary relief obtained, including interest earned by the date of the award, for attorneys' fees;

2. class counsel shall be and hereby is awarded reimbursement of the costs and expenses of the litigation in the amount of $674,217.43 and the costs and expenses of class notice in the amount of $48,602.88;

3. class counsel shall reserve $50,000.00 to cover reimbursable expenses that they may incur in the future pursuant to the settlement; and

4. the named plaintiffs shall be and hereby are awarded an incentive award in the amount of $5,000.00 each.

**So ORDERED and SIGNED this 6th day of August, 2008.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

1

Case 1:09-cv-00383-ML-LDA   Document 110-16   Filed 07/23/13   Page 140 of 152 PageID #: 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAVID ESLAVA, et al.,  )
                       )
        Plaintiffs,    )
                       )
v.                     )        CIVIL ACTION  04-0297-KD-B
                       )
GULF TELEPHONE COMPANY, INC.,  )
et al.,                )
                       )
        Defendants.    )

FINAL ORDER APPROVING ATTORNEYS' FEES AND
REIMBURSEMENT OF COSTS AND EXPENSES

This matter is before the Court on the "Petition for Award of Attorneys' Fees and

Reimbursement of Costs and Expenses and Memorandum in Support" (doc. 734) filed on

October 17, 2007. No objections were filed by any party or class member to the request for

attorney fees and expenses.

In the Eleventh Circuit the method for determining a fair and reasonable attorney fee in a

class action common fund case is the "reasonable percentage of the fund" approach. Camden I

v. Dunkle 946 F.2d 768, 774 (11th Cir. 1991). "The majority of common fund fee awards fall

between 20% to 30% of the fund." Id. Most district courts "view the median of this 20% to

30% range, i.e., 25%, as a 'bench mark' percentage fee award which may be adjusted in

accordance with the individual circumstances of each case." Id. at 775.

In determining a fair and reasonable attorney fee, the twelve factors articulated in

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974)[1], are

appropriately used. Camden I at 775. The twelve factors are:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions involved;
> (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and the length of the professional relationship with the client;
> (12) awards in similar cases.

Johnson, 488 F.2d at 717-19.

An extensive amount of professional time was required to achieve the result. This case

lasted for over three years and was aggressively litigated on every issue. The undersigned has

issued opinions on four summary judgment motions, one motion for judgment on the pleadings,

seven motions to dismiss and a motion to certify this matter as a class action. Moreover, the

parties presented the court with many other opportunities, i.e. motions that were yet to be

addressed, to pontificate on other tedious ERISA issues. Fortunately, these opportunities were

thwarted by the settlement.

The novelty and difficulty of the questions involved called for extraordinary legal skills.

Counsel for all parties met the challenge and provided the court with excellent briefs on each

---

[1] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent on the Eleventh Circuit. Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

2

issue.

Plaintiffs' counsel agreed to take this case on an undefined contingency fee. As discussed above, the benchmark for a common fund case is 25%, and in other cases involving ERISA actions the average fee awarded was approximately 26%.[2] However, the court has also considered the undesirability of this particular case. As pointed out by counsel at the fairness hearing, the issue of the statute of limitations was a major hurdle for the plaintiffs. Thus, the risk of no recovery existed on that issue alone.

The last relevant factor is the result obtained. The plaintiffs' most meritorious claim appeared to be the escrow fund claim. The settlement reflects a recovery that was roughly equivalent to the losses claimed for that particular issue. The remaining claims, in this court's view, were not as likely to meet with success. Thus, plaintiffs counsel achieved a high level of success based on the facts they were presented. Accordingly, it is the opinion of the court that an award of 30%, which is the high end of awards for a common fund class action case, is appropriate in this case based on the complexity of the case, the time expended and the result obtained.

Upon review of Plaintiffs' Counsel's Petition and supporting affidavits, and for reasons stated in this order and on the record, Counsel's request for attorneys' fees and reimbursement of costs and expenses is GRANTED, in part, as follows:

1.    The Court finds that attorneys' fee of Plaintiffs' Counsel in the amount of $1,697,058.00 to be fair and reasonable. Payment of such award is to be

---

[2]This figure is derived from the list of ERISA cases provided by the independent evaluator. (See Doc 740, Exhibit A). In calculating the average award the court did not include the highest or lowest award.

3

made to Plaintiffs' Counsel pursuant to the terms of the Settlement

Agreement.

2.      The Court also has reviewed the submissions concerning the expenses in

this case and finds that the amount of $207,380.70 for the expenses and

costs of Plaintiffs' Counsel to be fair and reasonable.  Accordingly, said

amount is to be disbursed to Plaintiffs' Counsel pursuant to the terms of

the Settlement Agreement.

DONE and ORDERED this the 16th of November 2007.

/s/ Kristi K. DuBose_____
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

Case: 1:09-cv-00323-MLS-DA Document 210-1 Filed: 07/26/13 Page: 145 of 152 PageID #: 2698

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

|  |  |  |
|---|---|---|
|  | ) |  |
| IN RE AQUILA ERISA LITIGATION | ) | Case No. 04-00865-CV-DW |
|  | ) |  |

## FINAL ORDER AND JUDGMENT

This Action involves claims for alleged violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq. ("ERISA"), with respect to the Aquila, Inc.'s Retirement Investment Plan (the "Plan"). [1]

This matter came before the Court for a hearing on November 13, 2007, pursuant to the Order of this Court entered on August 15, 2007, on the application of the parties for approval of the Settlement set forth in the Class Action Settlement Agreement (the "Settlement Agreement"), executed by counsel on July 20, 2007 on behalf of the parties. Due and adequate notice having been given to the Class as required in said Order, and the Court having considered the thorough briefing and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1. This Court has jurisdiction over the subject matter of this action and over all parties to the Action, including all members of the Class.

2. On July 18, 2006, this Court certified a class in this Action consisting of all participants and beneficiaries of the Aquila, Inc. Retirement Investment Plan for whose individual accounts the Plan purchased and/or held investments in a fund

---

[1] Capitalized terms not otherwise defined in this order shall have the same meaning as ascribed to them in the Settlement Agreement.

1

consisting almost entirely of common stock of Aquila and/or a fund consisting almost entirely of Enron Corporation common stock, from January 1, 1999 through May 5, 2004, inclusive. Excluded from the Class are Defendants, Aquila's Board of Directors throughout the Class Period, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest (the "Settlement Class").

3.   On September 21, 2007, more than 7000 copies of the Class Notice were mailed to Class members.

4.   On September 25, 2007, a copy of the Summary Notice was published in *The Kansas City Star*.

5.   In accordance with the Court's Preliminary Approval Order, the Class Notice and Settlement Agreement were posted on Wolf Haldenstein Adler Freeman & Herz's website (www.whafh.com).

6.   The Class Notice and the Summary Notice fully informed Class members of their rights with respect to the Settlement, including the right to object to the Settlement or the application for an award of attorneys' fees and reimbursement of expenses.

7.   The Class Notice and Summary Notice collectively met the statutory requirements of notice under the circumstances, including the individual notice to all members of the Class who could be identified through reasonable effort due to the nature of this lawsuit and the definition of the class, and fully satisfied the

requirements of Federal Rule of Civil Procedure 23 and the requirement of due process.

8.    The Action and all claims contained therein, as well as all of the Released Claims, are DISMISSED WITH PREJUDICE as to the Named Plaintiffs, the Class members, and the Plan, and as against the Releasees.  The Parties are to bear their own costs, except as otherwise provided in the Settlement Agreement.

9.    The Court finds that the Settlement is fair, just, reasonable, and adequate as to each member of the Class. See In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 932 (8th Cir. 2005). Specifically, the complex and uncharted legal and factual posture of this case, the extensive discovery conducted, the fact that the settlement was the result of arms-length negotiations in front of a  respected and fully-informed mediator, and comparison to similar ERISA settlements support this finding.  Accordingly, the Settlement Agreement, and the Settlement contained therein, is hereby finally approved in all respects, and the parties are hereby directed to perform its terms.

10.    The Named Plaintiffs, on behalf of themselves, the Plan and the Class, are deemed to have, and by operation of the Judgment shall have, absolutely and unconditionally released and forever discharged the Releasees from the Released Claims.

11.    All members of the Class are hereby forever barred and enjoined from prosecuting the Released Claims against the Releasees.

12.    Each of the Defendants are deemed to have, and by operation of this Judgment have, absolutely and unconditionally released and forever discharged the Named

Plaintiffs, the Class, and Class Counsel and their Related Parties from any and all claims relating to, or in connection with the institution or prosecution of the Action or the Settlement of any Released Claim.

13.  The Plan of Allocation set forth in the Class Notice is approved as fair and reasonable, except that the 50% reduction to "Recognized Loss" shall apply only to Class members employed by the Company as of January 1, 2008, and Class members who have retired from the Company between January 1, 2005, and January 1, 2008.[2]  Class Counsel is directed to administer the Settlement in accordance with its terms and provisions.

14.  Any modification or change in the Plan of Allocation that may hereafter be approved shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment. However, any such modification or change shall first be approved by this Court.

15.  Class Counsel is hereby awarded attorneys' fees in the amount of 33% of the Settlement Fund, which the Court finds to be fair and reasonable, and $393,228.13 in reimbursement of Class Counsel's reasonable expenses incurred in prosecuting the Action.  The attorneys' fees and expenses so awarded shall be paid from the Settlement Fund pursuant to the terms of the Settlement Agreement, as provided in the Settlement Agreement, with interest on such amounts from the date the Settlement Fund was funded to the date of payment at the same net rate that the Settlement Fund earns.  All fees and expenses paid to Class Counsel shall be paid pursuant to the timing requirements described in the Settlement

---

[2] For the reasons stated at the hearing, the Court finds that additional notice to the Class regarding this change is not necessary.

Agreement. The award of attorneys' fees shall be allocated by Wolf Haldenstein Adler Freeman & Herz LLP as Lead Counsel in a manner which, in its sole discretion, Lead Counsel determines fairly compensates all Class Counsel for their respective contributions to the prosecution of the Action.

16.   The Named Plaintiffs are hereby awarded incentive awards in the following amounts:   Richard Itteilag $25,000; Barry O'Brien $5,000; Sharon Arr $5,000; Christie Wolf $5,000; John Pribyl $5,000; Robert Goodson $5,000; Michael Tylutki $5,000; Michael Reinhardt $5,000.

17.   In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, and the compensation awards to the Named Plaintiffs, the Court has considered and found that:

(a)   The Settlement achieved as a result of the efforts of Class Counsel has created a fund of $10,500,000 million in cash that is already on deposit, plus interest thereon, and will benefit thousands of Class members;

(b)   Over 7000 copies of the Class Notice were disseminated to Class members indicating that Class Counsel were moving for attorneys' fees in the amount of up to 33 % of the Settlement Fund and for reimbursement of litigation expenses of up to $500,000, and that the Named Plaintiffs would seek compensation awards totaling no more than $75,000.  No objections were filed against the terms of the proposed Settlement, to the fees and expenses requested by Class Counsel, or against the compensation awards requested for the Named Plaintiffs.

5

(c)     Class Counsel have conducted the litigation and achieved the Settlement, with skill, perseverance, and diligent advocacy;

(d)     The Action involves complex factual and legal issues prosecuted over several years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

(e)     Had Class Counsel not achieved the Settlement, there would remain a significant risk that the Named Plaintiffs and the Class may have recovered less or nothing from the Defendants;

(f)     The amount of attorneys' fees awarded and expenses reimbursed from the Settlement Fund are consistent with awards in similar cases;

(g)     The Named Plaintiffs rendered valuable service to the Plan and to all Plan Participants. Without this participation, there would have been no case and no settlement.

18.     Neither the Settlement Agreement nor the terms of the Settlement Agreement shall be offered or received into any Action or proceeding for any purposes, except (i) in an action or proceeding arising under this Settlement Agreement or arising out of or relating to the Preliminary Approval Order or the Final Order, or (ii) in any action or proceeding where the Releases provided pursuant to this Settlement Agreement may serve as a bar to recovery, or (iii) in any action or proceeding to determine the availability, scope, or extent of insurance coverage (or reinsurance related to such coverage) for the sums expended for the Settlement and defense of the Action.

19.     Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over (a) implementation of the Settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the Settlement Fund; (c) hearing and determining applications for attorneys' fees, costs, interest and reimbursement of expenses in the Action; and (d) all Parties hereto for the purpose of construing, enforcing and administering the Settlement.

20.     In the event that the Settlement does not become effective in accordance with the terms of the Settlement Agreement or in the event that the Settlement Fund, or any portion thereof, is returned to the Defendants or their insurers, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated, and in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

Final judgment shall be entered herein.

Date:   November 29, 2007                           /s/ Dean Whipple
                                                      Dean Whipple
                                          United States District Judge

7