**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| IN RE TEXTRON, INC. ERISA LITIGATION | Civil Action No. 09-383-ML (Consolidated Actions) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**SUPPLEMENTAL SUBMISSION IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES**

Vincent L. Greene IV
**MOTLEY RICE LLC**
321 South Main St.
Providence, RI 02903
Telephone: (401) 457-7700
Facsimile: (401) 457-7708
E-mail: vgreene@motleyrice.com

*Liaison Counsel for Plaintiffs and the Settlement Class*

Lori G. Feldman
Arvind B. Khurana
Jennifer J. Sosa
**MILBERG LLP**
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
E-mail: lfeldman@milberg.com
      akhurana@milberg.com
      jsosa@milberg.com

*Lead Counsel for Plaintiffs and the Settlement Class*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

   A.   The Reported Lodestar Contains Little Duplication of Effort ............................................ 3

     1.   Relevant Background ......................................................................................... 3

     2.   Potential Revisions to Hours Reported by Counsel ...................................... 5

   B.   Attorney Rates ................................................................................................. 6

   C.   Non-Attorney Lodestar ................................................................................... 9

   D.   Lodestar Supports the Requested Fee Under Any Set of Assumptions ............................ 12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Baptista v. Mut. of Omaha Ins. Co.*,
859 F. Supp. 2d 236 (D.R.I. 2012)..................................................................................1, 9

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)...............................................................................................................7

*In re Arcapita Bank B.S.C.(c) et al.*,
No. 12-11076 (SHL) (S.D.N.Y. Bankr. Ct. Jul. 19, 2013) .......................................8

*In re Enron Corp. Sec. Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ..............................................................................9

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995)..................................................................................................1

*Maceira v. Pagan*,
698 F.2d 38 (1983)............................................................................................................7, 8

*Nilsen v. York Cnty.*,
400 F. Supp. 2d 266 (D. Me. 2005) ...................................................................................2

STATUTES

29 U.S.C.A. § 1132(e)(2)........................................................................................................9

## INTRODUCTION

Plaintiffs Diana Leach, Holly Sheets, Alma I. Perez, and Adrienne Harrington-Wheatley ("Plaintiffs") provide this Supplemental Submission in Support of their Motion for an Award of Attorneys' Fees, in accordance with the Court's request at the January 24, 2014 Fairness Hearing (the "Fairness Hearing").

At the Fairness Hearing the Court certified the Settlement Class and approved the proposed $4.375 million Settlement and the proposed Plan of Allocation as being fair, reasonable and adequate.  The Court also approved case contribution awards to the Plaintiffs, and Plaintiffs' Counsel's request to be reimbursed for their litigation expenses.  The Court withheld judgment, however, with respect to the request for an award of 30 percent of the Settlement Fund as attorneys' fees pending the submission of additional information concerning lodestar. Specifically, the Court requested: (1) additional information concerning possible duplication of time between counsel from different firms engaged in the litigation; (2) additional justification for billing rates of certain counsel in excess of $795; and (3) additional information concerning non-attorney lodestar.

Plaintiffs respectfully submit that the requested fee, as a percentage of the settlement fund, is fully justified by the factors in *Baptista v. Mut. of Omaha Ins. Co.*, 859 F. Supp. 2d 236, 242 (D.R.I. 2012):  the magnitude and complexities of the litigation; the risk of the litigation; the quality of representation; the requested fee in relation to the settlement; and public policy considerations.  These factors support Plaintiffs' requested 30 percent fee and are addressed more fully in Plaintiffs' prior submissions. The remaining question is whether a lodestar crosscheck indicates that the requested fee is disproportionate to the time and effort counsel invested in the litigation, representing an unfair windfall.  *See, e.g., In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (noting

danger that fee award based on percentage of a settlement fund "may result in the overcompensation of lawyers in situations where actions are resolved before counsel has invested significant time or resources").  The lodestar in this case, however analyzed, clearly demonstrates that the requested fee provides no windfall; indeed, the requested fee represents a fraction of the lodestar whether as initially submitted or based on the hypothetical refinements.

Lead Counsel has reviewed all of the time and lodestar submissions that were attached to Plaintiffs' initial submission, together with the underlying daily time records for each of the reporting firms.   Lead Counsel's conclusion is that the reported time and lodestar was appropriate as submitted.  Of equal importance, none of the proposed refinements to the reported lodestar to eliminate duplication of effort between firms, change billing rates, or eliminate non-attorney time changes the fundamental conclusion that this case took an enormous amount of attorney time and effort, and that the requested 30 percent fee of $1.3 million will be significantly lower than any reasonable lodestar calculation.   Given that *positive* lodestar multipliers are frequently awarded in common fund cases to compensate for the risk firms undertake by litigating large, complex class actions over a period of several years,[1] the *negative* lodestar multiplier in this case certainly justifies the requested fee.

---

[1] A sister court in this Circuit recently addressed this question in some detail:

> For class actions generally, in 142 cases with a class recovery ranging from $3 million to $5 million the median multiplier was 1.89. Stuart J. Logan et al., *supra,* at 167. But these averages and medians are of limited utility because the multiplier appears to differ greatly from case to case, based on the size of the fund and the type of class action. *See id.* at 167, 196; *see also* 4 Conte & Newberg, *supra,* § 14:6 (numbers "ranging from one to four are frequently awarded"); Walker & Horwich, *supra,* at 1468 (initial hypothesis that courts would award reasonable fees with multipliers ranging from 1.5 to 2.5, but actual empirical research showed ranges between 1.0 to 5.0).

*Nilsen v. York Cnty.,* 400 F. Supp. 2d 266, 286 (D. Me. 2005) (citing Stuart J. Logan et al., *Attorney Fee Awards in Common Fund Class Actions,* 24 Class Action Rep. 167 (2003), and

## A.    The Reported Lodestar Contains Little Duplication of Effort

At the Fairness Hearing, the Court noted that the lodestar number might be higher than it otherwise would be as a result of duplication of effort resulting from several law firms being involved in the prosecution of the case.  Although several firms were involved in this litigation, Court-appointed Lead Counsel worked cooperatively with all of them from the outset to move the case forward as efficiently as possible given the inherent complexities of the case.

### 1.    Relevant Background

This litigation was commenced with the filing of *Leach v. Textron, Inc.,* No. 1:09-cv-00383-ML-LDA, on August 21, 2009, followed by *Sheets v. Textron, Inc.,* No. 1:09-cv-00412-S-DLM, on September 2, 2009, *Felton v. Textron, Inc.,*  No. 1:09-cv-421-ML-LDA, on September 9, 2009, *Perez v. Textron, Inc.,* No. 1:09-cv-424-ML-LDA, on September 10, 2009, *Tompkins v. Textron, Inc.,* No. 1:09-cv-440-S-DLM, on September 18, 2009, and *Harrington v. Textron, Inc.,* No. 1:09-cv-00504, on October 20**,** 2009.   Each of the suits alleged that Defendants were fiduciaries under ERISA, and alleged further that Defendants breached their fiduciary duties to the Textron Savings Plan by continuing to invest Plan Assets in a fund option primarily invested in Textron common stock.   Plaintiffs in each suit retained counsel with experience in ERISA company stock fund cases:  Stull, Stull & Brody (Diana Leach), Izard Nobel LLP (Holly Sheets), Harwood Feffer LLP (Susan Felton), Milberg LLP (Alma Perez), Kessler Topaz Meltzer & Check, LLP (Marion Tompkins), and Gainey & McKenna (now Gainey, McKenna & Egleston) (Adrienne Harrington, Robert Arthur, and Jubrina Hook).   Each also retained local counsel, as

---

Vaughn R. Walker & Ben Horwich, *The Ethical Imperatives of a Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases,* 18 Geo. J. Legal Ethics 1453, 1468, 1470 (2005), and quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:6 (4th ed. 2002)).

required by the rules of this Court:  The Law Offices of Stephen R. White, Motley Rice LLC,

McIntyre, Tate & Lynch, LLP, D'Amico & Burchfield, LLP, and Michael Marran, Esq.

In order to minimize the potential for duplication of effort, all counsel coordinated with

each other, and there was a conference immediately following the Court's initial status

conference on October 20, 2009, to discuss a leadership structure for the litigation.  As a result of

that conference and subsequent discussions, Plaintiffs' counsel agreed with the proposal filed by

Plaintiffs Diana Leach and Holly Sheets [Dkt. No. 3] that Izard Nobel LLP and Stull, Stull &

Brody would serve as Interim Co-Lead Counsel and Motley Rice LLC and the Law Offices of

Stephen White would serve as Interim Co-Liaison Counsel.  The Court approved this proposal

by Order dated December 21, 2009 [Dkt No. 24].

The Order appointing Co-Lead Counsel gave them authority over "directing,

coordinating and supervising the prosecution of plaintiffs' claims in the Consolidated Action" as

well as "maintaining communication and promoting efficient and harmonious dealings among all

plaintiffs' counsel" and "coordinating activities to avoid duplication . . . in the litigation."  Dkt.

No. 24, at 6.  In furtherance of that mandate, Co-Lead Counsel moved the case forward,

coordinating the work of Plaintiffs' counsel and assigning specific tasks to particular firms.

On February 10, 2010, Co-Lead Counsel filed a Consolidated Complaint on behalf of all

of the Plaintiffs, and Defendants moved to Dismiss on March 19, 2010.  Co-Lead Counsel

coordinated the work of Plaintiffs' counsel in preparing the opposition to this Motion, which was

filed on May 3, 2010.  Defendants filed a reply brief on June 2, 2010.  The Parties subsequently

filed supplemental authorities to support their positions.  The matter was thus fully briefed when

the case was transferred to the District of New Hampshire on January 19, 2011 [Dkt 26], and

assigned to Judge Barbadoro.

Judge Barbadoro held a status conference on February 14, 2011, during which he indicated his preference for having a single firm act as Lead Counsel for the litigation, rather than the existing Co-Lead Counsel/Liaison Counsel structure previously approved by this Court. After consultation amongst all of the firms representing Plaintiffs in the litigation, on February 28, 2011, Plaintiffs proposed a revised leadership structure, with Milberg LLP acting as Interim Lead Counsel [Dkt No. 47].  Although Judge Barbadoro did not issue a formal order with respect to this proposal, he accepted it and Milberg took the lead in the oral argument on the Motion to Dismiss held on June 29, 2011.   Judge Barbadoro's alternative leadership structure was confirmed by Order of this Court on December 13, 2011 [Dkt No. 67], with the amendment that Motley Rice LLC was appointed Interim Liaison Counsel.  Despite the changes in the leadership structure, Plaintiffs' counsel continued to work cooperatively together.

### 2.      Potential Revisions to Hours Reported by Counsel

The Court has specifically requested that Lead Counsel review their lodestar to make sure that there is no duplication among the various Plaintiffs' Counsel.  Fairness Hearing Transcript ("Transcript") at 12.  To accomplish this task, Lead Counsel reviewed the billing records of all firms that submitted time for consideration in the lodestar.  Although the categories overlap somewhat, Counsel endeavored to separate out time that was recorded for tasks that were specifically assigned by Lead Counsel to other Plaintiff's counsel, such as review of a portion of discovery documents or drafting a portion of a pleading or brief, from time that was reported for other tasks, such as reviewing and commenting on draft submissions and reviewing pleadings and court orders.

Lead Counsel note that these other tasks are necessary:  counsel have fiduciary obligations to their individual clients, and they *should* review significant pleadings and keep abreast of the case.  Moreover, the comments provided by Plaintiffs' counsel are often invaluable

to the attorneys who have been appointed to lead the litigation. Still, for purposes of the analysis requested by the Court, Lead Counsel has attempted to separate out the lodestar for all firms other than Izard Nobel LLP and Stull, Stull & Brody (for the period from the commencement of the case through February 27, 2011) and for all firms other than Milberg LLP (for the period from February 28, 2011 to the end of the case), for time that was not devoted to (1) tasks assigned by Lead Counsel; or (2) communications with clients.[2]   The result of this exercise, shown in Exhibit A, shows that this potentially "duplicative" time amounts only to $304,531.74; or less than 7% of a total reported lodestar of $4.43 million.

### B.     Attorney Rates

During the Fairness Hearing, the Court expressed concern over some attorneys billing at rates of $795 to $900 per hour, as high for Providence.  Transcript, at 13.  Plaintiffs' Counsel believe that the rates are reasonable under the circumstances of the case, and moreover, the lodestar billed for attorneys billing at those rates, represent only a very small percentage of the reported lodestar.  Of the 34 attorneys whose time was reported to the Court, only five billed at rates at or above those mentioned by the Court, and the number of hours billed by these five attorneys (343.80) is less than 4 percent of the total of over 9000 hours billed.  Removing their time from the lodestar calculation altogether would reduce it from $4.43 million to $4,124,605.  In terms of the lodestar crosscheck, this means that the fee of $1.3 million requested by Plaintiffs' counsel would represent a fractional lodestar multiple of 0.32, rather than 0.29.

---

[2] This was done as an exercise to further demonstrate the propriety of the attorneys' fees sought. Lead Counsel assumed, but neither they nor Plaintiffs' counsel concede, that there was no benefit added for the Class by multiple firms reviewing the same drafts of court filings. In fact, all of the firms involved have substantial ERISA expertise, as demonstrated by their firm biographies submitted in connection with the attorneys' fee request.  Such expertise is not fully overlapping for all firms, each of which was litigating multiple analogous ERISA actions during the pendency of this litigation and undoubtedly added value to the prosecution of Plaintiffs' claims.

Although the amount of lodestar involved is small, Plaintiffs respectfully suggest that the charged rates are appropriate under the factors annunciated by the First Circuit.  In *Maceira v. Pagan,* 698 F.2d 38 (1983), defendant Union appealed the award of attorneys' fees to Plaintiff's counsel, in part on the grounds that Detroit-based counsel billed at rates that were higher than those prevailing in Puerto Rico.  The First Circuit disagreed:

> We believe the answer to this question turns on the reasonableness of hiring an out-of-town specialist.  The reasonable hourly rate is usually stated to be "that prevailing in the community for similar work," *Copeland v. Marshall,* 641 F.2d 880 (D.C. Cir. 1980)], *supra,* 641 F.2d at 892.  However, an out-of-town specialist may be able to command a somewhat higher price for his talents, both because of his specialty and because he is likely to be from a larger city, where rates are higher. *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760 (7th Cir. 1982).  If a local attorney could perform the service, a well-informed private client, paying his own fees, would probably hire local counsel at the local, average rate. If the client hires a local specialist, he will ordinarily pay a premium rate. Where it is unreasonable to select a higher priced outside attorney-as, for example, in an ordinary case requiring no specialized abilities not amply reflected among local lawyers-the local rate is the appropriate yardstick. But, if the client needs to go to a different city to find that specialist, he will expect to pay the rate prevailing in that city.  In such a case, there is no basis for concluding that the specialist's ordinary rate is unreasonably high.  If one wishes to be literal, the "prevailing" rate "in the community" for work performed by an outside specialist (where that outside specialist is reasonable) is most likely to be that outside specialist's ordinary rate, *see Copeland, supra,* 641 F.2d at 892.  If the courts (without cause) award fees at less than that rate, they will tend to prevent those in smaller communities from obtaining the experienced legal counsel they may need, contrary to the policy behind awards of attorneys' fees to prevailing parties.

*Maceira,* 698 F.2d at 40.

The present case is very similar.  This is a nationwide class action alleging violations of the fiduciary duties of ERISA, a statute that the U.S. Supreme Court has described as being "comprehensive and reticulated" as well as "enormously complex and detailed."  *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 447 (1999) (internal citations and quotations omitted).  It is not surprising that Plaintiffs retained counsel with specialized expertise in this complex area,

when Defendant Textron Inc. (which, unlike any of the named Plaintiffs, is located in downtown Providence) saw fit to retain counsel from New York City and Washington, D.C.  It is likely that the rates charged by one or more lead counsel for Defendants exceed the highest rates charged by any counsel for Plaintiffs.[3]

As noted in Plaintiffs' brief supporting approval of the Settlement, ERISA class actions involving breaches of fiduciary duties with respect to investment of 401(k) plan assets in company stock funds are relatively new, and the law is rapidly evolving.  There are a small number of firms across the country that have successfully litigated these types of actions, and many of those firms were in fact retained by one or another of the Plaintiffs in the consolidated cases.  A review of the firm resumes submitted in support for Plaintiff's fee request attests to the record that these firms have established in this field.  Not all of those firms are located in major metropolitan areas, although several of them are.  Thus, the relevant market for this case is composed of firms with specialized expertise and a nationwide practice.  As the First Circuit found in *Maceira,* it is appropriate in those circumstances to use the specialist's standard rates rather than the rates prevailing in the community in which the case was brought.

This is a nationwide class action involving a large company with a multi-state presence. Lead Plaintiffs came from Georgia, Texas and California.  As the suit was brought under ERISA,

---

[3] For example, in a Bankruptcy Court filing in July of last year, Gibson, Dunn & Crutcher LLP, which served as counsel for Defendants in this matter, provided a statement of its fees for professional services rendered which were represented as "the same rates that it charges generally for professional services rendered to its non-bankruptcy clients."  Fifteenth Monthly Statement of Gibson, Dunn & Crutcher LLP of Fees for Professional Services Rendered and Disbursements Incurred as Counsel for the Debtors for the Period of June 1, 2013 through June 30, 2013, at 6, *In re Arcapita Bank B.S.C.(c) et al.,* No. 12-11076 (SHL) (S.D.N.Y. Bankr. Ct. Jul. 19, 2013).  The rate shown in that filing for Mitchell Karlan, one of the key litigation partners in this case, was $1,135 per hour.  The filing also shows associates with less than ten years' experience billing at rates as high as $785 per hour.  Here, counsel for Plaintiffs bill at lower rates and are paid, *if they are paid at all,* only if and when the case is successfully concluded.

it involved federal question jurisdiction and nationwide service of process.  Based on ERISA's venue rules, the suit could have been brought in any judicial district "where the plan is administered, where the breach took place, or where a defendant resides or may be found . . . ." 29 U.S.C.A. § 1132(e)(2).  Thus, the suit could have been appropriately brought in a number of different courts.  In all likelihood, however, regardless of where the case was brought, the same firms would have appeared as counsel for the Plaintiffs because of the nature of the case and the expertise involved.  It makes little sense, in those circumstances, to normalize counsel's rates at those prevailing in the district court which ultimately ends up with the case.  The alternative would be to create incentives to bring cases in jurisdictions with higher hourly rates where possible.[4]

## C.  Non-Attorney Lodestar

The Court also raised a question concerning the appropriateness of including investigatory, litigation support and document clerk time in Milberg's lodestar when applying for an award of fees.  Transcript at 13.  Submitting the time for these categories of employees with the lodestar is appropriate in a complex class action case such as this one.  *See e.g., In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 827 (S.D. Tex. 2008) (including the time of document clerks and in-house investigators within the lodestar) citing *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 325 (W.D. Tex. 2007) (fees for legal assistants, paralegals, investigators, and non-secretarial support staff are included in lodestar).   Lead Counsel believes that the work

---

[4] However, even if the Court were to disagree with the above, Plaintiffs' counsel notes that they have submitted 9,011.50 hours of professional and support staff time, which they have reduced to 8,403.39 hours by assuming certain tasks that added value were redundant and should be eliminated from the lodestar calculation.  Whatever rates are applied, the requested $1.3 million is either an average of $144.26/hour or $154.70 when spread evenly across Plaintiffs' Counsel's lodestar – rates well below those this Court has approved in other litigation.  *See, e.g., Baptista,* 859 F. Supp. 2d at 243 (approving rates between $425 and $525 per hour).

contributed by these categories of individuals directly supported counsel's substantive efforts and was necessary to provide the ultimate benefit achieved for the class. However, in an effort to assuage the Court's concerns, Lead Counsel is providing additional information about the departments as well as proposing elimination of certain time entries.

**In-House Investigators**

Milberg's in-house investigators come from impressive backgrounds in law and regulatory enforcement. Headed by Steve Bursey, who was recognized by *American Lawyer* magazine for his investigative work in the *Madoff* matter, the firm's investigators assist the firm's attorneys by finding and analyzing sensitive, often hidden, information important to the success of the action. They develop evidence of misconduct by utilizing proven and effective investigatory methods, including extensive interviews. The firm's investigators locate witnesses, follow up on leads, and utilize a variety of contacts and industry sources to detect and corroborate corporate misconduct. In conducting their investigations, they ensure compliance with relevant laws by staying current with respect to Federal, State, and local laws, privacy laws, and other legal issues that might affect their work.

In this Action, Milberg's in-house investigators were an integral part of developing the substantive allegations in the consolidated Complaint. They used the aforementioned skills to uncover information regarding the alleged wrongdoing that occurred at Textron during the class period and helped the attorneys to develop their case theory and the allegations that supported it. In many ways, the work of these individuals can be analogized to that of paralegals, whose hourly time is unquestionably appropriate to include in the lodestar, because they are collecting and organizing information at the request and direction of counsel – only with unique and specialized experience. Given their expertise and specialization, Lead Counsel respectfully

submits that the time and rates for the in-house investigators are properly included in Milberg's lodestar.

**Litigation Technology Support Specialists**

Milberg's Litigation Technology Support Specialists, or E-Discovery practice, is comprised of professionals with extensive experience in complex e-discovery projects. The group is led by Paul H. McVoy, who specializes in managing complex e-discovery issues in the context of large, international litigation. He has directed collection, review, and production in several high-profile merger investigations, including the first case ever to involve the production of documents in native format to the U.S. Department of Justice. In addition, Mr. McVoy has considerable experience managing e-discovery matters of international scope, including retrieval, processing, and management of data from Europe, Asia, the Middle East, and South America.

In this Action, Mr. McVoy and his team provided extensive support to Plaintiffs' Counsel as they navigated the contested discovery process, which at the time of mediation had already resulted in the production of two million pages of documents. The time billed by Mr. McVoy was in his capacity as a specialist and consultant, but again, analogous to legal assistants whose time is properly recognized, but with particular specialized expertise in discovery related matters. For that reason, Lead Counsel submits that his time should be included in the lodestar. In reviewing the detailed time records of the other litigation support professional, Eugene Naumov, Lead Counsel concluded that his tasks concerned data hosting and loading, analogous to that of a vendor, not a legal assistant. For that reason, and as the Court noted, his time should have been

categorized as an expense.   However, Lead Counsel will not seek reimbursement of Mr. Naumov's time as an expense at this time and have removed it from their lodestar calculation.[5]

### D.      Lodestar Supports the Requested Fee Under Any Set of Assumptions

As set forth above, Plaintiffs believe that their initial lodestar analysis was appropriate. But Plaintiffs conducted an alternative analysis to demonstrate that, even under an unrealistic set of assumptions that the Court should certainly *not* adopt, the reported lodestar supports the requested $1.3 million fee.

In this exercise, Plaintiffs eliminated *all* time reported by attorneys billing more than $750 dollars an hour, despite the demonstrated contributions such experienced counsel made to the effective prosecution of this case.   Plaintiffs further eliminated *all* time billed by non-attorneys.  Finally, for purposes of this exercise, Plaintiffs included *only* the time reported by Co-Lead Counsel Izard Nobel LLP and Stull, Stull and Brody from the inception of the case through February 27, 2011, and by Lead Counsel Milberg LLP from February 28, 2011 until the end of the case – even though this discounts to zero the time invested by Plaintiffs' counsel at the specific request of court-appointed Lead or Co-Lead Counsel.  The result, as might be expected, is a lodestar figure that is considerably lower than the one reported to the Court – and a lodestar figure that vastly understates the time and effort of many dedicated professionals in this case who contributed to the excellent result achieved.   And the lodestar figure *still* exceeds the requested fee award of $1.3 million at $2,515,993.30.

---

[5] Similarly, and in an abundance of caution in addressing the Court's concerns, Lead Counsel has removed the time entries for the document clerk from their lodestar.

## CONCLUSION

For the reasons set forth above, and in Plaintiff's principal submission, Plaintiffs respectfully request that the Court approve a $1.3 million fee for Plaintiffs' counsel, representing 30 percent of the Settlement Fund.

Dated:  February 7, 2014                              Respectfully submitted,

                                                      s/ Vincent L. Greene IV
                                                      Vincent L. Greene IV
                                                      MOTLEY RICE LLC
                                                      321 South Main Street
                                                      Providence, RI  02903
                                                      Telephone:     (401) 457-7700
                                                      Facsimile:     (401) 457-7708
                                                      E-mail:vgreene@motleyrice.com

                                                      *Liaison Counsel for Plaintiffs and the Settlement Class*

                                                      Lori G. Feldman
                                                      Arvind B. Khurana
                                                      Jennifer J. Sosa
                                                      MILBERG LLP
                                                      One Pennsylvania Plaza
                                                      New York, NY  10119
                                                      Telephone:     (212) 594-5300
                                                      Facsimile:     (212) 868-1229
                                                      E-mail:  lfeldman@milberg.com
                                                               akhurana@milberg.com
                                                               jsosa@milberg.com

                                                      *Lead Counsel for Plaintiffs and the Settlement Class*

## Certificate of Service

I certify that a true copy of the foregoing was served electronically via the CM/ECF system on all counsel of record on this 7th day of February, 2014. s/ Vincent L. Greene IV

s/ Vincent L. Greene IV